# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **INTEGRATED DESIGN AND ELECTRONICS** | : | |
| **ACADEMY PUBLIC CHARTER SCHOOL** | : | |
| 1027 45TH Street, N.E. | : | |
| Washington, D.C. 20019 | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | |
| **CONSUELLA S. MCKINLEY** | : | |
| **as next friend mother of the minor child,** | : | |
| **M.K.** | : | |
| **and** | : | |
| **M.K., individually** | : | |
| **4202 Fort Dupont Street, SE** | : | |
| **Washington, D.C. 20020** | : | |
| | : | |
| **Serve:** | : | |
| | : | |
| **Consuella S. McKinley** | : | |
| **4202 Fort Dupont Street, S.E.** | : | |
| **Washington, D.C. 20020** | : | |
| | : | |
| **Defendants** | : | |

## COMPLAINT

## JURISDICTION

1.  Plaintiff brings this Complaint seeking relief from an adverse decision regarding the

    provision of a free appropriate public education, pursuant to the Individuals with

    Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C.§§ 1400 *et seq*. This Court

    has jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1343; and pendant jurisdiction

    pursuant to 5 D.C.Mun. Regs.§§ 3000 *et seq*. Declaratory relief is authorized by 28

    U.S.C.§§ 2201 and 2202.

2.    Plaintiff, Integrated Design and Electronics Academy Public Charter School (IDEA PCS) is a District of Columbia Public Charter School which has elected to be its own local education agency (LEA) under IDEIA, for special education issues.

3.    Defendant and her minor child are currently residents of the District of Columbia and claimed residency in the District of Columbia for all of the time during the underlying administrative proceedings.

## FACTS

4.    K.M.. is a sixteen year-old student who at the initiation of the administrative proceedings attended  IDEA PCS.

5.    On 17 October 2006, K.M. attempted suicide in the rest room of IDEA PCS and thereafter K.M. was taken to hospital for treatment where she stayed until 24 October 2006.

6.    On 10 January 2006 the defendants, through counsel requested evaluations for special education and counsel enclosed a District of Columbia Public School (DCPS) Consent for Evaluation Form signed by the parent on 16 December 2005.

7.    In the 10 January 2006 letter, counsel requested notice of all proposed tests, observations, and evaluations.

8.    On the same day, 10 January 2006, IDEA PCS requested a meeting with the parent to determine whether K.M. needed special education services.  The two events were unrelated, the documents crossed in the mail.

9.    Thereafter, IDEA PCS made numerous attempts to have a multi-discipline team (MDT) meeting to discuss information regarding the student, review any documents pertaining to

2

the student and determine if the student needed evaluations and if so, which evaluations.

10. Finally, on 6 March 2006, the parent and her representative took part in the MDT meeting where the team determined the need for testing and the evaluations required to determine eligibility for special education.

11. It was not until the 6 March 2006 meeting that the parent provided the documentation from the hospitalization in October 2005.

12. The student never returned to IDEA PCS and the parent never gave IDEA PCS access to evaluate the student.

13. IDEA PCS, through their evaluator made numerous attempts to evaluate the student, however they were never successful.

14. On 19 July 2006, defendants filed a Due Process Complaint claiming IDEA PCS failed to timely evaluate.

15. On 22 September 2006, the District of Columbia Public Schools convened an impartial due process hearing.

16. Testimony from IDEA PCS personnel indicated the IDEA PCS had begun the process to determine whether K.M. needed special education services on 6 January 2006.

17. Testimony from IDEA PCS personnel revealed that IDEA PCS made numerous attempts to schedule a meeting with mother, but she continued to stall the process until 6 March 2006.

18. Testimony from IDEA PCS and their evaluators revealed they made numerous attempts to test K.M. but the parent did not make the student available.

19. The Hearing Complaint reveals that the parent has already obtained independent

evaluations prior to the filing of the complaint. *See*, Ex 1. Complaint, Footnote 2 at 4.

20.    The parent was unwilling to provide the evaluation she had independently sought and obtained.

21.    Testimony of the parent revealed she had enrolled the student in another school.

22.    On 29 September 2006 DCPS issued a Hearing Officer's Decision (HOD) which found for K.M.

23.    The hearing officer found that IDEA PCS should have completed the evaluations by 10 May 2006 since the timeline for the 120 days started on 10 January 2006. *See*, Ex. 2 HOD at 5

24.    The hearing officer then ordered IDEA PCS to fund independent clinical psychological, psycho-educational and speech/language evaluation of the student." Ex. 2 at 6

## COUNT I

25.    Plaintiff repeats and realleges paragraphs 1 - 24.

26.    Hearing Officer St. Clair erred in finding that the signed consent for evaluation started the timeline for testing. IDEIA lays out procedures prescribing requirements for LEA's prior to evaluating a student suspected of disabilities. Under 34 C.F.R. §300.305 the LEA is required,

> As part of an initial evaluation ..the IEP Team and other qualified professionals, as appropriate, must –
> (1) Review existing evaluation data on the child, including --
> (i)    Evaluations and information provided by the parents of the child;
> (ii)   Current classroom-based, local, or State assessments, and classroom-based observations; and
> (iii)  Observations by teachers and related services providers; and
> (2) On the basis of that review, and input from the child's parents, identify what additional data, if any, are needed.

The parent signing a consent form without that process not only short circuits the process but

4

short changes the child.  The hearing officer erred when he disregarded the procedural
safeguards.

## COUNT II

27.    Plaintiff repeats and realleges paragraphs 1 - 26

28.    Hearing Officer St. Clair erred in when he disregarded the parent's obstruction of the
       evaluation process.  The parent did not provide the medical documents from the
       hospitalization until 6 March 2006.  The parent would not meet with IDEA PCS until 6
       March 2006, disregarding numerous attempts through the parent's advocate and attorney.
       Parent thwarted IDEA PCS' efforts to evaluate the student after 6 March 2006, and in fact
       obtained an independent evaluation prior to the hearing request.

## COUNT III

29.    Plaintiff repeats and realleges paragraphs 1 - 28.

30.    Hearing Officer St. Clair erred in when he disregarded the fact the student had effectively
       discontinued attendance at IDEA PCS.  Under 34  C.F.R. §300.301(d)(2) "The timeframe
       ...of this section does not apply to a public agency if a child enrolls in a school of another
       public agency after the relevant timeframe in (c)(1) of this section has begun, and prior to
       a determination by the child's previous public agency as to whether the child is a child
       with a disability under §300.8."  The parent voluntarily kept K.M. from IDEA PCS, a
       LEA and placed K.M. in another LEA, therefore voiding the timelines.

       **WHEREFORE**, Plaintiff respectfully requests this court to:

       1.    Issue a judgment for Plaintiff and against Defendants on all aforementioned
             counts;

2.    Order that the 29 September 2006, Hearing Officer's Decision be reversed,

finding no denial of a free, appropriate, public education by IDEA PCS.

3.    Order an award of attorneys fees and costs to Plaintiff; and

4.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

William E. Houston, Esq.
D.C. Bar No. 450223
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300(O)
(703) 739-2323 (F)

07/18/2008 12:16 FAX  2027422098      James E Brown & Assoc.                    ☒002/008

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



*Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals wit

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. The Student Hearing Office does NOT schedule resolution meetings.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

A.  INFORMATION ABOUT THE STUDENT:

Name of the Student: K███ M█████y    Date of Birth: ████████
Address: 4202 Fort Dupont St. SE Washington, DC 20020
Home School:  IDEA Public Charter School Center
Present School of Attendance: Same [1]

    Is this a charter school? Yes         (If yes, you must also provide a copy of this notice
                                          to the charter school principal or director)

---

[1] Pursuant to the recommendations of her doctors, K.M. has not yet returned to school since her release from the hospital.

1



PLAINTIFF'S
EXHIBIT
___1___

07/15/2008 12:19 FAX  2027422098          James E Brown & Assoc.                    ☒ 008/008

Parent/Guardian of the Student: Ms. Consuela McKinley
Address (if different from the student's above): same

B.    Legal Representative/Attorney:

Name: Roberta L. Gambale, Esq. (James Brown and Associates, PLLC)
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone: (w) (202)742-2000 (ext. 2021) (Fax) (202) 742-2098   (e-mail) Rgambale@ieplaw.biz
Will attorney / legal representative attend the resolution session?        X Yes          ⁻ No

C.    Complaint Made Against (check all that apply):

X  IDEA Public Charter School

D.    Resolution Session Meeting Between Parent/Representative and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for this process.

E.    Mediation Process:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing only.**

F.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

I. Nature of the problem.

Background

K█████M██████ ( hereinafter "K.M.") DOB: █████, is a 10th grade student at IDEA Public Charter School. In October 2005, after a suicide attempt at the school, K.M. was hospitalized at the Psychiatric Institute of Washington ("PIW"). Upon her release from PIW, it was recommended that K.M. receive home educational services. While parent promptly provided a copy of Dr. Laurence Greenwood's recommendation to both the Charter School and District of Columbia Public Schools ("DCPS") requested that home services be provided, such services have not been provided to K.M. No further action was taken by either DCPS or IDEA PCS regarding K.M. In January 20065, parent retained the services of counsel and a written request for both evaluations and/or a meeting to review diagnosis made at PIW and discuss K.M.'s educational needs. An MDT meeting was held on or about March 6, 2006 at IDEA Public Charter School at which time the team agreed to conduct comprehensive evaluations of the student. To date, evaluations have not been conducted and/or a meeting convened to address KM's need for services.

07/19/2006  12:15 FAX  2027420096          James E Brown & Assoc.                    ☒ 004/008

Issues

1.  IDEA Public Charter School failed to evaluate within 120 days and/or identify K.M.
    as a disabled student in need of Special Education Services pursuant to its' "child find"
    obligation and DC Municipal Regulations

    The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446,
    at Sec. 101, § 612(3)(A), requires , the LEA to ensure that:

    > All children with disabilities residing in the State, including
    > children with disabilities who are homeless children or are wards
    > of the District and children with disabilities attending private
    > schools, regardless of the severity of their disabilities, and who
    > are in need of special education and related services, are
    > identified, located, and currently receiving needed special
    > education and related services.

    The public agency's child find obligation is an affirmative one.  Lincoln County Sch. Dist. _A
    _A., 39 IDELR 185 (O.Or. 2003).  Wise vs. Ohio Dept of Education, 80 F.3d. 177, 181 (6th
    Cir. 1996); Robertson County School System vs. King, 24 IDELR 1036 (6th Cir. 1996)
    (affirmative obligation on states and local school districts—not parents-to identify, locate and
    evaluate all children, including migrants and the homeless, with disabilities residing within
    the jurisdiction who have disabilities and are in need of special education or related services.)
    DCPS' unawareness of a student's possible disability and need for special education likewise
    will not relieve it of its obligation, if it should have suspected the student might have such a
    disability.  Reid vs. District of Columbia, 310 F. Supp 2d 137 (D.D.C. 2004); 30 DCMR Sec.
    3004.1(a) (child with a suspected disability to be referred to IEP team by school staff.)  The
    proposed regulation at 34 C.F.R. 300.325(a)(1)(2) restate the statutory requirement and make
    it applicable to all children who are "suspected of being a child with a disability under
    Section 300.7 and in need of special education, even though they are advancing from grade to
    grade."  The IDEIA's sweeping child find requirement applies to all children residing in the
    District of Columbia regardless of:

    (a)   The severity of the disability;
    (b)   Whether the child is in the custody or under the jurisdiction of any public
          or private agency or institution;
    (c)   Whether the child has never attended or will  never attend public school;
          and
    (d)   Whether the District of Columbia serves infants and toddlers under Part C
          or preschool children under Part B.

    DC Municipal Regulations place the obligation to conduct comprehensive evaluations of the
    student upon the LEA. ( 30 DCMR Sec 3005). In the case at hand,  the Charter school filed  lived up
    to their obligations to identify and/or evaluate K.M.  Charter School were on notice that K.M. was a
    student with a disability back in October 2005 and of the fact that she was diagnosed with major
    depression and that depression.  The parent timely informed the Charter School after K.M.'s release
    from PIW of the fact that the doctor was recommending services. When the Charter School failed to
    respond, the parent sent a letter to DCPS Superintendent Janey's Office advising him of the situation
    and requesting  assistance on or about November 8, 2005.

In addition, many of the teacher's admitted to having concerns about K.M.'s academic performance during the first advisory of the 05/06 school year.  One teacher reported that K.M. appeared to be distracted in class and often failed to turn in class work. In a written statement the teacher asserted that  " *Katrice seems to need more specialized attention. It would be in her best interest to get tested and receive services from special education*" Other teachers as well reported similar problems and recommended services. According to her English teacher, who taught K.M not only in 10th grade but also in 9th grade "*It is my recommendation that Katrice be examined for possible disabilities, academic or emotional that may be keeping her from accomplishing much of what she wishes to accomplish in school*".

A timely stipulatory team meeting was held on or about March 9, 2006 at which time the Charter school agreed to do comprehensive testing for K.M. To date, the only evaluator the parent has been contacted by was a social worker to whom the parent provided the requisite information for a social history evaluation to be completed though the parent has not received a copy of the written evaluation report. [2]

As a result of the failure to meet their obligations under "Child Find" K.M. has been denied a Free and Appropriate Public Education ("FAPE") and should be entitled to compensatory relief to help remediate the harm caused by Charter School' failure to identify and/or program for this student. See School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts, 471 U.S. 359 (1985); Diatta v. District of Columbia 319 F. Supp.2d 57, 65 D.D.C. 2004 Kerkam l, 862 F.2d 84 (D.C. Cir. 1991). KM has missed over ten (10) months of school and will likely be unable to graduate on time due to her disability. There is concern about whether or not an alternate placement is needed for this student.

## II. Issues presented.

- Whether IDEA Public Charter School denied K.M. a free and appropriate public education by failing to meet their child find obligation under either the IDEA and/or IDEIA and/or failed to comply with DC Municipal Regulations?

- Whether the Charter School, as the LEA, failed to evaluate and/or identify this student as eligible for special education services?

- Whether KM has been denied a Free And Appropriate Public Education ("FAPE")?

## III. To the extent known to you at this time, how can this problem be resolved?

WHEREFORE, the parent, by and through counsel, requests the following relief:

1. A finding that  Charter School denied K.M. FAPE by failing to identify and/or evaluate her in a timely manner;

2. That the Charter School shall  fund  the following evaluations  to include but not limited to: a) psycho-educational evaluation; b) clinical psychological; c) speech and language assessment; d) social history ; e) functional behavioral assessment; and e) classroom observation, as well as, any evaluations warranted based upon the findings of these such as  either a  psychiatric  evaluation and/or neuropsychological  evaluation and/or audiological evaluation and/or occupational therapy evaluation;

---

[2] Because the parent is concerned about evaluations being completed and eligibility and placement being discussed before the commencement of the 06/07 school year- she has paid out of pocket for an independent psychological evaluation.

07/19/2006 12:19 FAX  2027422098        James E Brown & Assoc                    ☒ 005/008

3.  That the Charter School reimburse the parent for any out of pocket expenses incurred in obtaining independent evaluations not completed within the 120 day time frame within 30 calendar days;

4.  That the Charter School shall convene an MDT meeting within ten (10) calendars days of completion of the assessments for the purpose of reviewing evaluations; revising the IEP; discussing compensatory education; discussing and determining placement;

5.  That the Charter School shall invite DCPS to participate in the meeting to be scheduled;

6.  That at the afore mentioned meeting, Charter School shall secure the participation of all necessary IEP team members to include but not limited to the appropriate personnel required to review assessments and develop an appropriate program for this child and discuss placement and compensatory education;

7.  A Notice of Placement to a suitable placement shall be issued by the public agency with 5 days (public school) or within 30 days (private school) with parent participation;

8.  That Charter agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

9.  All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

10. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter School and/or DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

11. In the event that the Charter School shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall have the authority to use self help without further notice to the Charter School/ DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the Charter School/DCPS can come into compliance and properly assess, program and/or participate;

12. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

13. 19.. The Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

14. That Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why they proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those

07/18/2006 12:19 FAX 2027422058          James E Brown & Assoc.                    ☒ 007/008

options were rejected; iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

15. That Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School/DCPS, for their desire to have a Resolution Session Meeting and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA.

16. That Charter School , within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the parent's request alleging any insufficiency of notice.

17. That the Charter School's failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time.

18. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

19. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a psychiatrist and/or clinical psychologist; 5) an occupational therapist; and/or 6) any person(s) who conducted any assessments on the student.

20. That the Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between Charter School and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

21. A finding that the parent is the prevailing party in this action.

07/19/2006 12:16 FAX  2027422089        James E Brown & Assoc.                    ☒ 008/008

G.    Accommodations and Assistance Needed:

   •   N/A

Dated this 19th day of July, 2006

Roberta L. Gambale, Esq.,
James E Brown & Associates PLLC
1220 L Street, N.W. Suite 700
Washington, DC 20005
202-742-2021
Counsel for the Parent

Mail, fax or deliver this complaint notices to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC  20002
Fax number: 202/442-5556

09/29/2006  15:44   2024425556          STUDENT HEARINGS OFF          PAGE  02/10

# District of Columbia Public Schools

*State Enforcement and Investigation Division*

## confidential

H. St. Clair. Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8ᵗʰ Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

**IMPARTIAL
DUE PROCESS HEARING**

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| K___ M___, student ) | **DECISION & ORDER** |
| Date of Birth: ___ ) | |
| Home School: Anacostia Sr. High School, ) | Request Date:  July 19, 2006 |
| Attending: IDEA Public Charter School, ) | Hearing Date:  September 22, 2006 |
| ) | |
| Petitioner ) | Held at: 825 North Capitol Street, NE |
| ) | Eighth Floor, Hearing Room 1 |
| versus ) | Washington, D.C. 20002 |
| ) | |
| **IDEA Public Charter School.** ) | |
| ) | |
| Respondent. ) | |

**Parent:**
Consuella S. Mc Kinley
4202 Fort Dupont Street, SE
Washington, D.C. 20020

**Counsel for the Parent/Student:**
Roberta L. Gambale, Esq.
**JAMES E. BROWN & Associates**
1220 L Street, NW    Suite 700
Washington, D.C. 20005

**Counsel for the IDEA Pub. Chr. School:**
William E. Houston, Esq.
**Dalton, Dalton & Houston, P.C.**
1008 Pendleton Street
Alexandria, Virginia 22314-1837

An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

i


PLAINTIFF'S
EXHIBIT
2

# INDEX of NAMES for K█████M█████

**Hearing Date:** September 22, 2006

Appearing on behalf of the parent/student:

    1. Consuella S. McKinley, mother *

Appearing on behalf of IDEA Public Charter School:

    1. Charlotte Blount-Lewis, Principal, IDEA Public Charter School **
    2. Portia Deal, Special Education Coordinator, IDEA Pub. Charter School **
    3. Kellie McCants, Ph.D., Psychologist, Mental Health Resources **

\* Gave testimony.
\*\* Gave testimony via telephone.

ii

# INTRODUCTION

On July 19, 2006, Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining the Integrated Design & Electronics Academy Public Charter School (IDEAPCS), its own LEA, denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of failure on the part of IDEAPCS to evaluate the student for special education services within 120 days and, for relief, requested independent clinical psychological, psycho-educational and speech/language evaluations, a social history and an MDT meeting.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 11:00 A.M., Friday, September 22, 2006, at DCPS Headquarters, 825 North Capitol Street, NE, 8th Floor, Hearing Room 1, Washington, D.C. 20002. The hearing convened as scheduled.

# JURISDICTION

The hearing convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

**ISSUES:**    1. **Did IDEAPCS fail to evaluate the student for special education services within the legally mandated 120-day timeline?**

2. **Was the Parent entitled to independent evaluations?**

# SUMMARY of the EVIDENCE and FINDINGS of FACT

By facsimile dated September 15, 2006, the parent disclosed 5 witnesses and 19 documents.

By facsimile dated September 15, 2006, IDEAPCS disclosed 13 witnesses and 24 documents.

The documents were placed into the record and are referenced/footnoted herein where relevant.

Counsel for the Parent represented that the 10th grade student attended IDEAPCS and on October 17, 2005 made an attempt at suicide that the resulted in hospitalized at the Psychiatric Institute of Washington (PIW). Counsel for the Parent further represented that upon release from PIW on October 24, 2006 the attending psychiatrist recommended home instruction, Parent Document No 14, and that the Parent made requests to IDEAPCS to provide home instruction that were denied; that the Parent attempted to enroll the student at Anacostia Senior High School, DCPS, but was refused admittance without the student first withdrawing from IDEAPCS. The student did not withdraw from IDEAPCS. Counsel for the Parent stated that a request to

evaluate the student for special educations services was made to IDEAPCS by her letter dated January 10, 2006, Parent Document No 12, and that an MDT/SEP meeting for the student convened on March 6, 2006, but that, to date, the student had not been evaluated. Counsel for the Parent further stated that the Parent had arranged for an independent psycho-educational evaluation of the student and requested reimbursement.

Counsel for IDEAPCS represented that evaluation of the student for special education services had been frustrated by the Parent's non-cooperation.

The Parent was ordered forward with the burden of proof.

The Parent testified that after the student was discharged from PIW, she requested home instruction from IDEAPCS and was informed that home instruction was not available from IDEAPCS; that she inquired of DCPS about home instruction and was informed that because the student was enrolled at IDEAPCS, its own LEA, DCPS would not provide any services. The Parent testified that IDEAPCS did provide homework packets but that the packets were inadequate without instruction; that the student remained at home as of date. The Parent testified that she had provided a copy of every medical evaluation/report in her possession to IDEAPCS, and that a social worker visited her home and completed the interview for a social history but that she had not heard anything about the social history since. The Parent testified that she and her advocate agreed to attend an MDT/SEP meeting for the student at IDEAPCS on February 1, 2006 only to be informed upon arrival that the meeting was scheduled for February 2, 2006. The Parent testified that she had not withdrawn the student from IDEAPCS, and that as late as January 13, 2006, Anacostia SHS had refused to enroll the student as non-attending because she had refused to withdraw the student from IDEAPCS. On cross-examination, the Parent testified that the Principal of IDEAPCS informed her by letter dated November 3, 2005, Parent Document No 15, that IDEAPCS could not provide home instruction; that by telephone on October 26, 2006, DCPS informed her that DCPS could not provide home instruction to non enrolled students. The Parent testified that no one called about evaluating the student other than for the social history, and that the PIW Discharge Summary, Parent Document No 16, was delivered to IDEAPCS during the March 6, 2006 SEP meeting. The Parent testified that she arranged independent evaluations of the student August 7-11, 2006.

The Parent rested.

Counsel for IDEAPCS moved for Directed Findings pointing out that the Complaint herein requested IDEAPCS to fund evaluations, which IDEAPCS agreed to do; that the Parent never requested independent evaluations at IDEAPCS expense. The motion was taken under advisement and IDEAPCS was ordered forward. Here, the IDEAPCS motion for Directed Findings was DENIED.

IDEAPCS moved forward.

Counsel for IDEAPCS represented that IDEAPCS attempted to work with the Parent; that by letter to the Parent dated January 10, 2006, IDEAPCS Document No 9, the Principal of IDEAPCS proposed a MDT/SEP meeting to discuss and determine whether the student should be evaluated for special education service. Counsel for IDEAPCS went on to represent that to schedule the MDT/SEP meeting, IDEAPCS sent letters on February 1, 2 & 13, 2006; that the MDT/SEP meeting convened on March 6, 2006 and concluded that the student should be evaluated for special education services.

The Principal of IDEAPCS testified via telephone that the student did not return to IDEAPCS after she was discharged from the hospital; that she informed the Parent that, as a

09/29/2006  15:44    2024425556              STUDENT HEARINGS OFF                    PAGE  05/10

public charter school, IDEAPCS could not provide home instruction to the student. The Principal testified that by letter to the Parent dated January 10, 2006 she proposed three dates - January 31, 2005, February 1st or 2nd, 2006 - to meet with the Parent to discuss special education services for the student, IDEAPCS Document No 9 and that she heard nothing in response. The Principal testified that on March 6, 2006, a MDT/SEP meeting convened at IDEAPCS and decided to evaluate the student for special education services; that the evaluation was not completed because the Parent did not cooperate with the Psychologist. On cross-examination, the Principal testified that she did not propose any dates for scheduling or have anything to do with scheduling evaluation of the student for special education services.

*At the conclusion of the Principal's testimony and at the request of the Parent, the hearing was briefly recessed. When the hearing resumed, it was discovered that the official recording machine had recorded conversations between IDEAPCS staff and their attorney. The hearing officer determined the conversation protected by the attorney-client privilege and ordered that in the event a copy of the recording or a transcript of this hearing is requested, the Student Hearing Office, DCPS, is to assure that the conversation recorded during the recess is redacted from any copy or transcript.*

The Special Education Coordinator (SEC), IDEAPCS, testified that she coordinated efforts to evaluate the student for special education services and, when referred to IDEAPCS Document No 8, testified that the January 6, 2006 teacher comments were assemble for the early intervention team (EIT) that was to consider whether the student should be evaluated for special education services; that the EIT decided that the student should be evaluated for special education services, and that she reported the EIT decision to the administration and waited for instruction to proceed with the evaluation. The SEC testified that it was her report that prompted the Principal to send the January 10, 2006 letter to the Parent proposing three dated for the MDT/SEP meeting that eventually convened on March 6, 2006. The SEC testified that she sent the request to evaluate along with the signed DCPS Consent to Evaluate Form to Mental Health Resources (MHR) and was informed by MHR that the DCPS consent form was unacceptable; that the consent and authorization for the evaluation would have to come from IDEAPCS. The SEC testified that when she brought the MHR requirement to the attention of the Principal, the Principal noted that an MDT/SEP meeting for the student had not been convened. Referred to IDEAPCS Notice to Parent of Intent to Evaluate, IDEAPCS Document No 12, the SEC testified that she sent the document to MHR as an attempt to satisfy HMR's requirement for parental consent but noted that the Parent had not signed the document; that the Parent would be asked to sign a consent to evaluate the student for special education services at the MDT/SEP meeting. The SEC testified that of the three dates - January 31, 2005, February 1st or 2nd, 2006 - offered for a MDT/SEP meeting in the Principal's January 10, 2006 letter to the Parent, she agreed over the telephone with the educational advocate that the meeting was to convene at 10:30 A.M., on February 2, 2006; the educational advocate and Parent appeared at IDEACPS for the MDT/SEP meeting on February 1, 2006. A written confirmation for the February 2, 2006 MDT/SEP meeting was not sent either to the educational advocate or to the Parent. The February 2, 2006 meeting convened during which subsequent dates were proposed, IDEAPCS Document No 16. The MDT/SEP meeting convened on March 6, 2006 and determined to evaluate the student for special educations services. The SEC testified that the social history was completed but could not give the date completed; it was not available at the hearing. On cross-examination, the SEC testified that she received Counsel for the Parent's January 10, 2006 letter requesting evaluation

of the student for special education services; that the Parent never refused to sign a consent for evaluation form and that she did not attempt to have the Parent sign a consent for evaluation form other than during the March 6, 2006 MDT/SEP meeting. On redirect, the SEC testified that a student is not evaluated for special education services at just a request from a teacher or a parent; that, if during an MDT/SEP meeting the MDT decided against evaluation and the parent still wanted evaluation, the student would be evaluated.

The Psychologist, a consultant to MHR since July 2003, testified that the student was referred to her for evaluation for special education services either late January or early February 2006; that when she planned to evaluate the student in February, the Principal and SEC informed her that the Parent had to do something before the evaluation could proceed. The Psychologist testified that in an attempt to schedule an evaluation of the student she left a voice-mail with the educational advocate on April 24, 2006 that was not answered; that her next attempt to schedule an evaluation was on June 21, 2006 when she left a voice-mail with the Parent at work. The Parent replied by leaving a message at MHR with telephone numbers to contact her. The Psychologist testified that she left voice mail for the Parent at the end of June stating that she would be at IDEAPCS on July 11, 2006 and available to test the student. The Psychologist did not hear back from the Parent and left another voice-mail for the Parent on July 20, 2006; that the Parent replied with two return messages. The Psychologist testified that she left a voice-mail for the Parent on July 24, 2006 indicating July 25 & 27, 2006 as possible dates to evaluate the student and that she did not hear back from the Parent. On cross-examination, the Psychologist testified that she did not speak directly to either the educational advocate or the Parent and that she did not send anything in writing to anyone concerning evaluating the student for special education services.

    IDEAPCS rested.
    Argument.

In consideration of the testimony, documents and arguments herein, the hearing officer found the following facts:

    1.  The student was psychiatrically hospitalized between October 17 - 24, 2006 and did not return to IDEAPCS upon discharge. The attending physician recommended home instruction for the student.

    2.  The parent requested IDEAPCS to provide home instruction to the student, and IDEAPCS replied that they could not provide home instruction. To secure home instruction, the Parent attempted to enroll the student at Anacostia SHS, DCPS, as non-attending, but Anacostia SHS refused to enroll the student until the student was redrawn from IDEAPCS. The Parent refused to withdraw the student from IDEAPCS.

    3.  The Counsel for the Parent requested IDEAPCS to evaluate the student for special education service by letter dated January 10, 2006, Parent Document No 12. The letter was accompanied by a DCPS Consent for Evaluation Form-Initial or Reevaluation- signed and dated by the Parent, December 16, 2005.

09/29/2006  15:44    2024425556              STUDENT HEARINGS OFF                    PAGE  03/10

4.  On March 6. 2006 IDEAPCS convened a MDT/SEP meeting for the student during which it was determined the student should be evaluated for special education services. In this matter. a MDT/SEP meeting was unnecessary. The evaluation had not been completed at the time of the hearing.

5.  IDEAPCS and/or MHR did not attempt to evaluate the student for special education services until April 24, 2006 and. thereafter, not before June 21, 2006.

# DISCUSSION and CONCLUSIONS OF LAW

## LEAs are required to make FAPE available to all children with disabilities within the jurisdiction of the District of Columbia.

*IDEIA 2004* requires all LEAs in the District of Columbia to evaluate every child suspected of having a disability within the jurisdiction of the District of Columbia, ages 3 through 21. determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement. Further, the evaluation and placement must be completed within 120 days of the referral for evaluation for special education services.

In this matter, the student was referred for evaluation for special education services by the January 10, 2006 letter from Counsel for the Parent to IDEAPCS stating that the Parent wanted the student evaluated; the 120-day timeline began January 10, 2006. If the parental consent was defective, the Parent should have been contacted directly and requested to sign appropriate consent forms.

An MDT meeting is not required to proceed with an evaluation of a student if a parent has made clear the decision to evaluate a student for special education services.

IDEAPCS had a process in place to evaluate students for special education services. Their process began on January 6, 2006 and entailed a meeting by the EIT to consider available documentation on the student. The EIT decided that the student should be evaluated for special education services and informed the Principal. The Principal authorized an MDT/SEP meeting to discuss and determined whether or not the student should be evaluated; the meeting convened on March 6, 2006. But for the Parent having made clear by her attorney's January 10, 2006 letter to IDEAPCS her decision to have the student evaluated for special education, IDEAPCS's process would have been appropriate. **IDEAPCS's process in this matter was inappropriate and amounted to a Denial of FAPE because it was clear that the Parent had exercised her right to have the student evaluated for special education services on January 10, 2006 notwithstanding any possible MDT decision.**

Evaluation of the student for special education services and placement should have been completed by May 10, 2006. The Parent is entitled to independent evaluations at IDEAPCS expense.

In consideration of the foregoing, the hearing officer made the following

09/29/2006  15:44    2024425555          STUDENT HEARINGS OFF                    PAGE  09/10

# ORDER

1.  According to Superintendent's Directive 530.6, IDEAPCS will fund independent clinical psychological, psycho-educational and speech/language evaluations of the student. In event IDEAPCS does not deliver a copy of a current social history of the student to Counsel for the Parent within 10 days hereof, according to the said directive, IDEAPCS will also fund an independent social history of the student. Within 15 schooldays of receipt of the last evaluation report, IDEAPCS will convene an MDT/Eligibility/IEP/Placement meeting during which evaluations will be reviewed and the student's eligibility for special education services discussed and determined. If the student is determined ineligible, a Notice of Ineligibility will be issued at the said meeting. If the student is determine eligible, an IEP will be completed and a Notice of Placement issued within 5 schooldays of the said meeting if a DCPS placement is recommended; if a non-public placement is recommended, a Notice of Placement will be issued within 30 days of the said meeting.

2.  IDEAPCS shall invite DCPS to attend the said MDT/Eligibility/IEP/Placement meeting.

3.  If the student is determined eligible for special education services at the said MDT/Eligibility/IEP/Placement meeting, the form, amount and delivery of compensatory education, if any, will be discussed and determined. For disputes under this paragraph, either party may request a hearing.

4.  For the said MDT/Eligibility/IEP/Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Parent, the deadline herein will be extended one day. In the event of independent evaluation(s) sent to IDEAPCS, Counsel for the Parent will verify by telephone the receipt of the evaluation report copy(ies) by the IDEAPCS person

addressee. For disputes under this paragraph,
documentation of the parties will be relied upon to
determine the good faith of each party.

This is **THE FINAL ADMINISTRATIVE DECISION.** Appeal can be made to a court of
competent jurisdiction within ninety (90) days of the issue date of this decision.

Date: _Sept. 29, 2006_

_____
H. St. Clair, Esq., Hearing Officer

Issued: _9/29/06_
_____
Student Hearing Office, DCPS

7 of 7 pages

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

I (a) PLAINTIFFS

INTEGRATED DESIGN AND ELECTRONICS ACADEMY PUBLIC CHARTER SCHOOL

DEFENDANTS

CONSUELLA S. MCKINLEY as next friend mother of the minor child, M.K.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___DC___
(EXCEPT IN U.S. PLAINTIFF CASES)   11001

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___
NOTE: IN LAND CONDEMNATION

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

William E. Houston, Esq.
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300(O)

CASE NUMBER  1:06CV01916

JUDGE: Emmet G. Sullivan

DECK TYPE: Civil Rights (non-employment)

DATE STAMP: 11/09/2006

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CI1**

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)      OR      ○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Individuals with Disabilities Education Improvement Act , 20 U.S.C.§§ 1400 et seq and  28 U.S.C.§§ 2201 and 2202.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ [_____]    Check YES only if demanded in complaint    JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE  November 9, 2006    SIGNATURE OF ATTORNEY OF RECORD  _[signature]_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C.,  and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

JTC