**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INTEGRATED DESIGN AND ELECTRONICS** : | |
| **ACADEMY PUBLIC CHARTER SCHOOL** : | |
| : | |
| **Plaintiff** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 06-1916 (EGS)** |
| : | |
| **CONSUELLA S. MCKINLEY** : | |
| **as next friend mother of the minor child,** : | |
| **M.K.** : | |
| **and** : | |
| **M.K., individually** : | |
| : | |
| **Defendants** : | |
| _____ : | |

<u>**NOTICE OF FILING**</u>

Plaintiff hereby submits the administrative record in the above captioned matter. A

courtesy copy will be mailed to Judge Sullivan's Chambers and Defendant's counsel.  Also

included in this filing is a transcript of the due process hearing.

Respectfully submitted,

_____/s/_____
Paul S. Dalton [439118]
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on this 1st day of August, 2007, the foregoing document was filed electronically and a copy was mailed first class postage paid to

Mr. Tilman Gerald
1220 L Street, N.W.
Suite 700
Washington, DC 20005.


_____/s/_____
Paul S. Dalton, Esq.
Counsel for Plaintiff

# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *STUDENT HEARING OFFICE*
### SPECIAL EDUCATION

In the Matter RE:      M██████ K█████ **vs. IDEA PCS**

Case Information:      Hearing Dates: **09/22/2006**
Held at: **District of Columbia Public Schools Headquarters**
**825 N. Capitol Street, N.E.**
**Washington, D.C. 20002**
Student Identification Number:  9203090
Student's Date of Birth:  **04/17/1990**
Attending School: **Anacostia SHS**
Managing School: Electronics Academy PCS
Hearing Request Date(s): **07/19/2006**

## CERTIFICATION OF RECORD

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting  of all letters, pleadings, orders,

exhibits and depositions.

I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Thursday, July 12, 2007.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

1

# District of Columbia Public Schools

## *State Enforcement and Investigation Division*
## *__confidential__*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE  8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

| | | |
|---|---|---|
| **In the Matter of** | ) | **IMPARTIAL** |
| | ) | **DUE PROCESS HEARING** |
| K_____ M_____, student | ) | |
| Date of Birth:  April 15, 1990 | ) | |
| Home School: Anacostia Sr. High School, | ) | **DECISION & ORDER** |
| Attending: IDEA Public Charter School, | ) | |
| | ) | |
| Petitioner | ) | Request Date:  July 19, 2006 |
| | ) | Hearing Date:  September 22, 2006 |
| versus | ) | |
| | ) | Held at: 825 North Capitol Street, NE |
| **IDEA Public Charter School,** | ) | Eighth Floor, Hearing Room 1 |
| | ) | Washington, D.C. 20002 |
| Respondent. | ) | |

**Parent:**  

Consuella S. Mc Kinley
4202 Fort Dupont Street, SE
Washington, D.C. 20020

**Counsel for the Parent/Student:**  

Roberta  L. Gambale, Esq.
**JAMES E. BROWN & Associates**
1220  **L**  Street, NW    Suite 700
Washington, D.C. 20005

**Counsel for the IDEA Pub. Chr. School:**  

William E. Houston, Esq.
**Dalton, Dalton & Houston, P.C.**
1008 Pendleton Street
Alexandria, Virginia 22314-1837

An  INDEX of NAMES  is attached hereto for the benefit of the parties.  The index will permit the parties to identify specific witnesses and other relevant witnesses.  The index will be detached before release of this  DECISION & ORDER  as a public record.

i

**<u>INDEX of NAMES</u> for** K████ M████

**Hearing Date:**  September 22, 2006

Appearing on behalf of the parent/student:

    1. Consuella S. McKinley, mother  *

Appearing on behalf of IDEA Public Charter School:

    1. Charlotte Blount-Lewis, Principal, IDEA Public Charter School  **
    2. Portia Deal, Special Education Coordinator, IDEA Pub. Charter School  **
    3. Kellie McCants, Ph.D., Psychologist, Mental Health Resources  **

  * Gave testimony.
 ** Gave testimony via telephone.

## INTRODUCTION

On July 19, 2006, Counsel for the Parent filed the herein Complaint on behalf of the parent and student complaining the Integrated Design & Electronics Academy Public Charter School (IDEAPCS), its own LEA, denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parent complained of failure on the part of IDEAPCS to evaluate the student for special education services within 120 days and, for relief, requested independent clinical psychological, psycho-educational and speech/language evaluations, a social history and an MDT meeting.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 11:00 A.M., Friday, September 22, 2006, at DCPS Headquarters, 825 North Capitol Street, NE, 8th Floor, Hearing Room 1, Washington, D.C. 20002. The hearing convened as scheduled.

## JURISDICTION

The hearing convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004 and Title V of the District of Columbia Municipal Regulations.

**ISSUES:**    **1. Did IDEAPCS fail to evaluate the student for special education services within the legally mandated 120-day timeline?**

   **2. Was the Parent entitled to independent evaluations?**

## SUMMARY of the EVIDENCE and FINDINGS of FACT

By facsimile dated September 15, 2006, the parent disclosed 5 witnesses and 19 documents.

By facsimile dated September 15, 2006, IDEAPCS disclosed 13 witnesses and 24 documents.

The documents were placed into the record and are referenced/footnoted herein where relevant.

Counsel for the Parent represented that the 10th grade student attended IDEAPCS and on October 17, 2005 made an attempt at suicide that resulted in hospitalized at the Psychiatric Institute of Washington (PIW). Counsel for the Parent further represented that upon release from PIW on October 24, 2006 the attending psychiatrist recommended home instruction, Parent Document No 14, and that the Parent made requests to IDEAPCS to provide home instruction that were denied; that the Parent attempted to enroll the student at Anacostia Senior High School, DCPS, but was refused admittance without the student first withdrawing from IDEAPCS. The student did not withdraw from IDEAPCS. Counsel for the Parent stated that a request to

1 of 7 pages

4

evaluate the student for special educations services was made to IDEAPCS by her letter dated January 10, 2006, Parent Document No 12, and that an MDT/SEP meeting for the student convened on March 6, 2006, but that, to date, the student had not been evaluated. Counsel for the Parent further stated that the Parent had arranged for an independent psycho-educational evaluation of the student and requested reimbursement.

Counsel for IDEAPCS represented that evaluation of the student for special education services had been frustrated by the Parent's non-cooperation.

The Parent was ordered forward with the burden of proof.

The Parent testified that after the student was discharged from PIW, she requested home instruction from IDEAPCS and was informed that home instruction was not available from IDEAPCS; that she inquired of DCPS about home instruction and was informed that because the student was enrolled at IDEAPCS, its own LEA, DCPS would not provide any services. The Parent testified that IDEAPCS did provide homework packets but that the packets were inadequate without instruction; that the student remained at home as of date. The Parent testified that she had provided a copy of every medical evaluation/report in her possession to IDEAPCS, and that a social worker visited her home and completed the interview for a social history but that she had not heard anything about the social history since. The Parent testified that she and her advocate agreed to attend an MDT/SEP meeting for the student at IDEAPCS on February 1, 2006 only to be informed upon arrival that the meeting was scheduled for February 2, 2006. The Parent testified that she had not withdrawn the student from IDEAPCS, and that as late as January 13, 2006, Anacostia SHS had refused to enroll the student as non-attending because she had refused to withdraw the student from IDEAPCS. On cross-examination, the Parent testified that the Principal of IDEAPCS informed her by letter dated November 3, 2005, Parent Document No 15, that IDEAPCS could not provide home instruction; that by telephone on October 26, 2006, DCPS informed her that DCPS could not provide home instruction to non enrolled students. The Parent testified that no one called about evaluating the student other than for the social history, and that the PIW Discharge Summary, Parent Document No 16, was delivered to IDEAPCS during the March 6, 2006 SEP meeting. The Parent testified that she arranged independent evaluations of the student August 7-11, 2006.

The Parent rested.

Counsel for IDEAPCS moved for Directed Findings pointing out that the Complaint herein requested IDEAPCS to fund evaluations, which IDEAPCS agreed to do; that the Parent never requested independent evaluations at IDEAPCS expense. The motion was taken under advisement and IDEAPCS was ordered forward. Here, the IDEAPCS motion for Directed Findings was DENIED.

IDEAPCS moved forward.

Counsel for IDEAPCS represented that IDEAPCS attempted to work with the Parent; that by letter to the Parent dated January 10, 2006, IDEAPCS Document No 9, the Principal of IDEAPCS proposed a MDT/SEP meeting to discuss and determine whether the student should be evaluated for special education service. Counsel for IDEAPCS went on to represent that to schedule the MDT/SEP meeting, IDEAPCS sent letters on February 1, 2 & 13, 2006; that the MDT/SEP meeting convened on March 6, 2006 and concluded that the student should be evaluated for special education services.

The Principal of IDEAPCS testified via telephone that the student did not return to IDEAPCS after she was discharged from the hospital; that she informed the Parent that, as a

public charter school, IDEAPCS could not provide home instruction to the student. The Principal testified that by letter to the Parent dated January 10, 2006 she proposed three dates - January 31, 2005, February 1st or 2nd, 2006 - to meet with the Parent to discuss special education services for the student, IDEAPCS Document No 9 and that she heard nothing in response. The Principal testified that on March 6, 2006, a MDT/SEP meeting convened at IDEAPCS and decided to evaluate the student for special education services; that the evaluation was not completed because the Parent did not cooperate with the Psychologist. On cross-examination, the Principal testified that she did not propose any dates for scheduling or have anything to do with scheduling evaluation of the student for special education services.

 *At the conclusion of the Principal's testimony and at the request of the Parent, the hearing was briefly recessed. When the hearing resumed, it was discovered that the official recording machine had recorded conversations between IDEAPCS staff and their attorney. The hearing officer determined the conversation protected by the attorney-client privilege and ordered that in the event a copy of the recording or a transcript of this hearing is requested, the Student Hearing Office, DCPS, is to assure that the conversation recorded during the recess is redacted from any copy or transcript.*

The Special Education Coordinator (SEC), IDEAPCS, testified that she coordinated efforts to evaluate the student for special education services and, when referred to IDEAPCS Document No 8, testified that the January 6, 2006 teacher comments were assemble for the early intervention team (EIT) that was to consider whether the student should be evaluated for special education services; that the EIT decided that the student should be evaluated for special education services, and that she reported the EIT decision to the administration and waited for instruction to proceed with the evaluation. The SEC testified that it was her report that prompted the Principal to send the January 10, 2006 letter to the Parent proposing three dated for the MDT/SEP meeting that eventually convened on March 6, 2006. The SEC testified that she sent the request to evaluate along with the signed DCPS Consent to Evaluate Form to Mental Health Resources (MHR) and was informed by MHR that the DCPS consent form was unacceptable; that the consent and authorization for the evaluation would have to come from IDEAPCS. The SEC testified that when she brought the MHR requirement to the attention of the Principal, the Principal noted that an MDT/SEP meeting for the student had not been convened. Referred to IDEAPCS Notice to Parent of Intent to Evaluate, IDEAPCS Document No 12, the SEC testified that she sent the document to MHR as an attempt to satisfy HMR's requirement for parental consent but noted that the Parent had not signed the document; that the Parent would be asked to sign a consent to evaluate the student for special education services at the MDT/SEP meeting. The SEC testified that of the three dates - January 31, 2005, February 1st or 2nd, 2006 - offered for a MDT/SEP meeting in the Principal's January 10, 2006 letter to the Parent, she agreed over the telephone with the educational advocate that the meeting was to convene at 10:30 A.M., on February 2, 2006; the educational advocate and Parent appeared at IDEACPS for the MDT/SEP meeting on February 1, 2006. A written confirmation for the February 2, 2006 MDT/SEP meeting was not sent either to the educational advocate or to the Parent. The February 2, 2006 meeting convened during which subsequent dates were proposed, IDEAPCS Document No 16. The MDT/SEP meeting convened on March 6, 2006 and determined to evaluate the student for special educations services. The SEC testified that the social history was completed but could not give the date completed; it was not available at the hearing. On cross-examination, the SEC testified that she received Counsel for the Parent's January 10, 2006 letter requesting evaluation

of the student for special education services; that the Parent never refused to sign a consent for evaluation form and that she did not attempt to have the Parent sign a consent for evaluation form other than during the March 6, 2006 MDT/SEP meeting.  On redirect, the SEC testified that a student is not evaluated for special education services at just a request from a teacher or a parent; that, if during an MDT/SEP meeting the MDT decided against evaluation and the parent still wanted evaluation, the student would be evaluated.

The Psychologist, a consultant to MHR since July 2003, testified that the student was referred to her for evaluation for special education services either late January or early February 2006; that when she planned to evaluate the student in February, the Principal and SEC informed her that the Parent had to do something before the evaluation could proceed.  The Psychologist testified that in an attempt to schedule an evaluation of the student she left a voice-mail with the educational advocate on April 24, 2006 that was not answered; that her next attempt to schedule an evaluation was on June 21, 2006 when she left a voice-mail with the Parent at work.  The Parent replied by leaving a message at MHR with telephone numbers to contact her.  The Psychologist testified that she left voice mail for the Parent at the end of June stating that she would be at IDEAPCS on July 11, 2006 and available to test the student.  The Psychologist did not hear back from the Parent and left another voice-mail for the Parent on July 20, 2006; that the Parent replied with two return messages.  The Psychologist testified that she left a voice-mail for the Parent on July 24, 2006 indicating July 25 & 27, 2006 as possible dates to evaluate the student and that she did not hear back from the Parent.  On cross-examination, the Psychologist testified that she did not speak directly to either the educational advocate or the Parent and that she did not send anything in writing to anyone concerning evaluating the student for special education services.

IDEAPCS rested.

Argument.

In consideration of the testimony, documents and arguments herein, the hearing officer found the following facts:

1.  The student was psychiatrically hospitalized between October 17 - 24, 2006 and did not return to IDEAPCS upon discharge.  The attending physician recommended home instruction for the student.

2.  The parent requested IDEAPCS to provide home instruction to the student, and IDEAPCS replied that they could not provide home instruction.  To secure home instruction, the Parent attempted to enroll the student at Anacostia SHS, DCPS, as non-attending, but Anacostia SHS refused to enroll the student until the student was redrawn from IDEAPCS.  The Parent refused to withdraw the student from IDEAPCS.

3.  The Counsel for the Parent requested IDEAPCS to evaluate the student for special education service by letter dated January 10, 2006, Parent Document No 12.  The letter was accompanied by a DCPS Consent for Evaluation Form- Initial or Reevaluation- signed and dated by the Parent, December 16, 2005.

4 of 7 pages

4. On March 6, 2006 IDEAPCS convened a MDT/SEP meeting for the student during which it was determined the student should be evaluated for special education services. In this matter, a MDT/SEP meeting was unnecessary. The evaluation had not been completed at the time of the hearing.

5. IDEAPCS and/or MHR did not attempt to evaluate the student for special education services until April 24, 2006 and, thereafter, not before June 21, 2006.

# DISCUSSION and CONCLUSIONS OF LAW

### LEAs are required to make FAPE available to all children with disabilities within the jurisdiction of the District of Columbia.

*IDEIA 2004* requires all LEAs in the District of Columbia to evaluate every child suspected of having a disability within the jurisdiction of the District of Columbia, ages 3 through 21, determine eligibility for special education services and, if eligible, provide same through an appropriate IEP and Placement. Further, the evaluation and placement must be completed within 120 days of the referral for evaluation for special education services.

In this matter, the student was referred for evaluation for special education services by the January 10, 2006 letter from Counsel for the Parent to IDEAPCS stating that the Parent wanted the student evaluated; the 120-day timeline began January 10, 2006. If the parental consent was defective, the Parent should have been contacted directly and requested to sign appropriate consent forms.

An MDT meeting is not required to proceed with an evaluation of a student if a parent has made clear the decision to evaluate a student for special education services.

IDEAPCS had a process in place to evaluate students for special education services. Their process began on January 6, 2006 and entailed a meeting by the EIT to consider available documentation on the student. The EIT decided that the student should be evaluated for special education services and informed the Principal. The Principal authorized an MDT/SEP meeting to discuss and determined whether or not the student should be evaluated; the meeting convened on March 6, 2006. But for the Parent having made clear by her attorney's January 10, 2006 letter to IDEAPCS her decision to have the student evaluated for special education, IDEAPCS's process would have been appropriate. **IDEAPCS's process in this matter was inappropriate and amounted to a Denial of FAPE because it was clear that the Parent had exercised her right to have the student evaluated for special education services on January 10, 2006 notwithstanding any possible MDT decision.**

Evaluation of the student for special education services and placement should have been completed by May 10, 2006. The Parent is entitled to independent evaluations at IDEAPCS expense.

In consideration of the foregoing, the hearing officer made the following

# ORDER

1. According to Superintendent's Directive 530.6, IDEAPCS will fund independent clinical psychological, psycho-educational and speech/language evaluations of the student. In event IDEAPCS does not deliver a copy of a current social history of the student to Counsel for the Parent within 10 days hereof, according to the said directive, IDEAPCS will also fund an independent social history of the student. Within 15 schooldays of receipt of the last evaluation report, IDEAPCS will convene an MDT/Eligibility/IEP/Placement meeting during which evaluations will be reviewed and the student's eligibility for special education services discussed and determined. If the student is determined ineligible, a Notice of Ineligibility will be issued at the said meeting. If the student is determine eligible, an IEP will be completed and a Notice of Placement issued within 5 schooldays of the said meeting if a DCPS placement is recommended; if a non-public placement is recommended, a Notice of Placement will be issued within 30 days of the said meeting.

2. IDEAPCS shall invite DCPS to attend the said MDT/Eligibility/IEP/Placement meeting.

3. If the student is determined eligible for special education services at the said MDT/Eligibility/IEP/Placement meeting, the form, amount and delivery of compensatory education, if any, will be discussed and determined. For disputes under this paragraph, either party may request a hearing.

4. For the said MDT/Eligibility/IEP/Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Parent, the deadline herein will be extended one day. In the event of independent evaluation(s) sent to IDEAPCS, Counsel for the Parent will verify by telephone the receipt of the evaluation report copy(ies) by the IDEAPCS person

6 of 7 pages

9

addressee. For disputes under this paragraph,
documentation of the parties will be relied upon to
determine the good faith of each party.


**This is THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.**


_____  Date: _____
H. St. Clair, Esq., Hearing Officer                9-29-06


Issued: _____
            Student Hearing Office, DCPS


7 of 7 pages

## ATTENDANCE SHEET

| PRINTED NAME | ON BEHALF OF DCPS OR STUDENT | TITLE |
|---|---|---|
| **STUDENT'S NAME:** | ▓▓▓ | ▓▓▓ |
| **HEARING DATE:** | Sept 22, 2006 | |
| Roberta Gambale | Student | Parent's Attorney |
| Consuella S. McKinley | Parent | mother |
| William Houston | IDEA PCS | |
| Portia Deal | IDEA PCS | SPED Coord |
| Kerrie McCants | IDEA PCS | Psychologist, / By Phone |
| Charlotte Blount | IDEA PCS | Principal / By Phone |
| Charlotte Blount Lewis | | |
| | | |
| Kallie McCants | Mental Health Resources | |

_____
Impartial Hearing Officer

11

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fern... |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. ... |
| Roberta Gambale | Suite 700 | John A. Str... |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karra... |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |
| --------------------------------- | e-mail: Admin@Jeblaw.biz | ------------------------- -------- |

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

September 15, 2006

**Hand Delivery**
Rhondalyn Primes, Esq.
Office of General Counsel
District of Columbia Public Schools
825 North Capitol Street, NE, 9th Floor
Washington, DC 20002

Re:  Five-Day Disclosure for K████ M██████ DOB: 4/15/90

Dear Ms. Primes:

For the upcoming hearing scheduled for **September 22, 2006 at 11:00 a.m.** or any subsequent hearing regarding this student and pursuant to 34 C.F.R. 300.509 (a)(3); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35872 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3031.2 (2003), and in addition to any documents and witnesses that the District of Columbia Public Schools ("DCPS") may disclose, the parent may rely on the following documents and witnesses:

## Witnesses

1.  Consuela Mckinley, Mother;
2.  K████ M██████, Student;
3.  Corey Hamilton, Educational Advocate, James Brown & Associates, PLLC; or designee;
4.  Joy Berry, Therapist or designee;
5.  Yamileth Amaya, Paralegal or designee.



12

Page Two
5-Day Disclosure for K██████ M████████
September 15, 2006

### Documents

| | |
|---|---|
| KM-1 | DCPS Hearing Date Notice 8/22/06; |
| KM-2 | Due Process Complaint 7/19/06; |
| KM-3 | Scheduling Memorandum from DCPS 7/19/06; |
| KM-4 | Hearing Officer's Determination 7/17/06; |
| KM-5 | Record request to IDEA from attorney 1/18/06; |
| KM-6 | Correspondence to IDEA from advocate 1/10/06 & 2/15/06; |
| KM-7 | Correspondence to DCPS from advocate 3/7/06; |
| KM-8 | Certificate of No Records 2/3/06; |
| KM-9 | E-mail correspondence to teacher 12/6/05; |
| KM-10 | District Residency Verification Form & Home Language Survey; |
| KM-11 | Correspondence to parent from Integrated Design & Electronic Academy PCS 1/10/06; |
| KM-12 | Request for Initial Evaluation and records to IDEA PCS & DCPS 1/10/06; |
| KM-13 | Correspondence to Superintendent Janey from parent 11/8.05; |
| KM-14 | Correspondence from PIW regarding hospitalization 10/30/05; |
| KM-15 | Correspondence to parent from IDEA, PCS 11/3/05; |
| KM-16 | Discharge Summary Evaluation 10/24/05; |
| KM-17 | IEP Meeting Notes 3/6/06; |
| KM-18 | Notice to parent of Intent to evaluate/re-evaluate 3/6/06; |
| KM-19 | Statement from student's teachers regarding need for testing. |

**\* Witnesses may testify via telephone**
Parent reserves the right to rely on any documents presented by DCPS that the parent deems relevant in this case.

Additionally, parent reserves the right to introduce any and all witnesses and/or documents for the purpose of impeachment and rebuttal.

If you should have any questions or wish to discuss any aspect of this case before the hearing, please contact me at (202) 742-2000.

Sincerely,

Roberta Gambale, Esq.

Attachments
cc:  Sharon Newsome, Hearing Coordinator

# Exhibit 1



# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO: Parent (or Representative): **R. GAMBALE / W. HOUSTON** Fax No.: **742-2098 / (703) 739-2323**

LEA Legal Counsel: **R. PRIMES**

RE: M█████ K█████ and (LEA) DOB: **4/17/90**
Student's Name

FROM: **SHARON NEWSOME**
Special Education Student Hearing Office Coordinator

DATE SENT: **8/22/06**

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on **7/19/06**. Please be advised that the hearing has been scheduled for:

DATE: **9/22/06**

TIME: **11:00 AM**

AT: 825 North Capitol Street, NE, Washington, DC
8th Floor

ASSIGNED HEARING OFFICER: _____

[✓] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request in *writing on the attached form* to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[ ] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

15

# Exhibit 2

*State Edu    ion Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



### *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. <u>**A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals wit**</u>

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u>    Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting.    You will be contacted by a representative of the Local Educational Agency to schedule the meeting.    **The Student Hearing Office does NOT schedule resolution meetings**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

**A.**    <u>**INFORMATION ABOUT THE STUDENT:**</u>

Name of the Student: K████M██████    Date of Birth: <u>**April 17, 1990**</u>
Address:  **4202 Fort Dupont St. SE Washington, DC 20020**
Home School:  **IDEA Public Charter School Center**
Present School of Attendance: <u>**Same** [1]</u>

      Is this a charter school? <u>Yes</u>      (If yes, you must also provide a copy of this notice to the charter school principal or director)

---

[1] Pursuant to the recommendations of her doctors, K.M.  has not yet returned to school since her release from the hospital.

1

Parent/Guardian of the Student: Ṇ     **Consuela McKinley**
Address (if different from the student's above): same

**B.**     **Legal Representative/Attorney:**

Name: **Roberta L. Gambale, Esq. ( James Brown and Associates, PLLC)**
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone: (w) (202)742-2000 (ext. 2021) (Fax) (202) 742-2098   (e-mail) Rgambale@jeblaw.biz
Will attorney / legal representative attend the resolution session?     **X** Yes          [ ] No

**C.**     **Complaint Made Against (check all that apply):**

X  IDEA Public Charter School

**D.**     **Resolution Session Meeting Between Parent/Representative and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note:  All parties must agree to waive the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for  this process.

**E.**     **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent.  Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing.  Please check all that apply:

**I am requesting an administrative due process hearing only.**

**F.**     **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

**I.  Nature of the problem.**

**Background**

K⬛⬛⬛ M⬛⬛⬛⬛ hereinafter "K.M.") DOB: 4/15/90, is  a 10th grade student at IDEA Public Charter School.  In October 2005, after a suicide attempt at the school, K.M. was hospitalized at the Psychiatric Institute of Washington ("PIW").  Upon her release from PIW, it was recommended that K.M. receive home educational services.  While parent promptly provided a copy of Dr. Laurence Greenwood's recommendation to both the Charter School and District of Columbia Public Schools ("DCPS") requested that home services be provided, such services have not been provided to K.M. No further action was taken by either DCPS or IDEA PCS regarding K.M.  In January  20065, parent retained the services of counsel and a written request for both evaluations and/or a meeting to review diagnosis made at PIW and discuss K.M.'s educational needs.  An MDT meeting was held on or about March 6, 2006 at IDEA Public Charter School at which time the team agreed to conduct comprehensive evaluations of the student. To date, evaluations have not been conducted and/or a meeting convened to address KM's need for services.

2

SEID DPCN Rev'd. 7/01/05

**Issues**

1. **IDEA Public Charter School failed to evaluate within 120 days and/or identify K..M. as a disabled student in need of Special Education Services pursuant to its' "child find" obligation and DC Municipal Regulations**

The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, at Sec. 101, § 612(3)(A), requires , the LEA to ensure that:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the District and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and currently receiving needed special education and related services.

The public agency's child find obligation is an affirmative one. Lincoln County Sch. Dist. .A .A., 39 IDELR 185 (D.Or. 2003). Wise vs. Ohio Dept of Education, 80 F.3d. 177, 181 (6th Cir. 1996); Robertson County School System vs. King, 24 IDELR 1036 (6th Cir. 1996) (affirmative obligation on states and local school districts—not parents-to identify, locate and evaluate all children, including migrants and the homeless, with disabilities residing within the jurisdiction who have disabilities and are in need of special education or related services.) DCPS' unawareness of a student's possible disability and need for special education likewise will not relieve it of its obligation, if it should have suspected the student might have such a disability. Reid vs. District of Columbia, 310 F. Supp 2d 137 (D.D.C. 2004); 30 DCMR Sec. 3004.1(a) (child with a suspected disability to be referred to IEP team by school staff.) The proposed regulation at 34 C.F.R. 300.325(a)(1)(2) restate the statutory requirement and make it applicable to all children who are "suspected of being a child with a disability under Section 300.7 and in need of special education, even though they are advancing from grade to grade." The IDEIA's sweeping child find requirement applies to all children residing in the District of Columbia regardless of:

(a)     The severity of the disability;

(b)     Whether the child is in the custody or under the jurisdiction of any public or private agency or institution;

(c)     Whether the child has never attended or will never attend public school; and

(d)     Whether the District of Columbia serves infants and toddlers under Part C or preschool children under Part B.

DC Municipal Regulations place the obligation to conduct comprehensive evaluations of the student upon the LEA. ( 30 DCMR Sec 3005). In the case at hand, the Charter school filed lived up to their obligations to identify and/or evaluate K.M. Charter School were on notice that K.M. was a student with a disability back in October 2005 and of the fact that she was diagnosed with major depression and that depression. The parent timely informed the Charter School after K.M.'s release from PIW of the fact that the doctor was recommending services. When the Charter School failed to respond, the parent sent a letter to DCPS Superintendent Janey's Office advising him of the situation and requesting assistance on or about November 8, 2005.

3

In addition, many of tl.   eacher's admitted to having concerns a   .t K.M.'s ac
performance during the first advisory of the 05/06 school year. One teacher reported that is N.
appeared to be distracted in class and often failed to turn in class work. In a written stateme
teacher asserted that " *Katrice seems to need more specialized attention. It would be in h
interest to get tested and receive services from special education*" Other teachers as well rep
similar problems and recommended services. According to her English teacher, who taught K.M. and
only in 10th grade but also in 9th grade "*It is my recommendation that Katrice be examined f r
possible disabilities, academic or emotional that may be keeping her from accomplishing much ay
what she wishes to accomplish in school*".

A multidisciplinary team meeting was held on or about March 6, 2006 at which time the Charter
school agreed to do comprehensive testing for K.M. To date, the only evaluator the parent has been
contacted by was a social worker to whom the parent provided the requisite information for a social
history evaluation to be completed though the parent has not received a copy of the written evaluation
report. [2]

As a result of the failure to meet their obligations under "Child Find" K.M. has been denied a Free
and Appropriate Public Education ("FAPE") and should be entitled to compensatory relief to help
remediate the harm caused by Charter School failure to identify and/or program for this student. See
School Committee of the Town of Burlington, Massachusetts v. Department of Education of
Massachusetts, 471 U.S. 359 (1985); Diatta v. District of Columbia 319 F. Supp.2d 57, 65 D.D.C.
2004 Kerkam I, 862 F.2d 84 (D.C. Cir. 1991). KM has missed over ten (10) months of school and
will likely be unable to graduate on time due to her disability. There is concern about whether or not
an alternate placement is needed for this student.

## II. Issues presented.

- Whether IDEA Public Charter School denied K.M. a free and appropriate public education by
  failing to meet their child find obligation under either the IDEA and/or IDEIA and/or failed to
  comply with DC Municipal Regulations?

- Whether the Charter School, as the LEA, failed to evaluate and/or identify this student as
  eligible for special education services?

- Whether KM has been denied a Free And Appropriate Public Education ("FAPE")?

## III. To the extent known to you at this time, how can this problem be resolved?

**WHEREFORE**, the parent, by and through counsel, requests the following relief:

1. A finding that Charter School denied K.M. FAPE by failing to identify and/or evaluate
   her in a timely manner;

2. That the Charter School shall fund the following evaluations to include but not limited
   to: a) psycho-educational evaluation; b) clinical psychological; c) speech and language
   assessment; d) social history ; e) functional behavioral assessment; and e) classroom
   observation, as well as, any evaluations warranted based upon the findings of these such
   as either a psychiatric evaluation and/or neuropsychological evaluation and/or
   audiological evaluation and/or occupational therapy evaluation;

---

[2] Because the parent is concerned about evaluations being completed and eligibility and placement being
discussed before the commencement of the 06/07 school year- she has paid out of pocket for an independent
psychological evaluation.

4

3. That the Charter School reimburse the parent for any out of pocket expenses incurred in obtaining indpendent evaluations not completed within the 120 day time frame within calendar days;

4. That the Charter School shall convene an MDT meeting within ten (10) calendars days of completion of the assessments for the purpose of reviewing evaluations; revising the IEP; discussing compensatory education; discussing and determining placement;

5. That the Charter School shall invite DCPS to participate in the meeting to be scheduled;

6. That at the afore mentioned meeting,  Charter School shall secure the participation of all necessary IEP team members to include but not limited to the appropriate personnel required to review assessments and develop an appropriate program for this child and discuss placement and compensatory education;

7. A Notice of Placement to a suitable placement shall be issued by the public agency with 5 days (public school) or within 30 days (private school) with parent participation;

8. That  Charter agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

9. All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

10. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter School and/or DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

11. In the event that the Charter School shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall have the authority to use self help without further notice to the Charter School/ DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the Charter School/DCPS can come into compliance and properly assess, program and/or participate;

12. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

13. 19.. The Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

14. That  Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following:  i) an explanation of why they proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those

5

options were rejected  .) a description of each evaluation procedu. , assessment, .. .. l. or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

15. That  Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School/DCPS, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

16. That Charter School  , within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the parent's request alleging any insufficiency of notice.

17. That  the Charter School's  failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time.

18. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

19. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons:  1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a psychiatrist and/or clinical psychologist; 5) an occupational therapist; and/or 6) any person(s) who conducted any assessments on the student.

20. That the Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between Charter School and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

21. A finding that the parent is the prevailing party in this action.

6

G.    **Accommodations and Assistanc __eeded__:**

- N/A

Dated this 19th  day of  July, 2006

Roberta L. Gambale, Esq.,
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021
Counsel for the Parent

**Mail, fax or deliver this complaint notices to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**
**Fax number: 202/442-5556**

7

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              3377
CONNECTION TEL                     93994387
CONNECTION ID
ST. TIME             07/20 09:27
USAGE T              02'47
PGS. SENT               8
RESULT               OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram

-------------------------------

! Admitted in Bolivia Only

# FAX COVER SHEET

DATE:       **7/19/06**

TO:         **IDEA Public Charter School**

FAX NO.:    **(202) 399-4750**

FROM:       **Roberta L. Gambale, Esq.**

SUBJECT:    **Due Process Complaint for K____ M____**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram

------------------------------------

! Admitted in Bolivia Only

# FAX COVER SHEET

DATE:          **7/19/06**

TO:            **IDEA Public Charter School**

FAX NO.:       **(202) 399-4750**

FROM:          **Roberta L. Gambale, Esq.**

SUBJECT:       **Due Process Complaint for K████ M██████**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

The attached information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

```
**********************
***   TX REPORT   ***
**********************

TRANSMISSION OK

TX/RX NO                1047
RECIPIENT ADDRESS       97037392323
DESTINATION ID
ST. TIME                07/19 12:18
TIME USE                01'26
PAGES SENT                 8
RESULT                  OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown<br>Domiento C.R. Hill<br>Roberta Gambale<br>Miguel A. Hull<br>Christopher L. West | Attorneys at Law<br>1220 L Street, NW<br>Suite 700<br>Washington, DC 20005<br>Telephone: (202) 742-2000<br>Facsimile: (202) 742-2098<br>e-mail: Admin@Jeblaw.biz | Juan J. Fernandez!<br>Tilman L. Gerald<br>John A. Straus<br>Roxanne D. Neloms<br>Omar Karram |

------------------------------------

! Admitted in Bolivia Only

# FAX COVER SHEET

DATE:           7/19/06

TO:             **William Houston**

FAX NO.:        **(703) 739-2323**

FROM:           **Roberta L. Gambale, Esq.**

SUBJECT:        **Due Process Complaint for K___ M____**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernande :! |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | |
| ----------------------------------- | e-mail: Admin@Jeblaw.biz | ----------------------------------- |
| | | ! Admitted in Bolivia Only |

# FAX COVER SHEET

DATE:            **7/19/06**

TO:              **William Houston**

FAX NO.:         **(703) 739-2323**

FROM:            **Roberta L. Gambale, Esq.**

SUBJECT:         **Due Process Complaint for K█████ M████████**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

The attached information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

27

```
*********************
***  TX REPORT  ***
*********************

TRANSMISSION OK

TX/RX NO                1045
RECIPIENT ADDRESS       94425556
DESTINATION ID
ST. TIME                07/19 12:15
TIME USE                01'06
PAGES SENT              8
RESULT                  OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*
Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

--------------------------------

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram

--------------------------------

! Admitted in Bolivia Only

# FAX COVER SHEET

DATE:               **7/19/06**

TO:                 **Ms. Sharon Newsome, DCPS Student Hearing Coordinator**

FAX NO.:            **(202)442-5556**

FROM:               **Roberta L. Gambale, Esq.**

SUBJECT:            **Due Process  Complaint for K███ M██████ DOB: 4/15/90**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram

--------------------------------

! Admitted in Bolivia Only

# FAX COVER SHEET

DATE:           **7/19/06**

TO:             **Ms. Sharon Newsome, DCPS Student Hearing Coordinator**

FAX NO.:        **(202)442-5556**

FROM:           **Roberta L. Gambale, Esq.**

SUBJECT:        **Due Process Complaint for K█████ M██████, DOB: 4/15/90**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

The attached information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

29

# Exhibit 3

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney: Roberta Gambale, Esq.**
**Parent: Consuela McKinley**

Telephone Number: **(202) 742-2000**
Fax Number: **(202) 742-2098**

Pages: **3**
Date: **July 19, 2006**

Please find attached a copy of a Scheduling Memorandum regarding:

Student: **K▮▮▮▮ M▮▮▮▮▮▮**
School: **Attending IDEA PCS**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office. If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556. Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

Thank You
Pamela Brown

The document(s) accompanying this telecopy transmission contains confidential information that is legally privileged. The information is intended only for use of the individual or entity named Above. If you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited. If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| M⬛⬛⬛, K. | | |
| Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| DCPS | ) | |
| Atetnding IDEA PCS | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1. A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2. The complaint notice was filed on **July 19, 2006**

3. The deadline for the resolution meeting is **August 3, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A. *Prior Written Notice Not Issued by the Local Educational Agency*. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

    1. An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

    2. A description of other options that the IEP Team considered and the reasons why those options were rejected;

    3. A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

    4.    A descrip.   . of the factors that is relevant to the agency's proposal or r...

B.    Prior written notice, if not already provided to the parent, must be sent by the Lo... Educational Agency to the complaining party no later than **July 29, 2006**.

C.    ***Deficiency Notice***.  A complaint notice shall be deemed sufficient unless the part... receiving the notice notifies the Student Hearing Office and the complaining par... i writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **August 3, 2006.**

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

# Exhibit 4

# District of Columbia Public Schools
## *State Enforcement Investigative Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



## *FACSIMILE SHEET*

Date: July 17, 2006

TO:   Roberta Gambale

FROM: STUDENT HEARING OFFICE

RE:   M████████, K███████

TOTAL NUMBER OF PAGES, INCLUDING COVER: 2

COMMENTS:

***CONFIDENTIALITY NTOICE***:  The information accompanying this facsimile is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the Matter of:

K_____ M_____ )
_____ )
Petitioner )

Vs.

DCPS + IDEA P.C.S. )
Respondent )

BEFORE A SPECIAL EDUCATION

INDEPENDENT HEARING OFFICER

STATE EDUCATION AGENCY

ON THIS DAY came on to be heard Respondent IDEA P.C.S 's Motion
To Dismiss filed 7-13-06 _____ in the above styled cause.

## ORDER

After reviewing the evidence, the Motion is:

_____ DENIED.

___✓___ GRANTED:

_____ OTHER:

Complaint dismissed without prejudice in
accordance with DCPS SOP 301.1 p. 1 -
no indication that the Complaint was served on the
principal or director of the Charter School.

SIGNED; this date 7-14-06

_____
Impartial Special Education Hearing Officer

Issue Date: 7/17/06

Original to SHO – Student's File
Copy To:
Parent' - C/O:
DCPS - C/O:
Charter School - C/O:

36

# Exhibit 5

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| James E. Brown | Attorneys at Law | Juan J. Fernandez |
| Domiento C.R. Hill ◊ | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Ann Kreske* |
| Christopher L. West | Telephone: (202) 742-2000 | |
| | Facsimile: (202) 742-2098 | |
| ----------------------------------- | e-mail: Admin@Jeblaw.biz | ----------------------------------- |
| | | ! Admitted in Bolivia Only |


**January 18, 2006**


**<u>Via Facsimile Only</u>**
Ms. Charlotte Blount Lewis, Principal
IDEA Public Charter School
1027 45th Street, N.E.
Washington, D.C. 20019

Re:    Record Request for K████ M████

Dear Ms. Blount:

    Pursuant to your January 12, 2006 correspondence, arrangements were made by this office to obtain a copy of educational records for the above referenced student. However, it is my understanding that you would not allow the representative of the parent to obtain a copies of records for the above referenced student despite the fact that D.C. MUN. REGS. tit. 5, § 3021.1 (2003), specifically provides the parent with the right to inspect, review and obtain copies of educational records at no cost. Parent would ask that you reconsider this position and provide a complete copy of K████'s educational records to this office via mail or facsimile. In the alternative, parent will pick up a copy of said records at the upcoming meeting scheduled.

    If you have any questions or concerns, please do not hesitate to contact me at 202-742-2021. I appreciate your cooperation and look forward to hearing from you.

Sincerely,

Roberta L. Gambale, Esq.

Cc:   Michelle Moody, Educational Advocate
       File

◊ *Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8). Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.*
   * *Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.*

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              1907
RECIPIENT ADDRESS     93994387
DESTINATION ID
ST. TIME              01/18 15:05
TIME USE              00'41
PAGES SENT            2
RESULT               OK
```

# James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◦
Roberta Gambale
Miguel A. Hull
Christopher L. West

-------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*

-------------------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

TO:    Ms. Blount- Principal- IDEA PCS

FROM:  Roberta L. Gambale, Esq.

DATE:  January 18, 2006

FAX NO: 202-399-4387

SUBJECT: Record Request- K███ M██████

NUMBER OF PAGES, INCLUDING FAX COVER SHEET:

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusiv
addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify

## James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◦
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez
Tilman L. Gerald
John A. Straus
Ann Kreske*

----------------------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

TO:    Ms. Blount- Principal- IDEA PCS

FROM:  Roberta L. Gambale, Esq.

DATE:   January 18, 2006

FAX NO: 202-399-4387

SUBJECT: Record Request- K▓▓▓ M▓▓▓▓▓

NUMBER OF PAGES, INCLUDING FAX COVER SHEET:

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

◦ *Admitted Only in Maryland. Practicing Pursuant to Rule 49(c) (8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.*

* *Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.*

# Exhibit 6

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez |
| Domiento C.R. Hill ◊ | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Delores Scott McKnight |
| Christopher L. West | Telephone: (202) 742-2000 | Marshall Lammers |
| | Facsimile: (202) 742-2098 | |
| ----------------------------------- | e-mail: Admin@Jeblaw.biz | --------------------------------- |
| | | ! Admitted in Bolivia Only |

January 10, 2006

Special Education Coordinator
IDEA Public Charter School
1045 45th Street NE
Washington, D.C. 20019

<u>RE: K█████ M█████</u>

Dear Special Education Coordinator;

The parent of K█████ M█████ requests your assistance in locating and placing K█████ in an appropriate placement immediately. K█████ has been out of school since October 18, 2005. In addition, the parent requests that you implement home school for K█████ as well. Please feel free to call me regarding this matter. My phone number is 202-742-2006 and my fax number is 202-742-2098.

Thank You,

Michelle Moody

cc: Mr. Dwight Thomas, Special Education Specialist
    Mrs. Peggy Peigler

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

Special Education Coordinator
IDEA Public Charter School
1045 45th Street NE
Washington, D.C. 20019

RE: K██████ M███████ 

Dear Special Education Coordinator;

The parent of K█████ M████████ requests your assistance in locating and placing K██████ in an appropriate placement immediately. K██████ has been out of school since October 18, 2005. In addition, the parent requests that you implement home school for K██████ as well. Please feel free to call me regarding this matter. My phone number is 202-742-2006 and my fax number is 202-742-2098.

Thank You,

Michelle Moody

cc: Mr. Dwight Thomas, Special Education Specialist
    Mrs. Peggy Peigler

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

```
                                          OK         RESULT
                                           1         PGS. SENT
                                       92.00         USAGE T
                                   01/03 16:13       ST. TIME
                                                     CONNECTION ID
                                                     SUBADDRESS
                         9399438L                    CONNECTION TEL.
                                        4514         TX/RX NO

                                       TRANSMISSION OK

                        *********************
                        ***    TX REPORT    ***
                        *********************
```

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

--------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

-------------------------------

! Admitted in Bolivia Only

February 15, 2006

Special Education Coordinator
Integrated Design and Electronics Academy
1045 45th Street N.E.
Washington, D.C. 20002



Dear Mrs. Deal;

I am writing as a follow up to our previous communications regarding a meeting for K███████ M████████ Please consider the folloiwing dates for a meeting: 3/2/06 anytime, 3/3/06 anytime,3/6/06 anytime, 3/7/06 anytime, 3/8/06 anytime.   Call me at your earliest convenience regarding your availability.  My phone number is 202-742-2006 and my fax number is 202-742-2098.

Thank You,

Michelle Moody

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

Special Education Coordinator
Integrated Design and Electronics Academy
1045 45th Street N.E.
Washington, D.C. 20002



Dear  Mrs. Deal;

I am writing as a follow up to our previous communications regarding a meeting for K███ M██████  Please consider the folloiwing dates for a meeting: 3/2/06 anytime, 3/3/06 anytime,3/6/06 anytime, 3/7/06 anytime, 3/8/06 anytime.   Call me at your earliest convenience regarding your availability.  My phone number is 202-742-2006 and my fax number is 202-742-2098.


Thank You,

Michelle Moody

◊ Admitted Only in Maryland.  Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

• Admitted Only in Virginia.  Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO                    0188
CONNECTION TEL    12023994387
CONNECTION ID
SUBADDRESS
ST. TIME              02/15 20:13
USAGE T                     00.33
PGS. SENT                        1
RESULT                         OK

45

# Exhibit 7

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez |
| Domiento C.R. Hill ◊ | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Marshall Lammers |
| Christopher L. West | Telephone: (202) 742-2000 | Ann Kreske* |
| | Facsimile: (202) 742-2098 | |
| -------------------------------- | e-mail: Admin@Jeblaw.biz | ------------------------------- |
| | | ! Admitted in Bolivia Only |

March 7, 2006

Dr. Piegler, Special Education Specialist
District of Columbia Public Schools
825 North Capitol Street N.E.
Washington, D.C. 20002

RE: K████ M████████

Dear Dr. Peigler;

The parent of K████ M████████ requests a resolution meeting at your earliest convenience. Please consider the following dates: 3/13/06 anytime, 3/14/06 anytime after 12:30, 3/17/06 anytime after 1:00.3/20/06 anytime after 12:00. Please call me at your earliest convenience. My phone number is 202-742-2006 and my fax number is 202-742-2098.

Thank You,

Michelle Moody

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

Dr. Piegler, Special Education Specialist
District of Columbia Public Schools
825 North Capitol Street N.E.
Washington, D.C. 20002


RE: K████ M██████ 


Dear Dr. Peigler;


The parent of K████ M██████ requests a resolution meeting at your earliest convenience.
Please consider the following dates: 3/13/06 anytime, 3/14/06 anytime after 12:30, 3/17/06
anytime after 1:00.3/20/06 anytime after 12:00.  Please call me at your earliest convenience.  My
phone number is 202-742-2006 and my fax number is 202-742-2098.


Thank You,

Michelle Moody


◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

---

```
        *********************
        ***   TX REPORT   ***
        *********************

        TRANSMISSION OK

TX/RX NO                      0197
CONNECTION TEL        12024425518
SUBADDRESS
CONNECTION ID
ST. TIME                   03/07 09:48
USAGE T                         00.17
PGS. SENT                           1
RESULT                             OK
```

```
**********************
***   TX REPORT   ***
**********************


TRANSMISSION OK

TX/RX NO              0198
CONNECTION TEL                12024425517
SUBADDRESS
CONNECTION ID         DCPS SPECIAL EDU
ST. TIME              03/07 09:53
USAGE T               00'16
PGS. SENT                1
RESULT                OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

! Admitted in Bolivia Only

March 7, 2006


Dr. Piegler, Special Education Specialist
District of Columbia Public Schools
825 North Capitol Street N.E.
Washington, D.C. 20002


RE: ▌▌▌▌ M▌▌▌▌

Dear Dr. Peigler;


The parent of K▌▌▌ M▌▌▌▌ requests a resolution meeting at your earliest convenience.
Please consider the following dates: 3/13/06 anytime, 3/14/06 anytime after 12:30, 3/17/06
anytime after 1:00.3/20/06 anytime after 12:00.  Please call me at your earliest convenience.  My
phone number is 202-742-2006 and my fax number is 202-742-2098.

49

# Exhibit 8



# DISTRICT OF COLUMBIA
# PUBLIC SCHOOLS
## *Office of Special Education*
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-727-6308

# CERTIFICATE OF NO RECORDS

**CASE NAME:**    K█████ M████████
**D.O.B.:**    04/15/90

I, the undersigned, am the Custodian of Records for DC Public Schools, Division of Special Education Central Office records.

I certify that a thorough search of our central files, conducted under my supervision and direction, revealed no records for:

K█████ M███████

It is important to note that records for the student may exist under another spelling, another name or another classification. However, the information you furnished to our office, to the best of our knowledge, produced no such records on this student at this time.

**DATE:**  2/3/06             **SCHOOL: IDEA Public Charter School**

**SIGNATURE:** *Tawanna Herbose* **TITLE**:  Records Specialist

DCPS/12/02

51

11/10/2006 16:50 FAX 202 742 20\    James Brown and Associat

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Robert. Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

! Admitted in Bolivia Only

January 10, 2006

**Via Facsimile**
Mr. William Dexter, Principal
(IDEA) Public Charter School
1027 ⊄ 5th Street, N.E.
Washington, D.C. 20019

Re: **Request for Records for student K███ M███, DOB: 4/15/90**

Dear Mr. Dexter:

On behalf of my client, Ms. Consuella Mckinley, I hereby request a copy of the above-referenced student's educational records. This request is being made pursuant to 34 C.F.R. § 300.5⁢2(a); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35879 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3021.1 (2003).

If you are unable to provide the requested copy of the student's entire academic file, please provide me in writing, via facsimile, at 202-742-2097 or 202-742-2098, at least three (3) different dates on which the parent's representative may have access to review the student's educational file and make the necessary copies. This request includes any and all records or writings in the possession of IDEA Public Charter School that includes and are not limited to the following:

| | | | |
|---|---|---|---|
| 1. | All Attendance Records | 8. | Portfolios |
| 2. | Progress Reports and report Cards | 9. | Related Service Provider Logs |
| 3. | Standardized Test Scores | 10. | Charts and Observations |
| 4. | Class Schedules | 11. | Reports, Letters, Memos, Notes, E-Mails |
| 5. | Individualized Education Programs | 12. | Forms and Data Compilations |
| 6. | Evaluations and Assessments | 13. | Letters of Understanding |
| 7. | Multidisciplinary Meeting Notes | 14. | Disciplinary Records |

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Strous, Members of the D.C. Bar.

# Exhibit 9

## Siva Kumar

**From:** K▓▓▓M▓▓▓ <tweety902000@yahoo.com>
**Sent:** Tuesday, December 06, 2005 11:37:45 AM EST
**To:** <chemistry@ideapcs.org>
**Cc:** <cmckinley59@yahoo.com>
**Subject:** RE: Report on Atoms

*Siva Kumar <chemistry@ideapcs.org> wrote:*

— Original Message —
From: tweety902000@yahoo.com
To: chemistry@ideapcs.org
Subject: RE: Report on Atoms
Sent: Monday, December 05, 2005 10:15:42 AM EST

Hello Dr.Kumar I am writing you this short letter because I was wondering could you please send a guiedeline for you essay on the Atomes.So that I can get credit for it and also a little more instuctions on the assingments that you give out.

K▓▓▓ M▓▓▓ 

LOVE K▓▓▓(SMILE)
12/06/05 Good morning K▓▓▓ Hope you are doing well. For writing of chemical formulas and ionic bonds, please use the website: www.bbc.co.uk/schools/teachers/. Then select the following: 1.KS4, Inonic bonding, Revise. After that you can see so many diagrams with examples. I hope this web page will help you. Still you have questions, Please email me. In the book, please go to the page number 164 and try the examples.
Regards, Dr.Kumar

12-06-05

Thank You Dr.Kumar I will make sure that I stay in contact with you and touch basis with you daily!

K▓▓▓ M▓▓▓ 

---

Yahoo! Shopping
Find Great Deals on Gifts at Yahoo! Shopping

# Exhibit 10



Name of School

## DISTRICT RESIDENCY VERIFICATION FORM
### (To be completed by DCPS Local School Staff Only)

I hereby certify that _____, S.S. #_____, parent/caregiver

Parent or Caregiver Name                              (if available)

of _____, _____

Student Full Name                              Home Address

_____ presented the following document(s) evidencing his/her DC residency:

Telephone No. (if applicable)

**(a)  One (1) of the following items suffices to establish DC residency.**

_____  A copy of the 2002 W-2 form(s) or 1099 form(s) containing the name of the person enrolling the student and evidencing payment of DC personal income taxes; or

_____  A current pay stub (issued less than forty-five (45) days prior to consideration of residency) that contains the name of the person enrolling the student and shows his or her DC residence *and* withholding of DC income tax; or

_____  Current official documentation of financial assistance received by the person enrolling the student from the Government of the District of Columbia including, but not limited to, Temporary Assistance for Needy Families (TANF), Medicaid, the State Child Health Insurance Program (SCHIP), Supplemental Security Income (SSI), housing assistance or other programs; or

_____  Confirmation, based upon completion and submission of a tax information authorization waiver form, by the DC Office of Finance and Revenue indicating payment of DC income taxes by the person enrolling the student for tax year 2002; or

_____  Current official military housing orders showing residency of the person enrolling the student in the DC; or

_____  Currently valid court order indicating that the student is a ward of the District of Columbia.

**(b)  Or, in the absence of items listed above, two (2) of the items listed below will suffice as proof of residency in DC.  The items must show the name and address of the person seeking to enroll the student:**

_____  Current motor vehicle registration showing the name of the person enrolling the student and indicating DC residency;

_____  A valid unexpired lease or rental agreement *with* receipts for payment or canceled checks for payment of rent (for a period within two (2) months immediately preceding consideration of residency) on a DC residence in which the student actually resides;

_____  A valid unexpired DC motor vehicle operator's permit or official government issued non-driver identification in the name of the person enrolling the student; or

_____  Utility bills (excluding telephone bills) *with* receipts for payment or cancelled checks (from a period within the two months immediately preceding consideration of residency) showing the name of the person enrolling the student and DC residence address.

_____    _____

School Official's  Signature                Date

56

# HOME LANGUAGE SURVEY

SIS ID NUMBER:

SCHOOL NAME:

STUDENT NAME:

Parent Name: Consuela S. McKinley    Parent's Signature: Consuela S. McKinley    Date: 11/3/06

This document MUST be signed and dated by the parent or guardian.

## ENGLISH (Please answer ALL five questions.)

| | Yes | No |
|---|---|---|
| 1) Is a language OTHER THAN English used at home? | ☐ | ☑ |
| 2) What language did your child first speak? | | |
| ● English   ○ Spanish   ○ Amharic   ○ French | | |
| ○ Chinese   ○ Vietnamese   ○ Other (specify): | | |
| 3) Does the student frequently speak a language other than English at home? | ☐ | ☑ |
| 4) Was your child born in a country OUTSIDE OF THE USA? | ☐ | ☑ |
| 5) What is your relationship to the child? | | |
| ● Mother   ○ Father   ○ Guardian   ○ Other (specify): | | |

## SPANISH (Por favor responda a TODAS las cinco preguntas.)

| | SÍ | No |
|---|---|---|
| 1) ¿Se habla otro idioma que NO sea el inglés en la casa? | ☐ | ☐ |
| 2) ¿En qué idioma comenzó a hablar su hijo/a? | | |
| ○ Inglés   ○ Español   ○ Américo   ○ Francés | | |
| ○ Chino   ○ Vietnamés   ○ Otro (especifique): | | |
| 3) ¿Habla frecuentemente el estudiante otro idioma que NO sea el inglés en la casa? | ☐ | ☐ |
| 4) ¿Nació su hijo/a en otro país que NO sea EE.UU. (USA)? | ☐ | ☐ |
| 5) ¿Cuál es su relación al niño/a? | | |
| ○ Madre   ○ Padre   ○ Tutor   ○ Otro (especifique): | | |

## CHINESE (請回答所有五條的問題)

| | 是 | 否 |
|---|---|---|
| 1) 你家庭中是否使用不是英文的另一種語言？ | ☐ | ☐ |
| 2) 你的子女初果說話時是 說以下那種語言？ | | |
| ○ 英語   ○ 西班牙語   ○ 阿姆哈拉語   ○ 法語 | | |
| ○ 漢語   ○ 越語   ○ 其他語種(註 明 )： | | |
| 3) 你的子女是否經常在家說不是英文語言的另一語言？ | ☐ | ☐ |
| 4) 你的子女是否出生在美國以外的國家？ | ☐ | ☐ |
| 5) 你與該子的關系是： | | |
| ○ 母親   ○ 父親   一 監護人   ○ 其他關系(說 明)： | | |

## AMHARIC (እባክዎን አምስቱንም ጥያቄዎች (ሙሉ) ይመልሱ።)

| | አዎ | የለ |
|---|---|---|
| 1) በቤት ውስጥ ከእንግሊዝኛ ሌላ የሚነጋገሩበት ቋንቋ አለ ወይ? | ☐ | ☐ |
| 2) ልጅዎ በመጀመሪያ አፍን ይፈታው በየትኛው ቋንቋ ነው? | | |
| ○ እንግሊዝኛ   ○ ስፓኒሽ   ○ አማርኛ   ○ ፈረንሳይኛ | | |
| ○ ቻይና   ○ ቬትናም   ○ ሌላ (ይጥቀሱ): | | |
| 3) ተማሪው እንግሊዝኛ ጋ ሌላ ከእንግሊዝኛ ሌላ ቋንቋ በመቀጣጠል ወይ? | ☐ | ☐ |
| 4) ልጅዎ ከአሜሪካ ውጪ ባለ አገር ተወልዶ ወይ? ከተወለደ የተወለደበት አገር? | ☐ | ☐ |
| 5) ከልጁ ጋር ያለዎት ግንኙነት ምንድን ነው? | | |
| ○ እናት   ○ አባት   ○ አሳዳጊ   ○ ሌላ (ይጥቀሱ): | | |

## FRENCH (S'il vous plaît répondez à TOUTES les cinq questions.)

| | Oui | Non |
|---|---|---|
| 1) Est-ce-que chez vous, une langue AUTRE QUE L'ANGLAIS est en usage? | ☐ | ☐ |
| 2) Quelle langue votre enfant utilise lorsqu'il commence à parler? | | |
| ○ Anglais   ○ Espagnol   ○ Amharic   ○ Français | | |
| ○ Chinois   ○ Vietnamien   ○ Autre: | | |
| 3) Chez vous, l'élève parle-t-il souvent une langue AUTRE QUE L'ANGLAIS? | ☐ | ☐ |
| 4) Votre enfant était-il né HORS DES ÉTATS-UNIS? | ☐ | ☐ |
| 5) Quel est votre lien de parenté avec l'enfant? | | |
| ○ Mère   ○ Père   ○ Tuteur   ○ Autre: | | |

## VIETNAMESE (Xin vui lòng trả lời TẤT CẢ năm câu hỏi.)

| | Có | Không |
|---|---|---|
| 1) Ở nhà có thường sử dụng thứ tiếng nào KHÁC HƠN Anh Ngữ không? | ☐ | ☐ |
| 2) Con quý vị đã nói thứ tiếng nào trước nhất? | | |
| ○ Anh Ngữ   ○ Tây Ban Ngữ   ○ Am-ha-ric   ○ Pháp Ngữ | | |
| ○ Hoa Ngữ   ○ Việt Ngữ   ○ Ngôn ngữ khác: | | |
| 3) Ở nhà, học sinh thường nói thứ tiếng nào khác hơn Anh Ngữ không? | ☐ | ☐ |
| 4) Con quý vị đã sinh ra ở một NƯỚC NÀO KHÁC HOA KỲ không? | ☐ | ☐ |
| 5) Liên hệ của quý vị với đứa trẻ? | | |
| ○ Mẹ   ○ Cha   ○ Giám Hộ   ○ Liên hệ khác: | | |

57

# Exhibit 11

# Integrated Design & Electronics Academy Public Charter High School

1027 45th Street, N. E.
Washington, DC 20019
202.399.4750
202.399.4387 (Fax)

Ms. Consuella McKinley
4202 Fort Dupont Street SE
Washington, DC 20020

January 10, 2006

Dear Ms. McKinley:

The purpose of this letter is to respond to the January 3, 2006 letter from Michelle Moody written on your behalf requesting "assistance in locating and placing your daughter K███ M██████ in an "appropriate placement immediately and implementing home school for Katrice as well."

As you are aware, IDEA Public Charter School has previously talked to you and written to you about the services IDEA can provide to K████ during her absence. Charter schools do not provide either home school or visiting instructional services to students. This also was confirmed for you by Ms. Mary Bunn in the office of the executive director for Board of Education charter schools.

At my direction and in an effort to help K█████maintain passing grades during her absence, Ms. Robyn Jones, the School Guidance Counselor has maintained ongoing communication with you, coordinated with K████'s teachers to send assignments home in two week increments with the requirement that K████return completed assignments every two weeks. Some communication has taken place between K████and teachers through e-mail but K████has not followed through with regularity, completed or returned her assignments. However, K████has found time to develop a web page in which she negatively characterizes IDEA and she alleges drug and alcohol use.

IDEA Public Charter School will convene a multidisciplinary team meeting on **January 31, February 1 or February 2, 2006 at 10:30 am** to review all the things that have been done to support K████ during this situation and to discuss possible next steps. I request that you call me to confirm your participation on one of the above dates. At the multidisciplinary team meeting we also request that you provide the school with reports from the attending doctor at the Psychiatric Institute of Washington as to K████'s ability to return to school, her emotional stability and any other related documentation to enlighten IDEA Public Charter School regarding her welfare.

Sincerely,

*Charlotte Blount Lewis*

Charlotte Blount Lewis
Principal (6 Enclosures)





*Determination – Heart – Perseverance...Get the IDEA!*

# Exhibit 12

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill ◊ | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Marshall Lammers |
| Christopher L. West | Telephone: (202) 742-2000 | Ann Kreske* |
| | Facsimile: (202) 742-2098 | |
| ----------------------------------- | e-mail: Admin@Jeblaw.biz | ----------------------------------- |
| | | ! Admitted in Bolivia Only |

January 10, 2006

**Via Facsimile**
Mr. William Dexter, Principal
(IDEA) Public Charter School
1027 45th Street, N.E.
Washington, D.C. 20019

Re: **Request for Initial-Evaluations**
**K███ M██████, DOB: 4/15/90**

Dear Mr. Dexter:

On behalf of my client, Ms. Consuella Mckinley I hereby request that the above-referenced student, **K████ M██████**, be evaluated for special education and its related services. This request is being made pursuant to 34 C.F.R. §§ 300.530-300.535; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35862-35864 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3021.1 (2003). A comprehensive evaluation of the student includes, but is not limited to: 1) **psycho-educational evaluation**, 2) **speech and language evaluation**, 3) **social history evaluation**, 4) **clinical evaluation** 5) **a formal classroom observation**. **The evaluations requested also include a physical therapy, occupational therapy, and/or psychiatric evaluation**, if such evaluations are determined to be warranted by and/or recommended in the above mentioned evaluations.

This request is not intended to restart or relieve IDEA Charter School of any prior timelines that may be in effect, nor is this request intended to waive any of the parent's or student's rights that would have entitled them to have the evaluation process completed prior to this request.

◊ *Of Counsel. Practicing pursuant to Rule 49 (c)(6) of the D.C. Court of Appeals.*
° *Admitted Only in Maryland and New Jersey; Supervision by James E. Brown, a member of the D.C. Bar.*

Finally, I also request, that proper notice of all proposed tests, observations and evaluations be provided to me, in writing, via facsimile, at 202-742-2097 or 202-____ ____ pursuant to 34 C.F.R. § 300.503; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35869 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3024 (2003).

I may be reached at the above referenced number to schedule the evaluation. Thank you for your prompt attention to this matter.

Sincerely,

Roberta Gambale, Esq.

Attachment: Consent for Evaluation – Initial or Reevaluation

cc:     Erika Pierson, Interim General Counsel, Office of General Counsel
Mary Lee Phelps, Interim Chief of Special Education Reform, Office of Special Education,
Parent

◊ Of Counsel. Practicing pursuant to Rule 49 (c)(6) of the D.C. Court of Appeals.

° Admitted Only in Maryland and New Jersey; Supervision by James E. Brown, a member of the D.C. Bar.

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill ◊ | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Marshall Lammers |
| Christopher L. West | Telephone: (202) 742-2000 | Ann Kreske* |
| | Facsimile: (202) 742-2098 | |
| ---------------------------------- | e-mail: Admin@Jeblaw.biz | --------------------------------- |
| | | ! Admitted in Bolivia Only |

January 10, 2006

**Via Facsimile**
Mr. William Dexter, Principal
(IDEA) Public Charter School
1027 45th Street, N.E.
Washington, D.C. 20019

**Re:  Request for Records for student K█████ M███████, DOB: 4/15/90**

Dear Mr. Dexter:

On behalf of my client, Ms. Consuella Mckinley, I hereby request a copy of the above-referenced student's educational records.  This request is being made pursuant to 34 C.F.R. § 300.562(a); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35879 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3021.1 (2003).

If you are unable to provide the requested copy of the student's entire academic file, please provide me in writing, via facsimile, at 202-742-2097 or 202-742-2098, at least three (3) different dates on which the parent's representative may have access to review the student's educational file and make the necessary copies.  This request includes any and all records or writings in the possession of IDEA  Public Charter School that includes and are not limited to the following:

| | | | |
|---|---|---|---|
| 1. | All Attendance Records | 8. | Portfolios |
| 2. | Progress Reports and report Cards | 9. | Related Service Provider Logs |
| 3. | Standardized Test Scores | 10. | Charts and Observations |
| 4. | Class Schedules | 11. | Reports, Letters, Memos, Notes, E-Mails |
| 5. | Individualized Education Programs | 12. | Forms and Data Compilations |
| 6. | Evaluations and Assessments | 13. | Letters of Understanding |
| 7. | Multidisciplinary Meeting Notes | 14. | Disciplinary Records |

*◊ Admitted Only in Maryland.  Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull  and Christopher West, Members of the D.C. Bar.*

*\* Admitted Only in Virginia.  Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.*

63

Enclosed is a copy of the General Authorization form signed by the parent. Please send the requested information to us via facsimile at (202) 742-2098. If you have any questions regarding this request, please call me at (202) 742-2000. Thank you in advance for your immediate attention to this request.

Sincerely,

Roberta Gambale, Esq.

cc:    Erika Pierson, Interim General Counsel, Office of General Counsel
       Mary Lee Phelps, Interim Chief of Special Education Reform, Office of Special Education,
       Parent

```
**********************
***   TX REPORT   ***
**********************


TRANSMISSION OK

TX/RX NO            4579
CONNECTION TEL            94425098
SUBADDRESS
CONNECTION ID
ST. TIME           01/11 10:00
USAGE T            01'03
PGS. SENT              7
RESULT             OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domien o C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

-------------------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE: January 10, 2005

TO:   Ms. Erika Pierson, Esq. Interim General Counsel, Office of General Counsel, DCPS

PHONE:   202-442-5000

FAX NO:   202-442-5098

FROM:   Yamileth Amaya, Paralegal for Roberta Gambale, Esq.

SUBJECT:   K▇▇▇ M▇▇▇▇
4/15/90

NUMBER OF PAGES INCLUDING COVER SHEET: **7**

COMMENTS: Please find attached the request for Initial Evaluation for the above

mentioned student.

```
************************
***    TX REPORT    ***
************************


TRANSMISSION OK

TX/RX NO              4574
CONNECTION TEL                 94425517
SUBADDRESS
CONNECTION ID        DCPS SPECIAL EDU
ST. TIME             01/10  16:49
USAGE T              01'01
PGS. SENT               7
RESULT               OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domie nto C.R. Hill ◊
Robert ı Gambale
Miguel A. Hull
Christc pher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

-----------------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:   January 1C, 2006

TO:    Mary Lee Phelps, Chief of Special Education Reform, Office of Special Education

FROM: Yamileth Arnaya, Paralegal for Roberta Gambale, Esq.

PHONE NO: (202) 442-4800

FAX NO: (202) 442-5517

SUBJECT:  K▬▬ M▬▬
          DOB: 4/15/90

NUMBER OF PAGES INCLUDING COVER SHEET: **7**

COMMENTS: Please find attached Request for Initial Evaluation and Records for the above mentioned student.

66

```
************************
***   TX REPORT   ***
************************

TRANSMISSION OK

TX/RX NO              4572
CONNECTION TEL                 93994387
SUBADDRESS
CONNECTION ID
ST. TIME              01/10  16:46
USAGE T               02'24
PGS. SENT             7
RESULT                OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

James E. Brown
Domier to C.R. Hill ◊
Roberts Gambale
Miguel A. Hull
Christo oher L. West

-------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

-------------------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:   January 10, 2006

TO: Mr. William Dexter, Principal, IDEA

FROM: Yamileth Amaya

FAX NO: (202) 399-4750

SUBJECT: K⬛⬛M⬛⬛
DOB: 4/15/90

NUMBER OF PAGES, INCLUDING FAX COVER SHEET: 7

COMMENTS:  Please find attached request for Initial Evaluation and Records for the above mentioned student.

-----------------------------------------------------------

-----------------------------------------------------------

## STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify J and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

67

## JAME  E. BROWN & ASSOCIATES, ⸺ LLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

-----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez !
Tilman L. Gerald *
John A. Straus
Marshall Lammers ;
Ann Kreske*

-------------------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE: January 10, 2006

TO:    Ms. Erika Pierson, Esq. Interim General Counsel, Office of General Counsel, DCPS

PHONE:    202-442-5000

FAX NO:    202- 442-5098

FROM:    Yamileth Amaya, Paralegal for Roberta Gambale, Esq.

SUBJECT:    K▬▬ M▬▬▬
4/15/90

NUMBER OF PAGES INCLUDING COVER SHEET: 7

COMMENTS: Please find attached the request for Initial Evaluation for the above

mentioned student.

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

--------------------------------

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:   January 10, 2006

TO:    Mary Lee Phelps, Chief of Special Education Reform, Office of Special Education

FROM: Yamileth Amaya, Paralegal for Roberta Gambale, Esq.

PHONE NO: (202) 442-4800

FAX NO: (202) 442-5517

SUBJECT:   K███ M███████
              DOB: 4/15/90

NUMBER OF PAGES INCLUDING COVER SHEET: **7**

COMMENTS: Please find attached Request for Initial Evaluation and Records for the above mentioned student.

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

-----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

---------------------------------

! Admitted in Bolivia Only

# FAX COVER SHEET

DATE:   January 10, 2006

TO: Mr. William Dexter, Principal, IDEA

FROM: Yamileth Amaya

FAX NO: (202) 399-4750

SUBJECT: K███ M███
DOB: 4/15/90

NUMBER OF PAGES, INCLUDING FAX COVER SHEET: 7

COMMENTS:  Please find attached request for Initial Evaluation and Records for the above mentioned student.

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information.  If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

Special Education Coordinator
IDEA Public Charter School
1045 45th Street NE
Washington, D.C. 20019

<u>RE: K█████ M████████</u>

Dear Special Education Coordinator;

The parent of K████ M████████ requests your assistance in locating and placing K████ in an appropriate placement immediately. K████ has been out of school since October 18, 2005. In addition, the parent requests that you implement home school for Katirce as well. Please feel free to call me regarding this matter. My phone number is 202-742-2006 and my fax number is 202-742-2098.

Thank You,

Michelle Moody

cc: Mr. Dwight Thomas, Special Education Specialist
    Mrs. Peggy Peigler

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8): Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

```
                                        RESULT            OK
                                        PGS. SENT          1
                                        USAGE T        00.26
                                        ST. TIME   01/03 16:14
                                        CONNECTION ID
                                        SUBADDRESS
                                        CONNECTION TEL   9399438Z
                                        TX/RX NO          4512

                            TRANSMISSION OK

                     *********************
                     ***   TX REPORT   ***
                     *********************
```

James Brown and Associat        FAX 202 742 2097        Ø001

# Exhibit 13

k█████ letter

Consuella McKinley-Simmons
4202 Fort Dupont, S.E.
Washington, D.C. 20020
November 8, 2005

Dear Supertindent Janey,

I am writing this letter in an attempt to have my daughter, K████
M██████, receive Visiting Instructional Services. On Ocotber 18, 2005,
K████ attempted to commit suicide while at school, IDEA Public Charter School.
During her consultations and evaluations, it was deemed that some of K██████s
emotional instability was due to school related trauma. As a result of her
initial diagnosis, it has been determined by her psychiatrist, Dr. Laurence
Greenwood of the Psychiatric Institute of Washington, that it is in K██████'s
best mental health to receive at home instruction through Visiting Instruction
Service.

I have tried, although in vain, to have some type of resolution to this
matter through IDEA; however, my attempts have been fruitless. IDEA's principal,
Ms. Charlotte Blount Lewis, has spoken to me and is keenly aware of the
situation. She has offered to send K████ home 2-week assignments. Although I
appreciate the initial attempt to provide K████ with missed assignments, I
view it as only a panacea to a larger plan that needs to be put into place.

As a result of my communication with Mrs. Blount, I was informed that IDEA is not
structured to provide Visiting Instructional Services to any student who is absent due to
long-term medical conditions. The support that the school provides, as outlined by Ms.
Blount Lewis, are:
   1. Assignments for a two a week period, including forwarding the assignments and
      textbooks.
   2. Completion of said assignments during a specified time period.
   3. Utilization of the school's, WEB page to communicate with the teachers.

These interventions still do not provide K████with a free and appropriate
education. As the workload continues to increase, and lessons are taught,
packets will not suffice in educating K████. If that were the case, I could
easily purchase Frank Schaffer workbooks and create my own lessons from
EdHelper.com.

Given that this time is understandably stressful for all, especially
K████. I am requesting that an alterative be provided to my daughter so that
her educational needs can be met. I am positive that there is a component within
the vast resources of D.C.P.S.; the D.C. Charter Board and the D.C. Board of

Page 1

73

k█████ letter

Education that can be implemented on behalf of K██████so that she will be able to continue her education. Surely there are modifications and some form of educational plan that can be developed, or modified from an existing policy that has been designed for students who have numerous physical, emotional or behavioral problems that prevent them from attending "regularly" scheduled in school classes.

As her parent, I am simply asking for definitive help and direction in ensuring that K██████receive an education. At this point, I am at a loss as to exactly which route is the best path for furthering Katrice's education. It is my hope that she will triumph over her psychological problems that currently prevent her from attending school with her classmates. Since I am a District resident and am quite confident in the educational process of D.C.'s school's in creating well educated adults prepared for future greatness, I now look for a definitive answer from those charged with shaping the District's children's education. NO CHILD LEFT BEHIND also applies to my daughter.

Thank you in advance for your cooperation in this matter. I can be reached at home (202) 575-4848 or at work (202) 547-5800 ext. 1202. I am looking forward to a speedy, yet educationally sound plan to be put into place for Katrice.

Respectfully,
Mrs. Consuella McKinley-Simmons

cc: Peggy Cooper Cafritz     President
    William Lockridge        District 4
    Tom Nida                 Chair
    Linda W. Croop           Council Chair
    Marion Barry             Ward Eight
    C. Blount Lewis          IDEA - Principal
    Sgt. S. Conyer           IDEA - Dean of Students
    Ms. R. Jones             IDEA - School Counselor
    Dr. Wallace              DCPS
    Deborah Gist             DCPS

Page 2

# Exhibit 14



Contemporary
Behavioral Healthcare
Solutions

October 30, 2005

Re: K███ M████

**To Whom It May Concern:**

K███ M████ was hospitalized at the Psychiatric Institute of Washington from October 18, 2005 to October 24, 2005, for depression with suicidal urges. Her depression was influenced by school problems. It is my medical recommendation that K███ receive Visiting Instructional Services (VIS), until her medical condition improves. Return to school at this time increases risk of suicidal thinking.

Sincerely,

*Laurence Greenwood*, M.D.

Laurence Greenwood, M.D.
Attending Psychiatrist

The Psychiatric Institute of Washington
4228 Wisconsin Avenue, N.W. • Washington, D.C. 20016 • (202) 885-5600
www.psychinstitute.com

76

# Exhibit 15



# 𝕴ntegrated 𝕯esign & 𝕰lectronics 𝕬cademy 𝕻ublic 𝕮harter 𝖘chool
## 𝕸ilitary 𝕬cademy
### 1027 45ᵗʰ Street, N. E.
### Washington, DC 20019-3802
### 202.399.4750
### 202.399.4387 (Fax)

November 3, 2005

Parent of K█████ M███████
4204 Fort Dupont Street SE
Washington, DC 20020

Dear Mrs. McKinley:

The purpose of this letter is to respond to your request for IDEA Public Charter School to provide Visiting Instructional Services (VIS) to your daughter K███ M███████.

IDEA is not structured to provide Visiting Instructional Services to any student who is absent because of a long term medical condition. However, when long term medical absences occur, the school supports students by requiring teachers to develop enough assignments for a two week period, forwarding the assignments and text books, requiring students to complete the assignments within a specified period of time and returning the assignments to school so that more assignments can be prepared and sent home or have the assignments picked up.

K████also can access the school's WEB Page and electronically communicate with teachers while at home.

I will have Ms. Robyn Jones, the Guidance Counselor contact you to see if K████has completed the assignments and find out when you will return the completed work and be able to pick-up additional assignments.

Sincerely,

*Charlotte Blount Lewis*

Charlotte Blount Lewis
Principal

Cc: Dr. Laurence Greenwood
    Psychiatric Institute of Washington
    4228 Wisconsin Avenue NW
    Washington, DC 20016

*"Making Young Americans Better Citizens"*

# Exhibit 16

## THE PSYCHIATRIC INSTITUTE OF WASHINGTON
### 4228 Wisconsin Avenue, NW
### Washington, DC 20016

### DISCHARGE SUMMARY

**PATIENT:** M████Y, K████LYNETT
**HOSPITAL NUMBER:** 729756
**PSYCHIATRIST:** Laurence Greenwood, M.D.
**PROGRAM:** ADOLESCENT PSYCH
**ADMISSION DATE:** 10/18/2005
**DISCHARGE DATE:** 10/24/2005
**DATE OF BIRTH:** 04/15/1990

**NOTE: This report is strictly Confidential and is for the information only of the person to whom it is addressed. No responsibility can be accepted if it is made available to any other person, INCLUDING THE PATIENT.**

UAL MR151

### I. INITIAL ASSESSMENT:

**HISTORY OF PRESENT ILLNESS:** This was the first PIW and first psychiatric admission for this 15-year-old, eleventh grade student living with her mother and stepfather, who was admitted for the chief complaint of wrapping a belt around her neck at school.

The patient has longstanding feelings of depression, anxiety, and particularly worry. She is frightened by other girls at school who harass her. In addition, her extended family came to the DC area after Hurricane Katrina. Then, two weeks ago, her 21-year-old sister left for Houston. This sister was a support person in her life, and the patient also worried that the sister was using drugs. The patient became increasingly worried about her sister and her school situation.

On the day prior to the present admission, the patient went to the girl's bathroom at school and put a belt around her neck. She was sent to the emergency room and admitted to Children's National Medical Center. She was then transferred to PIW in order to accommodate insurance coverage.

**PAST PSYCHIATRIC HISTORY:** The patient had seen her school therapist last year, twice weekly. She had significant improvement in her emotional symptoms and had not had further treatment this year. Also, her therapist left the school system. In that treatment, the patient focused on conflicts about her peers and worried about poor grades.

The patient has not had prior hospitalizations. However, she has thought about suicide since the fifth grade when she had to live with a strict military uncle. She threatened to stab herself.

There is no history of drug use. The patient has problems with truancy because she is trying to avoid being harassed at school.

**PSYCHOSOCIAL HISTORY:** The patient lives with her mother and stepfather. They moved to the DC area from Louisiana at age 6. She does not have siblings with her. Mother is a third grade school teacher. Stepfather is a custodian, but has not worked since February 2005 due to a broken arm.

80

**PATIENT:**          M█████████ K█████████████

**HOSPITAL NUMBER:**  729756

**DATES OF STAY:**    10/18/2005 - 10/24/2005

**Page 2**

The patient has had almost no contact with her natural father. She tried living with him in the ninth grade, but she did not want to take his direction.

**FAMILY HISTORY:** The patient's sister has depression and substance abuse.

**MEDICAL HISTORY:** Good health.

**MENTAL STATUS EXAMINATION:** At the time of admission, the patient was a neatly groomed and dressed, socially appropriate, cooperative adolescent who appeared older than her chronological age. Affect was depressed and anxious. Speech was rational, coherent, fluent, spontaneous, and well organized. She was not guarded or evasive, but she did deliberately withhold information that was embarrassing. She had difficulty taking responsibility for her behavior and did not have any understanding as to why she was being harassed at school. There was no psychotic thinking, hallucinations, or delusions. She had suicidal urges to choke herself with a belt. There was no homicidal ideation. Cognitive functions were intact. Insight and judgment were assessed as fair.

## II. ADMITTING DIAGNOSIS:

| | | |
|---|---|---|
| Axis I | -- | Major depression, single episode, severe. |
| Axis II | -- | No diagnosis. |
| Axis III | -- | No diagnosis. |
| Axis IV | -- | Family and school problems (3). |
| Axis V | -- | GAF: 20 |

## III. CONSULTATIONS AND LABORATORY DATA: Noncontributory.

## IV. MEDICAL PROBLEMS: None.

**V. CLINICAL COURSE:** The patient had a brief crisis intervention hospitalization. Psychiatric medications were not needed. She received intensive individual, group, and family psychotherapy. The major work was done in the family meetings. The patient was able to present her issues in a rational, coherent manner when guided by the PIW staff social worker at the meeting. Mother became more empathic. The patient and her mother were then able to plan more effectively for dealing with the issues. The treatment team, with mother's consent, determined that

PATIENT:              M██████, K█████████
HOSPITAL NUMBER:      729756
DATES OF STAY:        10/18/2005 - 10/24/2005
Page 3

homeschooling would be the safest and wisest approach to the school problems. After she stabilized with homeschooling, she could return to a different school.

During the family meetings, two factors seemed important. First, the patient had been skipped two grades. She was younger than her classmates and had a younger emotional age, but physically she appeared older than many of her classmates and she was intellectually bright. Secondly, the patient had been physically attacked by other girls in the past. This increased her vigilance and defensiveness.

At the time of discharge, the patient was no longer having any suicidal ideation. She seemed euthymic. Medications did not appear to be needed, but this can be re-evaluated on an outpatient basis.

## DISCHARGE DIAGNOSIS:

| | | |
|---|---|---|
| Axis I | -- | Major depression, single episode, severe. |
| Axis II | -- | No diagnosis. |
| Axis III | -- | No diagnosis. |
| Axis IV | -- | Family and school problems (3). |
| Axis V | -- | GAF: 45 |

**TYPE OF DISCHARGE:** The patient was discharged with maximum hospital benefit to return to home and outpatient treatment. Homeschooling was recommended to prevent recurrence of suicidal ideation.

**DISCHARGE MEDICATIONS:** None.

_____          _____
Laurence Greenwood, M.D.                  Date

LG/dm            Job: 777648
D: 10/25/05      T: 10/25/05

☐ **TRANSITION**    ☒ **DISCHARGE**

MCK TLEY, KATRICE
04/ /1990 PIW GK
ADOL XENAXIS

DATE OF DISCHARGE / TRANSITION: 10/24/05

ADDRESSOGRAPH PLATE

LIVING ARRANGEMENT: Return Home : 4202 Ft. Dupont St, SE, W, DC 20020

EMPLOYMENT/SCHOOL: IDEA Public Charter Military Academ

PLANS FOR TREATMENT AND/OR AFTERCARE:

| | |
|---|---|
| PROVIDER: Joy D. Berry, LPC | PROVIDER: Cansvella McKinley |
| ADDRESS: 650 Penn Ave, SE Suite 410 | ADDRESS: 4202 - Ft. Dupont St, SE |
| CITY, STATE, ZIP: Washington, DC 20003 | CITY, STATE, ZIP: Washington, DC 20020 |
| TELEPHONE: 202-544-0072 | TELEPHONE: 202-575-4848 |
| DATE / TIME OF APP'T: TBD by mother & Therapist | DATE / TIME OF APP'T: N/A |
| REASON: Individual + Family Therapy | REASON: Mother |

| |
|---|
| PROVIDER: |
| ADDRESS: |
| CITY, STATE, ZIP: |
| TELEPHONE: |
| DATE / TIME OF APP'T: |
| REASON: |

CRISIS INTERVENTION PLAN / TELEPHONE: 202-561-7000 ; 9N; 202-885-5600
1-800-SUICIDE

COMMUNITY SUPPORT GROUP / AGENCY SUPPORT / TELEPHONE: 202-723-2255

I/WE HAVE REVIEWED THE ABOVE DISCHARGE PLANS AND UNDERSTAND THE RECOMMENDATIONS OF THE TREATMENT TEAM:

☒ I / WE AGREE AND WILL IMPLEMENT    ☐ I / WE DISAGREE AND WILL PURSUE THE FOLLOWING PLANS:

| | | | | |
|---|---|---|---|---|
| _____, LICSW | 2/243-2079 | 10/24/05 | | |
| STAFF SIGNATURE | TELEPHONE | DATE | | |
| PATIENT SIGNATURE | 10/24/05 | Cansvella S. McKinley | 10/24/05 | |
| | DATE | PARENT / GUARDIAN SIGNATURE | DATE | FOLLOW-UP PHONE # |

The signature of the parent or legal guardian and the signature of the patient 14 through 17 years of age is required by District of Columbia statue.

## AUTHORIZATION TO RELEASE MEDICAL RECORDS INFORMATION

I, Katrice McKinley /Cansvella McKin... authorize the Psychiatric Institute of Washington, D.C. to release to the following persons or facilities, th DISCHARGE/AFTERCARE PLAN, the PHYSICIAN'S DISCHARGE ORDER, the DISCHARGE SUMMARY and the following information Psychiatric SW, Physical _____ from my medical record. I understand and agree that this information is released for t purpose of providing information for follow-up and care and for providing information about the outcome of hospitalization. I understand that I can revoke th authorization at any time except for information already released in reliance on it. I understand that I have a right to inspect my treatment record subject to th discretion of my physician. This consent will expire six months following the date of signature. I further understand that the law requires this notice:

The unauthorized disclosure of mental health information violates the provisions of the District of Columbia Mental Health Information Act of 1978. Disclosures may only be made pursuant to a valid authorization by the client or as provided in Titles III or IV of the Act. The Act provides for civil damages and criminal penalties for violations.

Information will be released only to the individuals listed below: (See above for full address)

NAME / AGENCY Joy Berry, LPC    Dist 10/28/05    NAME / AGENCY _____

NAME / AGENCY Cansvella McKinley (Mother)    NAME / AGENCY _____

| | | | |
|---|---|---|---|
| PATIENT SIGNATURE | 10/24/05 | Cansvella S. McKinley | 10/24/05 |
| | DATE | PARENT / LEGAL GUARDIAN SIGNATURE | DATE |

**CONFIDENTIAL INFORMATION:** The unauthorized disclosure of mental health information violates the provisions of the District of Columbia Mental Health Information Act of 1978.

105-138
Rev. Date (5/99)    **CHART COPY**

83

# Exhibit 17

## Integrated Des~~i~~n and Electronics Public Ch~~art~~er School

### INDIVIDUALIZED EDUCATION PROGRAM

### (IEP)

### MEETING NOTES

STUDENT K████████ M████████         SCHOOL _Idea PCS_    DATE 3/6/20██

| PARTICIPANTS (Print Name) | PARTICIPANTS (Sign Name) | DISCIPLINE |
|---|---|---|
| William Houston | _[signature]_ | Counsel - IDEA |
| Charlotte Blount | Charlotte Blount | Principal |
| ~~A~~p Coleman | Jorge Coleman | Admin Assistant |
| Portia Deal | Portia Deal | SPED Coord |
| Milton Lane | Milton Lane | World History / ... |
| Priscilla S. McKinley | CSMcKinley | Parent |
| Michelle Moody | _[signature]_ | Advocate |

Integrated Design a...d Electronics Public Charter School

Meeting Notes

Type of Meeting    SEP ____    MDT ✓    IEP ____    OTHER ____

Student  K█████ M█████    Date 3/6/2006

Time begin 1:20

aunt - Request MDT Today to find out what's going w/ student.

unt - Team has pulled academic letters from teachers see where we stand.

staff - Have as a summary on M█████ (Blount)

unt - 1st year was not a good year w/ Katrice. cause of grade student should attend summer school & mom said no because she had not done anything this yr. the yr she will not go to summer school.

aunt wanted Ms Blount to sign some papers stating was okay to attend nite school. Ms Blount said no Trice was hospitalize for weeks but school still provide work for student. Blount said the work sent home not allway come back as far as grades. Katrice been up to the school talking w/ friend's Student had a webb page

____ of  1

Integrated Design and Electronics Public Charter School

Meeting Notes

Type of Meeting    SEP ___    MDT ✓    IEP ___    OTHER ___

Student K████ M████    Date 3/6/2006

Price is in Therapy She has 52 weeks. Mom is trying to get work from the outside to help w/ Student.

Mom said student was diagnost w/ major depression.

Type of depression (single) which means it's not over.

Mom- Look like student is capable, and don't know why she's not in school.

Mom- feeling are we should find out what's keeping her from school. Huston - feels she should be tested for Psycoed + Clinical

Joel - introduced herself as SPE Coordinator and explained the paper work for Mom + request Social Emotional test be done.

Student

Advocate for mom agreed w/ School attorney that student would be tested.

Student has never been eval.

and request Eval. January 10th 2006 But meeting was reschedule.

_____ of 2

Forensic.

87

## Integrated Design and Electronics Public Charter School

Meeting Notes

Type of Meeting    SEP _____    MDT ✓    IEP _____    OTHER _____

Student  K_____ M_____    Date 3/6/2006

e advocate for memor student called and cancelled the meeting.

ie testing will cover Clinical, Psych Ed and Social Emotional

ie team has also discuss the OT PT Psychiatric and determine it was not
needed and parents in agreement. Psychiatric Report.

ston – Request the update on Psychiatric Report.

ent + Advocate – OCPS or Dr. Peigler locate and place Student

a appropriat place immediately + in addition provide home

osting ASAP.

tent request counciling log paperwork from the office but, was told

at dept was seperate its w/ Documented

i conclued this meeting. Idea PCS will complete the testing

the Above student.  Meeting end time 1.57pm.

_____ of 3

88

# Exhibit 18

# Integrated Design and Electronics Public Charter School
WASHINGTON, D.C.

### NOTICE TO PARENT OF INTENT TO EVALUATE/REEVALUATE

Date **3/6/06**

To **Consuella S. McKinley**
**4202 Fort Dn Pmt St, SE**
**Washington, DC 20020**

Ref **████████**

DOB **4-15-90**

ID# **9203090**

Telephone (H) **575-4848**

(W) **547-5800 EX 1202**

Dear **Ms McKinley**

IDEA Public Charter School is requesting that _____ be available for testing for the following tests, on the indicated date, at the school.

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TEST DATE ASSIGNED | ADMINISTERED |
|---|---|---|---|---|
| ☒ Psychological | *MHR* | | | |
| ☐ Speech/Language | | | | |
| ☒ Social History | *MHR* | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☒ Educational | *MHR* | | | |
| ☐ Hearing Screening | | | | |
| ☒ Other **Clinical** | Other *MHR* | Other | Other | |

### LIST OF TESTS WITH DESCRIPTIONS

☐ Bayley Scales of Infant Development-II - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age.

☐ Bender Visual Motor Gestalt Test - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System.

☐ Children's Apperception Test - a projective story-telling technique for personality evaluation in ages 5 to 10 years.

☐ Clinical Evaluation of Language Functions - III - assesses the child's language functioning including processing and production.

☐ Conner's Parent and Teacher Rating Scales - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported by the child's teacher, parents, or alternate caregiver.

☐ Developmental Test of Visual Motor Integration (VMI) - assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format.

☐ Expressive One Word Picture Vocabulary Test - assesses the child's single word expressive vocabulary.

☐ Fisher-Logemann Test of Articulation Competence - assesses articulation proficiency with single sounds, consonant blends, and vowel production.

☐ Goldman-Fristoe Test of Articulation - assesses the production of consonants in simple and complex contexts.

INTENT Page 1

90

## Integrated Design and Electronics Public Charter School

NOTICE TO PARENT OF INTENT TO EVALUATE/REEVALUATE

Student ▉▉▉▉▉▉   DOB *4-15-90*   Age *15*   Grade *10*   ID *920 36▉▉*

☐ **Goodenough-Harris Drawing Test** - a projective drawing procedure measuring intellectual perceptual-motor maturity a personality through the use of drawings of self and a member of the opposite sex in ages 3 to 15 11 years.

☐ **House-Tree-Person** - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents.

☐ **Kaufman Assessment Battery for Children** - assesses the ability to solve problems using simultaneous and sequential metal processes in four global areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement.

☐ **Kaufman Test of Educational Achievement (KTEA)** - an individually administered instrument measuring achievement skills in reading decoding, mathematics applications, spelling, reading comprehension, and mathematics computation.

☐ **Kinetic Family Drawing** - a projective drawing technique measuring one's perception of her family and her role within the family.

☐ **Oral Peripheral Speech Examination** - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.

☐ **Peabody Individual Achievement Test-Revised (PIAT-R)** - an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics.

☐ **Peabody Picture Vocabulary Test-Revised** - individually administered, multiple choice test measuring nonverbal, receptive vocabulary

☐ **Preschool Language Scale** - measures auditory comprehension and verbal ability skills.

☐ **Receptive One Word Picture Vocabulary Test** - assesses the child's single word receptive vocabulary.

☐ **Rorschach Psychodiagnostic Test** - a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality testing in ages 3 and older.

☐ **Test of Language Development Primary - Revised (TOLD-P)** - measures primary language proficiency and specific strengths and weaknesses in language skills.

☐ **The Vineland Adaptive Behavior Scales** - assesses adaptive and social competency skills.

☐ **Thematic Apperception Test** - a projective story-telling technique for personality evaluation in older children and adolescents.

☐ **Wechsler Adult Intelligence Scale-III (WIAS III)** : an individually administered test designed to measure the intelligence of individuals ages 16 and over.

☐ **Wechsler Individual Achievement Test (WIAT)** - a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression.

☐ **Wechsler Intelligence Scale for Children-III (WISC III)** - commonly employed individually administered test designed to measure the intelligence of individuals ages 6 1/2 to 16 1/2 years.

☐ **Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R)** - measures specific mental abilities and processes in ages 4 1/2 to 6 1/2 years.

☐ **Woodcock-Johnson Psycho-Educational Battery** - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests.

☐ **Classroom Observation** - assesses present functioning of the student within the classroom environment.

☐ **List other tests with descriptions:**



**Other factors that are relevant to be included:**

# Integrated Design and Electronics Public Charter School

## CONSENT FOR EVALUATION - INITIAL OR REEVALUATION
### (CHECK ONE ONLY - INITIAL OR REEVALUATION)

**I   INITIAL EVALUATION CONSENT   ☒**

As a result of the review of the screening information at the MDT meeting on ___3/06/06___

it was determined by the MDT meeting that your child   K____ M____

is in need of a full and individual evaluation to assist us in developing the most appropriate educational program. You have been provided a copy of the "Procedural Safeguards - Parental Rights" booklet. We would like to remind you at this time that
- granting consent for this evaluation is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide an appropriate program and may be required to initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the evaluation(s) in Section 1 1 1

**II   REEVALUATION   ☐**

The MDT received the following request for a reevaluation for _____
by ☐ LEA   ☐ parent request   ☐ teacher request   ☐ 3 year reevaluation
The MDT will collect supportive documentation in the area of the disability to determine the need for continued special education and related services. The school is required to only evaluate in those areas of documented need or consensus of the MDT (parent is a member of team). Parents have the right to request assessments to determine if the child continues to be a child with a disability. IDEA PCS may reevaluate your child, without your consent, if the school district can demonstrate that it has taken reasonable steps to get parental consent and the parent has not responded
- granting consent for this evaluation is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide a Free Appropriate Public Education program and may be required to initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the evaluation(s) on the student evaluation plan (SEP)

**III.   ☐ I give permission for IDEA Public Charter School to proceed with the evaluation(s) based on the Student Evaluation Plan (attached ) for my child.** _____

Within a reasonable period of time days after completion of the evaluation, we will hold another MDT meeting (to which you will be invited) to determine if your child is eligible for special education and related services. The written reports of all procedures administered will be provided to you at that meeting, along with explanations and interpretations. We will use this information to determine an appropriate program for your child. If records are to be obtained/released as part of this evaluation, the "Consent for Release of Records" form is completed and attached   *Portia Deal*

If you have questions or concerns at any time during the evaluation process, feel free to contact me at __202)399-4750 EX 218/219__ (telephone number)

**☒ INITIAL EVALUATION**                    **☐ REEVALUATION**

### Parent Response Section

X

☒ I agree to the proposed evaluation(s)          ☐ I do NOT agree to the proposed evaluation(s)

*Gerald S. McHugh*     ( *Parent requests school*
                          *knows 1/10/06 initial* )     __3 | 6 | 06__
                          *request date*                      Date

MDT  CONSENT FOR EVALUATION

92

# Exhibit 19

To:Special Education Department

From: Joe Palka

Re:K███████M███████

2/1/2006

I have been K███████M███████s English teacher over much of the last two years, in addition to having worked with her in my drama production last year.  Although I, at times, would be frustrated with certain idiosyncrasies in K█████'s behavior, I do believe my relationship, overall, was a good one that included much individual attention and phone calls home to her mother.  Some of the more disturbing idiosyncrasies included plagiarism, absenteeism and not doing her homework.

It is my opinion that K███████needs the individualized attention that accompanies an IEP as I feel she has engaged in some of these behaviors in order to avoid possible learning difficulties that have been out of her control.  In order to teach K█████most effectively, she must be in attendance at school and be subject to a differentiated learning plan that will accommodate these difficulties.

I will be happy to do anything to assist her in this journey, but I will need her presence in the classroom in order to be at all effective.

To:   Ms. Blount
From: Louis Koloc ner
Date: January 9, 2006
Re:   K████ M██████

    K████ was a friendly but not involved student in D.C. History and Government. She was frequently absent in the first advisory, missing almost as many days as she attended. When K████ was in class she frequently seemed to have other things on her mind. She would read aloud in class when asked but she rarely offered answers when I posed questions to the class. K████ turned in less than half of the work that was assigned.

    K████s class was small, only fourteen people including her, and the environment was conducive to asking me questions if she did not understand the material. We frequently read aloud as a class and I interjected in between paragraphs to help the students understand what they just read and to aid the auditory learners. This technique usually works very well for all of my students but K████ seemed to need more specialized attention. It would be in her best interest to get tested and receive services from special education, certainly around her reading for comprehension and retention and also for strategies to stay focused during class.

Sincerely,

Louis Koloc ner

1-6-06

Re: K███ M██████

This is to note that K███ M██████ is enrolled in my 8am World history class, here at IDEA. Since the start of the year she has displayed a pattern of class-cutting, absenteeism and tardiness to class. When present, her participation in class was often on par with or superior to other students, thus, leaving the impression that she was capable of superior grades. She has turned in, however, very little written work. Since her long-term absence, this pattern had continued. Some sort of analysis is needed, in my opinion, to get at the crux of this child's underachievement.

M. Lane, Social Studies

January 9, 2006

<u>To</u>: Ms. Charlotte Blount Lewis

<u>From</u>: Dr. Kumar.

<u>Re</u>: K███ M██████

K███ M██████ is my Chemistry student. Upon request, I turned in all her assignments for the first advisory and 2nd progress. Since then, I received only one completed assignment.

On December 5th 2005, she sent an email requesting for assistance. I have attached my response to her request. Since then, I haven't heard anything from her.

She failed the 1st progress because of her attendance. Whenever she comes to my class, she talked excessively. She talked only with particular students. Whenever I ask her to pay attention, she would request for a hall pass. Apart from that, I did not observe any behavior problems.

Skumar  9/01/06

K██████ ██████'S CAD class

K██████ ██████ was taking drafting class She is good student she was taking drafting during the 7th and 8th period she had completed the module allocated for the first 6 weeks.

The first year Drafting class is divided into 4 sessions

a. Six weeks of manual drafting which include Free hand sketching, Sketching with instruments, geometric construction and blue print reading.

b. Introduction to Computer Aided Drafting (CAD) where they learn the software (application) the use of Command, Menus, constructing geometry, and principle of drafting using computers. Technical drawing and pictorial drawing. To work on CAD projects and assignments at this stage, students should use the CAD lab located inside the school. It is difficult if a student want to work from home or anywhere away from the school premises. The student needs to have the software and hardware compatible to what we have in the school plus constant instructor support.

c. Application of all principles for different disciplines such as Architectural, Mechanical, Civil, Multimedia etc.to create working drawing for construction, manufacturing or production drawings

d. Learning three dimensional modeling for visual, multimedia, animation, this is advanced class for the first year

K██████ ██████ attended the first session regularly and completed by receiving a grade of C+, Her last attendance was October 13 which was the first week of the second session in which she demonstrated a great interest in AutoCAD, had she continued with that enthusiasm she would have gotten an excellent grade

Thank you

Yousif Ahmad
CAD Instructor

01/10/06

98

requested; The email al  mentioned should she require furth  Instruction
feel free in contacting me via email, I've yet to hear from her since my reply.

JOSYELNN BESS
SFC(R), JROTC
Army Instructor

1-6-06

Re: K████ M████████

This is to note that K████ M████y is enrolled in my 8am World history class, here at IDEA. Since the start of the year she has displayed a pattern of class-cutting, absenteeism and tardiness to class. When present, her participation in class was often on par with or superior to other students, thus, leaving the impression that she was capable of superior grades. She has turned in, however, very little written work. Since her long-term absence, this pattern had continued. Some sort of analysis is needed, in my opinion, to get at the crux of this child's underachievement.

M. Lane, Social Studies

Law Offices
# DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass DAlton*
William E. Houston¥
Laura E. Duos✦
Jessica Smith ★
_____
* ADMITTED IN VA, DC, & WVA
¥ ADMITTED IN DC, PA, & U.S. SUPREME COURT
Ⓐ ADMITTED IN DC & PA
✦ ADMITTED IN MD& DC
★ ADMITTED IN DC & VA

## FIVE DAY DISCLOSURE NOTICE
15 September 2006

*Transmitted via facsimile*

Ms. Roberta Gambale
1220 L Street, N.W.
Suite 700
Washington, DC 20005

*Re: K██████ M████████*        D.O.B.  15 April 1990

Dear Ms. Gambale:

    We have scheduled a due process for K█████ M████████y on 22 September 2006 at 11:00 a.m. The purpose of this letter is to provide you with the following list of documents and witnesses on which we may rely in the hearing.

## DOCUMENTS FOR 5 DAY*

| | | |
|---|---|---|
| IDEA-01 | 24FEB06 | Due Process Hearing Complaint |
| IDEA-02 | 21MAR06 | Hearing Notice |
| IDEA-03 | 07APR06 | Answer, Motion for Joinder and Motion to Dismiss |
| IDEA-04 | 11APR06 | Petitioner's Response to the Notice of Insufficiency and/or Motion |
| IDEA-05 | UNDATED | So You Wanna Kno About Me::.. |
| IDEA-06 | 27OCT05 | Discharge Summary |
| IDEA-07 | 10JAN05 | Letter from Ms. Moody to IDEA SEC (faxed on 3 JAN 2006) |
| IDEA-08 | 06JAN06 | Teacher Narratives |
| IDEA-09 | 10JAN06 | Letter from IDEA to Ms McKinley |
| IDEA-10 | 10JAN06 | Letter from Gambale to IDEA |
| IDEA-11 | 12JAN06 | Letter from IDEA to Gambale |
| IDEA-12 | 13JAN06 | Notice to Parent of Intent to Evaluate/Reevaluate |
| IDEA-13 | 18JAN06 | Letter from Gambale to IDEA |
| IDEA-14 | 20JAN06 | Letter from Houston to Gambale |

**Five Day Disclosure,** *continued*

| | | |
|---|---|---|
| IDEA-15 | 01FEB06 | Conversation notes of Ms. Deal |
| IDEA-16 | 02FEB06 | MDT Meeting Notes |
| IDEA-17 | 02FEB06 | Internal scheduling memo |
| IDEA-18 | 03FEB06 | Letters to Moody and McKinley from IDEA |
| IDEA-19 | 13FEB06 | Letter to Gambale from Houston |
| IDEA-20 | 06MAR06 | IEP Meeting Notes |
| IDEA-21 | 06MAR06 | Notice to Parent of Intent to Evaluate/Reevaluate |

We provided the above documents on 19 April 2006, prior to the dismissal of the original complaint. In order to reduce paperwork, we will be providing only the following documents. If counsel for the parents require documents 1-21, we will happy to provide them.

| | | |
|---|---|---|
| IDEA-22 | 19JUL06 | Due Process Complaint |
| IDEA-23 | 26JUL06 | Answer and Motion to Dismiss |
| IDEA-24 | UNDATED | Telephone phone logs of Dr. McCants |

## WITNESSES*

| | |
|---|---|
| Ms. Charlotte Blount | – Principal, IDEA PCS or designee |
| Mr. Bhagan | – Assistant Principal, IDEA PCS |
| 1st SGT Stanley Conyer | – Director, IDEA PCS |
| Ms. Portia Deal | – SPED Coordinator, IDEA PCS or designee |
| Ms. Eileen Euille | – SPEC Coordinator, IDEA PCS |
| Mr. Joe Palka | –English Teacher, IDEA PCS |
| Ms Josyelynn Bess | – Army Instructor, IDEA PCS |
| Ms. Louis Kolodner | – DC History and Government Teacher, IDEA PCS |
| Dr. Kumar | – Chemistry Teacher, IDEA PCS |
| Ms. Yasif Ahmad | – Drafting Instructor, IDEA PCS |
| Mr. Milton Lane | – World History Teacher, IDEA PCS |
| Ms. Tonya Coleman | – SPED Administrative Assistant, IDEA PCS |
| Dr. McCants | – Clinical Psychologist |

*We reserve the right to examine any witnesses ordered by DCPS and Parent as if they were witnesses for our client and rely upon any documents offered into evidence by DCPS or the parent. Additionally, we reserve the right to call witness not included in this Five Day Disclosure to rebut any claims or allegations made by the parent or DCPS and their witnesses.

We refute all the allegations made in the 19 July 2006 Due Process Hearing Request and we will be seeking dismissal of all claims against the IDEA Public Charter School. We are also seeking attorney's fees as outlined in the motion to dismiss.

Sincerely,

William E. Houston, esq

102

Law Offices

# DALTON, DALTON, & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass DAlton*
William E. Houston¥
Talib S. Abdus-Shahid⊛
Laura E. Duos✛

\* ADMITTED IN VA, DC, & WVA
¥ ADMITTED IN DC, PA, & U.S. SUPREME COURT
⊛ ADMITTED IN DC & PA
✛ ADMITTED IN MD

## FIVE DAY DISCLOSURE NOTICE

19 April 2006

*Transmitted via facsimile*

Ms. Roberta Gambale
1220 L Street, N.W.
Suite 700
Washington, DC 20005

*Re: K███ M█████*          D.O.B.  15 April 1990

Dear Ms. Gambale:

     We have scheduled a due process for Katrice McKinley on 26 April 2006 at 9:00 a.m. The purpose of this letter is to provide you with the following list of documents and witnesses on which we may rely in the hearing.

## DOCUMENTS FOR 5 DAY*

| | | |
|---|---|---|
| IDEA-01 | 24FEB06 | Due Process Hearing Complaint |
| IDEA-02 | 21MAR06 | Hearing Notice |
| IDEA-03 | 07APR06 | Answer, Motion for Joinder and Motion to Dismiss |
| IDEA-04 | 11APR06 | Petitioner's Response to the Notice of Insufficiency and/or Motion |
| IDEA-05 | UNDATED | So You Wanna Kno About Me::... |
| IDEA-06 | 27OCT05 | Discharge Summary |
| IDEA-07 | 10JAN05 | Letter from Ms. Moody to IDEA SEC (faxed on 3 JAN 2006) |
| IDEA-08 | 06JAN06 | Teacher Narratives |
| IDEA-09 | 10JAN06 | Letter from IDEA to Ms McKinley |
| IDEA-10 | 10JAN06 | Letter from Gambale to IDEA |
| IDEA-11 | 12JAN06 | Letter from IDEA to Gambale |
| IDEA-12 | 13JAN06 | Notice to Parent of Intent to Evaluate/Reevaluate |
| IDEA-13 | 18JAN06 | Letter from Gambale to IDEA |
| IDEA-14 | 20JAN06 | Letter from Houston to Gambale |
| IDEA-15 | 01FEB06 | Conversation notes of Ms. Deal |

103

Five Day Disclosure, *continued*

| IDEA-16 | 02FEB06 | MDT Meeting Notes |
| IDEA-17 | 02FEB06 | Internal scheduling memo |
| IDEA-18 | 03FEB06 | Letters to Moody and McKinley from IDEA |
| IDEA-19 | 13FEB06 | Letter to Gambale from Houston |
| IDEA-20 | 06MAR06 | IEP Meeting Notes |
| IDEA-21 | 06MAR06 | Notice to Parent of Intent to Evaluate/Reevaluate |

## WITNESSES*

Ms. Charlotte Blount        – Principal, IDEA PCS or designee
Ms. Portia Deal             – SPED Coordinator, IDEA PCS or designee

*We reserve the right to examine any witnesses ordered by DCPS and Parent as if they were witnesses for our client and rely upon any documents offered into evidence by DCPS or the parent. Additional, we reserve the right to call witness not included in this Five Day Disclosure to rebut any claims or allegations made by the parent or DCPS and their witnesses.

We refute all the allegations made in the 24 February 2006 Due Process Hearing Request and we will be seeking dismissal of all claims against the IDEA Public Charter School. We are also seeking attorney's fees as outlined in the motion to dismiss.

Sincerely,

William E. Houston, esq

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



### *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals wit**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

**A.    INFORMATION ABOUT THE STUDENT:**

Name of the Student: K█████ M████████  Date of Birth: <u>April 17, 1990</u>
Address: <u>4202 Fort Dupont St. SE Washington, DC 20020</u>
Home School: <u>IDEA Public Charter School Center</u>
Present School of Attendance: <u>Same [1]</u>

Is this a charter school? <u>No</u>        (If yes, you must also provide a copy of this notice to the charter school principal or director)

---

[1] Pursuant to the recommendations of her doctors, K.M. has not yet returned to school since her release from the hospital.

1

Parent/Guardian of the Student: Ms. Consuela McKinley

Address (if different from the student's above): same

B.    Legal Representative/Attorney:

Name: Roberta L. Gambale, Esq. ( James Brown and Associates, PLLC)
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone (w) (202)742-2000 (ext. 2021) (Fax) (202) 742-2098    (e-mail) Rgambale@jeblaw.biz
Will attorney / legal representative attend the resolution session?      X Yes       ☐ No

C.    Complaint Made Against (check all that apply):

X DCPS school (name of the school if different from page one)

D.    Resolution Session Meeting Between Parent/Representative and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint. I also
understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive
the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for this process.

E.    Mediation Process:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at
no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session
Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

I am requesting an administrative due process hearing only.

F.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please
complete the following questions (attach additional pages if needed):

I. Nature of the problem.

Background

K.███ M██████ ( hereinafter "K.M.") DOB: 4/15/90, is a 10th grade student at IDEA Public Charter
School. In October 2005, after a suicide attempt at the school, K.M. was hospitalized at the
Psychiatric Institute of Washington ("PIW"). Upon her release from PIW, it was recommended that
K.M. receive home educational services. While parent promptly provided a copy of Dr. Laurence
Greenwood's recommendation to both the Charter School and District of Columbia Public Schools
("DCPS") requested that home services be provided, such services have not been provided to K.M.
No further action was taken by either DCPS or IDEA PCS regarding K.M. In December 2005, parent
retained the services of counsel and a written request for both evaluations and/or a meeting to review
diagnosis made at PIW and discuss K.M.'s educational needs.

2

Issues

1. District of Columbia Public Schools and/or IDEA Public Charter School failed to evaluate and/or identify K.M. as a disabled student in need of Special Education Services pursuant to its' "child find" obligation and DC Municipal Regulations

The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, at Sec. 101, § 612(3)(A), requires, the public agency to ensure that:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the District and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and currently receiving needed special education and related services.

The public agency's child find obligation is an affirmative one. Lincoln County Sch. Dist. A.A., 39 IDELR 185 (D.Or. 2003). Wise vs. Ohio Dept of Education, 80 F.3d. 177, 181 (6th Cir. 1996); Robertson County School System vs. King, 24 IDELR 1036 (6th Cir. 1996) (affirmative obligation on states and local school districts—not parents-to identify, locate and evaluate all children, including migrants and the homeless, with disabilities residing within the jurisdiction who have disabilities and are in need of special education or related services.) DCPS' unawareness of a student's possible disability and need for special education likewise will not relieve it of its obligation, if it should have suspected the student might have such a disability. Reid vs. District of Columbia, 310 F. Supp 2d 137 (D.D.C. 2004); 30 DCMR Sec. 3004.1(a) (child with a suspected disability to be referred to IEP team by school staff.) The proposed regulation at 34 C.F.R. 300.325(a)(1)(2) restate the statutory requirement and make it applicable to all children who are "suspected of being a child with a disability under Section 300.7 and in need of special education, even though they are advancing from grade to grade." The IDEIA's sweeping child find requirement applies to all children residing in the District of Columbia regardless of:

(a) The severity of the disability;

(b) Whether the child is in the custody or under the jurisdiction of any public or private agency or institution;

(c) Whether the child has never attended or will never attend public school; and

(d) Whether the District of Columbia serves infants and toddlers under Part C or preschool children under Part B.

DC Municipal Regulations place the obligation to conduct comprehensive evaluations of the student upon the LEA. ( 30 DCMR Sec 3005). In the case at hand, neither DCPS nor the Charter school lived up to their obligations to identify and/or evaluate K.M. Both DCPS and the Charter School were on notice that K.M. was a student with a disability and of the fact that she was diagnosed with major depression and that depression. The parent timely informed the Charter School after K.M.'s release from PIW of the fact that the doctor was recommending services. When the Charter School failed to respond, the parent sent a letter to DCPS Superintendent Janey's Office advising him of the situation and requesting assistance on or about November 8, 2005.

In addition, many of the teacher's admitted to having concerns about K.M.'s academic performance during the first advisory of the 05/06 school year. One teacher reported that K.M.

appeared to be distracted in class and often failed to turn in class work. In a written statement teacher asserted that " *Katrice seems to need more specialized attention. It would be in her interest to get tested and receive services from special education*" Other teachers as well report similar problems and recommended services. According to her English teacher, who taught K.M. not only in 10th grade but also in 9th grade "*It is my recommendation that Katrice be examined for possible disabilities, academic or emotional that may be keeping her from accomplishing much of what she wishes to accomplish in school*".

As a result of DCPS failure to meet their obligations under "Child Find" K.M. has been denied a Free and Appropriate Public Education ("FAPE") and should be entitled to compensatory relief to help remediate the harm caused by Charter School/ DCPS's failure to identify and/or program for this student. See  School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts, 471 U.S. 359 (1985); Diatta v. District of Columbia 319 F. Supp.2d 57, 65 D.D.C. 2004 Kerkam I, 862 F.2d 84 (D.C. Cir. 1991).

## II. Issues presented.

- Whether District of Columbia Public Schools ("DCPS") and/or IDEA Public Charter School denied K.M. a free and appropriate public education by failing to meet their child find obligation under either the IDEA and/or IDEIA and/or failed to comply with DC Municipal Regulations?

- Whether DCPS, as the SEA, failed to identify K.M. as a student with a disability pursuant to it's child find obligation?

- Whether the Charter School, as the LEA, failed to evaluate and/or identify this student as eligible for special education services?

## III. To the extent known to you at this time, how can this problem be resolved?

WHEREFORE, the parent, by and through counsel, requests the following relief:

1. A finding that DCPS/Charter School denied K.M. FAPE by failing to identify and/or evaluate her in a timely manner;

2. That either DCPS and/or the Charter School shall  fund the following evaluations   to include but not limited to: a) psycho-educational evaluation; b) clinical psychological; c) speech and language assessment; d) social history ; e) functional behavioral assessment; and e) classroom observation, as well as, any evaluations warranted based upon the findings of these such as either a psychiatric evaluation and/or neuropsychological evaluation and/or audiological evaluation and/or occupational therapy evaluation;

3. That either DCPS and/or the Charter School shall convene an MDT meeting within ten (10) calendars days of completion of the assessments for the purpose of reviewing evaluations; revising the IEP; discussing compensatory education; discussing and determining placement;

4. That at the afore mentioned meeting, DCPS and/or Charter School shall secure the participation of all necessary IEP team members to include but not limited to the appropriate personnel required to review assessments and develop an appropriate program for this child and discuss placement and compensatory education;

4

5. A Notice of Placement to a suitable placement shall be issued by the public agency with 5 days (public school) or within 30 days (private school) with parent participation;

6. That DCPS and/or Charter agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

7. All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

8. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter School and/or DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

9. In the event that the DCPS and/or the Charter School shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall have the authority to use self help without further notice to the Charter School/DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the Charter School/DCPS can come into compliance and properly assess, program and/or participate;

10. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

11. 19.. The DCPS and/or Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

12. That DCPS and/or Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

13. That DCPS and/or Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School/DCPS, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

14. That Charter School and/or DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement

Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(3)(C), respond to the parent request alleging any insufficiency of notice.

15. That DCPS' and/or the Charter School's failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, 615(c)(2)(C), and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time.

16. That DCPS and/or the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

17. That DCPS and/or the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a psychiatrist and/or clinical psychologist; 5) an occupational therapist; and/or 6) any person(s) who conducted any assessments on the student.

18. That DCPS' and/or the Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between Charter School/DCPS and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

19. A finding that the parent is the prevailing party in this action.

G.  **Accommodations and Assistance Needed:**

- N/A

Dated this 24th day of February, 2006

Roberta L. Gambale, Esq.,
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021
Counsel for the Parent

6

Mail, fax or deliver this complaint notices to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC  20002
Fax number: 202/442-5556

7

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Robert Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

! Admitted in Bolivia Only

# *FAX COVER SHEET*

DATE:  February 27, 2006

TO: Special Education Coordinator, IDEA, PCS

FROM: Yamileth Amaya, Paralegal

PHONE: 202 399-4750

FAX NO: 202 399-4387

SUBJECT: K███ M███
    DOB: 4/15/90

NUMBER OF PAGES, INCLUDING FAX COVER SHEET: **8**

COMMENTS:  Please find attached the Due Process Complaint filed to DCPS for the above mentioned student.

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

) Admitted Only in Maryland.  Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.
* Admitted Only in Virginia.  Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D C ''

```
***********************
*** TX REPORT ***
***********************

TRANSMISSION OK

TX/RX NO                    2997
RECIPIENT ADDRESS           94425556
DESTINATION ID
ST. TIME                    02/24 15:24
TIME USE                    01'04
PAGES SENT                  8
RESULT                      OK
```

## James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Ann Kreske* |
| Christopher L. West | Telephone: (202) 742-2000 | Roxanne Neloms |
| | Facsimile: (202) 742-2098 | |
| | | ! Admitted in Bolivia Only |
| | e-mail: Admin@Jeblaw.biz | |

# FAX COVER SHEET

TO:    Ms. Newsome, DCPS Student Hearing Coordinator

FROM:  R. Gambale, Esq.

DATE:  2/24/06

FAX NO: (202)442-5556

SUBJECT:  Due Process Hearing Request – K███ M█████

NUMBER OF PAGES, INCLUDING FAX COVER SHEET:

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify Ja and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

113

03/22/2005  29:52    202442558            STUDENT HEARINGS    F

# District of Columbia Public Schools
*State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8th Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



## HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:   Parent (or Representative): _R. GAMBALE / W. HOUSTON_   Fax No.: _742-2098_
                                                                    _(703) 739-2323_

LEA Legal Counsel: _R. PRIMES_

RE:   _M██████, K██████_   and (LEA) DOB: _4/17/90_
         Student's Name

FROM:   _SHARON NEWSOME_
         Special Education Student Hearing Office Coordinator

DATE SENT:   _3/21/06_

===============================================================

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_3/24/06_. Please be advised that the hearing has been scheduled for:

DATE:   _4/26/06_

TIME:   _9:00 Am_

AT:   825 North Capitol Street, NE, Washington, DC
         8th Floor

ASSIGNED HEARING OFFICER: _____

[X] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request in *writing on the attached form* to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[ ]   THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least *five business days* prior to the hearing with copies to the Student Hearing Office.

114

# District of Columbia Public Schools
## STATE EDUCATION AGENCY

### Confidential

| | |
|---|---|
| K____ M_____, Student | ) |
| | ) |
| Date of Birth: 17 April 1990 | )    Hearing Date: 26 April 2006 |
| | ) |
|     Petitioner, | )    Request for Hearing: 24 February 2006 |
| | ) |
|     v. | ) |
| | ) |
| IDEA P.C.S. | ) |
| | } |
|     Respondent | ) |
| | ) |

### ANSWER
### and
### MOTION TO DISMISS

Comes now the IDEA Public Charter School (IDEA), by and through counsel, and answers the allegations in the 24 February 2006 Due Process Hearing Request and request to dismiss the petition.

### Background

Petitioner filed the instant claim stating that IDEA was not a public charter school.[1] The petitioner specifically named DCPS as the sole respondent.[2]

The petitioner did not name IDEA PCS therefore, the complaint was not fully effectuated. Under the Federal Rules of Civil Procedure[3], when commencing any action, the complainant must name the parties. Rule 10 states, "In the complaint the title of the action shall include the names of all the parties." When the petitioner failed to check any of the boxes, it failed to name

---

[1]*See*, page 1 of the Due Process Complaint Notice section A. Information About the Student, "Is this a charter school? NO (Attachment 1)

[2]*See*, page 2 of the Due Process Complaint Notice, Section C. Complaint Made Against (check all that apply): "X DCPS school (name of the school if different from page one)." (Attachment 1)

[3]We are using the Federal Rules of Civil Procedure because it is the only place we can look to for pleadings not covered under IDEIA.

ANSWER – CONTINUED

any party, let alone all the parties.

Petitioner may argue that upon reading of the complaint, it is clear the allegations are against both DCPS and IDEA, however, the complaint does not cross the threshold of naming the parties. Additionally, since the complaint alleges violations against both IDEA and DCPS it is unclear from whom the petitioner is seeking redress.

Petitioner may then argue that since it is clear from the allegations, DCPS and IDEA had a duty to reply and state a cause of insufficiency in the complaint, but that only relates to the name of the child, the child's residences, the school the child attends, a description of the problems, and the resolutions of the problems. IDEA finds no insufficiency according to IDEIA, only who the complaint is against.

The starting point of all litigation is naming the parties. If petitioner does not name the parties, it is not the unnamed parties responsibility or duty to inform the petitioner of that failing. The petitioner used the model form provided by DCPS SEA. IDEIA does not require petitioner to use the model form, but when the petitioner decides to use the model form, he must then adhere to the form. And in this case, the form requires the petitioner to specifically mark the boxes to identify the parties being sued.

Additionally, it is the practice of DCPS SEA to generate a scheduling memorandum on all cases, outlining the date the resolution meeting is due and the date the answer is due. IDEA never received that memorandum, therefore IDEA was not aware that the complaint was ever filed with DCPS or whether, DCPS SEA also noted the lack of parties and therefore decided not to issue the scheduling memorandum.

Respondent, IDEA did not answer the hearing request in a timely fashion nor hold a resolution meeting because the complaint never stated against whom the student was making the allegations. Additionally, the complaint specifically waives the resolution meeting and by this document, we also waive the resolution meeting.

When IDEA was informed of the hearing date was set for 26 April 2006, IDEA reread the complaint and decided an answer was prudent. Therefore, IDEA is now answering the allegations out of time because the petitioner did not name IDEA as a defendant.

## Reply

The respondent, IDEA deny all allegations against them.

ANSWER – CONTINUED

## Conclusion

For all the foregoing reasons, IDEA denies all the allegations and will be asking for a dismissal for failure to name IDEA as a respondent/defendant.  If this case proceed, we will also be requesting attorney's fees from the petitioner.

Respectfully submitted

William E. Houston
Counsel for IDEA PCS

## CERTIFICATE OF SERVICE

I, William Houston, certify that I transmitted a copy of the foregoing Answer to the 16 February 2006 Complaint by facsimile on 7 April 2006 to Ms. Roberta Gambale and Ms. Rhondalyn Primes, Esquires.

Respectfully,

William E. Houston

117

03/27/2006   22:51     2024425B                STUDENT HEARING   FF                    PAGE   02/29
                                         James E Brown & Assoc.                          7:17/009

02/24/2003 16:24 FAX  2027422058

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



### Due Process Complaint Notice

- The form is used to give notice of a due process complaint to the District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals wit**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- **Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.** Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

A.  ## INFORMATION ABOUT THE STUDENT:

Name of the Student: K█████ M█████    Date of Birth: **April 17, 1990**
Address: **4202 Fort Dupont St. SE Washington, DC 20020**
Home School: **IDEA Public Charter School Center**
Present School of Attendance: **Same** [1]

Is this a charter school? **No**    (If yes, you must also provide a copy of this notice to the charter school principal or director)

---

[1] Pursuant to the recommendations of her doctors, K.M. has not yet returned to school since her release from the hospital.

1         ATTACHM    118

03/27/2006  08:51   202442555    STUDENT HEARINGS    F    23/38

James E Brown & Assoc.

02/24/2006 15:24 FAX  2027422095

Parent/Guardian of the Student: Ms. Consuela McKinley

Address (if different from the student's above): same

B.    Legal Representative/Attorney:

Name: Roberta L. Gambale, Esq. ( James Brown and Associates, PLLC)
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone: (w) (202)742-2000 (ext 202)) (fax) (202) 742-2098    (e-mail) Rgambale@jeblaw.biz
Will attorney / legal representative attend the resolution session?    X Yes

C.    Complaint Made Against (check all that apply):

X DCPS school (name of the school if different from page one)

D.    Resolution Session Meeting Between Parent/Representative and LEA:

I understand that it is my right to have a resolution meeting to resolve this complaint. I also
understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive
the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for this process.

E.    Mediation Process:

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at
no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session
Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

I am requesting an administrative due process hearing only.

F.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please
complete the following questions (attach additional pages if needed):

I.  Nature of the problem.

Background

K.M. ( hereinafter "K.M.") DOB: 4/15/90, is a 10th grade student at IDEA Public Charter
School.  In October 2005, after a suicide attempt at the school, K.M. was hospitalized at the
Psychiatric Institute of Washington ("PIW"). Upon her release from PIW, it was recommended that
K.M. receive home educational services.  While parent promptly provided a copy of Dr. Laurence
Greenwood's recommendation to both the Charter School and District of Columbia Public Schools
("DCPS") requested that home services be provided, such services have not been provided to K.M.
No further action was taken by either DCPS or IDEA PCS regarding K.M. In December 2005, parent
retained the services of counsel and a written request for both evaluations and/or a meeting to review
diagnosis made at PIW and discuss K.M.'s educational needs.

119

03/27/2006   09:51   2024425S1                    STUDENT HEARINGS   IF                          04/23

02/24/2005 15:24 FAX  2027622088                James E Brown & Assoc.

__Issues__

1. __District of Columbia Public Schools and/or IDEA Public Charter School failed to__
__evaluate and/or identify K.M. as a disabled student in need of Special Education__
__Services pursuant to its "child find" obligation and DC Municipal Regulations__

The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446,
at Sec. 101, § 612(3)(A), requires, the public agency to ensure that:

> All children with disabilities residing in the State, including
> children with disabilities who are homeless children or are wards
> of the District and children with disabilities attending private
> schools, regardless of the severity of their disabilities, and who
> are in need of special education and related services, are
> identified, located, and currently receiving needed special
> education and related services.

The public agency's child find obligation is an affirmative one. Lincoln County Sch. Dist. A
.A., 39 IDELR 185 (D.Or. 2003). Wise vs. Ohio Dept of Education, 80 F.3d. 177, 181 (6th
Cir. 1996); Robertson County School System vs. King, 24 IDELR 1036 (6th Cir. 1996)
(affirmative obligation on states and local school districts—not parents-to identify, locate and
evaluate all children, including migrants and the homeless, with disabilities residing within
the jurisdiction who have disabilities and are in need of special education or related services.)
DCPS' unawareness of a student's possible disability and need for special education likewise
will not relieve it of its obligation, if it should have suspected the student might have such a
disability. Reid vs. District of Columbia, 310 F. Supp.2d 137 (D.D.C. 2004); 30 DCMR Sec.
3004.1(a) (child with a suspected disability to be referred to IEP team by school staff.) The
proposed regulation at 34 C.F.R. 300.325(a)(1)(2) restate the statutory requirement and make
it applicable to all children who are "suspected of being a child with a disability under
Section 300.7 and in need of special education, even through they are advancing from grade to
grade." The IDEIA's sweeping child find requirement applies to all children residing in the
District of Columbia regardless of:

    (a)    The severity of the disability;

    (b)    Whether the child is in the custody or under the jurisdiction of any public
        or private agency or institution;

    (c)    Whether the child has never attended or will never attend public school;
        and

    (d)    Whether the District of Columbia serves infants and toddlers under Part C
        or preschool children under Part B.

DC Municipal Regulations place the obligation to conduct comprehensive evaluations of the
student upon the LEA. ( 30 DCMR Sec 3005). In the case at hand, neither DCPS nor the Charter
school lived up to their obligations to identify and/or evaluate K.M. Both DCPS and the Charter
School were on notice that K.M. was a student with a disability and of the fact that she was diagnosed
with major depression and that depression. The parent timely informed the Charter School after
K.M.'s release from PIW of the fact that the doctor was recommending services. When the Charter
School failed to respond, the parent sent a letter to DCPS Superintendent Janey's Office advising him
of the situation and requesting assistance on or about November 8, 2005.

In addition, many of the teacher's admitted to having concerns about K.M.'s academic
performance during the first advisory of the 05/06 school year. One teacher reported that K.M.

3

03/27/2025  25:51    20244255                    STUDENT HEARING  FF                    PAGE  05/08
                                                                                        005/008

02/24/2009 15:24 FAX 2027422098              James E Brown & Asso.

appeared to be distracted in class and often failed to turn in class work. In a written statement the teacher asserted that " *Katrice seems to need more specialized attention. It would be in her best interest to get tested and receive services from special education*" Other teachers as well reported similar problems and recommended services. According to her English teacher, who taught K.M. not only in 10th grade but also in 9th grade "*It is my recommendation that Katrice be examined for possible disabilities, academic or emotional that may be keeping her from accomplishing much of what she wishes to accomplish in school*".

As a result of DCPS failure to meet their obligations under "Child Find" K.M. has been denied a Free and Appropriate Public Education ("FAPE") and should be entitled to compensatory relief to help remediate the harm caused by Charter School/ DCPS's failure to identify and/or program for this student.   See  School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts, 471 U.S. 359 (1985); Diatta v. District of Columbia 319 F. Supp.2d 57, 65 D.D.C. 2004 Kerkam 1, 862 F.2d 84 (D.C. Cir. 1991).

## II. Issues presented.

- Whether District of Columbia Public Schools ("DCPS") and/or IDEA Public Charter School denied K.M. a free and appropriate public education by failing to meet their child find obligation under either the IDEA and/or IDEIA and/or failed to comply with DC Municipal Regulations?

- Whether DCPS, as the SEA, failed to identify K.M. as a student with a disability pursuant to it's child find obligation?

- Whether the Charter School, as the LEA, failed to evaluate and/or identify this student as eligible for special education services?

## III. To the extent known to you at this time, how can this problem be resolved?

WHEREFORE, the parent, by and through counsel, requests the following relief:

1. A finding that DCPS/Charter School denied K.M. FAPE by failing to identify and/or evaluate her in a timely manner;

2. That either DCPS and/or the Charter School shall  fund the following evaluations  to include but not limited to; a) psycho-educational evaluation; b) clinical psychological; c) speech and language assessment; d) social history ; e) functional behavioral assessment; and e) classroom observation, as well as, any evaluations warranted based upon the findings of these such as either a psychiatric evaluation and/or neuropsychological evaluation and/or audiological evaluation and/or occupational therapy evaluation;

3. That either DCPS and/or the Charter School shall convene an MDT meeting within ten (10) calendars days of completion of the assessments for the purpose of reviewing evaluations; revising the IEP; discussing compensatory education; discussing  and determining placement;

4. That at the afore mentioned meeting, DCPS and/or Charter School shall secure the participation of all necessary IEP team members to include but not limited to the appropriate personnel required to review assessments and develop an appropriate program for this child and discuss placement and compensatory education;

4

121

03/27/2006  08:51   202442555           STUDENT HEARINGS  F                    ☎ 008/098

02/24/2008 15:26 FAX  2027422093                James E Brown & Assoc.

5.  A Notice of Placement to a suitable placement shall be issued by the public agency with 5 days (public school) or within 30 days (private school) with parent participation;

6.  That DCPS and/or Charter agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

7.  All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

8.  Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter School and/or DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

9.  In the event that the DCPS and/or the Charter School shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall have the authority to use self help without further notice to the Charter School/ DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the Charter School/DCPS can come into compliance and properly assess, program and/or participate;

10. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student, no later than sixteen (16) business hours prior to the convening of any meeting;

11. 19. The DCPS and/or Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

12. That DCPS and/or Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those options were rejected; iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

13. That DCPS and/or Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School/DCPS, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

14. That Charter School and/or DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement

03/27/2006  23:51    2024422556        STUDENT HEARING  FF                    PAGE  07/09
                                            James E Brown & Assoc.                          2007/008

03/24/2006 15:25 FAX  2027422098

Mail, fax or deliver this complaint notices to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

7

23/27/2005  28:51  202442555                     STUDENT HEARINGS    F                  PAGE  23/29
                                                                                         008/008
02/24/2006  15:25 FAX  2027422098              James E. Brown & Assoc.

Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the parent's request alleging any insufficiency of notice.

15. That DCPS' and/or the Charter School's failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time.

16. That DCPS and/or the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

17. That DCPS and/or the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons:  1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a psychiatrist and/or clinical psychologist; 5) an occupational therapist; and/or 6) any person(s) who conducted any assessments on the student.

18. That DCPS' and/or the Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between Charter School/DCPS and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

19. A finding that the parent is the prevailing party in this action.

G.  Accommodations and Assistance Needed:

- N/A

Dated this 24th day of February, 2006

Roberta L. Gambale, Esq.
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021
Counsel for the Parent

6

03/27/2006  22:51  202442555¹                    STUDENT HEARINGS   F

02/24/2006 15:24 FAX 2027422088          James E Brown & Assoc.

## James E. Brown & Associates, PLLC
### A Professional Limited Liability Company

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

! Admitted in Bolivia Only

# FAX COVER SHEET

TO:   Ms. Newsome, DCPS Student Hearing Coordinator

FROM: R. Gambale, Esq.

DATE: 2/24/06

FAX NO: (202)442-5556

SUBJECT: Due Process Hearing Request – K███M███████

NUMBER OF PAGES, INCLUDING FAX COVER SHEET:

COMMENTS:

STATEMENT OF CONFIDENTIALITY:
The Information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

125

# FACSIMILE TRANSMISSION COVER SHEET
## DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

**DATE:** 7 April 2006

**TO:** SHARON NEWSOME

**AT FAX:** 202 442-5556

**FROM:** WILLIAM HOUSTON

**RE:** K▬ M▬ - ANSWER AND Motion to Dismiss

**NUMBER OF PAGES INCLUDING COVER SHEET:** 12

**COMMENTS:** PLEASE PASS TO HEARING OFFICER D. SMITH

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

P. 1

\* \* \* Transmission Result Report(Memory TX) ( Apr. 7. 2006  2:17PM )

25  Dalton, Dal        en

Date/Time: Apr. 7. 2006  2:15PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 0952 Memory TX | SHO 202-442-5556 | P. 12 | OK | |

```
Reason for error
    E.1) Hang up or line fail            E.2) Busy
    E.3) No answer                       E.4) No facsimile connection
```

**FACSIMILE TRANSMISSION COVER SHEET**
DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

DATE:           7 April 2006

TO:             SHARON NEWSOME

AT FAX:         202 442-5556

FROM:           WILLIAM HOUSTON

RE:             K███ M█████—ANSWER AND Motion to Dismiss

NUMBER OF PAGES INCLUDING COVER SHEET:          12

PLEASE PASS TO HEARING OFFICER D. SMITH
COMMENTS:

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

127

# FACSIMILE TRANSMISSION COVER SHEET

### DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

**DATE:** 7 April 06

**TO:** Ms. Rhondalyn Primes

**AT FAX:** 202 442-5098

**FROM:** WILLIAM HOUSTON

**RE:** K▓▓▓ M▓▓▓▓ – Answer and Motion to Dismiss

**NUMBER OF PAGES INCLUDING COVER SHEET:** 13

**COMMENTS:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

* * * Transmission Result Report(Memory TX) ( Apr. 7. 2006  2:26PM ) * * *
2) Dalton, Da

Date/Time: Apr. 7. 2006  2:13PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 0953 Memory TX | OGC 202-442-5098 | P. 12 | OK | |

-------------------------------------------------------------------------------
Reason for error
  E.1) Hang up or line fail                    E.2) Busy
  E.3) No answer                               E.4) No facsimile connection

## FACSIMILE TRANSMISSION COVER SHEET

DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSFEDLAW@AOL.COM

7 April 06

DATE:

TO:            Ms. Rhondalyn Primes

AT FAX:        202 442-5098

FROM:          WILLIAM HOUSTON

RE:            ███ M███ — Answer and Motion to Dismiss

NUMBER OF PAGES INCLUDING COVER SHEET:        13

COMMENTS:

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

129

# FACSIMILE TRANSMISSION COVER SHEET
## DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

**DATE:** 7 April 2006

**TO:** MS. ROBERTA GAMBALE

**AT FAX:** 202 742-2098

**FROM:** WILLIAM HOUSTON

**RE:** K████ M██████ – Answer – Motion to Dismiss

**NUMBER OF PAGES INCLUDING COVER SHEET:** 13

**COMMENTS:** PLEASE DELIVER ASAP:

*******************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

*******************************************************************

* * * Transmission Result Report (Memory TX) ( Apr. 7. 2006 2:13PM

1)
2) Dalton, Dal

Date/Time: Apr. 7. 2006  2:13PM

| File No. | Mode | Destination | Pg(s) | Result | nt |
|---|---|---|---|---|---|
| 0954 | Memory TX | 2027422098 | P. 12 | OK | |

```
Reason for error
  E.1) Hang up or line fail            E.2) Busy
  E.3) No answer                       E.4) No facsimile connection
```

## FACSIMILE TRANSMISSION COVER SHEET
### DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

7 April 2006

DATE:

TO: MS. ROBERTA GAMBALE

AT FAX: 202 742-2098

FROM: WILLIAM HOUSTON

RE: ███████ ██████ – Answer – Motion to Dismiss

NUMBER OF PAGES INCLUDING COVER SHEET: 13

PLEASE DELIVER ASAP:

COMMENTS:

************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.
************

04/11/2006 15:04 FAX  2027422098          James E Brown & Assoc.

STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA
STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION PROGRAMS

| | |
|---|---|
| Consuela McKinley on behalf of<br>K▮▮▮ M▮▮▮▮ a minor<br>202 Fort Dupont Street SE<br>Washington, DC 20020 | )<br>)<br>)<br>) Petitioner Response and<br>)  Motion |
| Attending School:    n/a<br>Home School:    IDEA Public Charter School | )<br>)<br>)<br>) |
| v. | )<br>)<br>) |
| District of Columbia Public Schools/IDEA PCS<br>825 North Capitol, Street, NE Sixth Floor<br>Washington, DC 20002 | )<br>)<br>)<br>) |

## Petitioner's Response to the Notice of Insufficiency and/or Motion

COMES NOW, Consuela McKinley, ( hereinafter "complainant") by and through her attorneys, the Law Office of James E. Brown & Associates, PLLC (hereinafter "counsel" and responds to the Motion to Dismiss filed by IDEA Public Charter School on or about April 7, 2006 and/or the District of Columbia Public Schools (hereinafter"DCPS") on or about April 10, 2006 as follows and moves the a directed finding against both IDEA PCS and/or DCPS.

## Statement of Facts

K▮▮▮ M▮▮▮( hereinafter "K.M.") DOB: 4/15/90, is  a 10th grade student who was enrolled at IDEA Public Charter School for the 2005/2006 school year.

In October 2005, after a suicide attempt at the school, K.M. was hospitalized at the Psychiatric Institute of Washington ("PIW").  Upon her release from PIW, it was recommended that K.M. receive home educational services.

132

04/11/2006 15:04 FAX  2027422068      James E Brown & Assoc.

Parent promptly provided a copy of Dr. Laurence Greenwood's recommendation to both the Charter School and District of Columbia Public Schools ("DCPS") requested that home services be provided, such services have not been provided to K.M.

No further action was taken by either DCPS or IDEA PCS regarding K.M.  IDEA informed the parent that they were unable to provide home services to K.M.. Parent sent a Letter to DCPS advising the Superintendent of the situation and of the fact that IDEA was unable to provide for K.M.'s needs.

However, it should be noted that parent did attempt to register K.M. at her neighborhood DCPS school but was turned away by the school.

The Complaint in this matter was filed and served upon both DCPS and IDEA PCS via facsimile on or about February 24, 2006.

A Scheduling Memorandum was issued  by the DCPS Student Hearing Office on or about February 24, 2006 clearly identifying IDEA PCS as a party in the action.

<u>Discussion</u>

1.    <u>District of Columbia Public School ("DCPS") has an obligation to ensure that FAPE is provided to this student pursuant to both Federal and Municipal Regulations</u>

The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, at Sec. 101, § 612(3)(A), requires , the public agency to ensure that:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the District and children with disabilities attending private schools, regardless of the

severity of their disabilities, and who are in need of special education and related services, are identified, located, and currently receiving needed special education and related services.

The public agency's child find obligation is an affirmative one. Lincoln County Sch. Dist. A .A., 39 IDELR 185 (D.Or. 2003). Wise vs. Ohio Dept of Education, 80 F.3d. 177, 181 (6th Cir. 1996); Robertson County School System vs. King, 24 IDELR 1036 (6th Cir. 1996) (affirmative obligation on states and local school districts—not parents-to identify, locate and evaluate all children, including migrants and the homeless, with disabilities residing within the jurisdiction who have disabilities and are in need of special education or related services.) DCPS' unawareness of a student's possible disability and need for special education likewise will not relieve it of its obligation, if it should have suspected the student might have such a disability. Reid vs. District of Columbia, 310 F. Supp 2d 137 (D.D.C. 2004); 30 DCMR Sec. 3004.1(a) (child with a suspected disability to be referred to IEP team by school staff.) The proposed regulation at 34 C.F.R. 300.325(a)(1)(2) restate the statutory requirement and make it applicable to all children who are "suspected of being a child with a disability under Section 300.7 and in need of special education, even though they are advancing from grade to grade." The IDEIA's sweeping child find requirement applies to all children residing in the District of Columbia regardless of:

(a)    The severity of the disability;

(b)    Whether the child is in the custody or under the jurisdiction of any public or private agency or institution;

(c)    Whether the child has never attended or will never attend public school; and

(d)    Whether the District of Columbia serves infants and toddlers under Part C or preschool children under Part B.

04/11/2009 15:04 FAX  2027422089-                    James E Brown & Assoc.

While DC Municipal Regulations place the obligation to conduct comprehensive evaluations of the student upon the LEA. ( 30 DCMR Sec 3005), it does not relieve the Individuals with Disabilities Education Improvement Act of 2004. Pub. L. No. 108-446, at Sec. 101, § 612(10)which imposes upon the State an obligation for general supervision and a responsibility to ensure that the requirements of this part are met.

Furthermore, counsel for DCPS acknowledges the fact that should the LEA indicate that they are unable to provide services that DCPS as the SEA would have an obligation to provide services would have an obligation to intervene. While it is not disputed by the parent that the Charter school should have appealed to DCPS in its role as designee for the state Education Agency (SEA) for assistance when they determined that they did not have the type of services needed by K.M., *"Upon notification that a charter school cannot serve the child in question DCPS will assume responsibility for the child."* See: DCMR Section 3019.11. DCPS was in fact notified of IDEA's inability to provide the services required by K.M. as a result of her disability in the November 8, 2005 correspondence that was sent to the DCPS's Superintendent's Office. ( Attached )

## 2.    IDEA PCS  has acknowledged that the Complaint is Sufficient and admittedly lacks both standing and legal authority to move for dismissal

There is no legal authority for the Motion brought by IDEIA PCS. Rule 12 not Rule 10 is the applicable federal rule that counsel for IDEA PCS should have drawn from analogously upon recognition of the fact that the IDEIA does not provide authority to support a Motion to Dismiss as it addresses Motions that might be brought for Judgment on the Pleadings and Rule 10 contains nothing relevant to the matter at hand. There are 7 basis defenses set forth in Rule 12 to support a Motion for Judgment on the Pleadings.

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of

135

jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19[1]. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

IDEA PCS sets forth none of the afore mention defenses in its pleadings and has waived objections by filing an Answer to the Complaint albeit a late answer. In addition, IDEA PCS raises no issues with regards to the sufficiency of the Complaint and essentially acknowledges that the Complaint is in fact sufficient under the IDEIA[2].

In addition, it should be noted that under counsel's own argument he would clearly have lacked standing to bring such a motion to begin with and/or the request for attorney fees is without merit under the law.

### 3.    A Motion for Directed Finding against IDEA PCS and/or DCPS is appropriate Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446 Sec. 101, § 615(c)(2)(B)(i)(I)

A Finding against IDEA PCS for issues raised in the Complaint should be issued. According to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B)(i)(I), DCPS, as the local education agency ("LEA") must:

> " send a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, such local education agency shall within 10

---

[1] Under Rule 19- because the tribunal has the authority to join a party it deems necessary to a proceeding, the only basis for dismissal of an action for failure to join a party would be if joinder would render the venue improper.

[2] See pg 2, paragraph 2.

04/11/2008 15:04 FAX  2027422088    James E Brown & Assoc.

days of receiving the complaint, send to the parent a response that includes–

aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;

bb) a description of other options that the IEP team considered and the reasons why those options were rejected;

cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and

dd) a description of the factors that are relevant to the agency's proposed or refused action"

Complainant in her complaint specifically requests that both DCPS and the Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B). In the case at hand, both the Charter school and DCPS failed to provide the written response to which the parent was entitled that addresses the specific subject matter of the complaint pursuant to Section 615(c)(2)(B). Even if DCPS/Charter School believes no prior written notice was required under Section 615(b)(3) and that the fact specific requirements of Section 615(c)(2)(B)(i)(I) do not apply to the LEA, they would still be required to provide a issue-specific response under Section 615(c)(2)(B)(ii)(II) "The Other Party Response". Section 615(c)(2)(B)(ii)(II) requires the non-complaining party send a response that specifically addresses the issues raised in the complaint, within ten (10) days, excepting situations where the LEA provides the response required under Section 615(c)(2)(B)(i)(I). IDEIA is clear in its language that all parties other than the Complainant must give a response within ten (10) days that addresses specific issues or actions raised in the Complaint. The only permissible alternative action being that an LEA may allow an issued prior written notice regarding the subject matter of the Complaint to serve as this response as it should already provide such details. In this

04/11/2008 15:04 FAX  2027422098          James E Brown & Assoc.

case DCPS has not stated a position that a prior written notice was issued or provided a Section (c)(2)(B) response. The requirement provides that all parties, as in almost all litigation forums, make each other aware of their factual and legal positions early on so that both parties may efficiently prepare and proceed to the next procedural phases.

As a result of IDEA PCS/ DCPS's failure to comply with the requirements of IDEIA Section 615(c)(2)(B), a default judgment and/or directed finding against IDEA PCS/DCPS should be issued granting the parent all the relief requested in the complaint.

### Request for Relief

**WHEREFORE** Petitioner respectfully requests that the motions to dismiss filed by DCPS and IDEA Public Charter School be dismissed and a directed finding on behalf of the Petitioner be granted.

Dated this 10th Day of April, 2006

Roberta L. Gambale, Esq.,
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021

04/11/2008 15:05 FAX  2027422098          James E Brown & Assoc.

## CERTIFCATE OF SERVICE

I, Roberta L. Gambale, Esq., hereby certify that a copy of the Parent's administrative due process complaint was served to the District of Columbia Public Schools' Office of General Counsel  at 202-442-5098 and/or IDEA PCS's Counsel at (703)739-2323.

Roberta L. Gambale, Esq.

04/11/2006 15:04 FAX  2027422098         James E Brown & Assoc.

# James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez‡
Tilman L. Gerald
John A. Straus
Ann Kreske*
Roxanne Neloms

‡ Admitted in Bolivia Only

# *FAX COVER SHEET*

TO:    Mr. William Houston

FROM:  Roberta L. Gambale, Esq.

DATE:  April 11 , 2006

FAX NO: 703-739-2323

SUBJECT:    Response to the Motions filed by DCPS and/or IDEA PCS – K████
M██████, DOB: 4/17/90

NUMBER OF PAGES, INCLUDING FAX COVER SHEET:

COMMENTS:

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

◊ Admitted Only in Maryland  Practicing Pursuant to Rule 49(c) (8), Supervision by Miguel Hull and Christopher West, Members of the D.C.



..::So You Wanno Kno About Me::..

Well I am not takin up a whole lot of space but basically...I am a chilled out person that likes to have it mah way or no way better yet the highway....I like to go out with mah gurlz and party..I am a very spontanious person,I mean yea I liked to smoke mah weed and have a few drink here and there cause thats just me and aint nobody gone change that. There isn't alot I really want to say,but I mean I just be doin me ya kno what I mean..I can tell you this I cant keep a boi because *I like to flirt* and that is a problem for most dudes if Im not really feelin you likes dat..trust me **I will play ur azz**(lol)naw I am just kiddin.Most people that kno me think that I am a free spirit because it doesnt matter what the case may be Imma do me regardless who is around me because**mah motto is fuck tha world**.Im just livin mah life to da fullest cause thats what u gotta do cause tomorrow isnt promised!!!!!! Well I no longer represent them sorry azz **Timberwolves** at IDEA PCS its all about them **Lions** at Largo High School!!!Thank God they dont have to wear uniforms un like mah other skool(haha) Im kinda glad that I dont go to that skool anymore but I really miss mah friends the people that matter...cause we had some **fake azz muhfuckaz** up in that bitch.So to those stupid azz femaies in that skool I just have to say **GO FUCK**

**YOURSELF**..But any how thats all I gotta say !!!!!!
Name:K▮▮▮▮▮NickName:▮▮▮▮▮▮▮▮▮4/15/89 My Zodiac Sign:Aries Standin:5`5-5`6 Eye Color:brown Hair Color:Brown and Orange Where I rest:The District Of Columbia Relationship Status:Serious Relationship

1.patients 2.romance 3.funny 4.understanding 5.cute(gotta be REDD) 6.nice personality 7.hold a nice convo 8.can dress 9.tall & strong 10.Nice smile 11.Taller den me 12.Athletic 13.Gots to stay fresh 14.Cornrows/ fresh cut 15.funny/silly 16.but can be serious 17.Respects me for me 18.Respects himself
~~>What I Like To Do<~~ 1.dancing 2.Go Shopping 3.Cheerleading 4.Chillen wit mah boys 5.Talkin

on tha phone 6.Hangin wit mah gurlz 7.Going to tha games/movies          1.Everyone says you only fall in love once, but that`s not true. Everytime I hear your voice I fall in love all over again." 2."No guy is worth your tears, but the one that is will never make you cry." 3."Never say you hate him, if you can`t let go of him!"

141

THE PSYCHIATRIC INSTITUTE OF WASHINGTON

4228 Wisconsin Avenue, NW

Washington, DC 20016

## DISCHARGE SUMMARY

| | |
|---|---|
| PATIENT: | M███████, K██████ L████████ |
| HOSPITAL NUMBER: | 729756 |
| PSYCHIATRIST: | Laurence Greenwood, M.D. |
| PROGRAM: | ADOLESCENT PSYCH |
| ADMISSION DATE: | 10/18/2005 |
| DISCHARGE DATE: | 10/24/2005 |
| DATE OF BIRTH: | 04/15/1990 |

NOTE: This report is strictly Confidential and is for the information only of the person to whom it is addressed. No responsibility can be accepted if it is made available to any other person, INCLUDING THE PATIENT.

UAL MR151

## I. INITIAL ASSESSMENT:

**HISTORY OF PRESENT ILLNESS:** This was the first PIW and first psychiatric admission for this 15-year-old, eleventh grade student living with her mother and stepfather, who was admitted for the chief complaint of wrapping a belt around her neck at school.

The patient has longstanding feelings of depression, anxiety, and particularly worry. She is frightened by other girls at school who harass her. In addition, her extended family came to the DC area after Hurricane Katrina. Then, two weeks ago, her 21-year-old sister left for Houston. This sister was a support person in her life, and the patient also worried that the sister was using drugs. The patient became increasingly worried about her sister and her school situation.

On the day prior to the present admission, the patient went to the girl's bathroom at school and put a belt around her neck. She was sent to the emergency room and admitted to Children's National Medical Center. She was then transferred to PIW in order to accommodate insurance coverage.

**PAST PSYCHIATRIC HISTORY:** The patient had seen her school therapist last year, twice weekly. She had significant improvement in her emotional symptoms and had not had further treatment this year. Also, her therapist left the school system. In that treatment, the patient focused on conflicts about her peers and worried about poor grades.

The patient has not had prior hospitalizations. However, she has thought about suicide since the fifth grade when she had to live with a strict military uncle. She threatened to stab herself.

There is no history of drug use. The patient has problems with truancy because she is trying to avoid being harassed at school.

**PSYCHOSOCIAL HISTORY:** The patient lives with her mother and stepfather. They moved to the DC area from Louisiana at age 6. She does not have siblings with her. Mother is a third grade school teacher. Stepfather is a custodian, but has not worked since February 2005 due to a broken arm.

142

PATIENT:          M███████, K███████ L███████
HOSPITAL NUMBER:  729756
DATES OF STAY:    10/13/2005 - 10/24/2005
Page 2

The patient has had almost no contact with her natural father. She tried living with him in the ninth grade, but she did not want to take his direction.

**FAMILY HISTORY:** The patient's sister has depression and substance abuse.

**MEDICAL HISTORY:** Good health.

**MENTAL STATUS EXAMINATION:** At the time of admission, the patient was a neatly groomed and dressed, socially appropriate, cooperative adolescent who appeared older than her chronological age. Affect was depressed and anxious. Speech was rational, coherent, fluent, spontaneous, and well organized. She was not guarded or evasive, but she did deliberately withhold information that was embarrassing. She had difficulty taking responsibility for her behavior and did not have any understanding as to why she was being harassed at school. There was no psychotic thinking, hallucinations, or delusions. She had suicidal urges to choke herself with a belt. There was no homicidal ideation. Cognitive functions were intact. Insight and judgment were assessed as fair.

**II. ADMITTING DIAGNOSIS:**

| | | |
|---|---|---|
| Axis I | -- | Major depression, single episode, severe. |
| Axis II | -- | No diagnosis. |
| Axis III | -- | No diagnosis. |
| Axis IV | -- | Family and school problems (3). |
| Axis V | -- | GAF: 20 |

**III. CONSULTATIONS AND LABORATORY DATA:** Noncontributory.

**IV. MEDICAL PROBLEMS:** None.

**V. CLINICAL COURSE:** The patient had a brief crisis intervention hospitalization. Psychiatric medications were not needed. She received intensive individual, group, and family psychotherapy. The major work was done in the family meetings. The patient was able to present her issues in a rational, coherent manner when guided by the PIW staff social worker at the meeting. Mother became more empathic. The patient and her mother were then able to plan more effectively for dealing with the issues. The treatment team, with mother's consent, determined that

143

PATIENT:              M██████ K██████ I██████
HOSPITAL NUMBER:      729756
DATES OF STAY:        10/18/2005 - 10/24/2005
Page 3

homeschooling would be the safest and wisest approach to the school problems. After she stabilized with homeschooling, she could return to a different school.

During the family meetings, two factors seemed important. First, the patient had been skipped two grades. She was younger than her classmates and had a younger emotional age, but physically she appeared older than many of her classmates and she was intellectually bright. Secondly, the patient had been physically attacked by other girls in the past. This increased her vigilance and defensiveness.

At the time of discharge, the patient was no longer having any suicidal ideation. She seemed euthymic. Medications did not appear to be needed, but this can be re-evaluated on an outpatient basis.

## DISCHARGE DIAGNOSIS:

| | | |
|---|---|---|
| Axis I | -- | Major depression, single episode, severe. |
| Axis II | -- | No diagnosis. |
| Axis III | -- | No diagnosis. |
| Axis IV | -- | Family and school problems (3). |
| Axis V | -- | GAF: 45 |

**TYPE OF DISCHARGE:** The patient was discharged with maximum hospital benefit to return to home and outpatient treatment. Homeschooling was recommended to prevent recurrence of suicidal ideation.

**DISCHARGE MEDICATIONS:** None.

_____          10.27.05
Laurence Greenwood, M.D.          Date

LG/dm          Job: 777648
D: 10/25/05    T: 10/25/05

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez‡
Tilman L. Gerald
John A. Straus
Delores Scott McKnight
Marshall Lammers

‡ Admitted in Bolivia Only

January 10, 2006

Special Education Coordinator
IDEA Public Charter School
1045 45th Street NE
Washington, D.C. 20019

RE: K█████ M██████

Dear Special Education Coordinator;

The parent of K█████ M██████ requests your assistance in locating and placing K████ in an appropriate placement immediately. K████ has been out of school since October 18, 2005. In addition, the parent requests that you implement home school for Katirce as well. Please feel free to call me regarding this matter. My phone number is 202-742-2006 and my fax number is 202-742-2098.

Thank You,

Michelle Moody

cc: Mr. Dwight Thomas, Special Education Specialist
    Mrs. Peggy Peigler

◊ *Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D*

IDEA   7

To: Ms. Blount
From: Joe Palka
Re: K███████ M███████

1/6/2006

Ms. Blount:

The last two school years I have been K████ M█████████'s teacher for English III and have had the added insight of working with her in my drama club during most of the last school year. It is worth noting that I had to fail K█████ in English III, much begrudgingly as I hate to see students not succeed, particularly those who've been a part of my drama presentations. Her work was not up to standard, however, and I feared this lack of performance, yielding anything other than a failing grade, would hurt her in the future, and I did not want that to happen.

In my professional observation, it has occurred to me that K█████ is a bright girl who will go to unusual lengths in order to avoid the task at hand. I have had to deal with K█████concerning plagiarism and truancy, plus put up with chronic late assignments and and general unwillingness to handle class projects, such as papers, without my own continual prodding. K█████'s mother and I have spoken probably 15-20 times over the last year or so regarding these issues. It is my recommendation that K█████ be examined for possible disabilities, academic or emotional, that may be keeping her from accomplishing much of what she wishes to accomplish in school and out. Again, I base this upon observing a young lady who is fairly bright yet cannot perform basic tasks after having had considerable extra help from me. Most recently, an essay on *Othello*, which I had assigned during her home-stay, has not been submitted, even though K█████ wrote three similar essays in my class last year. Whereas, I did not expect that this assignment would be done to perfection, I at least expected a reasonable attempt based upon what she learned last year.

Anything I can do to further K█████'s progress, academic or otherwise, I will surely be more than happy to oblige.

Sincerely,

146

1-6-06

Re: K█████ M████████

This is to note that K█████M████████is enrolled in my 8am World history class, here at
IDEA. Since the start of the year she has displayed a pattern of class-cutting,
absenteeism and tardiness to class. When present, her participation in class was often on
par with or superior to other students, thus, leaving the impression that she was capable
of superior grades. She has turned in, however, very little written work. Since her long-
term absence, this pattern had continued. Some sort of analysis is needed, in my opinion,
to get at the crux of this child's underachievement.

M. Lane, Social Studies

6 January 2006

MEMORANDUM FOR Ms Blount

SUBJECT: K███ M███████

K███M███████ while in class was attentive but at times can be easily distracted by peers. Her overall conduct during class was satisfactory and I have never observed her being malicious toward other students.

K███ M███████ was actively participating in the unarmed exhibition drill team as the team commander while executing her responsibilities utilizing her leadership skills.

K███ M███████ was passing my class until her continued absences. Work has been sent forward but to date I have received only one completed assignment. She did on one occasion email me requesting more instruction with her lessons.

I replied noting her request and informed her of my intentions to do as she requested. The email also mentioned should she require further instructions to feel free in contacting me via email, I've yet to hear from her since my reply.

JOSYELNN BESS
SFC(R), JROTC
Army Instructor

148

To:    Ms. Blount
From:  Louis Kolodner
Date:  January 9, 2006
Re:    K█████ M█████

    K█████ was a friendly but not involved student in D.C. History and Government. She was frequently absent in the first advisory, missing almost as many days as she attended. When K█████ was in class she frequently seemed to have other things on her mind. She would read aloud in class when asked but she rarely offered answers when I posed questions to the class. K█████ turned in less than half of the work that was assigned.

    K█████'s class was small, only fourteen people including her, and the environment was conducive to asking me questions if she did not understand the material. We frequently read aloud as a class and I interjected in between paragraphs to help the students understand what they just read and to aid the auditory learners. This technique usually works very well for all of my students but K█████ seemed to need more specialized attention. It would be in her best interest to get tested and receive services from special education, certainly around her reading for comprehension and retention and also for strategies to stay focused during class.

    Sincerely,



Louis Kolodner

149

January 9, 2006

To: Ms. Charlotte Blount Lewis

From: Dr. Kumar.

Re: K█████ M████████

K████ M████ is my Chemistry student. Upon request, I turned in all her assignments for the first advisory and 2nd progress. Since then, I received only one completed assignment.

On December 5th 2005, she sent an email requesting for assistance. I have attached my response to her request. Since then, I haven't heard anything from her.

She failed the 1st progress because of her attendance. Whenever she comes to my class, she talked excessively. She talked only with particular students. Whenever I ask her to pay attention, she would request for a hall pass. Apart from that, I did not observe any behavior problems.

Kumar   9/01/06

Siva Kumar

From:      K█████ M█████ <███████████@yahoo.com>
Sent:      Tuesday, December 06, 2005 11:37:45 AM EST
To:        <chemistry@ideapcs.org>
Cc:        <cmckinley59@yahoo.com>
Subject:   RE: Report on Atoms

*Siva Kumar <chemistry@ideapcs.org> wrote:*

— Original Message —
From:█████████@yahoo.com
To: chemistry@ideapcs.org
Subject: RE: Report on Atoms
Sent: Monday, December 05, 2005 10:15:42 AM EST

Hello Dr.Kumar I am writing you this short letter because I was wondering could you please send
a guiedeline for you essay on the Atomes.So that I can get credit for it and also a little more
instuctions on the assingments that you give out.

                                         K████ M██████

LOVE K████████(SMILE)
12/06/05 Good morning K██████ Hope you are doing well. For writing of chemical formulas and
ionic bonds, please use the website: www.bbc.co.uk/schools/teachers/. Then select the following:
1.KS4, Inonic bonding, Revise. After that you can see so many diagrams with examples. I hope
this web page will help you. Still you have questions, Please email me. In the book, please go to
the page number 164 and try the examples.
Regards, Dr.Kumar

12-06-05

Thank You Dr.Kumar I will make sure that I stay in contact with you and touch basis with you
daily!

                                         K████M████████

---

Yahoo! Shopping
Find Great Deals on Gifts at Yahoo! Shopping



████ M████'S CAD class

████ M████ was taking drafting class She is good student she was taking Drafting during the 7th and 8th period she had completed the module allocated for the first 6 weeks.

The first year Drafting class is divided into 4 sessions

a. Six weeks of manual drafting which include Free hand sketching, Sketching with instruments, geometric construction and blue print reading.

b. Introduction to Computer Aided Drafting (CAD) where they learn the software (application) the use of Command, Menus, constructing geometry, and principle of drafting using computers. Technical drawing and pictorial drawing. To work on CAD projects and assignments at this stage, students should use the CAD lab located inside the school. It is difficult if a student want to work from home or anywhere away from the school premises. The student needs to have the software and hardware compatible to what we have in the school plus constant instructor support.

c. Application of all principles for different disciplines such as Architectural, Mechanical, Civil, Multimedia etc.to create working drawing for construction, manufacturing or production drawings

d. Learning three dimensional modeling for visual, multimedia, animation, this is advanced class for the first year

K████ M████ attended the first session regularly and completed by receiving a grade of C+. Her last attendance was October 13 which was the first week of the second session in which she demonstrated a great interest in AutoCAD, had she continued with that enthusiasm she would have gotten an excellent grade

Thank you

Yousif Ahmad
CAD Instructor

01/10/06

152

To:Special Education Department

From: Joe Palka

Re:K█████ M███████

2/1/2006

I have been K█████ M███████'s English teacher over much of the last two years, in addition to having worked with her in my drama production last year.  Although I, at times, would be frustrated with certain idiosyncrasies in K█████'s behavior, I do believe my relationship, overall, was a good one that included much individual attention and phone calls home to her mother.  Some of the more disturbing idiosyncrasies included plagiarism, absenteeism and not doing her homework.

It is my opinion that K█████ needs the individualized attention that accompanies an IEP as I feel she has engaged in some of these behaviors in order to avoid possible learning difficulties that have been out of her control.  In order to teach K█████ most effectively, she must be in attendance at school and be subject to a differentiated learning plan that will accommodate these difficulties.

I will be happy to do anything to assist her in this journey, but I will need her presence in the classroom in order to be at all effective.

153

From: Louis Kolodner

Date: March 6, 2006

Re:    K███ M███████

K███was a friendly but not involved student in D.C. History and Government. She was frequently absent in the first advisory, missing almost as many days as she attended. When K████ was in class she frequently seemed to have other things on her mind. She would read aloud in class when asked but she rarely offered answers when I posed questions to the class. K█████ turned in less than half of the work that was assigned.

K████s class was small, only fourteen people including her, and the environment was conducive to asking me questions if she did not understand the material. We frequently read aloud as a class and I interjected in between paragraphs to help the students understand what they just read and to aid the auditory learners. This technique usually works very well for all of my students but K████ seemed to need more specialized attention. It would be in her best interest to get tested and receive services from special education, certainly around her reading for comprehension and retention and also for strategies to stay focused during class.

K████ never returned her last packet of work from second advisory and as a result of that plus the sub-par work she had turned in, and the number of assignments that were late, she failed DC History.

# Integrated Design & Electronics Academy Public Charter High

1027 45th Street, N. E.
Washington, DC 20019
202.399.4750
202.399.4387 (Fax)

Ms. Consuella McKinley
4202 Fort Dupont Street SE
Washington, DC 20020

January 10, 2006

Dear Ms. McKinley:

The purpose of this letter is to respond to the January 3, 2006 letter from Michelle Moody written on your behalf requesting "assistance in locating and placing your daughter K████ M██████ in an "appropriate placement immediately and implementing home school for K████ as well."

As you are aware, IDEA Public Charter School has previously talked to you and written to you about the services IDEA can provide to K████ during her absence. Charter schools do not provide either home school or visiting instructional services to students. This also was confirmed for you by Ms. Mary Bunn in the office of the executive director for Board of Education charter schools.

At my direction and in an effort to help K████ maintain passing grades during her absence, Ms. Robyn Jones, the School Guidance Counselor has maintained ongoing communication with you, coordinated with K████'s teachers to send assignments home in two week increments with the requirement that K████ return completed assignments every two weeks. Some communication has taken place between K████ and teachers through e-mail but K████ has not followed through with regularity, completed or returned her assignments. However, K████ has found time to develop a web page in which she negatively characterizes IDEA and she alleges drug and alcohol use.

IDEA Public Charter School will convene a multidisciplinary team meeting on **January 31, February 1 or February 2, 2006 at 10:30 am** to review all the things that have been done to support K████ during this situation and to discuss possible next steps. I request that you call me to confirm your participation on one of the above dates. At the multidisciplinary team meeting we also request that you provide the school with reports from the attending doctor at the Psychiatric Institute of Washington as to K████'s ability to return to school, her emotional stability and any other related documentation to enlighten IDEA Public Charter School regarding her welfare.

Sincerely,

*Charlotte Blount Lewis*

Charlotte Blount Lewis
Principal (6 Enclosures)





*Determination – Heart – Perseverance...Get the IDEA!*                    155

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill 0
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

! Admitted in Bolivia Only

January 10, 2006

**Via Facsimile**
Mr. William Dexter, Principal
(IDEA) Public Charter School
1027 45th Street, N.E.
Washington, D.C. 20019

Re: Request for Initial-Evaluations
K██████ M██████ DOB: 4/15/90

Dear Mr. Dexter:

On behalf of my client, Ms. Consuella Mckinley I hereby request that the above-referenced student, K██████ M██████, be evaluated for special education and its related services. This request is being made pursuant to 34 C.F.R. §§ 300.530-300.535; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35862-35864 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3021.1 (2003). A comprehensive evaluation of the student includes, but is not limited to: 1) **psycho-educational evaluation**, 2) **speech and language evaluation**, 3) **social history evaluation**, 4) **clinical evaluation** 5) **a formal classroom observation. The evaluations requested also include a physical therapy, occupational therapy, and/or psychiatric evaluation, if such evaluations are determined to be warranted by and/or recommended in the above mentioned evaluations.**

This request is not intended to restart or relieve IDEA Charter School of any prior timelines that may be in effect, nor is this request intended to waive any of the parent's or student's rights that would have entitled them to have the evaluation process completed prior to this request.

0 Of Counsel. Practicing pursuant to Rule 49 (c)(6) of the D.C. Court of Appeals.
* Admitted Only 'n Maryland and New Jersey; Supervision by James E. Brown, a member of the D.C. Bar.

156

Finally, I also request, that proper notice of all proposed tests, observations, and evaluations be provided to me, in writing, via facsimile, at 202-742-2097 or 202-742-2098, pursuant to 34 C.F.R. § 300.503; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35869 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. Mun. Regs. tit. 5, § 3024 (2003).

I may be reached at the above referenced number to schedule the evaluation. Thank you for your prompt attention to this matter.

Sincerely,

Roberta Gambale, Esq.

Attachment: Consent for Evaluation – Initial or Reevaluation

cc:    Erika Pierson, Interim General Counsel, Office of General Counsel
       Mary Lee Phelps, Interim Chief of Special Education Reform, Office of Special Education,
       Parent

◊ Of Counsel, Practicing pursuant to Rule 49 (c)(6) of the D.C. Court of Appeals.
° Admitted Only in Maryland and New Jersey; Supervision by James E. Brown, a member of the D.C. Bar.

157



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MOT

CONSENT FOR EVALUATION – INITIAL OR REEVALUATION
(CHECK ONE ONLY – INITIAL OR REEVALUATION)

I.    INITIAL EVALUATION CONSENT ☐

As a result of the review of the screening information at the MOT meeting on _____
it was determined in a MDT meeting that your child, _____
is in need of a full and individual evaluation to assist us in developing the most appropriate educational program. You have been provided a copy of the "Procedural Safeguards – Parental Rights' booklet. We would like to remind you at this time that:

- granting consent for this evaluation is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide an appropriate program and may be required to initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the evaluation(s) in Section III.

II.    REEVALUATION ☐

The MDT received the following request for a reevaluation for _____
by none:  ____ parent request   ____ teacher request   ____ 3 year reevaluation
The MDT will collect supportive documentation in the area of the disability to determine the need for continued special education and related services. The school is required to only evaluate in those areas of documented need or consensus of the MDT (parent is a member of team). Parents have the right to request assessments to determine if the child continues to be a child with a disability. DCPS may reevaluate your child, without your consent, if the school district can demonstrate that it has taken reasonable steps to get parental consent and the parent has not responded.

- granting consent for this evaluation is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide a Free Appropriate Public Education program and may be required to initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the evaluation(s) on the student evaluation plan (SEP).

III.    I give permission for District of Columbia Public Schools to proceed with the evaluation(s) based on the Student Evaluation Plan (attached ) for my child, ████████ L. M████

Within a reasonable period of time days after completion of the evaluation, we will hold another MDT meeting (to which you will be invited) to determine if your child is eligible for special education and related services. The written reports of all procedures administered will be provided to you at that meeting, along with explanations and interpretations. We will use this information to determine an appropriate program for your child. If records are to be obtained/released as part of this evaluation, the "Consent for Release of Records" form is completed and attached."

If you have questions or concerns at any time during the evaluation process, feel free to contact me
at (2) 547-5800  /202  (telephone number).

____ INITIAL EVALUATION                           ____ REEVALUATION
                        Parent Response Section
I agree to the proposed evaluation(s)          ____ I do NOT agree to the proposed evaluation(s)

_Cornville S. McKinly_                                    _12/16/05_
Parent/Guardian Signature                                      Date

158

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kresila*

‡ Admitted in Bolivia Only

January 10, 2006

<u>Via Facsimile</u>
Mr. William Dexter, Principal
(IDEA) Public Charter School
1027 45th Street, N.E.
Washington, D.C. 20019

Re: Request for Records for student K███ M███, DOB: 4/15/90

Dear Mr. Dexter:

On behalf of my client, Ms. Consuella Mckinley, I hereby request a copy of the above-referenced student's educational records. This request is being made pursuant to 34 C.F.R. § 300.562(a); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35879 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3021.1 (2003).

If you are unable to provide the requested copy of the student's entire academic file, please provide me in writing, via facsimile, at 202-742-2097 or 202-742-2098, at least three (3) different dates on which the parent's representative may have access to review the student's educational file and make the necessary copies. This request includes any and all records or writings in the possession of IDEA Public Charter School that includes and are not limited to the following:

| | | | |
|---|---|---|---|
| ✓1. | All Attendance Records | 8. | Portfolios |
| ✓2. | Progress Reports and report Cards | 9. | Related Service Provider Logs |
| ✓3. | Standardized Test Scores (cool) | 10. | Charts and Observations |
| ✓4. | Class Schedules | 11. | Reports, Letters, Memos, Notes, E-Mails |
| 5. | Individualized Education Programs | 12. | Forms and Data Compilations |
| 6. | Evaluations and Assessments | ✓13. | Letters of Understanding (See child) |
| 7. | Multidisciplinary Meeting Notes | 14. | Disciplinary Records (See child) |

‡ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.
* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c)(8); Supervision by Tilman L. Gerald and John Straus, Members of the D.

159

Enclosed is a copy of the General Authorization form signed by the parent. Please send the requested information to us via facsimile at (202) 742-2098. If you have any questions regarding this request, please call me at (202) 742-2000. Thank you in advance for your immediate attention to this request.

Sincerely,

Roberta Gambale, Esq.

cc:    Erika Pierson, Interim General Counsel, Office of General Counsel
       Mary Lee Phelps, Interim Chief of Special Education Reform, Office of Special Education,
       Parent

160

DEC-16-2005 03:29 PM  C.S. MCKINLEY                        202 575 2187
12/15/2005 12:34 FAX  2027402902           James E Brown & Assoc.

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill◊ | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Delores Scott McKnight! |
| Christopher L. West | Telephone: (202) 742-2000 | Marshall Lammers◊ |
| | Facsimile: (202) 742-2098 | |
| | e-mail: Admin@Jeblaw.biz | ! Admitted in Bolivia Only |

## GENERAL AUTHORIZATION FOR INFORMATION

This form, or any copy thereof, authorizes any teacher, principal, registrar, or other school personnel, or any physician, psychiatrist, psychologist, nurse, hospital, and all medical and mental health attendants who have taught, counseled, treated, attended, or examined ██████████ L M██████████ DOB: 4/15/90 to furnish full and complete educational, attendance, medical, mental and social information requested by the undersigned to my attorney, the Law offices of James E. Brown & Associates, PLLC. This authorization also includes but is not limited to the furnishing of information regarding my child's past, present or future condition, the examination of all records, x-rays, and the furnishing of any information, including opinions, which will assist the Law offices of James E. Brown & Associates, PLLC in their pursuit of my child's case. The Law offices of James E. Brown & Associates, PLLC have been retained to represent my child and me and to take all necessary steps on our behalf.

Your full cooperation with my attorney is hereby requested. You are further requested to disclose no information to any insurance adjustors or any other person without written authority to do so. ALL PRIOR AUTHORIZATION IS CANCELLED.

Mr./Mrs./Ms *Consuella S. McKinley*
(PRINT) Parent/Legal Guardian of

DOB: 4/15/90

Today's date: 12/16/05

© A Limited Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.

161

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberto Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@jeblaw.biz

Juan J. Fernandez‡
Tilman L. Gerald
John A. Straus
Marshall Lammers
Ann Kreske*

‡ Admitted in Bolivia Only

# FAX COVER SHEET

DATE:  January 10, 2006

TO: Mr. William Dexter, Principal, IDEA

FROM: Yamileth Amaya

FAX NO: (202) 399-4750

SUBJECT: K█████ M█████████
DOB: 4/15/90

NUMBER OF PAGES, INCLUDING FAX COVER SHEET: 7

COMMENTS:  Please find attached request for Initial Evaluation and Records for the above mentioned student.

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

◊ Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar.
* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

162




# Integrated Design & Electronics Academy Public Charter School
## Military Academy
1027 45th Street, N. E.
Washington, DC 20019-3802
202.399.4750
202.399.4387 (Fax)

January 12, 2006

Roberta Gambale, Esq.
1220 L Street NW
Suite 700
Washington, DC 20005

RE: K███ M████████

Dear Ms. Gambale:

The purpose of this letter is to respond to your request to receive a copy of educational records on K████ M████████

Your representative can come to IDEA Public Charter School on January 18, 2006 to review the following records:

1. All Attendance Records
2. Progress Reports and Report Cards
3. Standardized Test Scores
4. Class Schedules
5. Discipline File

Please contact me at 399-4750, extension 215 to confirm acceptance of this date

Sincerely,

Charlotte Blount Lewis
Principal

Cc: Ms. Portia Deal, SPED Coordinator and Bill Houston, School Attorney

163

*"Making Young Americans Better Citizens"*

IDEA Public Charter High School
1027 45th Street, NE
Washington, DC 20019
Phone: 202.399.4750
Fax: 202.399.4357

**IDEA Public Charter High School**

# Fax

To: Roberta Gambale                From: Ms. Blount

Fax: 202-742-2098              Date: 1/13/2006

Phone:                         Pages: 2 w/ cover pg.

Re:                            CC:

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

•Comments:

164

TRANSMISSION VERIFICATION REPORT

TIME  : 01/13/2004  1:16
NAME  :
FAX   :
TEL   :
SER.# : BROJ4J380415

| | |
|---|---|
| DATE,TIME | 01/13  10:16 |
| FAX NO./NAME | 2027422058 |
| DURATION | 00:00:25 |
| PAGE(S) | 02 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# Integrated Design and Electronics Public Charter School
## WASHINGTON, D.C.

NOTICE TO PARENT OF INTENT TO EVALUATE/REEVALUATE

*in 2 grade*

Date: 1/13/06

To: Ms. McKinley
4202 Ft Dupont St SE
Washington DC 20020

Ref: ~~K_____ M_____~~
DOB: 4-15-90
ID#: _____

Telephone: (H) 202) 547-5800 EX1202 /2) 2## (W) _____
575-4848

Dear: Ms. McKinley

IDEA Public Charter School is requesting that _____ be available for testing for the following tests, on the indicated date, at the school.

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TEST DATE ASSIGNED | ADMINISTERED |
|---|---|---|---|---|
| ☒ Psychological | | | | |
| ☒ Speech/Language | | | | |
| ☑ Social History | | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☒ Educational | | | | |
| ☐ Hearing Screening | | | | |
| ☐ Other: Clinical | Other: | Other: | Other: | |

O.T.

## LIST OF TESTS WITH DESCRIPTIONS

☐ Bayley Scales of Infant Development-II - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age.

☐ Bender Visual Motor Gestalt Test - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System.

☐ Children's Apperception Test - a projective story-telling technique for personality evaluation in ages 5 to 10 years.

☐ Clinical Evaluation of Language Functions - III - assesses the child's language functioning including processing and production.

☐ Conner's Parent and Teacher Rating Scales - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported by the child's teacher, parents, or alternate caregiver.

☐ Developmental Test of Visual Motor Integration (VMI) - assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format.

☐ Expressive One Word Picture Vocabulary Test - assesses the child's single word expressive vocabulary.

☐ Fisher-Logemann Test of Articulation Competence - assesses articulation proficiency with single sounds, consonant blends, and vowel production.

☐ Goldman-Fristoe Test of Articulation - assesses the production of consonants in simple and complex contexts.

# Integrated Design and Electronics Public Charter School
## NOTICE TO PARENT OF INTENT TO EVALUATE/REEVALUATE

Student K_____ M_____ DOB 4-15-90 Age 15 Grade 10 ID 92___

- [ ] **Goodenough-Harris Drawing Test** - a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the use of drawings of self and a member of the opposite sex in ages 3 to 15. 11 years.
- [ ] **House-Tree-Person** - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents.
- [ ] **Kaufman Assessment Battery for Children** - assesses the ability to solve problems using simultaneous and sequential metal processes in four global areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement.
- [ ] **Kaufman Test of Educational Achievement (KTEA)** - an individually administered instrument measuring achievement skills in reading decoding, mathematics applications, spelling, reading comprehension, and mathematics computation.
- [ ] **Kinetic Family Drawing** - a projective drawing technique measuring one's perception of her family and her role within the family.
- [ ] **Oral Peripheral Speech Examination** - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.
- [ ] **Peabody Individual Achievement Test-Revised (PIAT-R)** - an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics.
- [ ] **Peabody Picture Vocabulary Test-Revised** - individually administered, multiple choice test measuring nonverbal, receptive vocabulary.
- [ ] **Preschool Language Scale** - measures auditory comprehension and verbal ability skills.
- [ ] **Receptive One Word Picture Vocabulary Test** - assesses the child's single word receptive vocabulary.
- [ ] **Rorschach Psychodiagnostic Test** - a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality testing in ages 3 and older.
- [ ] **Test of Language Development Primary - Revised (TOLD-P)** - measures primary language proficiency and specific strengths and weaknesses in language skills.
- [ ] **The Vineland Adaptive Behavior Scales** - assesses adaptive and social competency skills.
- [ ] **Thematic Apperception Test** - a projective story-telling technique for personality evaluation in older children and adolescents.
- [ ] **Wechsler Adult Intelligence Scale-III (WIAS III)** : an individually administered test designed to measure the intelligence of individuals ages 16 and over.
- [ ] **Wechsler Individual Achievement Test (WIAT)** - a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression.
- [ ] **Wechsler Intelligence Scale for Children-III (WISC III)** - commonly employed individually administered test designed to measure the intelligence of individuals ages 6 1/2 to 16 1/2 years.
- [ ] **Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R)** - measures specific mental abilities and processes in ages 4 1/2 to 6 1/2 years.
- [ ] **Woodcock-Johnson Psycho-Educational Battery** - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests.
- [ ] **Classroom Observation** - assesses present functioning of the student within the classroom environment.

- [ ] List other tests with descriptions:

Other factors that are relevant to be included:

167

TRANSMISSION VERIFICATION REPORT

```
TIME  : 01/17/2005 ...
NAME  :
FAX   :
TEL   :
SER.# : BROJ4J390415
```

```
DATE,TIME          01/17  13:34
FAX NO./NAME       3017492006
DURATION           00:02:13
PAGE(S)            04
RESULT             OK
MODE               STANDARD
                   ECM
```

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez† |
| Domiento C.R. Hill◇ | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Ann Kreske◇ |
| Christopher L. West | Telephone: (202) 742-2000 | |
| | Facsimile: (202) 742-2098 | |
| | e-mail: Admin@Jeblaw.biz | † Admitted in Bolivia Only |

January 18, 2006

**Via Facsimile Only**
Ms. Charlotte Blount Lewis, Principal
IDEA Public Charter School
1027 45th Street, N.E.
Washington, D.C. 20019

Re:    Record Request for K██████ M████████

Dear Ms. Blount:

Pursuant to your January 12, 2006 correspondence, arrangements were made by this office to obtain a copy of educational records for the above referenced student. However, it is my understanding that you would not allow the representative of the parent to obtain a copies of records for the above referenced student despite the fact that D.C. MUN. REGS. tit. 5, § 3021.1 (2003), specifically provides the parent with the right to inspect, review and obtain copies of educational records at no cost. Parent would ask that you reconsider this position and provide a complete copy of K██████'s educational records to this office via mail or facsimile. In the alternative, parent will pick up a copy of said records at the upcoming meeting scheduled.

If you have any questions or concerns, please do not hesitate to contact me at 202-742-2021. I appreciate your cooperation and look forward to hearing from you.

Sincerely,

Roberta L. Gambale, Esq.

Cc:    Michelle Moody, Educational Advocate
       File

◇ Admitted Only in Maryland   Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar
• Admitted Only in Virginia, Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of t─ ──

169

## James E. Brown & Associates, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill ◊
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Ann Kreske*

! Admitted in Bolivia Only

# *FAX COVER SHEET*

TO:    Ms. Blount- Principal- IDEA PCS

FROM:  Roberta L. Gambale, Esq.

DATE:  January 18, 2006

FAX NO: 202-399-4387

SUBJECT: Record Request- K████ M█████

NUMBER OF PAGES, INCLUDING FAX COVER SHEET:

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

◊ *Admitted Only in Maryland. Practicing Pursuant to Rule 49(c)(8); Supervision by Miguel Hull and Christopher West, Members of the D.C. Bar*

\* *Admitted Only in Virginia. Practicing Pursuant to Rule 49(c)(8), Supervision by Tilman L. Gerald and John Straus, Members of the D.C.*

14

Law Offices

# DALTON, DALTON, & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass Dalton*
William E. Houston‡
Talib S. Abdus-Shahid@
Laura E. Duos+
* ADMITTED IN VA, DC, & WVA
☤ ADMITTED IN DC, PA, & U.S. SUPREME COURT
@ ADMITTED IN DC & PA
+ ADMITTED IN MD

20 January 2006

Transmitted via facsimile

Ms. Roberta Gambale, esquire
1220 L Street, N.W.
Suite 700
Washington, DC 20005

Re:     K_____ M_____

Dear Ms. Gambale:

In response to your letter to IDEA PCS, on 18 January 2006, I am reiterating IDEA's response to you on 12 January 2006, that you or your representative may com and review the educational records.

In your letter of 18 January 2006, you have incorrectly paraphrased D.C.M.R. §3021.1. The section states, "the parent of a child with a disability shall be given the opportunity to inspect and review and to copy at no cost to the parent all of the child's records relating to the identification, evaluation, and educational placement, and the provision of Free Appropriate Public Education (FAPE)."

D.C.M.R. §3001.1 defines a child with a disability as "a child who satisfies District registration and residency requirements and who has been evaluated in accordance with §§3005-3006 of this Chapter as having one of the following conditions and who, as a result of the impairment needs special education and related services."

The above definition is essentially the same as in IDEA and therefore Katrice is not a child with a disability.

Due to these definitions, we will not provide copies of the entire record as you have requested, but will continue to offer the parent or the parent's representative the right to review and inspect the records. If the parent or the representative would like copies of some of the documents, we will make that decision on a case by case basis at the time of inspection and review.

Sincerely,

William E. Houston, esq

171

cc: Ms. Charlotte Blount Lewis

IDEA 14

Houston
703-739-23▅▅
703-739-4360 x 229

2/1, ▅

15

K▅▅▅▅ M▅▅▅▅

M. Moody has on her record 2/1 @ 10:30
not 2/2. We Need to reschedule for
another date. Also reschedule for ▅▅▅▅▅

Check to see on work being sent to
K. McKinley – Moody says mom▅ states not
receiving class assignments.

Ms. Moody waited for call from mom
to reschedule –

Proposing new dates = 7/8, before 11:30
meet on 2/2 by telephone – will give
call # & Dent.

172

15

2/1/06

Ms Moody states that in Oct the
EIT team should have evaluated
K_____. I asked her if she had
a previous history, she said no.
Moody asked for files, I gave her the
letters sent from her office + the
correspondence between lawyers which
were cc to Brown or generated by Brown
Moody and I briefly discussed OSM - I stated
6 mos or more of behavior, student has no
previous history, Moody said no.
Wanted me to give date for meetings,
did not specifically say 2/8 however
did tell mom 2/8 and said if that
she can't come 2/2 but could do via
telephone. She will contact parent.
Moody stated - Ms McKinley is very vocal
parent. Moody states I am going to be
frank and up front - in Oct you should
have called her I said no mention
from parent in Oct no need to eval
EIT handles prior to SPED evals situations
Moody wanted to me today without all team members
I said need admin not here. Mom
was downstairs, she left without speaking to
advocate. Said she could come back tomorrow
@ 10:30 am.

173

response yes. Said did'nt you use to
teach I said I still do I go-te
English classes). — Stoe said "good for you"

IDEA Public Charter High School
1027 45th Street, NE
Washington, DC 20019
Phone: 202.399.4750
Fax: 202.399.4357



# Fax

To: Bill Houston                From: Portia Deal

Fax: 703 739-2323              Date: 2/1/06

Phone: 703-739-4300 x229      Pages: 4

Re: [redacted]                CC:

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

**Comments:**

Conversation with Ms Moody of
Brown and Associates.

175

~~Idaho and Bech Jinks Public Charter School~~

INDIVIDUALIZED EDUCATION PROGRAM

~~IEP~~ MDT

MEETING NOTES

STUDENT K_____ M_____    SCHOOL IDEA PCS    DATE 2/2/06

| PARTICIPANTS (Print Name) | PARTICIPANTS (Sign Name) | DISCIPLINE |
|---|---|---|
| CHARLOTTE BLOUNT | Charlotte Blount | Principal |
| Portia Deal | Portia Deal | SPED Coord |
| JOE PALLIA | [signature] | English |
| Louis Kolodner | Louis Kolodner | DC History |
| Siva Kumar | S.Kum- | Chemistry |
| M. Lane | M. Lane | World History |
| Peggy L. Peagler, Ph.D. | Peggy L. Peagler | DCPS Placement Specialist Monitor |

A meeting was schedule for today, Thursday Feb. 2, 2006 at 10:30am to determine if K____ M____ would be eligible to receive SPED services. At 9:55am the advocate for the parent contacted the school to inform us that they will not be attending this meeting. The meeting is to be rescheduled for the following dates 2/8/06 at 10:00am, 2/13/06 at 10:00am, 2/15/06 at 12:00pm and 2/17/06 at 12:30pm. A meeting confirmation notice will be sent to the DCPS, the parent and the advocate when a date is determine.

# Memo

To:    Teachers, Administrative, and Service Providers

From: Special Education Team

Date:  2/1/06

Re:    Upcoming Academic or IEP Meetings for February, 2006

Please be advised that the following students are scheduled for an Academic or IEP Monitoring meeting.  Teachers, administrative, and service providers are required to attend and participate in your student's meeting.



**If you are unable to attend the meeting, it is critical that you write a brief narrative describing the student's present level of academic, attendance, and behavior performance.  Work samples may be attached as well if applicable.**

Thank you for your assistance.    2/2/06    Ms. Moody called "gave
                                              these dates:

K⬛⬛⬛   proposed dates   Mon.              Wed.
-2/8    10 Am  -2/13  10 am  -2/15 @ 12 pm ok
Wed.                            ok
  -Fri. 2/17  12:30
                 ok
⬛Chris (need to ⬛⬛)

𝔍ntegrated 𝔇esign & 𝔈lectronics 𝔞cademy 𝔓ublic 𝔠harter 𝔥...

1027 45ᵗʰ St. N.E.

Washington, DC 20019

202.399.4750

202.399.4387 (fax)

18

February 3, 2005

Ms. M. Moody

James E. Brown & Associates

1220 L Street, NW

Washington, DC 20005

Facsimile: 202-742-2098

Re: K█████ M████████

Dear Ms. Moody:

In response to your telephone call regarding availability of the following dates and times to convene a multidisciplinary team meeting for K█████ M████████—February 8, 2006 at 10:00 a.m., February 13, 2006 at 10:00 a.m., February 15, 2006 at 12:00 p.m. or February 17, 2006 at 12:30 p.m., IDEA PCS staff will be available to convene a multidisciplinary meeting on **February 13, 2006 at 10:00 a.m.** If there are any concerns or changes regarding the confirmed date of **February 13, 2006 at 10:00 a.m.** , please contact me at 202-399-4387 (fax), 202-399-4750 extension 218 or 219 (office) or email me at resource1@ideapcs.org.

Sincerely,

*Portia Deal*

Portia Deal

Special Education Coordinator

Attachment

Cc:    Ms. C. Blount

Mr. R. Bhagan

Ms. E. Euille

Mr. W. Houston, Esq.

Ms. Consuella McKinley

Dr. Peggy Peagler



*Determination – Heart – Perseverance ... Get the JDEA*

```
TRANSMISSION VERIFICATION REPORT

                                    TIME  : 02/03/2008
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROJ4J890415


DATE,TIME           02/03  16:31
FAX NO./NAME        7422098
DURATION            00:00:28
PAGE(S)             02
RESULT              OK
MODE                STANDARD
                    ECM
```

179

IDEA Public Charter High School
1027 45th Street, NE
Washington, DC 20019
Phone: 202.399.4750
Fax: 202.399.4357



# Fax

| To: Michelle Mondy | From: Postin Dent |
|---|---|
| Fax: 202-742-2098 | Date: 2/3/06 |
| Phone: 202- | Pages: 2 |
| Re: K. M███████ | CC: |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

•Comments:

*Please acknowledge receipt.*

180

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 02/03/2005 16:29
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROJ4J890415
```

```
DATE,TIME           02/03  16:28
FAX NO./NAME        7422098
DURATION            00:00:28
PAGE(S)             02
RESULT              OK
MODE                STANDARD
                    ECM
```

181

Integrated Design & Electronics Academy Public Charter Hi
1027 45th St. N.E.
Washington, DC 20019
202.399.4750
202.399.4387 (fax)

February 5, 2005

Ms. Consuella McKinley
4202 Fort Dupont Street, SE
Washington, DC 20020

Re:  K█████ M██████

Dear Ms. McKinley:

In response to Ms. Moody's telephone call regarding availability of the following dates and times to convene a multidisciplinary team meeting for K█████ M██████—February 8, 2006 at **10:00 a.m., February 13, 2006 at 10:00 a.m., February 15, 2006 at 12:00 p.m. or February 17, 2006 at 12:30 p.m.**, IDEA PCS staff will be available to convene a multidisciplinary meeting on **February 13, 2006 at 10:00 a.m.**  If there are any concerns or changes regarding the confirmed date of **February 13, 2006 at 10:00 a.m.** , please contact me at 202-399-4387 (fax), 202-399-4750 extension 218 or 219 (office) or email me at resource1@ideapcs.org.

Sincerely,

Portia Deal
Portia Deal
Special Education Coordinator


cc:    Ms. C. Blount
       Mr. R. Bhagan
       Ms. E. Euille
       Mr. W. Houston, Esq.
   ✓  Ms. Michelle Moody
       Dr. Peggy Peagler



*Determination – Heart – Perseverance … Get the IDEA*                182

```
┌─────────────────────────────────────────┐
│     TRANSMISSION VERIFICATION REPORT     │
└─────────────────────────────────────────┘

                           TIME   : 02/04/2005 08:47
                           NAME   :
                           FAX    :
                           TEL    :
                           SER.# : BROJ4J230415
```

```
┌──────────────────────────────────────────────────────────────────┐
│                                                                    │
│   DATE,TIME                    02/04  08:47                        │
│   FAX NO./NAME                 7422099                             │
│   DURATION                     00:00:29                            │
│   PAGE(S)                      02                                  │
│   RESULT                       OK                                  │
│   MODE                         STANDARD                           │
│                                ECM                                 │
│                                                                    │
└──────────────────────────────────────────────────────────────────┘
```

Sent 2/4   Noted spelling

error on 2/3. of C. McKinley ltr

183

Law Offices

# DALTON, DALTON, & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton*
Ellen Douglass DAlton*
William E. Houston¥
Talib S. Abdus-Shahid⊕
Laura E. Duos✦
* ADMITTED IN VA, DC, & WVA
¥ ADMITTED IN DC, PA, & U.S. SUPREME COURT
⊕ ADMITTED IN DC & PA
✦ ADMITTED IN MD

13 February 2006

*Transmitted via facsimile*

Ms. Roberta Gambale
1220 L Street, N.W.
Suite 700
Washington, DC 20005

*Re: K███ M███████*    D.O.B.  15 April 1990

Dear Ms. Gambale:

We had scheduled a meeting today at IDEA PCS on behalf of your client K███ M███████. Your representative Michelle Moody cancelled the meeting set for 10:30 this morning. This was the second such cancellation. The originally agreed upon meeting date was 2 February 2006 which your representative cancelled due to a scheduling error, not our fault. Today's meeting was a result of that cancellation.

We are now scheduling another meeting to determine whether your client needs to be tested in order to be eligible for special education. We have made reasonable efforts to meet with your client and representatives and cannot for K██████s sake delay the meeting any further. Therefore, once we not the parties of the date set, we will hold the meeting regardless of the presence of your client or your representatives. I hope you can convince your client to attend.

If you have any questions, contact Ms. Deal at IDEA PCS at (202) 399-4387.

Sincerely,

William E. Houston

184

TRANSMISSION VERIFICATION REPORT

```
                              TIME  : 02/13/2001
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROJ4J393415
```

```
DATE,TIME              02/13  13:27
FAX NO./NAME           7422088
DURATION               00:00:28
PAGE(S)                02
RESULT                 OK
MODE                   STANDARD
                       ECM
```

IDEA Public Charter School

INDIVIDUALIZED EDUCATION PROGRAM

(IEP)

MEETING NOTES

STUDENT K█████ M█████  SCHOOL IDEA PCS  DATE 3/6/2006

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| William Houston | [signature] | Counsel – IDEA PCS |
| Charlotte Blount | Charlotte Blount | Principal |
| Inya Coleman | Inya Coleman | Admin Assistant |
| Portia Deal | Portia Deal | SPED Coord |
| Milton Lane | Milton Lane | World History Teach. |
| Roswelle S. McKinley | [signature] | Parent |
| Michelle Moody | [signature] | Advocate |

186

Integrated Design and Electronics Public Charter School

Meeting Notes

Type of Meeting    SEP _____    MDT ✓    IEP _____    OTHER _____

Student    K█████ M█████    Date 5/1/2006

Time Begin 12:50PM

aunt - Request MDT Today to find out what's going on w/ student.

aunt - Team has pulled academic letters from teachers see where we stand.

Dean - Katrice is summing on M█████ (Blount)

aunt - 1st year was not a good year w/ Katrice. because of grade student should attend summer school but mom said no because she had not done anything through 4 the year she will not go to summer school.

Student wanted Ms. Blount to sign some papers stating was okay to attend nite school. Ms. Blount said no. Katrice was hospitalize for weeks but school still provided asswork for student. Blount said the work sent home did not allway come back as far as grades. K█████ has been up to the school talking w/ friends. Student created a webb page

Page _____ of 1

Friendship Design and a Electronics Public Charter School

Meeting Notes

Type of Meeting    SEP _____    MDT ✓ _____    IEP _____    OTHER _____

Student  K████ M████████    Date  3/4/2006

thrice is in Therapy She has 52 weeks. Mom is trying
to get work from the out side to help w/ student.
Huston- said student was diagnost w/ major depression.
Type of depression (single) which means it's not over.
Huston- Look like student is capable, and don't know
why she's not in school.
Huston- feel/care we should find out what's keeping
her from school. Huston- feels she should be tested
sr. Psycoed + Clinical
sed - introduced her self as SPE coordinator and explaines the paper work
4 mom/
cate for mom- request social Emotional test be done.
· Student
advocate for mom agreed w/ School attorney that student
hould be tested.
udent has never been eval.
hool request eval. January 10th 2006 Butt meeting was reschedule.

e _____ of 2

188

Integrated Design and Electronics Public Charter School

Meeting Notes

Type of Meeting    IEP _____    MDT ✓    ISP _____    OTHER _____

Student    K_____ M_____    Date 3/6/2006

e advocate for minor student called and canceled the meeting.
The testing will cover Clinical, Psycho Ed and Social Emotional.
The team has also discuss the OT PT Psychiatric and determine it was not
needed and parent was in agreement. Psychiatric Report.
ision - Request the update on Psychiatric Report.
ent + Advocate - DCPS or Dr. Reigler locate and place student
a appropriated place immediately + in addition provide home
testing ASAP.
rent- request counciling log paperwork from the office but, was told
at dept. was seperate its w/ documented.
s conduced this meeting. Idea PCS will complete the testing
the Above student. Meeting end time 1:57pm.

e _____ of 3

189

# Integrated Design and Electronics Public Charter School
WASHINGTON, D.C.

### NOTICE TO PARENT OF INTENT TO EVALUATE/REEVALUATE

Date: *3/6/06*

To *Consuella S. McKinley*
*4202 Fort DuPont St, SE*
*Washington, DC 20020*

Telephone: (H) *575-4878*

Ref *████ ████*
DOB *4-15-90*
ID# *9203090*
(W) *547-5800 EX 1202*

Dear *Ms McKinley*

IDEA Public Charter School is requesting that _____ be available for testing for the following tests, on the indicated date, at the school.

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TEST DATE ASSIGNED | ADMINISTERED |
|---|---|---|---|---|
| ☒ Psychological | *MHR* | | | |
| ☐ Speech/Language | | | | |
| ☒ Social History | *MHR* | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☒ Educational | *MHR* | | | |
| ☐ Hearing Screening | | | | |
| ☐ Other *Clinical* | Other: *MHR* | Other | Other | |

### LIST OF TESTS WITH DESCRIPTIONS

☐ Bayley Scales of Infant Development-II - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age.

☐ Bender Visual Motor Gestalt Test - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System.

☐ Children's Apperception Test - a projective story-telling technique for personality evaluation in ages 5 to 10 years.

☐ Clinical Evaluation of Language Functions - III - assesses the child's language functioning including processing and production.

☐ Conner's Parent and Teacher Rating Scales - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported by the child's teacher, parents, or alternate caregiver.

☐ Developmental Test of Visual Motor Integration (VMI) - assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format.

☐ Expressive One Word Picture Vocabulary Test - assesses the child's single word expressive vocabulary.

☐ Fisher-Logemann Test of Articulation Competence - assesses articulation proficiency with single sounds, consonant blends, and vowel production.

☐ Goldman-Fristoe Test of Articulation - assesses the production of consonants in simple and complex contexts.

190

## Integrated Design and Electronics Public Charter School

NOTICE TO PARENT OF INTENT TO EVALUATE/REEVALUATE

Student ▮▮▮▮▮▮▮▮  DOB 4-15-90 Age 15 Grade 10 ID ▮▮

- [ ] **Goodenough-Harris Drawing Test** - a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the use of drawings of self and a member of the opposite sex in ages 3 to 15, 11 years.
- [ ] **House-Tree-Person** - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents.
- [ ] **Kaufman Assessment Battery for Children** - assesses the ability to solve problems using simultaneous and sequential metal processes in four global areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement.
- [ ] **Kaufman Test of Educational Achievement (KTEA)** - an individually administered instrument measuring achievement skills in reading decoding, mathematics applications, spelling, reading comprehension, and mathematics computation.
- [ ] **Kinetic Family Drawing** - a projective drawing technique measuring one's perception of her family and her role within the family.
- [ ] **Oral Peripheral Speech Examination** - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.
- [ ] **Peabody Individual Achievement Test-Revised (PIAT-R)** - an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics.
- [ ] **Peabody Picture Vocabulary Test-Revised** - individually administered, multiple choice test measuring nonverbal, receptive vocabulary.
- [ ] **Preschool Language Scale** - measures auditory comprehension and verbal ability skills.
- [ ] **Receptive One Word Picture Vocabulary Test** - assesses the child's single word receptive vocabulary.
- [ ] **Rorschach Psychodiagnostic Test** - a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality testing in ages 5 and older.
- [ ] **Test of Language Development Primary - Revised (TOLD-P)** - measures primary language proficiency and specific strengths and weaknesses in language skills.
- [ ] **The Vineland Adaptive Behavior** Scales - assesses adaptive and social competency skills.
- [ ] **Thematic Apperception Test** - a projective story-telling technique for personality evaluation in older children and adolescents.
- [ ] **Wechsler Adult Intelligence Scale-III (WIAS III)** : an individually administered test designed to measure the intelligence of individuals ages 16 and over.
- [ ] **Wechsler Individual Achievement Test (WIAT)** - a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression.
- [ ] **Wechsler Intelligence Scale for Children-III (WISC III)** - commonly employed individually administered test designed to measure the intelligence of individuals ages 6 1/2 to 16 1/2 years.
- [ ] **Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R)** - measures specific mental abilities and processes in ages 4 1/2 to 6 1/2 years.
- [ ] **Woodcock-Johnson Psycho-Educational Battery** - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests.
- [ ] **Classroom** Observation - assesses present functioning of the student within the classroom environment.
- [ ] **List other tests with descriptions:**

Other factors that are relevant to be included:

191

# Integrated Design and Electronics Public Charter School

## CONSENT FOR EVALUATION - INITIAL OR REEVALUATION
(CONSENT FOR INITIAL OR REEVALUATION)

**I.   INITIAL EVALUATION CONSENT  [X]**

As a result of the review of the screening information at the MDT meeting on ___3/06/06___ it was determined at a MDT meeting that your child _____ is in need of a full and individual evaluation to assist us in developing the most appropriate educational program. You have been provided a copy of the "Procedural Safeguards - Parental Rights" booklet. We would like to remind you at this time that

- granting consent for this evaluation is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide an appropriate program and may be required to initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the evaluation(s) in Section 1.1.1

**II.   REEVALUATION   [  ]**

The MDT received the following request for a reevaluation for _____
by /for a:    [  ] parent request      [  ] teacher request      [  ] 3 year reevaluation
The MDT will collect supportive documentation in the area of the disability to determine the need for continued special education and related services. The school is required to only evaluate in those areas of documented need or consensus of the MDT (parent is a member of team). Parents have the right to request assessments to determine if the child continues to be a child with a disability. IDEA PCS may reevaluate your child, without your consent, if the school district can demonstrate that it has taken reasonable steps to get parental consent and the parent has not responded.

- granting consent for this evaluation is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all necessary action to provide a Free Appropriate Public Education program and may be required to initiate due process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the evaluation(s) on the student evaluation plan (SEP)

**III.  [  ] I give permission for IDEA Public Charter School to proceed with the evaluation(s) based on the Student Evaluation Plan (attached ) for my child,** _____

Within a reasonable period of time days after completion of the evaluation, we will hold another MDT meeting (to which you will be invited) to determine if your child is eligible for special education and related services. The written reports of all procedures administered will be provided to you at that meeting, along with explanations and interpretations. We will use this information to determine an appropriate program for your child. If records are to be obtained/released as part of this evaluation, the "Consent for Release of Records" form is completed and attached.
If you have questions or concerns at any time during the evaluation process, feel free to contact me     *Portia Deal*
at _202-399-4750 EX 218/219_ (telephone number).

[X] INITIAL EVALUATION              [  ] REEVALUATION

### Parent Response Section.

X [X] I agree to the proposed evaluation(s)          [  ] I do NOT agree to the proposed evaluation(s)

X _____        ( *Parent requests school*        )          3 / 6 / 06
                                       *Records 1/10/06 ...*                    Date
                                   *request date*

MDT - CONSENT FOR EVALUATION

192

# FACSIMILE TRANSMISSION COVER SHEET
## DALTON, DALTON, & HOUSTON, P.C.
**1008 Pendleton Street**
**Alexandria, Virginia 22314-1837**
**Telephone: (703) 739-4300**
**Facsimile: (703) 739-2323**
**E-MAIL: DCSPEDLAW@AOL.COM**

**DATE:** 19 April 2006

**TO:** MS. ROBERTA GAMBALE

**AT FAX:** 202 742-2098

**FROM:** WILLIAM HOUSTON

**RE:** K███ M██████ – Five Day

**NUMBER OF PAGES INCLUDING COVER SHEET:** 91

**COMMENTS:** PLEASE DELIVER ASAP:

_____

_____

_____

_____

*************************************************************************

**THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.**

*************************************************************************

* * * Transmission Result Report(MemoryTX) ( Apr.19. 2006 12:37PM )

1) Dalton, D
2)

Date/Time: Apr.19. 2006 12:26PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|------|------|-------------|-------|--------|---------------|
| 1272 | Memory TX | 2027422098 | P. 91 | OK | |

------------------------------------------------------------------------

Reason for error
E.1) Hang up or line fail          E.2) Busy
E.3) No answer                     E.4) No facsimile connection

---

### FACSIMILE TRANSMISSION COVER SHEET
**DALTON, DALTON, & HOUSTON, P.C.**
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSFEDLAW@AOL.COM

**DATE:**  19 April 2006

**TO:**  MS. ROBERTA GAMBALE

**AT FAX:**  202 742-2098

**FROM:**  WILLIAM HOUSTON

KE███M█████ — Five Day

**RE:**

NUMBER OF PAGES INCLUDING COVER SHEET:  91

**COMMENTS:**  PLEASE DELIVER ASAP:

*************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

*************************************************************

194

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



### *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals wit**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (**called a "Resolution Session"**) with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

**A.    INFORMATION ABOUT THE STUDENT:**

Name of the Student: K█████ M█████      Date of Birth: **April 17, 1990**
Address: **4202 Fort Dupont St. SE Washington, DC 20020**
Home School: **IDEA Public Charter School Center**
Present School of Attendance: **Same** [1]

      Is this a charter school? <u>Yes</u>      (If yes, you must also provide a copy of this notice to the charter school principal or director)

---

[1] Pursuant to the recommendations of her doctors, K.M. has not yet returned to school since her release from the hospital.

195

Parent/Guardian of the Student: Ms. Consuela McKinley
Address (if different from the student's above): same

B.    **Legal Representative/Attorney:**

Name: Roberta L. Gambale, Esq. ( James Brown and Associates, PLLC)
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone: (w) (202)742-2000 (ext. 2021) (Fax) (202) 742-2098    (e-mail) Rgambale@jeblaw.biz
Will attorney / legal representative attend the resolution session?        X Yes        ☐ No

C.    **Complaint Made Against (check all that apply):**

**X** IDEA Public Charter School

D.    **Resolution Session Meeting Between Parent/Representative and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also
understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive
the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for this process.

E.    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at
no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session
Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing only.**

F.    **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please
complete the following questions (attach additional pages if needed):

**I. Nature of the problem.**

**Background**

K███████ M███████ hereinafter "K.M.") DOB: 4/15/90, is a 10th grade student at IDEA Public Charter
School. In October 2005, after a suicide attempt at the school, K.M. was hospitalized at the
Psychiatric Institute of Washington ("PIW"). Upon her release from PIW, it was recommended that
K.M. receive home educational services. While parent promptly provided a copy of Dr. Laurence
Greenwood's recommendation to both the Charter School and District of Columbia Public Schools
("DCPS") requested that home services be provided, such services have not been provided to K.M.
No further action was taken by either DCPS or IDEA PCS regarding K.M. In January 20065, parent
retained the services of counsel and a written request for both evaluations and/or a meeting to review
diagnosis made at PIW and discuss K.M.'s educational needs. An MDT meeting was held on or
about March 6, 2006 at IDEA Public Charter School at which time the team agreed to conduct
comprehensive evaluations of the student. To date, evaluations have not been conducted and/or a
meeting convened to address KM's need for services.

197

SFID DPCN Rev'd 7/01/05

Issues

1.  **IDEA Public Charter School failed to evaluate within 120 days and/or identify K.M.
    as a disabled student in need of Special Education Services pursuant to its' "child find"
    obligation and DC Municipal Regulations**

The Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446,
at Sec. 101, § 612(3)(A), requires , the LEA to ensure that:

> All children with disabilities residing in the State, including
> children with disabilities who are homeless children or are wards
> of the District and children with disabilities attending private
> schools, regardless of the severity of their disabilities, and who
> are in need of special education and related services, are
> identified, located, and currently receiving needed special
> education and related services.

The public agency's child find obligation is an affirmative one. Lincoln County Sch. Dist. .A
.A., 39 IDELR 185 (D.Or. 2003). Wise vs. Ohio Dept of Education, 80 F.3d. 177, 181 (6th
Cir. 1996); Robertson County School System vs. King, 24 IDELR 1036 (6th Cir. 1996)
(affirmative obligation on states and local school districts—not parents-to identify, locate and
evaluate all children, including migrants and the homeless, with disabilities residing within
the jurisdiction who have disabilities and are in need of special education or related services.)
DCPS' unawareness of a student's possible disability and need for special education likewise
will not relieve it of its obligation, if it should have suspected the student might have such a
disability. Reid vs. District of Columbia, 310 F. Supp 2d 137 (D.D.C. 2004); 30 DCMR Sec.
3004.1(a) (child with a suspected disability to be referred to IEP team by school staff.) The
proposed regulation at 34 C.F.R. 300.325(a)(1)(2) restate the statutory requirement and make
it applicable to all children who are "suspected of being a child with a disability under
Section 300.7 and in need of special education, even though they are advancing from grade to
grade." The IDEIA's sweeping child find requirement applies to all children residing in the
District of Columbia regardless of:

(a)     The severity of the disability;
(b)     Whether the child is in the custody or under the jurisdiction of any public
        or private agency or institution;
(c)     Whether the child has never attended or will never attend public school;
        and
(d)     Whether the District of Columbia serves infants and toddlers under Part C
        or preschool children under Part B.

DC Municipal Regulations place the obligation to conduct comprehensive evaluations of the
student upon the LEA. ( 30 DCMR Sec 3005). In the case at hand, the Charter school filed lived up
to their obligations to identify and/or evaluate K.M. Charter School were on notice that K.M. was a
student with a disability back in October 2005 and of the fact that she was diagnosed with major
depression and that depression. The parent timely informed the Charter School after K.M.'s release
from PIW of the fact that the doctor was recommending services. When the Charter School failed to
respond, the parent sent a letter to DCPS Superintendent Janey's Office advising him of the situation
and requesting assistance on or about November 8, 2005.

3

07/19/2006 12:19 FAX  2027422098        James E Brown & Assoc.                    05/008

In addition, many of the teacher's admitted to having concerns about K.M.'s academic performance during the first advisory of the 05/06 school year. One teacher reported that appeared to be distracted in class and often failed to turn in class work. In a written statement the teacher asserted that " *Katrice seems to need more specialized attention. It would be in her best interest to get tested and receive services from special education*" Other teachers as well reported similar problems and recommended services. According to her English teacher, who taught K.M not only in 10th grade but also in 9th grade "*It is my recommendation that Katrice be examined for possible disabilities, academic or emotional that may be keeping her from accomplishing much of what she wishes to accomplish in school*".

A multidisciplinary team meeting was held on or about March 6, 2006 at which time the Charter school agreed to do comprehensive testing for K.M. To date, the only evaluator the parent has been contacted by was a social worker to whom the parent provided the requisite information for a social history evaluation to be completed though the parent has not received a copy of the written evaluation report. [2]

As a result of the failure to meet their obligations under "Child Find" K.M. has been denied a Free and Appropriate Public Education ("FAPE") and should be entitled to compensatory relief to help remediate the harm caused by Charter School failure to identify and/or program for this student. See School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts, 471 U.S. 359 (1985); Diatta v. District of Columbia 319 F. Supp.2d 57, 65 D.D.C. 2004 Kerkam I, 862 F.2d 84 (D.C. Cir. 1991). KM has missed over ten (10) months of school and will likely be unable to graduate on time due to her disability. There is concern about whether or not an alternate placement is needed for this student.


II. **Issues presented.**

- Whether IDEA Public Charter School denied K.M. a free and appropriate public education by failing to meet their child find obligation under either the IDEA and/or IDEIA and/or failed to comply with DC Municipal Regulations?

- Whether the Charter School, as the LEA, failed to evaluate and/or identify this student as eligible for special education services?

- Whether KM has been denied a Free And Appropriate Public Education ("FAPE")?


III. **To the extent known to you at this time, how can this problem be resolved?**

**WHEREFORE**, the parent, by and through counsel, requests the following relief:

1. A finding that Charter School denied K.M. FAPE by failing to identify and/or evaluate her in a timely manner;

2. That the Charter School shall fund the following evaluations to include but not limited to: a) psycho-educational evaluation; b) clinical psychological; c) speech and language assessment; d) social history ; e) functional behavioral assessment; and e) classroom observation, as well as, any evaluations warranted based upon the findings of these such as either a psychiatric evaluation and/or neuropsychological evaluation and/or audiological evaluation and/or occupational therapy evaluation;

---

[2] Because the parent is concerned about evaluations being completed and eligibility and placement being discussed before the commencement of the 06/07 school year- she has paid out of pocket for an independent psychological evaluation.

4

Case 1:06-cv-01916-EGS    Document 9-5    Filed 08/01/2007    Page 50 of 50

07/19/2006 12:19 FAX  2027422098        James E Brown & Assoc.                    Ø 08/008

3. That the Charter School reimburse the parent for any out of pocket expenses incurred in obtaining independent evaluations not completed within the 120 day time frame within 10 calendar days;

4. That  the Charter School shall convene an MDT meeting within ten (10) calendars days of completion of the assessments for the purpose of reviewing evaluations; revising the IEP; discussing compensatory education; discussing and determining placement;

5. That the Charter School shall invite DCPS to participate in the meeting to be scheduled;

6. That at the afore mentioned meeting,  Charter School shall secure the participation of all necessary IEP team members to include but not limited to the appropriate personnel required to review assessments and develop an appropriate program for this child and discuss placement and compensatory education;

7. A Notice of Placement to a suitable placement shall be issued by the public agency with 5 days (public school) or within 30 days (private school) with parent participation;

8. That  Charter agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

9. All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

10. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter School and/or DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

11. In the event that the Charter School shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall have the authority to use self help without further notice to the Charter School/ DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the Charter School/DCPS can come into compliance and properly assess, program and/or participate;

12. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

13. 19.. The Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

14. That  Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following:  i) an explanation of why they proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those

options were rejected, iii) a description of each evaluation procedure, assessment, or report the agency used as the basis for the proposed or refused action, and a description of the other factors that are relevant to the agency's proposed or refused action;

15. That Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School/DCPS, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

16. That Charter School , within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the parent's request alleging any insufficiency of notice.

17. That the Charter School's failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time.

18. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

19. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a psychiatrist and/or clinical psychologist; 5) an occupational therapist; and/or 6) any person(s) who conducted any assessments on the student.

20. That the Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between Charter School and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

21. A finding that the parent is the prevailing party in this action.

G.    Accommodations and Assistance Needed:

- N/A

Dated this 19th day of July, 2006

Roberta L. Gambale, Esq.,
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021
Counsel for the Parent

Mail, fax or deliver this complaint notices to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

7

202

07/19/2006 12:18 FAX 2027422098    James E Brown & Assoc.

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*
Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------

Juan J. Fernandez!
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram

------------------------------

! Admitted in Bolivia Only

# FAX COVER SHEET

DATE:        7/19/06

TO:          **William Houston**

FAX NO.:     (703) 739-2323

FROM:        Roberta L. Gambale, Esq.

SUBJECT:     Due Process Complaint for K████ M████

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

The attached information is CONFIDENTIAL and is intended only for the use of the addressee(s) named above. If the reader of the message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any dissemination, distributions or copying of this communication is strictly prohibited. If you receives this communication in error should notify us immediately by telephone and return the original message t
address via the U.S. Mail.

203

# District of Columbia Public Schools
## STATE EDUCATION AGENCY

### Confidential

| | |
|---|---|
| K█████M██████, Student | ) |
| | ) |
| Date of Birth: 17 April 1990 | )     Hearing Date: |
| | ) |
| **Petitioner,** | )     **Request for Hearing: 19 July 2006** |
| | ) |
| **v.** | ) |
| | ) |
| **IDEA P.C.S.** | ) |
| | ) |
| **Respondent** | ) |
| | ) |

## ANSWER
### and
## MOTION TO DISMISS

Comes now the IDEA Public Charter School (IDEA), by and through counsel, and answers the allegations in the 19 July 2006 Due Process Hearing Request[1] and request to dismiss the complaint for failure to state a cause of action for which relief can be granted and for failure to name a indispensable party.

### Background

The starting point of all litigation is naming the parties. Petitioner failed to name DCPS as a party to the instant case, yet seeks relief only DCPS can grant. Petitioner also alleges DCPS failed to act when they were notified by parent. The petitioner admits in her complaint that IDEA "lived up to their obligation to identify and/or evaluate K.M," then claims that IDEA failed to identify the student.

### Answer

The respondent, IDEA deny all allegations against them.

Issue 1.     Whether IDEA Public Charter School denied K.M. a free and appropriate public education by failing to meet their child find obligation?

---

[1]Petitioner filed the instant case with the counsel for IDEA. Although the procedures are to send the complaint to the principal or director of the charter school, IDEA is answering the complaint and reserve the argument of ineffective service.

**ANSWER – CONTINUED**

In January 2006, IDEA began the process to see whether the petitioner needed special education services. In that effort, the principal asked the teachers to fill out forms regarding the petitioner. Then IDEA made numerous attempts to hold a multi-discipline team meeting to determine with the team whether the petitioner needed testing and what areas to test. The parent delayed the process and on 6 March 2006 IDEA finally convened the MDT meeting.

The team agreed the petitioner needed testing and the mother signed a consent form allowing IDEA to do a comprehensive psychological assessment which included a psychological, educational, clinical, and social history. After obtaining the social history, mother again delayed the process even after numerous attempts to assess the petitioner.

Had the mother been cooperative from the very beginning, the petitioner would have had all the testing done probably in February 2006, as it is, the testing is not complete.

Additionally, on page 3 of the Complaint, petitioner states, "In the case at hand, the Charter school filed lived up to their obligations to identify and/or evaluate K.M." The petitioner admits IDEA met their obligations, so why the instant suit?

Issue 2..    Whether the Charter School, as the LEA, failed to evaluate and/or identify this student as eligible for special education services?

See answer above

Issue 3.    Whether K.M. has been denied a Free and Appropriate Public Education?

See answer above.

Under the remedy section, the petitioner requests numerous things, many which cannot be granted by IDEA.

Remedy 1.    A finding that Charter School denied K.M. FAPE by failing to identify and/or evaluate her in a timely manner.

This remedy is unwarranted since IDEA did not deny the petitioner FAPE as evidenced in the answer above.

Remedy 2.    That the Charter School shall fund the numerous evaluations.

If the petitioner is trying to get IDEA to perform the evaluations, see answer above, and therefore unnecessary remedy. If the petitioner is requesting independent assessments, she did not clearly state the remedy and therefore unwarranted. In arguendo, the relief is clear, see answer above, and therefore the remedy is unwarranted.

Remedy 3.    Charter School reimburse the parent for any out of pocket expenses

**ANSWER – CONTINUED**

incurred in obtaining independent evaluations within the 120 days time frame.

Since IDEA did not fail to evaluate the petitioner, see answer above, this remedy is unwarranted. Additionally, the petitioner did not follow the rules prescribed under IDEIA to obtain independent evaluations. When a parent initiates the independent evaluations without first requesting the LEA to fund the IEE's or without a hearing officer's directive, the parent bears the burden of the cost. Regardless, the parent must provide the IEE to the LEA before LEA will agree to reimburse the mother. The parent has not done so.

Remedy 4.     MDT within 10 days of completion of the assessments for the purpose of reviewing evaluations, revising the IEP.

According to the footnote, the mother has already completed the evaluations, yet have not provided the assessments to IDEA. IDEA would have convened the meeting as soon as they received the IEE's, yet once again the mother is delaying the process. It is curious, however, how the MDT could revise a non-existent IEP, since the petitioner's argument is IDEA has not identified the student and has not provided her the services.

Remedy 5.     The Charter School shall invite DCPS to the MDT meeting.

IDEA makes it a practice to always invite DCPS, that doesn't mean they always show up.

Remedy 6.     The Charter School shall secure the participation of necessary IEP team members.

This remedy is laughable because the IDEIA already requires it.

Remedy 7.     A notice of placement shall be issued by the public agency within 5 days (public school) or within 30 days (private school) with parent participation.

IDEA is it's own LEA and as such can issue a notice of placement to itself. However, IDEA cannot issue a notice of placement to any other school, public or private. DCPS has the sole responsibility for that.

Remedy 8.     Attorney's fees.

IDEIA does not allow the hearing officer to resolve this issue and therefore in not proper to request the remedy in a due process hearing complaint. Additionally under the new Supreme Court decision, only attorney's fees are covered under IDEIA and not related costs.

Remedy 9.     Meetings scheduled through counsel.

**ANSWER – CONTINUED**

IDEA always includes the counsel and advocates if the parents have identified them.

Remedy 10.    Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter School and/or DCPS obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have.

Once again, the petitioner is requesting relief that IDEA cannot possibly provide. DCPS schedules all hearing, and therefore if the petitioner is requesting a remedy which includes DCPS, they must name them. Also, in the requested remedy, petitioner mentions "DCPS obligation hereunder" once again assigning responsibility to an unnamed party. Finally, the petitioner has mentioned she has obtained the IEE's. The remedy is ludicrous if she is asking for an expedited hearing if she disagrees with her own assessment.

Remedy 11.    In the event that the Charter School shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall the authority to use self-help without further notice to the Charter School/DCPS and initiate an IEP with the DCPS's invited participation, and unilateral placement in an interim school or educational program until such time the Charter School/DCPS can come into compliance and properly assess, program and/or participate.

Once again, the petitioner requests a remedy which includes an unnamed party – DCPS. Furthermore, the conciliation agreement is between DCPS and the U.S. Department of Education and therefore does not obligate IDEA.

Remedy 12.    Provide assessments prior to any meetings.

IDEA complies with all regulations and therefore will continue to comply with this one.

Remedy 13.    To ridiculous to even mention.

Remedy 14.    The Charter School within 10 days of the complaint provide a response to the complaint pursuant to IDEIA.

Is the petitioner really asking for a hearing officer to rule that the respondent must file an answer 10 days after the complaint is filed? By the time of the hearing this issue will be moot. Or is the petitioner asking the hearing officer to order IDEA to answer the complaint 10 days after the hearing is held if IDEA has not answered the complaint?

Remedy 15, 16, 17, 18, 19, 20.    All actions, similar to Remedy 14 required under IDEIA, to occur prior to the hearing.

Same response as for Remedy 14. The hearing officer does not have the authority to

5

**ANSWER – CONTINUED**

order the remedy requested.

Remedy 21.    Remedy 21.    A finding that the parent is the prevailing party in this action.

In view of all the arguments set forth in this answer, this remedy is unwarranted.

### Conclusion

For all the foregoing reasons, IDEA denies all the allegations request the hearing officer dismiss this complaint for failure to name DCPS as a respondent/defendant. Additionally, we request the hearing officer to dismiss this complaint because the parent has been the delaying the process since January 2006 and the petitioner admits IDEA lived up to their obligations. If this case proceeds, we will also be requesting attorney's fees from the petitioner.

Respectfully submitted

William E. Houston
Counsel for IDEA PCS

### CERTIFICATE OF SERVICE

I, William Houston, certify that I transmitted a copy of the foregoing Answer to the 19 July 2006 Complaint by facsimile on 26 July 2006 to Ms. Roberta Gambale and Ms. Rhondalyn Primes, Esquires.

Respectfully,

William E. Houston

208

```
*  *  *  Transmission Result Report(Memory TX) ( Jul.26. 2006 10:28
                                                   1) Dalton,
                                                   2)
```

Date/Time: Jul.26. 2006 10:26AM

| File No. Mode | Destination | Pg(s) | Result | Sent |
|---|---|---|---|---|
| 4840 Memory TX | OGC 202-442-5098 | P. 6 | E-3) 3) | 6 |

```
Reason for error
  E.1) Hang up or line fail            E.2) Busy
  E.3) No answer                       E.4) No facsimile connection
```

## FACSIMILE TRANSMISSION COVER SHEET

DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

26 July 06

DATE:

TO: Ms. Rhonadalyn Primes

AT FAX: 202 442-5098

FROM: WILLIAM HOUSTON

RE: K███ M█████ — Answer & Motion to Dismiss

NUMBER OF PAGES INCLUDING COVER SHEET:         6

COMMENTS:

```
*****************************************************************
```

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

```
*****************************************************************
```

209

☆  ☆  ☆  Transmission Result Report(MemoryTX) ( Jul.26. 2006 10: )

1) Dalton.
2)

Date/Time: Jul.26. 2006 10:26AM

| File No. | Mode | Destination | Pg(s) | Result | Sent |
|---|---|---|---|---|---|
| 4839 | Memory TX | SHO 202-442-5556 | P. 6 | OK | |

---

Reason for error
E.1) Hang up or line fail          E.2) Busy
E.3) No answer                     E.4) No facsimile connection

---

## FACSIMILE TRANSMISSION COVER SHEET

**DALTON, DALTON, & HOUSTON, P.C.**
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

26 July 2006

**DATE:**

**TO:**   Hearing Officer David Smith

**AT FAX:**   202 442-5556

**FROM:**   WILLIAM HOUSTON

**RE:**   ██████████ Answer & Motion to Dismiss

**NUMBER OF PAGES INCLUDING COVER SHEET:**   6

PLEASE PASS TO HEARING OFFICER D. SMITH

**COMMENTS:** _____

*************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

P. 1

* * * Transmission Result Report(MemoryTX) ( Jul.26. 2006 10:24

1) Dalton. Dal...  ...ion
2)

Date/Time: Jul.26. 2006 10:20AM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 4841 Memory TX | 2027422098 | P. 6 | OK | |

Reason for error
E.1) Hang up or line fail
E.3) No answer
E.2) Busy
E.4) No facsimile connection

**FACSIMILE TRANSMISSION COVER SHEET**
DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

26 July 2006

DATE:

TO: MS. ROBERTA GAMBALE

AT FAX: 202 742-2098

FROM: WILLIAM HOUSTON

RE: ████ M████ – Answer

NUMBER OF PAGES INCLUDING COVER SHEET: _____ 6

PLEASE DELIVER ASAP:
COMMENTS:

*****************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.
*****************************************************

211

# FACSIMILE TRANSMISSION COVER SHEET

## DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

**DATE:**            26 July 2006

**TO:**              MS. ROBERTA GAMBALE

**AT FAX:**          202 742-2098

**FROM:**            WILLIAM HOUSTON

**RE:**              K███ M█████ – Answer

**NUMBER OF PAGES INCLUDING COVER SHEET:**            6

**COMMENTS:**        PLEASE DELIVER ASAP:

*******************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

*******************************************************************

# FACSIMILE TRANSMISSION COVER SHEET

## DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

**DATE:** 26 July 2006

**TO:** Hearing Officer David Smith

**AT FAX:** 202 442-5556

**FROM:** WILLIAM HOUSTON

**RE:** K▮▮▮ M▮▮▮ — Answer & Motion to Dismiss

**NUMBER OF PAGES INCLUDING COVER SHEET:** 6

**COMMENTS:** PLEASE PASS TO HEARING OFFICER D. SMITH

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

213

# FACSIMILE TRANSMISSION COVER SHEET

### DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

**DATE:** 26 July 06

**TO:** Ms. Rhondalyn Primes

**AT FAX:** 202 442-5098

**FROM:** WILLIAM HOUSTON

**RE:** K████ M██████ – Answer & Motion to Dismiss

**NUMBER OF PAGES INCLUDING COVER SHEET:** 6

**COMMENTS:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

214

✳  ✳  ✳  Transmission Result Report(MemoryTX) ( Jul.26. 2006 10:3

1) Dalton, Da
2)

Date/Time: Jul.26. 2006 10:30AM

| File No. Mode | Destination | Pg(s) | Result | ent |
|---|---|---|---|---|
| 4842 Memory TX | 2024425097 | P.  6 | OK | |

Reason for error
E.1) Hang up or line fail          E.2) Busy
E.3) No answer                     E.4) No facsimile connection

## FACSIMILE TRANSMISSION COVER SHEET
### DALTON, DALTON, & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

| | |
|---|---|
| | 26 July 06 |
| DATE: | |
| TO: | Ms. Rhondalyn Primes |
| AT FAX: | 202 442-5098 |
| FROM: | WILLIAM HOUSTON |
| RE: | K███ M████ -Answer & Motion to Dismiss |

NUMBER OF PAGES INCLUDING COVER SHEET:                    6

COMMENTS:

*************************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.
IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU
ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR
COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.
IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL
MESSAGE TO US AT THE ABOVE ADDRESS.
*************************************************************************

Phone Log Per Rose Coleman (MHR)
   Contact Person (Dr. McCants)
The clinical was Loged in By
Rose Coleman (MHR) on Jan. 19,06

Around the end of Jan. Dr. McCants
was told to hold off Clinical eval
Per Mrs Blount; Ms McKinley
had something she had to do first.

Around end February beginning March
Ms Deal called Dr. McCants with
the okay to do Clinical

Dr. McCants called Advocate on
April 24 2006 Re Clinical
No return call from Advocate

Ms Deal called Ms Jenkins of
(MHR) Re Katice McAff McKinley
on 4/28/06

Ms McKinley called (MHR) and Left
message with Jeff (information Left →

217

Contact number for Dr McCants
to Reach Ms McKinley at.

June 7th  Dr McCants call McKinley back
at work and left her a message
re. appt. for Clinical.

Dr McCants additional detail on
the June 7th. Gave Ms McKinley
June 11, 2006 date to perform
Clinical

Dr. McCants call'd back to confirm
June 11, 2006 appt. No response

July 19, 06  Ms. Deal called (Rose
Coleman of MHP) to check on
the social History Eval. Notice
that the clinical wasn't done.

Mrs. Coleman called Dr McCants
on July 19, 2006 @ 10:50 am to try
scheduling another appt. /Clinical.

Dr. McCants Phone Log w/ Ms. Mckinley

- Dr. McCant called Ms McKinley
on July 20, 2006  Re. Clinical eval.

- July 21st 2006 @ 2:15 pm
Ms. McKinley stated that she left
Dr. McCants 2 messages Re. Returning
phone call re July 20th.

- Dr. McCants called Ms McKinley
today 7/24/2006  to scheduled
clinical eval- dates left on
voice mail are
Tuesday 25th 2006 @ 12:30pm
Thursday 27th 2006 @ 9:30am

Thanks
Mrs Coleman

219

```
TRANSMISSION VERIFICATION REPORT
```

```
TIME  : 08/22/2007
NAME  : STUDENT
FAX   : 2024425556
TEL   : 2024425432
SER. # : BROH3J608001
```

```
DATE,TIME          08/22  07:14
FAX NO./NAME        97037392323
DURATION           00:00:19
PAGE(S)            01
RESULT             OK
MODE               STANDARD
                   ECM
```

# District of Columbia Public Schools
## State Enforcement & Investigation Division
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



HEARING NOTICE

MEMORANDUM VIA: [✗] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:   Parent (or Representative): _R. GAMBALE / W. HOUSTON_ Fax No.: _742-2098_
                                                                    _(703) 739-2323_
      LEA Legal Counsel: _R. PRIMES_

RE:   _M_____, K_____ and (LEA) DOB: _4/17/90_
          Student's Name

FROM: __SHARON NEWSOME__
      Special Education Student Hearing Office Coordinator

DATE SENT: _8/22/06_

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_7/19/06_. Please be advised that the hearing has been scheduled for:

      DATE: _9/22/06_
      TIME: _11:00 Am_

220

```
TRANSMISSION VERIFICATION REPORT
```

```
TIME   : 08/22/2006
NAME   : STUDENT HEARING OFF
FAX    : 2024425556
TEL    : 2024425432
SER. # : BROH3J608001
```

| | |
|---|---|
| DATE,TIME | 08/22  07:13 |
| FAX NO./NAME | 97422098 |
| DURATION | 00:00:15 |
| PAGE(S) | 01 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556

HEARING NOTICE

MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:   Parent (or Representative): _R. GAMBALE / W. HOUSTON_ Fax No.: _742-2098_
                                                                    _(703) 739-2323_
      LEA Legal Counsel: _R. PRIMES_

RE:   M_____ K_____ and (LEA) DOB: _4/17/90_
          Student's Name

FROM:  SHARON NEWSOME
       Special Education Student Hearing Office Coordinator

DATE SENT:  _8/22/06_

......................................................................

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_7/19/06_. Please be advised that the hearing has been scheduled for:

      DATE:  _9/22/06_

      TIME:  _11:00 Am_                                         221

# STATE EDUCATION AGENCY
# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| M███████, K. | | |
| Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| **DCPS** | ) | |
| **Atetnding IDEA PCS** | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

## **SCHEDULING MEMORANDUM**

1. A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2. The complaint notice was filed on **July 19, 2006**

3. The deadline for the resolution meeting is **August 3, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A. ***Prior Written Notice Not Issued by the Local Educational Agency***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

   1. An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
   2. A description of other options that the IEP Team considered and the reasons why those options were rejected;
   3. A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

Rev'd. 7/6/05

4.    A description of the factors that is relevant to the agency's proposal or n i·

B.    Prior written notice, if not already provided to the parent, must be sent by the Loc:.
Educational Agency to the complaining party no later than **July 29, 2006**.

C.    ***Deficiency Notice***.  A complaint notice shall be deemed sufficient unless the parti
receiving the notice notifies the Student Hearing Office and the complaining party i
writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint do
not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **August 3, 2006**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not
resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the
complaint, the due process hearing may occur, and all applicable time lines for scheduling a due
process hearing will commence.  A final hearing officer's decision must be issued within 45 days
from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties
should consult with legal counsel or other representative to answer any legal questions about your
rights, duties, and responsibilities under the law.  The school or the Local Education Agency
responsible for scheduling the meeting will provide information about the time, date, and location
of the resolution meeting.

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Attorney: Roberta Gambale, Esq.**
**Parent: Consuela McKinley**

Telephone Number: **(202) 742-2000**
Fax Number: **(202) 742-2098**

Pages: **3**
Date: **July 19, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **K███████ M███████**
School: **Attending IDEA PCS**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office. If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556. Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

**Thank You**
**Pamela Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged. The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited. If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

224

TRANSMISSION VERIFICATION REPORT

```
                              TIME : 07/19/       
                              NAME : STATE
                              FAX  : 2024425253
                              TEL  :
                              SER.# : 000D6J4
```

```
DATE,TIME               07/19  20:58
FAX NO./NAME            97422098
DURATION               00:00:56
PAGE(S)                03
RESULT                 OK
MODE                   STANDARD
                       ECM
```

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

# Time Sensitive Materials Attached

### Prompt Attention: Attorney: Roberta Gambale, Esq.
### Parent: Consuela McKinley

Telephone Number: **(202) 742-2000**
Fax Number: **(202) 742-2098**

Pages: **3**
Date: **July 19, 2006**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: ████ M███████
School: **Attending IDEA PCS**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office. If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556. Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

**Thank You**
**Pamela Brown**

225

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



### *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals wit**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a **"Resolution Session"**) with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

**A.  INFORMATION ABOUT THE STUDENT:**

Name of the Student: ▓▓ M▓▓▓▓ Date of Birth: **April 17, 1990**
Address: **4202 Fort Dupont St. SE Washington, DC 20020**
Home School:  **IDEA Public Charter School Center**
Present School of Attendance: **Same** [1]

Is this a charter school? **Yes**      (If yes, you must also provide a copy of this notice to the charter school principal or director)

---

[1] Pursuant to the recommendations of her doctors, K.M. has not yet returned to school since her release from the hospital.

1

Parent/Guardian of the Student: **Ms. Consuela McKinley**
Address (if different from the student's above): same

B.  **Legal Representative/Attorney:**

Name: **Roberta L. Gambale, Esq. ( James Brown and Associates, PLLC)**
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone: (w) (202)742-2000 (ext. 2021) (Fax) (202) 742-2098    (e-mail) Rgambale@jeblaw.biz
Will attorney / legal representative attend the resolution session?    **X** Yes    ☐ No

C.  **Complaint Made Against (check all that apply):**

X  IDEA Public Charter School

D.  **Resolution Session Meeting Between Parent/Representative and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for this process.

E.  **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent.  Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing.  Please check all that apply:

**I am requesting an administrative due process hearing only.**

F.  **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

**I. Nature of the problem.**

**Background**

K███ M█████ hereinafter "K.M.") DOB: 4/15/90, is a 10th grade student at IDEA Public Charter School.  In October 2005, after a suicide attempt at the school, K.M. was hospitalized at the Psychiatric Institute of Washington ("PIW").  Upon her release from PIW, it was recommended that K.M. receive home educational services.  While parent promptly provided a copy of Dr. Laurence Greenwood's recommendation to both the Charter School and District of Columbia Public Schools ("DCPS") requested that home services be provided, such services have not been provided to K.M.  No further action was taken by either DCPS or IDEA PCS regarding K.M.  In January 20065, parent retained the services of counsel and a written request for both evaluations and/or a meeting to review diagnosis made at PIW and discuss K.M.'s educational needs.  An MDT meeting was held on or about March 6, 2006 at IDEA Public Charter School at which time the team agreed to conduct comprehensive evaluations of the student.  To date, evaluations have not been conducted and/or a meeting convened to address KM's need for services.

2

**IDEA Public Charter School failed to evaluate within 120 days and/or identify K.M. as a disabled student in need of Special Education Services pursuant to its' "child find" obligation and DC Municipal Regulations**

Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446 at Sec. 101, § 612(3)(A) requires the LEA to ensure that:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State, and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and currently receiving needed special education and related services.

The public agency's child find obligation is an affirmative one. Lincoln County Sch. Dist. A, 39 IDELR 185 (EDPA 2003); Wise vs. Ohio Dept of Education, 80 F.3d. 177, 181 (6th Cir. 1996), Robertson County School System vs. King, 24 IDELR 1036 (6th Cir. 1996) (affirmative obligation of states and local school districts—not parents-to identify, locate and evaluate all children, including migrants and the homeless, with disabilities residing within its jurisdiction who have disabilities and are in need of special education or related services.) An LEA's unawareness of a student's possible disability and need for special education likewise would not relieve it of its obligation, if it should have suspected the student might have such a disability. Reid vs. District of Columbia, 310 F. Supp 2d 137 (D.D.C. 2004); 30 DCMR Sec. 3004.1(a) (child with a suspected disability to be referred to IEP team by school staff.) The proposed regulation at 34 C.F.R. 300.125(a)(1)(2) restate the statutory requirement and make it applicable to all children who are "suspected of being a child with a disability under section 300.7 and in need of special education, even though they are advancing from grade to grade." The IDEA's continuing child find requirement applies to all children residing in the District of Columbia regardless of:

(a) The severity of the disability;

(b) Whether the child is in the custody or under the jurisdiction of any public or private agency or institution;

(c) Whether the child has never attended or will never attend public school; and

(d) Whether the District of Columbia serves infants and toddlers under Part C or preschool children under Part B.

DC Municipal Regulations place the obligation to conduct comprehensive evaluations of the student upon the LEA. (30 DCMR Sec 3005). In the case at hand, the Charter school filed lived up to its obligations to identify and/or evaluate K.M. Charter School were on notice that K.M. was a child with a disability back in October 2005 and of the fact that she was diagnosed with major depression and that depression. The parent timely informed the Charter School after K.M.'s release from and of the fact that the doctor was recommending services. When the Charter School failed to know of the fact that the doctor was recommending services, the parent sent a letter to DCPS Superintendent Janey's Office advising him of the situation requesting assistance on or about November 8, 2005.

3

In addition, many of the teacher's admitted to having concerns about K.M.'s a[...] performance during the first advisory of the 05/06 school year. One teacher reported [...] appeared to be distracted in class and often failed to turn in class work. In a written statem[...] teacher asserted that " *Katrice seems to need more specialized attention. It would be in he[...] interest to get tested and receive services from special education*" Other teachers as well report[...] similar problems and recommended services. According to her English teacher, who taught K M [...] only in 10th grade but also in 9th grade "*It is my recommendation that Katrice be examin[...] for possible disabilities, academic or emotional that may be keeping her from accomplishing much of what she wishes to accomplish in school*".

A multidisciplinary team meeting was held on or about March 6, 2006 at which time the Charter school agreed to do comprehensive testing for K.M. To date, the only evaluator the parent has been contacted by was a social worker to whom the parent provided the requisite information for a social history evaluation to be completed though the parent has not received a copy of the written evaluation report. [²]

As a result of the failure to meet their obligations under "Child Find" K.M. has been denied a Free and Appropriate Public Education ("FAPE") and should be entitled to compensatory relief to help remediate the harm caused by Charter School failure to identify and/or program for this student. See School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts, 471 U.S. 359 (1985); Diatta v. District of Columbia 319 F. Supp.2d 57, 65 D.D.C. 2004 Kerkam I, 862 F.2d 84 (D.C. Cir. 1991). KM has missed over ten (10) months of school and will likely be unable to graduate on time due to her disability. There is concern about whether or not an alternate placement is needed for this student.

## II.  Issues presented.

- Whether IDEA Public Charter School denied K.M. a free and appropriate public education by failing to meet their child find obligation under either the IDEA and/or IDEIA and/or failed to comply with DC Municipal Regulations?

- Whether the Charter School, as the LEA, failed to evaluate and/or identify this student as eligible for special education services?

- Whether KM has been denied a Free And Appropriate Public Education ("FAPE")?

## III.  To the extent known to you at this time, how can this problem be resolved?

WHEREFORE, the parent, by and through counsel, requests the following relief:

1. A finding that Charter School denied K.M. FAPE by failing to identify and/or evaluate her in a timely manner;

2. That the Charter School shall fund the following evaluations to include but not limited to: a) psycho-educational evaluation; b) clinical psychological; c) speech and language assessment; d) social history ; e) functional behavioral assessment; and e) classroom observation, as well as, any evaluations warranted based upon the findings of these such as either a psychiatric evaluation and/or neuropsychological evaluation and/or audiological evaluation and/or occupational therapy evaluation;

---

[²] Because the parent is concerned about evaluations being completed and eligibility and placement being discussed before the commencement of the 06/07 school year- she has paid out of pocket for an independent psychological evaluation.

4

229

3. That the Charter School reimburse the parent for any out of pocket expenses incurred in obtaining independent evaluations not completed within the 120 day time frame within 30 calendar days;

4. That the Charter School shall convene an MDT meeting within ten (10) calendars days of completion of the assessments for the purpose of reviewing evaluations; revising the IEP; discussing compensatory education; discussing and determining placement;

5. That the Charter School shall invite DCPS to participate in the meeting to be scheduled;

6. That at the afore mentioned meeting, Charter School shall secure the participation of all necessary IEP team members to include but not limited to the appropriate personnel required to review assessments and develop an appropriate program for this child and discuss placement and compensatory education;

7. A Notice of Placement to a suitable placement shall be issued by the public agency with 5 days (public school) or within 30 days (private school) with parent participation;

8. That Charter agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

9. All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

10. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter School and/or DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

11. In the event that the Charter School shall fail to comply with the terms herein, then under the Conciliation Agreement, the parent shall have the authority to use self help without further notice to the Charter School/ DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the Charter School/DCPS can come into compliance and properly assess, program and/or participate;

12. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

13. 19.. The Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

14. That Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why they proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those

5

options were rejected, iii) a description of each evaluation procedure, assessment, record or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

15. That Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School/DCPS, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

16. That Charter School , within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), respond to the parent's request alleging any insufficiency of notice.

17. That the Charter School's failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(C), and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time.

18. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

19. That the Charter School, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons: 1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a psychiatrist and/or clinical psychologist; 5) an occupational therapist; and/or 6) any person(s) who conducted any assessments on the student.

20. That the Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(f)(1)(B) constitute joint waiver between Charter School and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

21. A finding that the parent is the prevailing party in this action.

6

G.    <u>Accommodations and Assistance Needed:</u>

•   N/A

Dated this 19th day of July, 2006

Roberta L. Gambale, Esq.,
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021
Counsel for the Parent

**Mail, fax or deliver this complaint notices to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

7

232

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Juan J. Fernandez¹
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram

¹ Admitted in Bolivia Only

---

# FAX COVER SHEET

DATE:           **7/19/06**

TO:             **Ms. Sharon Newsome, DCPS Student Hearing Coordinator**

FAX NO.:        **(202)442-5556**

FROM:           **Roberta L. Gambale, Esq.**

SUBJECT:        **Due Process  Complaint for K███ M██████, DOB: 4/15/90**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:

The attached information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE


IN THE MATTER OF ███████ ████████

HEARING DATE:   SEPTEMBER 22, 2006


TRANSCRIBED BY
LEGAL PERSONNEL, INC.   (301) 277-5711

1

APPEARANCES

HEARING OFFICER:                          HERBERT ST. CLAIR


ATTORNEY ADVISOR FOR
     DISTRICT OF COLUMBIA
     PUBLIC SCHOOLS                       MR. GUPTA

PARENT OF K█████ M███████                 MRS. MCKINLEY

ATTORNEY FOR PARENT                       ROBERT GAMBALE

ATTORNEY FOR IDEAL PUBLIC
     CHARTER SCHOOL                       BILL HOUSTON

EXPERT FOR IDEA                           DR. MCCANTS

PRINCIPAL OF IDEAL                        MS. PORTIA DEAL

2

1    HEARING OFFICER: Good Morning this is the matter of

2    K████ M████████ who was born on April 15, 1990. This

3    confidential administrative hearing concerns a special education

4    services being provided to K██████ by IDEA Public Charter

5    School, its own LEA. Today is Friday, September 22, 2006. It's

6    close to 11 in the morning. This Hearing is authorized by Public

7    Law 108-446, the Individuals With Disabilities Improvement Act

8    of 2004 and Title V of the District of Columbia Municipal

9    Regulations. This Hearing is conducted under the auspices of

10   the District Of Columbia Public Schools Hearing Act referred to

11   as DCPS. We are in Hearing Room Number 1. This Hearing is

12   confidential and will be closed to the public, unless you Ms.

13   McKinley expressly state that it should be an open Hearing or a

14   public Hearing. This Hearing is being recorded and either party

15   is entitled to copy of the recording or a transcript by making a

16   written request for both or either to the Student Hearing

17   Office, DCPS. My name is Herbert St. Clair I am the Hearing

18   Officer. I am going to ask everyone here to please state his or

19   her name. Why don't we start with Mr. Houston.

20       MR. HOUSTON: Bill Houston, for IDEA Public Charter School.

21   Portia Deal, Special Education Coordinator IDEA Public Charter

22   School.

23       MS. MCKINLEY: Consuella McKinley, parent of K██████

1   M██████ .

2       MS. GAMBALE:  I'm Roberta Gambale, I am the attorney for

3   the parent.

4       HEARING OFFICER: Okay.  Now, I have disclosure from Ms.

5   McKinley dated September 15th and one from IDEA Public Charter

6   School also dated September 15th, unless I hear an objection I'm

7   going to place the disclosure into the record at this point. All

8   right, the disclosure is into the record.  Are there any

9   preliminary matters counsel?  Ms. Gambale, does Ms. McKinley

10  waive her review of her rights?

11      MS. GAMBALE: We would waive a formal reading of the rights

12  at this time.

13      HEARING OFFICER: All right.  Now.  This is under the new

14  burden of proof regime, right Ms. Gambale.  When was the

15  Complaint filed in this, if it is after July 3rd.

16      MS. GAMBALE: On July 19th.

17      HEARING OFFICER: So Ms. McKinley has the burden of proof in

18  this matter.  For what I would like you to do is to make an

19  opening statement, and be as succinct as possible, where you

20  think IDEA denied K██████ a free appropriate public education.

21  Mr. Houston are you going to - well at what point in the

22  proceeding would you like to make your opening statement?  After

23  Ms. Gambale or before you begin your case.

4

1        MR. HOUSTON: Before we begin our case.

2        HEARING OFFICER: All right.  After you conclude your

3    opening statement Ms. Gambale, I'm going to ask you to call your

4    first witness.

5        MS. GAMBALE: Okay.

6        HEARING OFFICER: Please begin.

7        MS. GAMBALE:  Basically we are here with K▆▆▆, M▆▆▆▆.

8    K▆▆▆ is a tenth grade student at IDEA public charter school

9    that's is the school that she's most recently attended.

10       HEARING OFFICER: I don't want to cut you off, but when

11   exactly did she attend from when to when.

12       MS. GAMBALE: She's registered there and she attended,

13   during the 2005 - 2006 school year she was in attendance at the

14   school. And in October, 2005 at the school there was a suicide

15   attempt.

16       HEARING OFFICER: Did she attend after October.

17       MS. GAMBALE: No. No.

18       HEARING OFFICER: Can you give me a date?  11 05 36

19       MS. GAMBALE: After—

20       HEARING OFFICER: The date when she withdrew during October.

21       MS. GAMBALE: She never withdrew from the school.

22       HEARING OFFICER: When she stopped attending?

23       MS. GAMBALE: After her suicide attempt in October.

5

1    HEARING OFFICER: You don't have a date?

2    MS. GAMBALE: I don't have the exact.

3    MS. MCKINLEY:  October 17th.

4    HEARING OFFICER: All right go ahead. Go ahead.

5    MS. GAMBALE: Okay. Basically what happened was she

6    hospitalized after the suicide attempt at PIW.  The psychiatrist

7    in the case had recommended that she receive home instruction

8    and home tutoring thereafter. The parent - there were letters

9    that were exchanged, that you'll have a chance to review in

10   evidence, that were sent to the school and response from the

11   school. And, after the parent received no response, nothing was

12   done, the parent retained counsel. We made a formal written

13   request for evaluations to be conducted January 10th.

14   HEARING OFFICER: January 10th.

15   MS. GAMBALE: January 10th.  We participated in an SEP

16   meeting in March of 2006.

17   HEARING OFFICER: Can you give me the date?

18   MS. GAMBALE: On March --.

19   HEARING OFFICER: March what?

20   MS. MCKINLEY: 6th.

21   HEARING OFFICER: March 6, 06.

22   MS. MCKINLEY: Yes sir.

23   MS. GAMBALE: And the notes are also in evidence. But we

1  participated in the meeting and the school agreed to conduct

2  evaluations.  The parent participated, gave the information for

3  the social history, we've never received the social history

4  report.  But none of the other evaluations have been or have

5  been scheduled by the school. It's been well over 120 days.

6      HEARING OFFICER: Just a minute.  Ladies and gentlemen this

7  is Mr. Saurabh Gupta.  He is a new member of the Office of

8  General Counsel staff.  Let me just stop for a minute.  DCPS is

9  not a party.

10     MR. GUPTA: Yeah, that's what I came to state.

11     HEARING OFFICER: Yeah you're not a party so.

12     MR. HOUSTON: Actually the Hearing Request does have them,

13  they are several things that they are requesting as part of the

14  relief that only DCPS can provide.

15     HEARING OFFICER: Like only – as - well and what is that?

16     MR. HOUSTON: They're asking for a Notice of Placement

17  outside of IDEA public charter school.

18     MS. GAMBALE: We're concerned about –

19     HEARING OFFICER: Just a minute – just a minute –.

20     MR. HOUSTON: Number 7. Their relief and notice of placement

21  to a suitable shall be issued by the public agency within 5

22  school days for public days or 30 days within for a private

23  school.

1     HEARING OFFICER: All I can do is just ask if - I don't see

2  that as making them a party.  I can see myself if I order an MDT

3  meeting.  I cannot see myself finding a denial of FAPE without

4  ordering an MDT meeting, and then ordering IDEA to invite DCPS.

5  Other than that.

6     MS. GAMBALE: And that's what we requested.

7     HEARING OFFICER: Just a minute.  I'm not going to forget

8  you.

9     MR. HOUSTON: I'm just saying that they were named, their

10  specific reliefs in there that only DCPS can provide.

11     HEARING OFFICER: I understand, but I'm trying to say is

12  there anything that you can imagine that DCPS cannot be apprised

13  of at an MDT meeting.

14     MR. HOUSTON: No sir.  But it's her Hearing Request.  So I'm

15  just saying that there we're part of it.

16     HEARING OFFICER: Are you saying that DCPS is a party Ms.

17  Gambale?

18     MS. GAMBALE: We're not claiming that DCPS denied this child

19  FAPE, but we're claiming is that we asked specifically in our

20  request for relief that they be invited because we're concern

21  that the child may in fact, require an alternate placement.  We

22  don't know yet because we've not have the eligibility meeting.

23  And she's not been determined eligible.  She doesn't have her

1   program so we can't - we haven't quite gotten to that phase. But

2   we do have concerns based on her history, that she may need an

3   alternate placement, in which case we want DC to be aware of

4   that and be a part of any meeting that's convened.

5        HEARING OFFICER: Mr. Gupta was right. You are not required

6   here.  Okay now.  Not unless - you can stay and observe them,

7   unless you object, because this is a confidential proceeding.

8        MR. GUPTA: I have other things to do.

9        HEARING OFFICER: Mr. Gupta.  I understand.  Just wait right

10  there.

11       MR. HOUSTON: All I was doing was raising the point --.

12       HEARING OFFICER: I've made a record.  You can go about your

13  business.

14       MR. GUPTA: Yes sir.

15       HEARING OFFICER:  You can go about your business.

16       MR. GUPTA: Yes sir.

17       HEARING OFFICER: You can go about your business.

18       MR. GUPTA: Thanks sir.

19       HEARING OFFICER: Now you were giving us the opening

20  statement. Excuse the interruption.

21        MS. GAMBALE: Okay. Again, in October in 2005 K▬▬▬

22  M▬▬▬ was hospitalized after a suicide attempt at the school

23  She was hospitalized at PIW upon release the doctors diagnosed

9

1    her with major depression.

2         HEARING OFFICER: Where was she released?

3         MS. GAMBALE: October 24th. The doctors diagnosed her with

4    major depression and recommended home instruction. The doctors

5    sent letters to the school as well as letters to the parent

6    indicating they were not recommended that she return to the

7    school and that she receive home instruction. The parent had no

8    response to any of the letters and though they only received –

9    but nothing was done. They acknowledged that they had received

10   it --.

11        HEARING OFFICER: Ms. Gambale when you said the parent did

12   not receive a response to the letters, are you talking about.

13        MS. GAMBALE: Nothing was done.

14        HEARING OFFICER: Let me get my question out. Are you

15   saying that there was no response to the letters sent by the

16   doctor, or no response from letters sent by Ms. McKinley.

17        MS. GAMBALE: There was no action taken by the school that

18   were provided to the school.

19        HEARING OFFICER: The letters that we are talking about are

20   the ones are from the doctor?

21        MS. GAMBALE: From the doctor.

22        HEARING OFFICER: All right. Go ahead.

23        MS. GAMBALE: But there was a psychiatric discharge

1    evaluation that was completed that diagnosed with major

2    depression.  And the parent - eventually hired counsel in

3    January of 2006.  A written request for evaluations was sent out

4    in January.  At this point in time, we well exceeded the 120

5    days. There have been no evaluations. Not only was the school

6    aware back in November when they first received a copy of the

7    psychiatric report that this was child with a disability --.

8         HEARING OFFICER:  A psychiatric report was delivered to

9    IDEA?

10        MS. GAMBALE: Yes.

11        HEARING OFFICER: By whom?

12        MS. GAMBALE: It was sent to school along with the

13    correspondence from the doctor.

14        HEARING OFFICER: The doctor sent it?

15        MS. GAMBALE: HmmmHmmm.

16        HEARING OFFICER: All right.  Go ahead.

17        MS. GAMBALE: And the parent's also provided a copy, but

18    that's in our Exhibit number 16 and the letters are Exhibits

19    number 13 and 14.  But bottom line is they were aware that the

20    student that the child with a disability. They took no action.

21    They should have upon the incident occurring, they had evidence

22    to suggest that this was a child that needed testing. All of

23    teachers also were recommending that the child be tested to see

1    if she was a child with a disability. Their letters and their

2    recommendation in our Exhibit 19.  The SEP meeting was held in

3    March. They agreed that they would do the testing, if the

4    testing was warranted.  No testing – well the only thing that

5    has been done is the parent provided information to the social

6    worker from the school, but has never received a written report.

7    A written report was never provided in connection to this

8    Hearing.  So now we are into a new school year.  The student's

9    has never been identified. She doesn't have a program. She's in

10   need of services. The recommendations are, there is concern

11   about the type of placement that she needs.  And so, she is a

12   student that really needs help. She's missed a whole year of

13   school now.  Because we have been waiting for them to test and

14   to help her and nothing's been done.  The parent has – it's my

15   understanding that the parent has in fact, since the school has

16   not scheduled the evaluations and has not conducted the

17   evaluations, the parent has – has taken the child for a

18   psychological evaluation at her own expense realizing that she

19   didn't have an order that funded it. By her own expense she has

20   done that because she's concerned about – we don't the report

21   yet.  And that is something that she just did within the last –

22   last ah ---

23        MS. MCKINLEY: Few weeks.

1    MS. GAMBALE: Few weeks.    And I'm not sure if that is in

2    our hearing request or not.  I did want to make sure that that

3    was addressed because that is - she's waiting to get back the

4    report now. But we're concerned that we still don't have the

5    social history and that --.

6        HEARING OFFICER: What does Ms. McKinley want?

7        MS. GAMBALE: Basically what she wants is - what she wants

8    is the social history first of all. I know she's given them the

9    information, I don't know why we haven't gotten the report yet,

10   but we haven't.  And we want a meeting to address eligibility,

11   and we would reserve the right to address the issue of comp ed

12   with regards to --

13       HEARING OFFICER: You just want a social history or do you

14   want a complete - or you want the child evaluated?

15       MS. GAMBALE: Well she -

16       MS. MCKINLEY: She said all three tests.

17       MS. GAMBALE: She wants funding for the evaluation.

18       HEARING OFFICER: What are the three tests?

19       MS. MCKINLEY:  Clinical, psychological and educational.

20       HEARING OFFICER: And that's psycho educational.

21       MS. MCKINLEY: Yes sir.

22       MS. GAMBALE: And the parent would want funding --.

23       HEARING OFFICER: She wants reimbursement.

13

1       MS. GAMBALE: Reimbursement.

2       HEARING OFFICER: Reimbursements for evaluation, MDT, IEP

3    Placement, eligibility meeting.

4       MS. GAMBALE: Eligibility meeting

5       HEARING OFFICER: Is that it?

6       MS. GAMBALE: And we had also asked that DCPS, the charter

7    school invite DCPS --.

8       HEARING OFFICER: I'll take care of that.  Anything else Ms.

9    McKinley wants?

10      MS. GAMBALE: That was Ms. McKinley speaking.

11      HEARING OFFICER:  All right, call your first witness.

12      MS. GAMBALE: My first witness is going to be Ms. McKinley.

13      HEARING OFFICER: Ms. McKinley how are you?

14      MS. MCKINLEY:  Fine. How are you?

15      HEARING OFFICER:  I saw you wiping you alright?

16      MS. MCKINLEY: It's been a long process.

17      HEARING OFFICER: That's the reason why I'm asking.

18      MS. MCKINLEY:  It's been a long process.

19      HEARING OFFICER: Yes.  Are you all right?

20      MS. MCKINLEY:  Yes sir. I'm fine.

21      HEARING OFFICER: You ready?

22      MS. MCKINLEY: Yes.

23      HEARING OFFICER:  Ms. McKinley do you solemnly affirm that

1   the testimony that you are about to give during the course of

2   the proceeding will the truth, the whole truth and nothing but

3   the truth:

4       MS. MCKINLEY: Yes sir.

5       HEARING OFFICER: I'm going to ask you to draw that

6   microphone closer to you and to speak up.  Ms. Gambale please

7   begin.

8       MS. GAMBALE: Can you state your name for the record.

9       MS. MCKINLEY: Consuella Smith McKinley

10      MS. GAMBLE: And what is your relationship to K█████?

11      MS. MCKINLEY: I'm K██████'s mother.

12      MS. GAMBLE: And where does K██████ go to school at this

13   point?

14      MS. MCKINLEY: Right now K██████ is home.  She has not been

15   in school since October 17th.

16      MS. GAMBLE:  And what happened on October 17th.

17      MS. MCKINLEY: On October 17th my husband received a phone

18   call that K██████ tried to hang herself in the girl's restroom.

19   He was told to meet her Children's Hospital. I had to leave work

20   to a Hearing that here for another student of mine.  When I

21   returned to school my husband had left a message to the main

22   office. I left school and met him at Children's Hospital.  Due

23   to insurance reasons, Children's did not keep her and she was

15

1     transferred to PIW on the 18th of October. She speak a week in

2     the Psychiatric Institute of Washington. She was discharged on

3     October 24th of 2005.  She's been therapy every week from Joy

4     Berry, 650 Pennsylvania Ave.  One week she attends and the next

5     week she and I attend together.  Dr. Greenwood which was the

6     attending psychiatrist gave me a letter requesting home

7     schooling.  I in return contacted Mrs. Blunt which is the

8     school's principal.  She informed me that the school did not

9     provide home schooling. Dr. Greenwood sent me another letter and

10    I re-faxed that to Mrs. Blunt asking for visiting instructional

11    services.  I spoke with Dr. Walker here at DCPS. I was told that

12    they could not help because IDEA was a charter school even

13    though it falls under the umbrella of DCPS, IDEA could not that.

14    Packets of work was picked up for K█████ on - biweekly every

15    two weeks.  When the work became harder K█████ didn't do the

16    work. As I explained to Mrs. Blunt, how could she do the work

17    when she did not have any instruction. I had outside tutoring

18    for her and the years when on - I mean as the time went on,

19    things just got harder. K█████ wasn't turning in assignments.

20    I found out through the school counselor that K█████ had

21    committed a terrible page web.  The school counselor called and

22    informed.

23         HEARING OFFICER: Terrible?

16

1    MS. MCKINLEY: Web page saying very nasty things about the

2    school and herself.

3    HEARING OFFICER: Okay.

4    MS. MCKINLEY: With drinking and I wasn't aware of that.

5    Mrs. Blunt did inform me that she could contact teachers to get

6    work back and forth. Well, we're now in September 22, 2006 and

7    K█████ is still sitting at home and she's not been serviced. I

8    did receive a call for social history. I received a call from

9    the medical doctor for to set up an appointment. I tried to

10   contact her back, she tried to contact me back, well nothing has

11   happened since then, so.

12   HEARING OFFICER: You said you received a call by a social

13   history?

14   MS. MCKINLEY: Yes. And I don't have her name in front of

15   me, she was representing IDEA. And she met me. And she said

16   what would be easier for me to bring K█████ to the school or

17   her come to the house. And so I took off and met her at home.

18   And she did the social history on K█████ at home.

19   HEARING OFFICER: And you have not received a written ---.

20   MS. MCKINLEY:  No sir I haven't.

21   HEARING OFFICER: Have you heard at all from the person who

22   ---.

23   MS. MCKINLEY: No sir I haven't.

1    HEARING OFFICER: Excuse me Ms. Gambale.

2    MS. GAMBLE: Now in turns of when she was first release,

3    where evaluations done for her PIW:

4    MS. MCKINLEY: Every evaluation that was given to me by

5    Psychiatric Institute of Washington, I submitted it to the

6    school on March 6th when we had the first meeting.

7    MS. GAMBLE:  So they were aware of the fact that she had

8    been diagnosed with depression?

9    MS. MCKINLEY: Yes on that date the school became aware.

10   MS. GAMBLE: At what point did you ask for - for K▇▇▇ to

11   be evaluated for special education services?

12   MS. MCKINLEY: Well, sometime in January, someone for the

13   school, I have the dates here left an envelope with some notes

14   from different teachers dated January 9th that K▇▇▇ needed to

15   be tested due to her attention span, absentees, and I explained

16   in the meeting with Mrs. Hunt present, no one ever contacted me

17   concerned K▇▇▇▇ absentees, school work.  Two teachers which

18   was Mrs. Robane who is no longer there and Mr. Palka, those were

19   the only teachers that I ever from regarding K▇▇▇'s behavior

20   attendance or whatever.

21   MS. GAMBLE: And did you participate in any meetings at the

22   school?

23   MS. MCKINLEY: One school - ah one meeting which was March

1  6th. I received a letter from the school stating one day.  I

2  confirmed that date which was March 7th. Went to school, there

3  was no hearing. They said I had the dates confused.  I think I

4  went on the 6th and they said it was the 7th or vice versa. I do

5  have a copy of my leave slip here from work to show that I did

6  go but on the 6th.  I have an advocate with me stating that the

7  initial date was the 10th. The school did give new work, as I

8  said every two weeks, but without instruction. It wasn't getting

9  anywhere.

10     MS. GAMBLE: Did the school agree to do the testing, what

11  was discussed with regards to testing at that meeting?

12     MS. MCKINLEY: This is the information that was mailed to

13  me, given to me by the school.  Stating the type of test that

14  was going to be done for K████████. And as I said, I haven't heard

15  from anyone.  Only the social history has been done.

16     HEARING OFFICER: Wait a minute. You haven't received a copy

17  of - you haven't received a written report called social

18  history?

19     MS. MCKINLEY: No sir.  She came out and took a report.

20     HEARING OFFICER: Okay.

21     MS. MCKINLEY: But I haven't received it writing, no.

22     HEARING OFFICER: Do I have a copy of that in the

23  disclosure.

1       MS. GAMBALE: YES.

2       HEARING OFFICER: What's the number of on it.

3       MS. GAMBALE: That is in our Exhibit number 17 and 18.

4       HEARING OFFICER: Excuse me.

5       MS. GAMBALE: In terms of – during the 120-day period after

6   January did you receive – except for the meeting, did you

7   receive any communication from the school with regards to – with

8   regards to scheduling an evaluation.

9       MS. MCKINLEY: I haven't received anything from the school.

10  The only thing from the school was this packet of the meeting we

11  had.  Nothing else.

12      HEARING OFFICER: Do you know what those initials mean?

13      MS. MCKINLEY: This MHR?

14      HEARING OFFICER: Medical – medical history report?

15      HEARING OFFICER: Oh. Oh. Oh.

16      MS. GAMBALE: I think that's the name of the company that

17  was supposed to the evaluation.

18      MS. MCKINLEY: This right here?

19      MS. GAMBALE: Huh.

20      HEARING OFFICER: The MHR as far as you understand, means

21  medical history report?

22      MS. MCKINLEY: That's what I thought.

23      HEARING OFFICER: Oh that's just what you thought?

1      MS. MCKINLEY: Yes. The box I checked off for the

2   assessments, which was psychological, educational and clinical.

3      HEARING OFFICER: Yeah, I saw that.

4      MS. MCKINLEY: Okay.

5      MS. GAMBLE: And did anyone contact you about conducting a

6   clinical evaluation?

7      MS. MCKINLEY: No. I received a call a Doctor.  I returned

8   that call, but nothing has come up from that.  That's was

9   sometime around the beginning of August.

10      HEARING OFFICER: Do you recall the doctor's name.

11      MS. MCKINLEY: No sir I don't.  But her office is in Oxxon

12   Hill, I want to say 7196 Oxxon Hill, because I called, and she

13   continued to call me, but when I called back, they was saying I

14   had the wrong number.  It was really crazy.  I can call Ms.

15   Gambale back with it.  That was the address 7196, because I

16   called to get the address to find out where they were located.

17   But I haven't heard anything from that point on.  And Katrice is

18   still receiving therapy every week from Dr. Berry.

19      MS. GAMBLE: And how is that funded?

20      MS. MCKINLEY: I pay for it.  I have to.

21      MS. GAMBLE: And as far as academically, where is K████

22   now, has she been retained?

23      MS. MCKINLEY: I don't know where K█████ is - I don't know

21

1   where she is.  Because we have the Hearing on the 6th and I asked

2   the school's attorney and he explained to me, it doesn't matter

3   what's on the report card.  I mean you know, she was promoted to

4   the 11th graded. And when I received the first progress report it

5   said 10th grade. But he and I went over that and I mean you know

6   there is some classes and credits she did not receive, so I

7   guess right now, she is in 10th.  She has not been withdrawn.  I

8   tried to enroll her in Anascostia on January 12th.  I went back

9   on January 13th.  They told me that I could not enroll her. I

10  went to enroll her as a non-enrolled student, Ms. Brasher and

11  Ms. Cynthia ah---.

12      HEARING OFFICER:  Did the people at Anacostia tell you why

13  they would not enroll her.

14      MS. MCKINLEY: Because she had to withdrawn from IDEA. And

15  someone undoubtedly told them from IDEA that I was going to come

16  in on the 17th to withdraw her.  I was informed by Ms. Gambale

17  not to withdraw her from IDEA. But just to enroll her has a non-

18  enrolled student at my neighborhood school, and that is exactly

19  what I did.

20      HEARING OFFICER: That's what you attempted to do, but

21  actually they would not let you.

22      MS. MCKINLEY:  They would not accept me, no sir.

23      HEARING OFFICER: And they told you if you withdrew the

1   child from - then they would enroll her.

2       MS. MCKINLEY: Yes sir.

3       MS. GAMBLE: Actually, I have nothing further.

4       HEARING OFFICER: Mr. Houston

5       MR. HOUSTON:  Did you ever receive a letter Ms. Blount or

6   any conversations with Ms. Blount about the fact that IDEA

7   doesn't provide visiting instruction in the home.

8       MS. MCKINLEY: Yes sir, as I stated earlier.  I faxed the

9   letter over to - I spoke to Ms. Blount on the telephone. And

10  that was on October 25th.  Ms. Blount informed me that IDEA did

11  not provide home schooling. I had to do that myself.

12      HEARING OFFICER:  All right whenever we're saying IDEA-

13      MS. MCKINLEY: IDEA Public Charter school.

14      HEARING OFFICER: That's good. Not the Individuals With

15  Disabilities Education.

16      MS. MCKINLEY: Okay.

17      HEARING OFFICER: All right.

18      MS. MCKINLEY:  On the 26th I spoke to Dr. Wallace of DCPS,

19  that phone number is 698-3300, and she informed me that she

20  could not help me. I in return spoke to Dr. Lawrence Greenwood

21  who was the attending physician at PIW, and explained to him

22  that because his letter stated home schooling, the principal

23  would not assist me because the school did not provide it. He in

23

1    return re-wrote a letter and put in there, VIS, which is

2    Visiting Instructional Services.  Ms. Blount again returned a

3    letter to me and said, as I informed you before, IDEA does not

4    provide – IDEA Public Charter School does not provide Visiting

5    Instructional Services and used the student that had been shot

6    and work was sent home – dada – dada – dada .  Okay, yes. I

7    received a letter from her stating that the school did not

8    provide it – no services.

9         MR. HOUSTON:  Okay.

10        MS. MCKINLEY: And that letter was dated 11/3.

11        HEARING OFFICER: Wait for the next question. Wait for the

12   next question.

13        MS. MCKINLEY:  Okay.

14        MR. HOUSTON:  Did IDEA Public Charter Schools send you an

15   invitation to a meeting to discuss whether the child needed

16   testing?

17        MS. MCKINLEY: I don't' recall IDEA sending me a letter to

18   come for a meeting.  I received a letter from my attorney -- .

19        MR. HOUSTON:  Okay.

20        MS. MCKINLEY: About three dates that would be available for

21   you all to meet with me.

22        MR. HOUSTON:  Okay.

23        MS. MCKINLEY: Hmmm.Hmmm.

24

1    MR. HOUSTON: When did you have the evaluations done?

2    MS. MCKINLEY: Within the week of August 7 through the 11th.

3    HEARING OFFICER: 2006.

4    MS. MCKINLEY: 2006.

5    MR. HOUSTON:  7th through the 11th.

6    MS. MCKINLEY: And I have not received the results as of

7    yet.  I was hoping to have that to present here, but wasn't

8    ready.

9    MR. HOUSTON:  Okay.  Were ever contacted by anyone that

10   represented the school saying that they wanted to do testing for

11   K_____?

12   MS. MCKINLEY: No sir.  I only received a call for social

13   history, and I asked the lady where was she calling from and why

14   was she calling.  And she said that the school --

15   HEARING OFFICER: You've answered the question.

16   MS. MCKINLEY: Okay.

17   MR. HOUSTON:  Now you had stated that you had provided the

18   medical information to IDEA on March 6th, is that correct?

19   MS. MCKINLEY: I provided the information that was given to

20   me from the Psychiatric Institute of Washington to IDEA Public

21   Charter School?

22   MR. HOUSTON:  Is that the discharge summary?

23   MS. MCKINLEY:  Yes sir it is.

1      MR. HOUSTON:  So IDEA Public Charter School never had that

2  discharge summary until the 6th of March?

3      MS. MCKINLEY: That's correct.

4      MR. HOUSTON:  They only had the letter from Dr. Greenwood.

5      MS. MCKINLEY: That's correct.

6      MR. HOUSTON:  And that letter from Dr. Greenwood is

7  addressed to whom it may concern, is that correct?

8      MS. MCKINLEY: That's correct.

9      HEARING OFFICER: What's the date on it?

10      MR. HOUSTON:  October 30th.

11      HEARING OFFICER: I mean - wait a minute.

12      MR. HOUSTON:  The document is Parent's document number 14.

13      HEARING OFFICER: Just a minute.  Let the Hearing Officer

14  catch up.  There is no inside address on this Ms. Gambale?

15      MS. GAMBALE: There is what?

16      HEARING OFFICER: I'm looking at the letter here. It just -

17  it truly is to whom it may concern.

18      MS. GAMBALE: Yes, but it was received because they

19  acknowledged that in the letter that they sent in response.

20      HEARING OFFICER: Which is what?  Your Exhibit what?

21      MS. GAMBALE: That is  -- that is in Exhibit 16 and 11.

22      HEARING OFFICER: Excuse me Mr. Houston.

23      MR. HOUSTON:  No. No. That's fine sir.

26

1    MR. HOUSTON:  And so you received this letter, which is

2   Exhibit number 15, parent's Exhibit number 15 from Ms. Blount,

3   explaining that the - that IDEA public charter school cannot

4   provide those services?

5    HEARING OFFICER:  Which one is this now?

6    MR. HOUSTON:  Parent's Exhibit number 15.

7    HEARING OFFICER: When you say these services, you mean

8   visiting instructional services?

9    MR. HOUSTON: Yes.

10    MS. MCKINLEY: Yes I received that letter on November 5th. It

11   was dated November 3rd from Ms. Blount.

12    MR. HOUSTON:  Did you document number - parent's document

13   number 13 is a letter to - is a letter to superintendent Janey.

14    MS. MCKINLEY: Yes it is.

15    MR. HOUSTON:  From you.

16    MS. MCKINLEY: Yes.

17    MR. HOUSTON:  Did you get a response from that letter?

18    MS. MCKINLEY: No sir I did not.

19    MR. HOUSTON:  Okay.  Did Ms. Blount at any time tell you

20   that - that the arrangement for public charter schools or

21   visiting instruction is for the District of Columbia to provide

22   those services?

23    MS. MCKINLEY: Ms. Blount informed me that IDEA Public

1  Charter School was not equipped or did not provide visiting

2  instructional services.  I spoke to Ms. Mary Bunn and Ms. Blount

3  explained to me, well if Ms. Bunn gave you that information - in

4  other words Ms. Mary Bunn was letting me know that IDEA could

5  not.

6      HEARING OFFICER: Ms. McKinley.

7      MS. MCKINLEY: Yes sir.

8      HEARING OFFICER: I think the question was, did Ms. Blount

9  tell you that DCPS was supposed to provide those services.

10     MS. KINLEY: No. I don't think she did.  I don't recall. I

11 can go back to my letter. I don't recall her telling me that DCS

12 had to provide those services.  She told me that IDEA Public

13 Charter School did not.

14     HEARING OFFICER: Is there something you're getting ready to

15 reference.

16     MS. MCKINLEY: I'm going back to the letter that Ms. Blount

17 sent to me.

18     HEARING OFFICER: Yeah go ahead.

19     MR. HOUSTON:  Now who's Ms. Bunn that you just mentioned?

20     MS. MCKINLEY: Mary Bunn.

21     MR. HOUSTON:  I'm sorry are you looking at the some

22 documents?

23     MS. MCKINLEY: Yes I am.

28

1    MR. HOUSTON:  May I have the chance to look at the

2  documents that you are using to refresh your memory.

3      MS. MCKINLEY: This is just my dates.

4      MR. HOUSTON:  It doesn't matter.

5      MS. MCKINLEY:  Sure.

6      HEARING OFFICER:  Just a minute. Just a minute.

7      MS. MCKINLEY: It's just my dates.

8      HEARING OFFICER: Just a minute.  Just a minute.  What I

9  want you to do Mr. Houston, is to ask me to direct the parent to

10  provide.

11      MR. HOUSTON: Yes sir.  Yes sir.  Yes sir.

12      MS. MCKINLEY: Yes sir.

13      HEARING OFFICER: There is something in the law about

14  present recollection being revived and past recollection being

15  recorded.  What that means basically is a witness.  You're

16  expected to testify, ideally you are testify from your

17  recollection.  But if you can't, if you have no recollection,

18  then you have to submit the document and the document has to

19  stand or fall on its own. But I will let you refer to documents

20  for dates.

21      MCKINELY: I just want the dates to be accurate.  I know he

22  had his dates accurate. I just want to have my dates accurate.

23      HEARING OFFICER:  I'm going to get you look at the document

29

1   without him inspecting it.  For dates only.  And you were going

2   to look at a letter from Ms. Blount to see whether or not Ms.

3   Blount informed you that DCPS was the one to ask those services.

4        MS. MCKINLEY: Yes.

5        HEARING OFFICER: I want you to look at that.

6        MS. MCKINLEY: Yes sir.

7        HEARING OFFICER: I want you to look at that because I'm

8   interested in that.

9        MS. MCKINLEY: Okay.

10       HEARING OFFICER: And then we'll get back to Mr. Houston's

11  question and I'll apologize to Mr. Houston and then he'll

12  continue his cross-examination.

13       MR. HOUSTON:  Yes sir.

14       MS. GAMBALE:  And this is the letter that in our Exhibit.

15       HEARING OFFICER: What you could just do - just show it to

16  me.  No. No. No.  What I mean  - just point. Just give me the

17  records.

18       MS. GAMBALE: It is in - I believe it is Exhibit number 16

19  or 11, let me just check.

20       MR. HOUSTON: It's document number 15.

21       HEARING OFFICER:  Okay. Does the doctor mention it, does

22  Ms. Blount mention it?

23       MS. GAMBALE: Does she?

30

1      HEARING OFFICER: Mention that DCPS is the one to ask?

2      MS. MCKINLEY: I don't think that letter mentions that, that

3  is why I said no.

4      HEARING OFFICER: And you don't have a recollection of her

5  telling you that -

6      MS. MCKINLEY: No sir.

7      HEARING OFFICER: in the phone --.

8      MS. MCKINLEY: No sir.

9      HEARING OFFICER: Let me get the question out. You don't

10  have a recollection of her telling you that during the course of

11  a telephone conversation?

12      MS. MCKINLEY: No sir.

13      HEARING OFFICER: All right.  Now.  There was a document you

14  were looking at for a date to answer Mr. Houston's question.

15      MS. MCKINLEY: Yes sir.

16      HEARING OFFICER: Do you remember that?

17      MS. MCKINLEY: Yes sir.

18      HEARING OFFICER: I want you to do that.  Then I want you to

19  answer Mr. Houston's question and then after that, I apologize

20  for the interruption Mr. Houston, you can continue your cross-

21  examination.

22      MR. HOUSTON:  Yes sir.

23      HEARING OFFICER: You were looking for a date, did you find

31

1  the date?

2      MS. MCKINLEY: Yes I found it and the letter does not that

3  Ms. Blount said to refer to DCPS.

4      HEARING OFFICER: Excuse me Mr. Houston, please continue.

5      MR. HOUSTON:  Yes sir. You were mentioning Mary Bunn, who

6  is that?

7      MS. MCKINLEY: Mary Bunn is the lady in the Charter Board.

8  And I assuming that she is someone that the Charter School deals

9  with.

10      MR. HOUSTON:  And you had conversation with Ms. Bunn?

11      MS. MCKINLEY: Yes I did.

12      MR. HOUSTON:  And what was that conversation about?

13      MS. MCKINLEY: Ms. Bunn just informed that IDEA public

14  charter school did not provide visiting instructional services.

15      MR. HOUSTON:  And did Ms. Bunn inform you that who would

16  provide those services?

17      MS. MCKINLEY: No I took it upon my own to call DCPS.

18      MR. HOUSTON:  Okay. Did Ms. Bunn tell you why IDEA Public

19  Charter School does not have to provide those services?

20      MS. MCKINLEY: No she did not.

21      MR. HOUSTON:  K█████ in her website that you had mentioned

22  earlier talks about Largo High School.  Did she attend Largo

23  High School?

1     MS. MCKINLEY: No she has not.

2     MR. HOUSTON:  Do you know what that reference was about for

3     Largo.

4     MS. MCKINLEY: No I do not as I explained to you earlier. I

5     was not aware of the website until Ms. Jones, the guidance

6     counselor called me.  I had no knowledge of the website.  I work

7     12 hours a day.

8     HEARING OFFICER: You've answered his question, go to the

9     next question.

10    MS. MCKINLEY: Yes.

11    MR. HOUSTON:  When did you retain counsel to help you with

12    - since you mention that you did counsel, do you recall when

13    that was?

14    MS. MCKINLEY: I spoke with Ms. Michelle Moody in December

15    of 2005.

16    MR. HOUSTON:  All right I have no further questions.

17    HEARING OFFICER: Redirect Ms. Gambale.

18    MS. GAMBALE: Yes, did anyone ever provide you with

19    information about how the special education process works from

20    the school?

21    MS. MCKINLEY: The only information I have for special

22    education services is the information you sent to me with the

23    due process.

1       MS. GAMBALE: From the the time you first contacted me,

2  nobody gave you any information.

3       MS. MCKINLEY: No. No M'ame.

4       MS. GAMBALE: And what kind of - and K▬▬▬ has yet to be

5  identified as a student with a disability?

6       MS. MCKINLEY: That's correct.

7       MS. GAMBALE: Has an IEP or has a program been developed for

8  K▬▬▬?

9       MS. MCKINLEY: No M'ame.  Nothing.

10      MS. GAMBALE: And what kind of out of pocket expenses did

11 you incur in obtaining evaluations for K▬▬▬, beginning the

12 process?

13      MR. HOUSTON: I'm object. I don't that - that has any

14 relevance to these proceedings.

15      HEARING OFFICER: I - I'm a sustain that.  I mean if I order

16 it, if I order it they're going to pay it.  I don't care what it

17 is.

18      MS. GAMBALE: And why did you go ahead and initiate the

19 process before the Hearing and before there was order in place?

20      MS. MCKINLEY: Well as a parent I need to find out what

21 exactly is going on with my daughter.  The school did not

22 contact me so I went ahead. I need her in school.

23      HEARING OFFICER: You're talking about the evaluations?

34

1       MS. MCKINLEY: Yes!  I need to know if she has a disability.

2       MS. GAMBALE: I have nothing further.

3       HEARING OFFICER: Re-cross Mr. Houston.

4       MR. HOUSTON:  No sir.

5       HEARING OFFICER: Next witness Ms. Gambale.

6       MS. GAMBALE: I would rest on that and on the documents. I

7    would reserve the right to call the parent as a rebuttal

8    witness.

9       HEARING OFFICER: All right.  You want to start now.  Do the

10   parties want to keep going or would the parties like a break?

11      MR. HOUSTON: I'm ready to proceed sir.

12      MS. MCKINLEY: Yes.

13      MR. HOUSTON: I'm going to ask for a directed verdict right

14   now?

15      HEARING OFFICER: Directed finding?

16      MR. HOUSTON: Directed finding.  The Hearing Request, the

17   instant Hearing Request --. The relief that they're seeking is

18   that the Charter School shall fund the following evaluations.

19   We're willing to do the evaluations. It did not ask for

20   independent evaluations. It's needs to specifically be stated

21   that it has to be funding independent testing.  Number two, that

22   the charter school shall fund the following evaluations to

23   include but not limited to - and we're willing to do that.  They

1   have not met the burden that they require independent testing.

2   The burden for an independent testing is that they request

3   independent testing as a result of the testing that we did and

4   they found some problems with it and they requested independent

5   testing.  At that point, the LEA has the obligation of either

6   saying yes to the independent evaluations at the time or taking

7   the parent to a Hearing without unnecessary delay. The requested

8   - the requested relief that Ms. Gambale is saying on the record

9   here was not what was requested in the Due Process Hearing

10  Request.

11      HEARING OFFICER. Is that it?

12      MR. HOUSTON: Yes sir.

13      HEARING OFFICER: Well let me just—I'm wondering if you're

14  talking about the 5/04 letter, that is where the parent can

15  request an independent educational assessment if the parent

16  disagrees with a publicly provided educational assessment. We

17  know that's the not the issue here.  The issue is why haven't -

18  why weren't the evaluations done after March 6th. Between March

19  6th 2006 and when this complaint was filed which is what --?

20  When did you file this?

21      MS. GAMBALE: July 19th.

22      HEARING OFFICER: July 19th.  That's the issue.  So I'm

23  going to --. Tell you what I will deny it flat out. I'll take it

1   under advisement.  Yes sir. And I'm going to order you forward.

2      MR. HOUSTON: Yes sir.  If you could take judicial notice

3   that --.

4      HEARING OFFICER:  Administrative Notice.

5      MR. HOUSTON: Administrative Notice that our document number

6   1, because this is the second go-around for this. Our document

7   number 1 was a due process Hearing Complaint filed on 24th of

8   February which was subsequently dismissed because they failed

9   name the correct parties.  But the relief on February 24th --.

10     HEARING OFFICER: Is there an HOD on this?

11     MR.HOUSTON: The dismissal?

12     HEARING OFFICER: No sir.  I don't think I have the

13   dismissal, but there was a dismissal but that's why we're at

14   this point. I can provide you with the dismissal of the Hearing.

15     HEARING OFFICER: Yeah please, cause I want to know why it

16   was dismissed.

17     MR. HOUSTON: But the.. the … everything is the same except

18   that they've removed DCPS under certain parts of the Hearing

19   Request.

20     HEARING OFFICER: Okay.

21     MR. HOUSTON: And the footnote that says the mother is going

22   to - the mother has already paid for an Independent testing. So

23   it' unclear how on February 24th they were making the same

1  arguments as they are making on July 19th, when is prior to the

2  March 6th meeting.  And so I'd like the Hearing Officer to take

3  administrative notice of that.

4     HEARING OFFICER: Yes, I'm going to the - I'm going to

5  direct to give me - to provide an - supplement the record with a

6  copy of the dismissal.

7     MR. HOUSTON. Yes sir.

8     HEARING OFFICER.  The dismissal.  Termination.

9     MR. HOUSTON: Yes sir.  As a first witness I'd like to call

10  Ms. Blount who is at IDEA public charter school.

11     HEARING OFFICER: I'm going to determine that you waive an

12  opening statement?

13     MR. HOUSTON: Ah…

14     HEARING OFFICER: It's up to you.

15     MR. HOUSTON: Oh that's right, I forgot that I hadn't done

16  that.  I'd asked for a directive finding.  IDEA public charter

17  school has been trying to mother throughout this process. Ms.

18  Blount has contacted Ms. McKinley telling her that .. that IDEA

19  public charter school is not formulated to provide in-home

20  services.  Excuse me.  The document that Ms. McKinley talks

21  about, she didn't provide the discharge summaries until March 6th

22  according to her own testimony. IDEA public charter school took

23  it upon themselves to start the process of seeing whether this

1  child needed special education services.  We will show through

2  testimony and through documents that Ms. Blount had initiated

3  the process of gathering information from teachers on whether

4  this child need to be tested. When they came to the conclusion

5  that yes, there were some issues that needed to be addressed,

6  Ms. Blount - or IDEA Public Charter School wrote to the parent

7  on January 10th requesting that they meet and discuss whether the

8  child needed special education testing.

9      HEARING OFFICER: That's your Exhibit what?

10     MR. HOUSTON: That would be our Exhibit number 9. Dated

11 January 10th.  Subsequent to that we had several attempts to hold

12 the meeting.  On February 1st, on February 2nd.  We sent letters

13 on February 13th. There are numerous occasions --.

14     HEARING OFFICER: Those letters, can you reference those

15 letters?

16     MR. HOUSTON: Yes sir.  Well document number 12 is a January

17 13th notice to parent of intent to evaluate or re-evaluate,

18 document number 15, our conversation notes of Ms. Deal who is

19 hear to testify.  Number 16, these of all of course DCP— I mean

20 I'm sorry, IDEA Public Charter School documents; Number 16 are

21 meeting notes where we go together because there was supposed to

22 be a meeting, document number 18; February 3rd letter to Ms.

23 Moody and Ms. McKinley, once again inviting them to a meeting.

1  So we had, we made numerous attempts to schedule the meeting

2  prior to March 6th and will have testimony from Ms. Deal to

3  verify that. Subsequent to the March 6th meeting, we've made

4  numerous attempts to try to get the mother to have K▬▬▬▬

5  available for testing. Dr. McCant, the clinical psychologist

6  will testify that she's made numerous attempts to contact the

7  mother and that those attempts have failed.  There has been a

8  concerted effort by IDEA Public Charter School to do the right

9  thing for this child, to do the testing, but there seems to be

10  an equally concerted effort by the parent to stall the process.

11  And so I'd like to call - huh…. And the discharge summary that

12  the mother provided on March 6th in and of itself does not

13  indicate that K▬▬▬▬ needed special education services. If

14  you'll look - that is - the discharge summary is Parent's

15  Exhibit number 16, on the second page of that, the admitting

16  diagnoses was a major depression, single episode.  And the

17  discharge summary, the discharge diagnosis was once again, a

18  major depression single episode.  That does not mean that she

19  has recurring major depression. It's a single episode. And

20  therefore, that in and of itself, even if we had that document

21  in October would not have told us that she needed special

22  education services. But we went ahead with the process anyway.

23  But we were not, we did not get that discharge notice until the

1    March 6th meeting. If the mother was so intent on getting

2    services for the child, she would have presented all the medical

3    documents to IDEA to show the severity of the need.  But, she

4    waited five months to go provide us with those documents.  My

5    first witness will be Ms. Blount.

6        HEARING OFFICER: All right.  Call Ms. Blount.

7        MR. HOUSTON: Thank you.

8        HEARING OFFICER: This is Charlotte Blount?

9        MR. HOUSTON: Yes sir.

10        MS. BLOUNT: Hi this is Charlotte Blount.

11        MR. HOUSTON: Hi Ms. Blount this is Bill Houston.  Can you

12   hear us?

13        MS. BLOUNT: Yes I can Bill, just a second. Yes I can.

14        MR. HOUSTON: Okay.  We're here at the Hearing, you're going

15   to be our first witness. Ms. McKinley is here. The Hearing

16   Officer is here.  Ms. Gambale, Ms. McKinley's attorney and Ms.

17   Deal are in the room with us.

18        MS. BLOUNT:  Okay.

19        MR. HOUSTON: Okay.

20        HEARING OFFICER: Ms. Blount? Ms. Blount?

21        MS. BLOUNT:  Yes sir.

22        HEARING OFFICER: My name is Herbert St. Clair. I'm the

23   Hearing Officer.

41

1     MS. BLOUNT: Yes Mr. St. Clair?

2     HEARING OFFICER: All right.  Ms. Blount do you solemnly

3  affirm that the testimony you're about to give during the course

4  of this proceeding will be the truth, the whole truth and

5  nothing but the truth?

6     MS. BLOUNT:  I do.

7     HEARING OFFICER: Please begin Mr. Houston.

8     MR. HOUSTON: Thank you. Ms. Blount could tell us your full

9  name and what your position is please?

10    MS. BLOUNT:  Yes. Charlotte Blount. That's spelled B-L-O-U-

11  N-T hyphen Lewis.  I'm the principal of IDEA of Public Charter

12  School.

13    MR. HOUSTON: And how long have you been in that position as

14  the principal?

15    MS. BLOUNT:  I've been the principal since July 1, 2005.

16    MR. HOUSTON: And during that time since July 1st of 2005,

17  have you had an occasion to get to know K███████ M████████?

18    MS. BLOUNT: Yes, I actually got to K███████ prior to

19  becoming the principal.

20    MR. HOUSTON: Okay. On October 17th, an incident occurred at

21  the IDEA Public Charter School.  Do you recall that incident?

22    MS. BLOUNT:  Yes.

23    MR. HOUSTON: And what was that incident?

42

1      MS. BLOUNT: K████.  I was told that K█████ attempted to

2  hurt herself in the girl's bathroom. And she was worked with by,

3  I believe Mr. Epps and one of our counselors.

4      MR. HOUSTON: And what decision did IDEA Public Charter

5  School take or what action did IDEA Public Charter School take

6  when they realized that K█████ tried to commit suicide?

7      MS. BLOUNT:  Well the… the… what happed was that she was.

8  She left the school and she sought treatment and she was gone

9  from the school a very long time and never returned.

10     MR. HOUSTON: Okay. Did you ever get any information from

11 Ms. McKinley about the discharge?

12     MS. BLOUNT:  Yes. Ms. McKinley called me and told me that

13 K█████ had been released from the Psychiatric Institute of

14 Washington and ah—I remember saying that we needed to get

15 official discharge papers from the institution to let us know

16 that she was physically and mentally, emotionally to return to

17 school.  And I'm trying to think back, because that is standard

18 procedure for us to request that.  And she faxed me

19 documentation, I believe from the doctor.  The doctor of record

20 and the letter indicated that he did not that coming back here

21 would be harmful to her.

22     HEARING OFFICER: Wait a minute.  Wait a minute.  Did the

23 doctor recommend that she return to school or that she not

43

1    return to school?

2        MS. BLOUNT: She was released and able to come back to

3    school, you know to a school environment, but that coming back

4    here would be harmful to her.

5        HEARING OFFICER:  What did you understand that to mean?

6        MS. BLOUNT:  Well I didn't' understand it all sir because

7    we were not aware. There was no explanation to that.  And there

8    was nothing prior to K▆▆▆▆ leaving to indicate that there was

9    any fear or any problem here with her.  So I didn't know how to

10   take that.

11       MR. HOUSTON: Did you receive a letter from Dr. Greenwood,

12   the treating psychiatrist saying that, that K▆▆▆▆ needed

13   visiting instructional services?

14       MS. BLOUNT:  Yes. And that is when I began talking to Ms.

15   McKinley because as a Public Charter School we do not have the

16   same rights as a DC Public School.  We do have visiting

17   instructional services the way DC Public School does.  And what

18   we have always done for students who are on a long-term medical

19   absence is to set up work being sent home.  The work is returned

20   and then we send more work. And I waived the attendance policy

21   for students in a long-term medical absence situation.

22       MR. HOUSTON: Did you explain to Ms. McKinley that IDEA

23   Public Charter School could not provide visiting home

44

1    instruction - visiting instruction services?

2        MS. BLOUNT:  I did and I even verified what I was saying by

3    talking to the Public Charter Office of the Executive Director's

4    Office to insure that I was correct in what I was saying.

5        MR. HOUSTON: And what did the Public Charter Board tell

6    you?

7        MS. BLOUNT:  They told me that, they said exactly what I'm

8    saying. That under the municipal laws, we are not, we as charter

9    schools do not have the same privilege regarding home visitation

10    instruction as a DC Public does.

11        MR. HOUSTON: Okay. Subsequent to that did you request

12    teachers to provide you information about how K██████ was doing

13    in school?

14        MS. BLOUNT:  Subsequent to my getting the letter from her

15    doctor?

16        MR. HOUSTON: Yes.

17        MS. BLOUNT:  No, I don't remember requesting anything.

18    Well, let me say this that K██████ had come to me earlier that

19    school year.

20        MR. HOUSTON: Let me rephrase the question Ms. Blount.

21        MS. BLOUNT:  In January, did you send out a questionnaire

22    to see - to the teacher in requesting their input to see whether

23    she needed special education services or anything like that?

1    Let's see just a second.  I personally didn't do that.  It may

2    have been done through the special ed office, but I didn't

3    personally do it.

4        MR. HOUSTON: You have - you have our disclosure document in

5    front of you?

6        MS. BLOUNT:  Yes, I'm looking at now.

7        MR. HOUSTON: Okay. Can you turn to document number 8?

8        MS. BLOUNT:  Just a second.  Just a second Mr. Houston.

9        MR. HOUSTON: Okay.

10       MS. BLOUNT:  Is that Exhibit number 8?

11       MR. HOUSTON: Yes, Exhibit number 8.

12       MS. GAMBALE: I believe that Exhibit number 8 is the same as

13   Exhibit number 19.  The documents that are attached to counsel's

14   disclosure are not the same.

15       MS. BLOUNT: Number 8  is -

16       MS. GAMBALE: As I think what you have before you. I believe

17   it is the same as my 19.

18       HEARING OFFICER: Okay, so what are…

19       MS. GAMBALE: I just want to make sure it is the same as my

20   19.

21       MR. HOUSTON: Ms. Blount have you gotten to that yet?

22       MS. BLOUNT: Well I have under Exhibit number 8, I have a

23   certificate of no record.

1      MR. HOUSTON: No. No. Our documents.  IDEA. My disclosures.

2      MS. BLOUNT:  Okay. I'm looking again Mr. Houston.

3      HEARING OFFICER: Wait.  What do you have your 19?

4      MS. GAMBALE: As my 19 I have (inaudible) that we received

5  for K███████, the first one is from Jill Polka.

6      HEARING OFFICER: Yes.

7      MS. GAMBALE: Huh Hmmm.

8      HEARING OFFICER: This.

9      MS. GAMBALE: HmmmHmmmm.

10      HEARING OFFICER: Okay.

11      MS. GAMBALE: That's what I'm assuming is the same as his,

12  as his 8.  We have not received – then we haven't received all

13  the documents.

14      HEARING OFFICER: What do you have number 8?

15      MS. GAMBALE: As number 8?

16      HEARING OFFICER: I know that's not a complete – because

17  this is twice the size of this.

18      MS. GAMBALE: Huhhh haaa.

19      HEARING OFFICER: I can look at that and tell that's not

20  this.

21      MR. HOUSTON: No sir.  But if you'll see the disclosure

22  statement, it states that we provided the above the documents on

23  second page. There's a bold line that says, that says we

1    provided the above documents on 19 April, prior to the dismissal

2    of the original complaint. In order to reduce paperwork, we'll

3    be providing only the following documents. It counsel's for the

4    parents requires documents 1 - 21, we'll be happy to provide to

5    them.

6        HEARING OFFICER: Let me just say this.

7        MS. BLOUNT:  I have them Mr. Houston.

8        HEARING OFFICER: Hold on a minute Ms. Blount.

9        MR. HOUSTON: I'm going to put you on hold.

10       HEARING OFFICER: Now.

11       MR. HOUSTON: If she needs an extra copy, I have a extra

12   copy for her?

13       HEARING OFFICER: Just a minute.

14       MS. GAMBALE: Most of the documents are documents we

15   received, but we don't have - all right.

16       HEARING OFFICER: Mr. Houston. Because the other case was

17   dismissed, I don't think it was appropriate to refer to

18   disclosure in that case.  If it had been continued, I think you

19   could do that.  But I don't think that it had for paper

20   conservation, I don't think paper conservation is acceptable for

21   not making a complete disclosure in a completely new case.  But

22   I think - this is not serious at all because fortunately, you

23   brought another copy.  Had we gotten over this counselor?

48

1        MS. GAMBALE: Yes.

2        HEARING OFFICER: Mr. Houston are we over this?

3        MR. HOUSTON: All right.  Except if I may, if she just would

4    have read the disclosure.

5        HEARING OFFICER: Well sometimes we don't read all of this

6    Mr. Houston.

7        MR. HOUSTON: Yes sir.

8        HEARING OFFICER: Go ahead.

9        MR. HOUSTON: Ms. Blount.

10       MS. BLOUNT:  Yes.

11       MR. HOUSTON: Okay we're back again.  Our document number 8,

12   can you identify?  There are several there under number 8 isn't

13   there?

14       MS. BLOUNT:  Yes. Number 8 are statements from her

15   teachers.

16       MR. HOUSTON:  And did you ask for those to be produced?

17       MS. BLOUNT:  Yes.

18       MR. HOUSTON:  And those are from just what dates most of

19   them?

20       MS. BLOUNT:  Well they are from January 6, 2006, January 7th

21   from Mr. Palka, English teacher, January 6th, 06 from Mr. Laine

22   Social Studies. January 6th from Sergeant Best her junior ROTC

23   instructor - ah--.

1     MR. HOUSTON:  Okay, that's good enough. So you had started

2  the process of trying to see whether the ███████ needed special

3  education services?

4     MS. BLOUNT:  Yes. Yes.

5     MR. HOUSTON: Okay. Now on January, if you look at document

6  number 9.

7     MS. BLOUNT:  Okay.

8     MR. HOUSTON: Can you identify that document?

9     MS. BLOUNT:  Number 9 is a letter that I wrote to Ms.

10 McKinley.

11    MR. HOUSTON:  And in there did you invite the mother to a

12 meeting at the school?

13    MS. BLOUNT:  Yes.

14    MR. HOUSTON:  And if you will turn your attention to the 4th

15 paragraph.  Can you identify the dates that you had invited Mom

16 to a meeting?

17    MS. BLOUNT:  Yes. We proposed three dates, January 31st,

18 February 1st, or February 2nd at 10:30 for multidisciplinary team

19 meeting.

20    MR. HOUSTON:  And to your knowledge, do you know if the

21 parent or their representative came to any, or responded to that

22 meeting?

23    MS. BLOUNT:  No.

1       MR. HOUSTON: Okay. Do you recall when the first the parent

2   did show up for a meeting at the school?

3       MS. BLOUNT:  Ms. McKinley and Ms. Moody came to the school

4   - ahh--- later in the year.  I don't remember the exact date.

5       MR. HOUSTON:  Okay, if you turn your attention to document

6   number 20.

7       MS. BLOUNT: Let's see.  Number 20.  Okay.

8       MR. HOUSTON:  Can you identify that document?

9       MS. BLOUNT:  This was from March 6, 2006 when we held the

10  meeting, excuse me. I have a bad cold.  We held the MDT meeting

11  with Ms. McKinley, Ms. Moody, teachers and myself and your

12  presence as well.

13      MR. HOUSTON:  Okay. Were you at that meeting?

14      MS. BLOUNT:  Yes I was.

15      MR. HOUSTON: Do you recall what the conclusion of the

16  meeting was?

17      MS. BLOUNT:  The conclusion was that we would test—we would

18  test.

19      MR. HOUSTON: And do you know if the testing has been

20  completed?

21      MS. BLOUNT:  No. The testing has not been completed to my

22  knowledge because, let's see we began, I know Dr. McCants has

23  had difficulty completing her week.

1        MR. HOUSTON:  Do you know why she has difficulty?

2        MS. BLOUNT:  No response from the mother.

3        MR. HOUSTON: Okay.  At any time you think IDEA wanted to

4    refuse the services to K█████?

5        MS. BLOUNT:  No. Absolutely no. I mean, we can't develop

6    anything with respect - in respect to an IEP meeting or services

7    until we finish all testing because that excludes or verifies

8    the need for child's services.

9        MR. HOUSTON:  I have no further question for you Ms Blount.

10        HEARING OFFICER: Ms. Gambale.

11        MS. GAMBALE: I guess it's afternoon now.  Good Afternoon

12    Ms. Blount.

13        MS. BLOUNT:  Good Afternoon.

14        MS. GAMBALE: I just have a few follow-up questions for you.

15    First of all, its my understanding that the ways things were, is

16    that charter school as their own LEA would be responsible for

17    conducting the testing for K█████ and they would be responsible

18    for convening a meeting to develop the program and identify the

19    student is she needs services and then if they couldn't provide

20    those services, then they know the public agency, DCPS and then

21    they would step and provide what services the charter school

22    couldn't provide, is that correct?

23        MS. BLOUNT:  Yes.

52

1    MS. GAMBALE: Now, did you - I'm not seeing anywhere on your

2    letters or the records that you ever provided to the parent

3    information regarding how the process - the evaluation and

4    identification process works under the IDEA.  Did you ever have

5    prior to January 10th, did you ever provide the parent a handbook

6    and have her sign for it.

7    MS. BLOUNT:  Well there was no reason Ms. Gambale to

8    provide Ms. McKinley with anything prior to February 10th because

9    at that point, K██████ - there was no request to test. We

10   weren't even looking at her as an IEP student.

11   MS. GAMBALE: Now you received the written request for her

12   to be evaluated on January 10th, is that correct?

13   MS. BLOUNT:  I received a written request?

14   MS. GAMBALE: On January 10th, there was a letter that was

15   sent to the school that was requesting that comprehensive

16   initial evaluations be conducted for the student?

17   MS. BLOUNT:  We did?

18   MS. GAMBALE: I'm asking you if you recall --.

19   MS. BLOUNT:  I'm asking you because I don't --

20   HEARING OFFICER: Just a minute.

21   MS. BLOUNT: recall getting anything in writing in January

22   requesting the testing. We agreed to test and the first

23   discussion of testing was at the conclusion of the MDT meeting

1  in March.

2      HEARING OFFICER: Ms. Blount, what I want you to do is, is

3  not try not to ask questions.  Let the attorneys ask questions,

4  you try just to answer the question, okay?

5      MS. BLOUNT: Okay.

6      MS. GAMBALE: Do you recall receiving a letter from Michelle

7  Moody on January 3rd asking for the team to convene a meeting?

8      MS. BLOUNT:  On January 3rd, let's see.

9      HEARING OFFICER: Why don't you reference it in the

10  disclosure for the Hearing Officer.

11      MS. GAMBALE:  The letter is actually contained in our

12  Exhibit and it is -- .

13      HEARING OFFICER: By the way I have that (inaudible)

14      MS. GAMBALE: Oh, we have that.

15      MR. HOUSTON: Just to make it easier, it's IDEA's document

16  number 7.

17      HEARING OFFICER: Right. Thank you.

18      MR. HOUSTON: If you look at document number 7 Ms. Blount.

19      MS. BLOUNT:   Okay, I'm at document number 7.

20      HEARING OFFICER: Now wait a minute, now 7 I have as a

21  request for resolution session.

22      MR. HOUSTON: IDEA's number 7.

23      HEARING OFFICER: Excuse me.  Excuse me.

1    MS. BLOUNT:  Now, this doesn't have a number, I'm assuming

2    this is 7.

3    HEARING OFFICER: The suggested Dear Special Education

4    Coordinator.

5    MS. BLOUNT:  Wait a minute.  Oh, wait a minute. Okay.

6    MR. HOUSTON: It's IDEA. It's my documents, not Ms.

7    Gambale's documents.

8    MS. BLOUNT:  I've never sent this.

9    MS. GAMBALE: Well doesn't the letter that you sent out to

10   the parent in the parent's Exhibit number 9, doesn't that

11   reference a letter that was received by Moody on January 3rd?

12   MS. BLOUNT:  Exhibit number 9?

13   MS. GAMBALE: The letter that you – and I apologize because-

14   -.

15   MR. HOUSTON: Our Exhibit number 9 Ms. Blount.

16   MS. BLOUNT:  Okay. I'm looking at our Exhibit number 9.

17   MS. GAMBALE: It talks about the purpose of this letter is

18   to respond to the January 3rd, 2006 letter from Michelle Moody

19   written on your behalf requesting assistance in locating a

20   placing your daughter in appropriate placement immediately and

21   implementing home school?

22   MS. BLOUNT:   This is my letter. Document number 9 is my

23   letter to Ms. McKinley --.

1    MS. GAMBALE: In response to a letter that you received --.

2    MS. BLOUNT:  Yes. I'd gotten a letter from requesting

3    implementing home school for K████████. And that - that is - that

4    is - this letter is my response to what we could provide. We

5    didn't do home schooling and we didn't do home visitation. And

6    so I was responding  to what we could provide.

7    HEARING OFFICER: Hold on for a minute Ms. Blount.  Can

8    anyone reference the January 3rd letter that Ms. Blount is

9    referring to?

10    MR. HOUSTON: Yes sir.  It is our document number 7. If

11    you'll at the bottom of the document number 7.  You'll see that

12    it was faxed to IDEA on the 3rd of January.  The 10th of January -

13    -.

14    HEARING OFFICER: Is this the one that's dated January 10th?

15    MR. HOUSTON: Yes sir.  Oh I'm sorry you may it. Maybe that

16    was cut off.  You can see there the fax --.

17    HEARING OFFICER: But it is --. I see what you're -- .

18    MR. HOUSTON:  But it was faxed. The reason she's stated

19    January 3rd, is --.

20    HEARING OFFICER: Because it was faxed.

21    MR. HOUSTON: Because it was faxed on the 3rd.

22    HEARING OFFICER: So it was faxed 7 days before it was

23    dated?

1    MR. HOUSTON: Yes sir. And that's why on the disclosure it

2    also says, if you'll see on my disclosure.  IDEA number 7,

3    letter from Ms. Moody to IDEA faxed on 3 January two- thousand -

4    -.

5    HEARING OFFICER: All right. Okay. All right. You with us

6    Blount?

7    MS. BLOUNT:  Excuse me?

8    HEARING OFFICER: Are you with us?

9    MS. BLOUNT: Yes sir. I believe I am.

10    HEARING OFFICER: The Hearing Officer understands that the

11    letter you are - that the January 3rd, 2006 letter that you

12    reference in the first paragraph of your January 10th letter is

13    really the letter dated January 10th to the Dear Special

14    Education Coordinator.

15    MS. BLOUNT:  Okay. All right.

16    HEARING OFFICER: All right.

17    MS. GAMBALE: And Ms. Blount are you aware of who Joe Palka

18    is?

19    MS. BLOUNT:  Yes I am.

20    MS. GAMBALE: And who is Joe Palka.

21    MS. BLOUNT:  Mr. Palka is a English teacher at the school.

22    MS. GAMBALE:  And isn't it true that Mr. Palka wrote - you

23    consulted him with regards to her need for testing? And he

1   recommended that K███████ needs the individualized attention that

2   accompanies an IEP?

3       MS. BLOUNT:  No. No M'ame I asked for her teachers to give

4   a status of performance in the classroom. And that's all these

5   documents are is our response to that request.  I needed to get

6   the teachers - that was my way of requesting input from them.

7       MS. GAMBALE: Isn't it true that - who is Dr. Kumar?

8       MS. BLOUNT:  Dr. Kumar is our chemistry teacher.

9       MS. GAMBALE: And he says that there was problems with her

10  completing assignments?

11      MS. BLOUNT:  Excuse me M'ame.

12      MS. GAMBALE:  And that she was failing the first progress

13  section of the school, is that correct?

14      MS. BLOUNT:  Yes the teachers.  Could you repeat your

15  question to me please?

16      MS. GAMBALE: I was going through some of the specific

17  letters that you faxed.  Are you familiar with those letters and

18  what they contain?

19      MS. BLOUNT:  Yes. Those letters are the teachers -ah ---ah

20  assessments of K███████ in their class, in their respective

21  class.

22      MS. GAMBALE:  And were aware that they recommending that

23  she have services? And that she be tested?

1     MS. BLOUNT:  No I was not.

2     MS. GAMBALE: And there was an SEP in both the parent and

3  her advocate were in attendance at the SEP and that was on March

4  6th?

5     MS. BLOUNT:  Excuse me Ms. Gambale.  You're using an

6  acronym that I am not familiar with.

7     MS. GAMBALE:  Was there an SEP meeting.

8     HEARING OFFICER: Student Evaluation Plan.

9     MS. GAMBALE: Student Evaluation Plan meeting that occurred

10  on March 6th, 2006?

11     MS. BLOUNT:  That's the MDT meeting that I was a part of.

12     MS. GAMBALE: Is it true that the parent and her advocate

13  were both in attendance at that meeting?

14     MS. BLOUNT:  Yes.

15     MS. GAMBALE: Did you ever send letters with proposed dates

16  for testing to the parent?

17     HEARING OFFICER: Well she didn't she said Dr. McCants.

18     MS. GAMBALE: I'm asking her if she did?

19     MS. BLOUNT:  Did I ever send letters asking for testing?

20     MS. GAMBALE: Proposed dates?

21     HEARING OFFICER: No, trying to schedule.

22     MS. GAMBALE: For testing?

23     MS. BLOUNT:  We sent a letter proposing dates for an MDT

1   meeting to talk about all of that.

2       HEARING OFFICER: Ms. Blount. Did you personally send any

3   letters to Ms. McKinley proposing dates to a psychologist to

4   administer tests to K██████?

5       MS. BLOUNT:  No. I personally did not, no.

6       HEARING OFFICER: Fine. Next question.

7       MS. GAMBALE: Have you personally sent any completed

8   evaluation reports to the parent or to parent's counsel.

9       MS. BLOUNT:  I personally did not.

10      MS. GAMBALE: Have you personally received any completed

11  evaluation reports?

12      MS. BLOUNT:  Have we received any evaluations reports?

13      MS. GAMBALE: For this student?

14      HEARING OFFICER: Well I think we can stipulate that the

15  evaluations haven't been done.

16      MR. HOUSTON: Yes.

17      HEARING OFFICER: We can stipulate that.

18      MS. GAMBALE: Well the only thing I am concerned about is

19  the social history, because the parent did provide the

20  information.

21      HEARING OFFICER: Yeah. Okay.

22      MS. GAMBALE: So it's floating out there somewhere.

23      HEARING OFFICER: Yeah. All right. Okay.

1    MR. HOUSTON: inaudible.

2    HEARING OFFICER: Aside from that, it hasn't been completed

3    right?

4    MR. HOUSTON: Well I'm not sure.  (inaudible).

5    MS. GAMBALE: Uhhh and then – has there – actually I have

6    nothing further of this witness.

7    HEARING OFFICER: Mr. Houston redirect.

8    MR. HOUSTON: No. I don't think so.

9    HEARING OFFICER: Ms. Blount.

10    MS. BLOUNT:  Yes sir.

11    HEARING OFFICER: This is Herbert St. Clair.

12    MS. BLOUNT:  Yes.

13    HEARING OFFICER: Thank you very much.

14    MS. BLOUNT:  Thank you very much.

15    HEARING OFFICER: All right.  Next witness sir.

16    MR. HOUSTON: Well I'm going to have Ms. Deal testify, cause

17    it kind –

18    HEARING OFFICER: All right.

19    MR. HOUSTON: Because it's more sequential.

20    HEARING OFFICER: All right.  Portia Deal.  Ms. Lewis' last

21    named is spelled W – L – E- W – I – S, not L-O-U-I-S.

22    MR. HOUSTON: That's correct.

23    HEARING OFFICER: All right.  Ms. Deal do you solemnly

1   affirm that your – that the testimony you're about to give

2   during the course --.

3       MS. GAMBALE:  I don't mean to interrupt you, would it be

4   okay for me, I think the parent has a question about the some of

5   the procedure and would to step out in the hall, can we take a

6   brief recess.

7       HEARING OFFICER:  5 minutes ladies and gentlemen. Okay,

8   let's try to get back in 5 minute.

9       MS. GAMBALE: It should probably be less than that.

10      HEARING OFFICER: Okay, just give us 5 minutes.

11      HEARING OFFICER: All right, we're back on the record. I was

12  about to swear in Ms. Deal. Ms. Deal do you solemnly affirm that

13  the testimony you about to give --.

14      MR. HOUSTON: Can we roll this back because that may have

15  been picked up by the mike that is not proper, because it is

16  attorney client.

17      HEARING OFFICER:  This didn't pick it up.  This didn't pick

18  it up. Because I remember putting this on pause.  Okay.  But in

19  the instant question, I don't think you can erase this. But

20  anyway, Ms. Deal do you solemnly affirm that the testimony you

21  are about to give during the course of this proceeding will the

22  truth, the whole truth and nothing but the truth?

23      MS. DEAL: Yes.

1    HEARING OFFICER: Please begin Mr. Houston.

2    MR. HOUSTON:  Yes sir.  Can you give us your full name and

3    your title.

4    MS. DEAL:  My name is Portia Deal. (inaudible) Special

5    Education Coordinator.  (inaudible).

6    MR. HOUSTON:  Okay.  What is your role at IDEA as a special

7    education coordinator.

8    MS. DEAL:  To oversee the functions (inaudible) to be sure

9    that we stay in compliance with the law.

10    MR. HOUSTON:  And how long have you been the special –

11    MS. DEAL:  Oh. I'm sorry.

12    MR. HOUSTON:  education coordinator?

13    MS. DEAL:  Officially it started in September. I

14    HEARING OFFICER: September when?

15    MS. DEAL:  September 2006.

16    HEARING OFFICER: All right.

17    MS. DEAL:  I also was special coordinator – slash- teacher

18    2000—the school year 2005.

19    HEARING OFFICER: 2005 – 2006.

20    MS. DEAL:  2005 -2006. Now its 2006-2007.

21    HEARING OFFICER: All right.

22    MR. HOUSTON:  During your tenure there, have you gotten to

23    know K█████ M███████

1        MS. DEAL:  No. I don't know K█████ M██████.

2        MR. HOUSTON:  Have you been involved in her case?

3        MS. DEAL:  Yes I have.

4        MR. HOUSTON:  I turn your attention to IDEA documents - Oh

5    I'm sorry. In what capacity have you been involved with K██████?

6        MS. DEAL:  When I received some information from James

7    Brown Associates in reference to us giving them some information

8    on a student and so I inquired downstairs - I mean the

9    administrative office in reference to a student because she

10   wasn't mine.

11       MR. HOUSTON:  Okay. Now when I say in what role, were you

12   the special education coordinator for this case?

13       MS. DEAL:  Yes.

14       MR. HOUSTON:  Okay.  I turn your attention to document

15   number - IDEA's document number 8.

16       HEARING OFFICER: Is that the memorandum to Ms. Blount?

17       MR. HOUSTON: Yes. There are several documents from several

18   teachers, is that correct?

19       MS. DEAL:  Yes.

20       MR. HOUSTON:  Do you recall seeing those documents?

21       MS. DEAL:  Yes.

22       MR. HOUSTON:  Okay. What was the purpose of those

23   documents?

1    MS. DEAL:  The purpose of the documents is to get an

2    assessment of the child in the classroom. When there has been a

3    concern about a child's performance.

4    MR. HOUSTON:  And how do you use this in the special

5    education process?

6    MS. DEAL:  Well we have - actually there is pre - for that,

7    it like the IE—the early intervention team. So they have - they

8    receive information about the student and they assess it and

9    decide whether they want to refer them to the special education

10   department.  When the special education department get it, we're

11   going to set up a meeting. We also ask for letters from or

12   information from the teachers so that we'll have that when we

13   come to the meeting. Some times the teachers can make the

14   meeting and some times they can't. And of course the law says we

15   have to have documentation or the person, teachers present to

16   give an their interpretation of how the student's doing in their

17   classes.

18   MR. HOUSTON:  When you receive these letters and they talk

19   about the need for testing, or their recommendation for testing,

20   then what's your next step?

21   MS. DEAL:  If they recommend a need for testing, then I let

22   Ms. Blount, the principal know that we have a student that needs

23   to be testing. Because I have to have permission. I just don't

1    go out and do the evaluations. Because anybody, you know – some

2    of the teachers that do their assessments, the first thing, a

3    lot of times they just want to send me a student.  And, so I say

4    let us find out what's going on with the student first. And I so

5    refer to administration saying, oh, you have a student that

6    request testing where shall I go. I give them the information

7    and they let me know to move forward or not.

8        MR. HOUSTON:  Now I turn your attention to document number

9    9. IDEA's document number, that is a letter from Ms. Blount to

10   Ms. McKinley.  Did those documents from the teachers, was that

11   what caused some of this letter to be (inaudible).

12       MS. DEAL:  I believe so, yes.

13       MR. HOUSTON:  And was that the reason why in this letter

14   there is a request for a meeting, MDT meeting?

15       MS. DEAL:  Yes.

16       MR. HOUSTON:  Now did you – document – IDEA's document

17   number 10.  Are you familiar with that?

18       MS. DEAL:  Yes.

19       MR. HOUSTON:  And can you tell us what that document is?

20       MS. DEAL:  It is a request for a initial evaluations from

21   James Brown Associates sent to Colonel Dexter.

22       MR. HOUSTON:  On what date?

23       MS. DEAL:  January 10th.

1      MR. HOUSTON:  So the same date that you were sending out a

2   letter - IDEA Public Charter school was sending out a letter to

3   the mother, we were receiving a letter basically doing the same

4   thing?

5      MS. DEAL:  Yes.

6      MR. HOUSTON:  At - what actions did you take when you

7   received this request?

8      MS. DEAL:  Well, I received the request --.

9      HEARING OFFICER:  This is one - your document number 10 -

10  Excuse me Ms. Deal.

11     MR. HOUSTON: Yes.

12     HEARING OFFICER: Yes.

13     MR. HOUSTON:  It's after January 10th because there looks to

14  me like documents that were crossing in the ether world, what

15  was your next step?

16     MS. DEAL: When I received it, I - upon my own, I filled out

17  a request for an evaluations and I was getting ready - and I

18  submitted that to MHR, Mental Health Resources.

19     HEARING OFFICER: That's what it stands for?

20     MS. DEAL: Yes, Mental Health resources.  And I sent it and

21  Ms. Coleman called me, because she - Rose Coleman's is the

22  individual I talked to, said that they couldn't follow though on

23  that. And I said why, is because the  letter - there was no

67

1   signed paperwork. So I went back to check about getting it

2   signed, paperwork.

3       HEARING OFFICER: That means the parent's authorization for

4   evaluation.

5       MS. DEAL:  Right. Correct.

6       HEARING OFFICER: The person who called you was from Mental

7   Health Resources and said that they could not process it?

8       MS. DEAL: No. I called them.  And in the process of the

9   conversation - because I faxed - what I'll do, I faxed it to her

10  and I said Rose did you get my paperwork that I just faxed?

11      HEARING OFFICER: Yes.

12      MS. DEAL: And she said yes, I got your paperwork, but I

13  can't move on it.  And I said why. And she said, because I don't

14  have signed paperwork. And I said, well I sent that. And she

15  said, no the paper work that you sent me is not from IDEA Public

16  Charter School.  She said that the paperwork that you sent me

17  that has the signature on it doesn't tell us if it is the

18  initial eval, it doesn't have a name on it and they said it came

19  from - and she said it came from DCPS.

20      MR. HOUSTON:  Can you look to IDEA's document number 10

21  again?

22      HEARING OFFICER: Just a minute. I don't want to cut you off

23  Mr. Houston. But I want to find out what it is Ms. Deal sent to

1    Mental Health.

2        MR. HOUSTON: That's what I'm getting to sir.

3        MS. DEAL: I sent.

4        HEARING OFFICER: All right.  Okay.

5        MR. HOUSTON:  If you look at the document number 10, there

6    is an attachment to it is that correct?

7        MS. DEAL:  Yes.

8        MR. HOUSTON:  Is that the attachment that you sent to MHR?

9        MS. DEAL:  Yes.

10       MR. HOUSTON:  And that attachment entitled? Can you tell us

11   what it's entitled?

12       MS. DEAL:   Uhhh. It's says consent for evaluation initial

13   re-evaluation and the small print underneath.

14       MR. HOUSTON:  And what date – what's the date?

15       MS. DEAL:  12/16/05?

16       MR. HOUSTON:  Is there a signature on that?

17       MS. DEAL:  Yes. Ms. Mc… Mc..

18       HEARING OFFICER: Conseulla McKinley.

19       MS. DEAL: Conseulla McKinley.

20       MR. HOUSTON:  Okay.

21       HEARING OFFICER: McKinley. Excuse me.

22       MS. DEAL:  McKinley, I'm sorry.

23       MR. HOUSTON:  Is that the document that Ms. Pullman from

1  MHR said, they could not use?

2      MS. DEAL:  Correct.

3      MR. HOUSTON:  Okay, and did they tell you why - once again

4  can you us why?

5      MS. DEAL:  They said because it wasn't - the paperwork that

6  they have to receive has to come from IDEA Public Charter School

7  because --.

8      HEARING OFFICER: They want to get paid.  They want to make

9  sure who is going to pay them.

10     MS. DEAL:  Oh I don't - well I didn't know, I just know she

11  said I couldn't send that one because it's not on IDEA Public

12  Charter School head - Charter School's letterhead, not

13  letterhead, but it's not on our form.

14     HEARING OFFICER: I understand what you're saying.

15     MS. DEAL: And so… that they couldn't process it.

16     HEARING OFFICER: What did you do after that?

17     MS. DEAL: After that I let the school know.

18     HEARING OFFICER: When you say school, you mean IDEA?

19     MS. DEAL: Yes, IDEA Public Charter School.

20     HEARING OFFICER: Ms. Blount?

21     MS. DEAL: Yes.

22     HEARING OFFICER: Let me Blount know.

23     MS. DEAL: Yes.

1    HEARING OFFICER: What did Ms. Blount do?

2    MS. DEAL: She said, well actually, we haven't had an MDT

3  meeting yet. Because I did this on my own when I received it.

4  And I said like, "oh." I know we have certain amount of days

5  and I've been through that before.

6    HEARING OFFICER: So Ms. Blount got involved in it the

7  process?

8    MS. DEAL: I mentioned it to her, yes I did.

9    HEARING OFFICER: So she got in the process and decided that

10  you had to have the MDT meeting first.

11    MS. DEAL: Because that's the process before you can do an

12  evaluation, you have to have an MDT meeting and a

13  multidisciplinary meeting.

14    HEARING OFFICER: That's not necessarily so M'ame. You can

15  have a direct request from the parent. The day - the days start

16  counting from the parent's request. I got it - go ahead. I'll

17  write it up Mr. Houston.

18    MR. HOUSTON: You look at document number - IDEA's document

19  number 12? Can you identify that?

20    MS. DEAL: Yes.

21    MR. HOUSTON: And can you tell us what that is?

22    MS. DEAL: It's a - let's see. It's the intent to evaluate

23  that I sent to MHR, Mental Health Resources and it's asking for

71

1   to Ms. McKinley and it's referencing ██████ M██████ and it's

2   has a psychological, social history and educational and clinical

3   and I had an OT at the bottom.

4       HEARING OFFICER: You sent this to whom Ms. Deal? Number 12?

5       MS. DEAL:  Yes.

6       HEARING OFFICER: You sent it to Ms. McKinley?

7       MS. DEAL: I sent it to MHR.

8       HEARING OFFICER: Oh.  You're still trying to get the

9   authorization going?

10      MS. DEAL:  Yes.

11      HEARING OFFICER: This didn't do it either?

12      MS. DEAL:  Well, what do you mean it didn't do anything?

13      HEARING OFFICER:  Did it get the authorization – did they

14  move forward with it?  With the evaluation?

15      MS. DEAL: It's not signed.

16      HEARING OFFICER: Oh, okay.

17      MS. DEAL:  It has to have mother's signature.

18      MR. HOUSTON:  Did you try to have a meeting with the

19  mother?

20      MS. DEAL:  Yes.

21      MR. HOUSTON:  And how many attempts did you try to have the

22  meeting with the mother?

23      MS. DEAL:  You see. I don't set up those.  The assist – we

1  have an administrative assistant that sets up the meetings with

2  the parent.

3      HEARING OFFICER: You're the special education coordinator.

4  And they didn't let you set it up?

5      MS. DEAL: Because. I'm the special education coordinator.

6  The individuals that sets up our appointments, we have someone

7  in our office that does it. And she keeps in her book to make

8  sure that everything is - to make sure we don't double book and

9  all. So she handles our bookings.

10     MR. HOUSTON:  But you are aware of what she was attempting

11 to do?

12     MS. DEAL:  Yes. I was aware of it.

13     MR. HOUSTON:  And you had worked with - this is a different

14 Coleman.  This is Ms. Tonya Coleman.

15     MS. DEAL:  Right.

16     MR. HOUSTON:  You worked with Ms. Tanya Coleman on trying

17 to schedule these meetings, is that correct?

18     MS. DEAL:  Yes.

19     MR. HOUSTON:  Do you know if IDEA Public Charter School

20 attempted to schedule these meetings?

21     MS. DEAL:  Yes.

22     MR. HOUSTON:  And what occurred?

23     MS. DEAL:  Well I know we had a meeting set up for February

1    2nd. And we invited everyone. We meaning the special education

2    department. Everybody has a – one person that deals with DCPS,

3    another person that deals with the scheduling and then I – the

4    person that talks to the individuals that are going to do the

5    evaluations.

6        MR. HOUSTON: And why was February 2nd picked?

7        MS. DEAL: Because Ms. Blount sent out a letter, she is the

8    one who sent out that letter that has January 31st, February 1st,

9    and February 2nd. It was sent out to set up and MDT meeting.

10       HEARING OFFICER: All right. Is that in the record Mr.

11   Houston.

12       MR. HOUSTON: The letter that Ms. Blount sent out was the

13   January 10th letter, yes sir. That is document number 9.

14       HEARING OFFICER: And this is because the other letter of

15   January 10th?

16       MR. HOUSTON: No sir. This was as you can see in the

17   letter sir, this is in response to the January 3rd letter and

18   also what IDEA had already started by asking the teachers their

19   input and their input was that there needed to some testing. So

20   Blount, on IDEA's initiative sent out this letter. The letter

21   from Ms. Gambale asking for testing arrived that same day.

22       HEARING OFFICER: And it does not propose dates?

23       MR. HOUSTON: It does not propose dates.

74

1    HEARING OFFICER: Is there a confirmation as to which date

2  the meeting will take place, either January 31st, February 1st or

3  February 2nd.  Is there anywhere in your disclosure where the

4  parents said we will meet on these days?

5    MR. HOUSTON:  No.  That is where I was getting to. I was

6  asking Ms. Deal that.

7    HEARING OFFICER: Okay.

8    MR. HOUSTON:  Ms. Deal was there any confirmation from the

9  parent's on which they --.

10    MS. DEAL:  I talked to Ms. Moody, the advocate.  And Ms.

11  Moody said talk to me and we set up a date. And the date was

12  February 2nd at 10:30.  On February the 1st, Ms. Moody came the

13  office, Ms. McKinley was downstairs the mother, and was there

14  for a meeting.  And I said, no, the meeting is the 2nd. And so we

15  talked about it and she says, there must be some confusion, so

16  she looked at her notes, and I looked at mine. And she says,

17  okay, well can we do it.  Can we have the meeting today?  I said

18  no one was here.

19    HEARING OFFICER: What did Ms. Moody see in her notes?

20    MS. DEAL:  She said she still the first, February 1st.

21    HEARING OFFICER: And you thought it was February 2nd?

22    MS. DEAL:  No. I knew it was February 2nd, I showed her

23  where I wrote it down from her telling me that she would be able

75

1   to do it on February 2nd.  And so when she saw mine, I physically

2   showed it her.

3       HEARING OFFICER: All right let me see if I understand this.

4   This was an agreement on the telephone.

5       MS. DEAL: Yes.

6       HEARING OFFICER:  And you did not understand that there was

7   a confusion until February 1st?

8       MS. DEAL: Correct.

9       HEARING OFFICER:  There is a moral in this Ms. Deal?

10      MS. DEAL: What?

11      HEARING OFFICER:  Don't rely on telephone conversations.

12      MS. DEAL: Put it in writing and send it out.

13      HEARING OFFICER:  Go ahead Mr. Houston.

14      MR. HOUSTON: Yes sir. Was Mom there?

15      MS. DEAL:  Mom was there on the first?

16      MR. HOUSTON: Did you try to re-schedule the meeting?

17      MS. DEAL:  Yes we did.

18      MR. HOUSTON: Okay.

19      HEARING OFFICER: Why was - why was - the meeting was

20  scheduled for February 2nd as far as you understood it?

21      MS. DEAL:  Yes.

22      HEARING OFFICER: But Ms. Moody and Ms. McKinley showed up

23  on the 1st to have the meeting?

1    MR. HOUSTON: And DCPS and lawyer and – no not the lawyer,

2    I'm sorry. DCPS and everybody we invited to that meeting was

3    there on the 2nd.  Because we even sent out to DCPS, and DCPS was

4    there on the 2nd.  So everybody was scheduled for the 2nd and they

5    showed up on the 2nd.  Ms. Moody and Ms. McKinley came on the 1st

6    of February.

7    HEARING OFFICER: And the only documentation that the three

8    of you had, when I say the three of you, I mean yourself, Ms.

9    Moody and Ms. McKinley were the notes that each of you

10   personally wrote down as the understanding over the telephone

11   conversation?

12   MS. DEAL:  No. No.  From what – If I'm not mistaken, I know

13   that when I have a meeting, we send information out to DCPS and

14   that paperwork --.

15   HEARING OFFICER: I'm not talking about that. I'm talking –

16   MS. DEAL:  That's what I'm talking about for that meeting.

17   HEARING OFFICER: I understand.  DCPS and everybody else got

18   the idea that it was the 2nd.

19   MS. DEAL: Right.

20   HEARING OFFICER: But Ms. Moody and Ms. McKinley got the

21   idea that it was the 1st and the only documentation we have is

22   the documentation you wrote down as to your understanding of the

23   telephone conversation was, and Ms. Moody's notation of what her

1   understanding of what the telephone conversation was.

2       MS. DEAL: As far as I know yes.

3       HEARING OFFICER: Excuse me Mr. Houston, go ahead.

4       MR. HOUSTON: Yes sir.  If you could look through document,

5   IDEA's document number 16.  Can you tell us what that is?

6       MS. DEAL:  That's the MDT meeting that was held on the 2nd

7   of February.

8       MR. HOUSTON: Okay. Was Dr. Pegler there?

9       MS. DEAL:  Yes she was.

10      MR. HOUSTON: How was she informed of the meeting?

11      MS. DEAL:  She received a written request through Ms. Yule,

12  she is the individual that works with DCPS.

13      MR. HOUSTON: Now on those meeting notes, was there any

14  attempts to reschedule the meeting?

15      MS. DEAL:  Yes.

16      MR. HOUSTON: What was the offered meeting dates?

17      MS. DEAL:  I'll have to look at because I don't remember?

18      MR. HOUSTON: Sure.

19      HEARING OFFICER: Wait. Wait. Wait.  Are these offered

20  meeting dates – these are dates offered to the people at the

21  meeting? Or are these dates offered to Ms. McKinley.

22      MS. DEAL:  They were offered to Ms. McKinley.

23      HEARING OFFICER:  Ah – these are dates that were to be

78

1  offered to her?  I understand.

2      MR. HOUSTON: Can you tell us what dates were offered, or

3  going to be offered?

4      MS. DEAL:  Yes. February 8th, the 13th, I'm sorry.  February

5  the 8th, 2006 at 10 a.m.  February the 13th 2006 at 10 a.m.

6  February the 15th at 12 o'clock p.m. and February the 17th 006 at

7  12:30 p.m.

8      MR. HOUSTON: And did you get a response from the parent on

9  what days that they could come to the meeting.

10     MS. DEAL:  I got a response, well the office received a

11 response from Ms. Moody letting us know what day that they could

12 come to the meeting.

13     MR. HOUSTON: And what day was that

14     MS. DEAL:  March – wait a minute.  I don't remember.

15     HEARING OFFICER: You don't remember?

16     MS. DEAL: I don't remember the exact date. It may be the

17 March 5th meeting.

18     MR. HOUSTON: All right. Can you look at document number 18.

19 Can you identify what that document is?

20     MS. DEAL:  Document 18 on February 3rd, it says it sent to

21 Ms. Moody and it's sharing with her the those – in response to

22 my telephone call – our telephone call – call regarding

23 availability of the dates and the time convening a multiple

79

1    disciplinary meeting for K███████ M███████, the February 8th 2006

2    at 10 o'clock, February the 13th 2006 at 10 O'clock, February 15th

3    2006 at 12 o'clock p.m. or February the 17th 2006 a 12:30 p.m.

4    And letter her know that the IDEA PCS would be available, the

5    team would be available to hold a multiple disciplinary meeting

6    on February the 13th at 10 a.m., and if there were any concerns

7    or changes regarding the confirmed date of February 13th 2006 at

8    10 a.m., please contact me telephone number and my extension or

9    email me at my email address.

10        MR. HOUSTON: If you look to parent's Exhibit number 6.

11   There are several documents under parent's Exhibit number 6. The

12   second document, can you tell us what date that is?

13        MS. DEAL:  This is February 15th 2006.

14        MR. HOUSTON: Okay.  Who is that letter--.

15        HEARING OFFICER: Just a minute. Give me the date again.

16   Which disclosure are you referring to?

17        MR. HOUSTON: Parent's disclosure number 6.

18        HEARING OFFICER: I got a couple of letters in here.

19        MR. HOUSTON: Yes sir.

20        HEARING OFFICER: Now which ones are you referring to.

21        MR. HOUSTON: February 15th.

22        MS. DEAL:  February 15th.

23        HEARING OFFICER: Okay.

1     MR. HOUSTON: Okay. Is that document addressed to you?

2     MS. DEAL:    Yes it is.

3     MR. HOUSTON: Okay, and does that set up any times?

4     MS. DEAL:    Yes.

5     MR. HOUSTON: Were those any of the dates that you had

6     proposed in the earlier - your proposed dates of February?

7     MS. DEAL:    No this was no.

8     MR. HOUSTON: And what were the - the proposal from Ms.

9     Moody?

10     MS. DEAL:    March 2nd 2006 at any time, March 3rd, 2006 at any

11     time and March 6th, March 7th and March the 8th 2006 at any time.

12     MR. HOUSTON: And so then you recall holding the meeting on

13     any one of those dates they proposed?

14     MS. DEAL:    March 6th, 2006.

15     MR. HOUSTON: And at that meeting, were you at that meeting?

16     MS. DEAL:    Yes I was.

17     MR. HOUSTON: And at that meeting what occurred?

18     MS. DEAL:    At the meeting we discussed K██████M███████'s

19     condition that she had.  They went over the fact that there was

20     a situation where she tried to commit suicide. She had

21     psychiatric care that she was depressed and that the team agreed

22     to do the evaluations to see if she actually needed special

23     education services.

81

1      MR. HOUSTON: After that meeting what actions - what actions

2  did IDEA take?

3      HEARING OFFICER: This is the March 3rd meeting?

4      MR. HOUSTON: March 6th.

5      HEARING OFFICER: March 6th meeting. Yes go ahead. Excuse me.

6      MR. HOUSTON: After the March 6th meeting, what actions did

7  IDEA take to secure the testing?

8      MS. DEAL:  We sent out a request.  We got a signed request

9  appropriate signed request to do the evaluations and send them

10  out to Mental Health Resources.

11      HEARING OFFICER: When you say appropriately signed, who

12  signed them?

13      MS. DEAL:  Mother.  Ms. McKinley.

14      HEARING OFFICER: So Mental Health Resources say this what

15  we need?

16      MS. DEAL:  Yes.

17      MR. HOUSTON: And what if anything has occurred since then?

18      MS. DEAL:  Well, I know there's been a delay and a back and

19  forth between Mental Health Resources and Ms. McKinley to get

20  the evaluations done.  The social history evaluation was

21  complete. That was completed.

22      HEARING OFFICER:  Is there some reason why no one has a

23  copy of it?

82

1     MS. DEAL:  I have a copy of the social history. And when we

2  have our meetings, what I do is - I get social history, the

3  clinical, the psycho ed and some times even I don't have the

4  social history, If I get the psycho ed and the clinical, I post

5  them IEP meeting or a multidisciplinary meeting --.

6     HEARING OFFICER: What's the date on it?

7     MS. DEAL:  On the?

8     HEARING OFFICER: Social history.

9     MS. DEAL:  I don't have it with me.

10    HEARING OFFICER: Excuse me Mr. Houston, go ahead.

11    MR. HOUSTON: Yes sir.  So IDEA has made reasonable efforts

12  to get K████ tested?

13    MS. DEAL:  Yes.

14    MR. HOUSTON: Okay, just what does the social history

15  usually entail?

16    MS. DEAL:  Some -ah.

17    MS. GAMBALE: Objection.

18    HEARING OFFICER: Ms. Gambale.

19    MS. GAMBALE:  She's not - I guess its not a proper

20  foundation hasn't been established.

21    HEARING OFFICER: Yeah, right. Why are we going through this

22  anyway?  Help me out.  What am I supposed to get out what's in

23  the social history.

1       MR. HOUSTON: Well because it makes it appear as the fact

2    that we haven't - if we have had the social history completed,

3    that somehow we could have done anything with it. Except to

4    provide the parents with it, which we'll be happy to do, but

5    there is no denial FAPE because there is no social history. Mom

6    knows what the social history is. She is the one that provided

7    it.   It's not an evaluation.

8       HEARING OFFICER: I mean fine.  But I mean, you don't have

9    to go about what it is.

10      MR. HOUSTON: Well that was the foundation to see to show

11   that end and of itself wouldn't start - wouldn't be enough for

12   an MDT meeting.

13      HEARING OFFICER: Fine. I agree. I don't think that - but it

14   is - I mean no one has seen it.  Except Ms. Deal, and she

15   doesn't know the date of it and she doesn't have it.

16      MR. HOUSTON: Well we can provide it to the parents.

17      HEARING OFFICER: I think that would be a good idea.

18      MR. HOUSTON: Yes sir.  We'll do that right straightaway.

19   But that's all the questions that I have.

20      HEARING OFFICER: Now, what happened after March 6th is Ms.

21   McCants right?

22      MS. DEAL:  Dr. McCants.

23      HEARING OFFICER: Dr. McCants, right, Excuse me.  Thank you

84

1   very much Mr. Houston.  Cross-examination Ms. Gambale.

2      MS. GAMBALE: I just have a few questions.  Now you had

3   testified that you had – well you had testified that you

4   received the request for evaluations and the signed consent form

5   by the parent on the DCPS, you received those on January 10th?

6      MS. DEAL:  No I didn't say that – (inaudible). I said I

7   received them.

8      MS. GAMBALE: And you testified that you tried to make

9   referral to MHR, but they wouldn't accept the consent form? Is

10  that correct?

11     MS. DEAL:  Correct.

12     MS. GAMBALE: Now you had the parent at the school on

13  February 1st and you didn't have the parent re-sign the consent

14  form, did you?

15     MS. DEAL:  Well because – no to answer the question.  But

16  the parent ever refuse --

17     HEARING OFFICER:  Just a minute, let her finish.  Let Ms.

18  Deal finish.

19     MS. GAMBALE: She answered.

20     HEARING OFFICER: But, yes but she was getting ready to

21  amplify.  Were you Ms. Deal?

22     MS. DEAL:  Yes.

23     HEARING OFFICER: Had you completed your answer?

1    MS. DEAL:  No.

2    HEARING OFFICER: Good. Finish your answer.

3    MS. DEAL:  I didn't see Ms. McKinley on February the 1st.  I

4    knew she in the building, because Ms. Moody told me she in the

5    building. But I didn't see her. And Ms. Moody called downstairs

6    because they were trying to get us to convene the meeting, but

7    we didn't have the people there, the administration was out of

8    the building and so when Ms. Moody called down again to get a

9    date, to set up another one, Ms. McKinley had left. So I had to

10   (inaudible).

11   MS. GAMBALE: Did you ever notify the parent or our office

12   that you needed the parent to sign an updated consent form?

13   MS. DEAL:  We notified the office that were going to have

14   an MDT meeting in reference to decided she needed evaluations

15   done.

16   MS. GAMBALE: Did you ever have the parent come to the

17   school to sign the updated consent form?

18   MS. DEAL:  No, not before but when she came for the MDT

19   meeting.

20   HEARING OFFICER: This is the March 6th meeting.

21   MS. DEAL:  Right.

22   MS. GAMBALE: Did the parent ever refuse to sign the consent

23   form for the MDT meeting?

86

1       MS. DEAL:  Not at the meeting, no.

2       HEARING OFFICER: Wait a minute. That wasn't what she asked

3   you.  Ms. Gambale asked you, did the parent ever refuse to sign?

4       MS. DEAL:  No. No.

5       MS. GAMBALE: I have nothing further.

6       HEARING OFFICER: Redirect sir.

7       MR. HOUSTON:  Yes sir.  Part of the - can you - when you

8   receive a referral from a parent or a teacher that the child may

9   need special education services, do you then just do the testing

10  without having a meeting?

11      MS. DEAL:  No.

12      MR. HOUSTON: What is the purpose of the meeting?

13      MS. DEAL:  The purpose of the meeting is to decide to get

14  all the paperwork from them, the teachers, to decide if a MDT,

15  if the student needs special education services.

16      HEARING OFFICER: You mean evaluation for special education

17  services?

18      MS. DEAL:  Yes. That's what I mean.

19      HEARING OFFICER: Just a minute, I'm going to cut you off

20  here. Let's suppose that a parent requests an evaluation for

21  services, evaluation for special educations services. You have

22  the meeting and the team decides that the child doesn't need to

23  be evaluated for special education services.  What then?

87

1    MS. DEAL:  Well the team would include the parent.

2    HEARING OFFICER: Well they show that. Well we have an EIT

3    team.  EIT, early intervention.

4    HEARING OFFICER:  No, I just want.  Is that the end of it?

5    MS. DEAL:  No. It goes further.

6    HEARING OFFICER:  All right.

7    MS. DEAL:  I guess  -- are you saying like, does it stop

8    there and we don't do anything else?

9    MR. HOUSTON:  I think it is more of legal question. 12 52

10   44. If - If the parent--.

11   HEARING OFFICER: It is.

12   MR. HOUSTON: It's - at that point they would issue a prior

13   notice that we've refused your request for testing and that

14   point the parent can sue for a due process hearing.  It is at

15   that point that the parent then has the right to sue. Up until

16   to that point, they have to wait the 120 days.

17   HEARING OFFICER: You're right, it is a legal question.  And

18   I just want to ask Ms. Deal if the parent if the parent asks for

19   the child be evaluation for special education services. You have

20   the meeting and the team says that the child doesn't need to be

21   evaluated for special education services, what does that mean,

22   what happens then.

23   MS. DEAL: If the whole team along with the parent agrees

1   that the child doesn't need evaluations, after we've looked at

2   the paperwork and reports from the observations from the

3   teachers and everything, at the school they have a program, if

4   its tutoring that the child needs --.

5       HEARING OFFICER: Is that the end of the evaluation? Is the

6   child going to be evaluated for special education services or

7   not?

8       MS. DEAL: If the parent still--.  Wait a minute.

9       HEARING OFFICER: If the parent says - if the parent says I

10  want my child evaluated for special education services,

11  everybody at the table with the exception of the parent --.

12      MS. DEAL: Oh, with the exception of the parent.

13      HEARING OFFICER.  Yes. Yes.

14      MS. DEAL: No. Because it is the parent's right to have the

15  child evaluated, if everything shows that the child need

16  evaluating.

17      HEARING OFFICER: I'm going to stop pressing for --.

18      MR. HOUSTON: Yes sir. Good.  Once again, that's a legal

19  question.

20      HEARING OFFICER: It is. It is.

21      MR. HOUSTON: And Ms. Deal was answering it and she was -

22  and she's not a legal expert.  The process is the consensus of

23  the team.

1    HEARING OFFICER: Mr. Houston I can trust that you will

2  explain the answer to her afterwards. Go ahead.

3    MR. HOUSTON: Yes sir. Well I just wanted to set the record

4  clear.

5    HEARING OFFICER: You have a clear record that I was asking

6  a legal question.

7    MR. HOUSTON: Yes sir.

8    HEARING OFFICER: We all know that, that's why you wanted to

9  get involved. Go ahead.

10   MR. HOUSTON:  Yes sir.  So the purpose of the MDT meeting

11 is to --. Go back. What is the purpose of the MDT meeting when

12 they are recommendations from either parents or teachers to do

13 some testing.

14   MS. DEAL: The process at a MDT meeting if there are

15 references - records - references from the parent and the

16 teachers to do testing to do testing.

17   MR. HOUSTON: What is the - what's the MDT team do. It's not

18 just if somebody recommends, it just occurs automatically, is

19 that correct?

20   MS. DEAL:  No. If the team recommend - if the parent - if

21 the teachers are showing and that's over a period of time, and

22 they are showing and they have observations that the child needs

23 testing and the parent - and we ask what do you see at home. The

90

1   parent tells us what they see at home. We look at what's going

2   on at school, and then if - and if the different modifications

3   and accommodations that are put in place to help this child. And

4   so and if nothing changes, you have the child evaluated.

5       MR. HOUSTON: If a parent requests testing and the parent

6   says that there are things going on at the home, but the school

7   doesn't see any of those behaviors and there hasn't been

8   educational impact, does the school then go forward with the

9   testing anyway?

10      MS. DEAL: No, if we - if it is not hindering or impeding

11  the child's education if something is happening at home. But

12  what they do is they have a counselor that will talk to the

13  parent to see if they can help.

14      HEARING OFFICER: Tell you what. Let me declare a - Excuse

15  me Ms. - I'll be right back in one minute. Thank you Mr.

16  Houston. All right. We're back on the record. Please the

17  interruption Ms. Deal.

18      MR. HOUSTON: So if there is no - so the mere fact that a

19  parent asks for testing that doesn't mean that you go forward

20  with the testing.

21      MS. GAMBALE: I'm going to object at this point, just on the

22  basis of relevance. Because I think we've already established

23  that already agreed that this student needed testing. And so I'm

91

1   not sure where we are going.

2       HEARING OFFICER: This was a legal question and you're

3   pursuing my question.

4       MR. HOUSTON: Yes sir. I'm trying to clear this up because,

5   well you had asked earlier before Ms. Deal, well- aren't you

6   supposed to test whenever a request from the parent. And there

7   was a signed request from the parents. But that's not what

8   triggers IDEA. The trigger is that there is a referral from the

9   parent.

10      HEARING OFFICER: Tell you what. You're right. That is a

11  legal question. What I want you to do is to argue it in your

12  summation.

13      MR. HOUSTON: Okay. I'll do that.

14      HEARING OFFICER: I was just interested in what Ms. Deal's

15  understanding was. You correctly pointed out that it was a legal

16  question and you're right. But if you want to keep pursuing it-

17  -.

18      MR. HOUSTON: No. I was just trying to clarify that.

19  Because I can raise that point with Ms. Deal.

20      HEARING OFFICER: Fine. What you can do is in your

21  argument, because you are going to have the first and last word.

22      MS. HOUSTON: No. I'm sorry. She's going to have the first

23  and last world. Go ahead. And when I say she, I mean just Ms.

1   Gambale.

2        MS. HOUSTON: That's all I have for Ms. Deal.

3        HEARING OFFICER: All right, now we have re-cross.

4        MS. GAMBALE:  That's fine. I have nothing further.

5        HEARING OFFICER:  Thank you Ms. Deal. Next witness.

6        MR. HOUSTON: Dr. McCants.

7        MS. YULE: Good afternoon Special Ed.

8        MR. HOUSTON: Hi Ms. Yule this is Bill Houston, is Dr.

9   McCants there?

10        MS. YULE: Dr. McCants is here.

11        MR. HOUSTON: Is there a place where she can sit by herself

12   so she is not interrupted?

13        MS. YULE: Yes there is.

14        MR. HOUSTON: And what extension would that be?

15        MS. YULE: Right here in the office.

16        MR. HOUSTON: Oh you are all leaving?

17        MS. YULE: Yes.

18        MR. HOUSTON: Okay thank you.

19        MS. YULE: Extension 219.

20        MR. HOUSTON: You want me to call back on 219?

21        MS. YULE: Yes.

22        MR. HOUSTON: Thank you.

23        MS. YULE: Thank you, bye bye.

1      MR. HOUSTON: Bye bye.  Sorry about that.  Hi Dr. McCants?

2      DR. MCCANTS: Hi Mr. Houston, how are you?

3      MR. HOUSTON: Real good thank you. We're here at the Hearing

4   with Ms. McKinley.

5      DR. MCCANTS: HmmmHmmm.

6      MR. HOUSTON: Her attorney, Ms. Gambale, the Hearing

7   Officer, Mr. St. Clair, Ms. Deal and myself.  Mr. St. Clair is

8   going to swear you in.

9      DR. MCCANTS: All right thank you.

10     HEARING OFFICER: All right. Ms. McCants, this is Herbert

11  St. Clair the Hearing Officer. First of all I want to make sure

12  I have the correct spelling of your name.  Your first name is K-

13  E-L-L-I-E?

14     DR. MCCANTS: Yes it is.

15     HEARING OFFICER: And your last name is capital M-c capital

16  C-A-N-T-S?

17     DR. MCCANTS: Yes it is.

18     HEARING OFFICER: All right.  As Mr. Houston said, my name

19  is Herbert St. Clair. I'm the Hearing Officer and the people

20  that he described as being in the room are in the room. Dr.

21  McCants --?

22     DR. MCCANTS: Yes.

23     HEARING OFFICER: Do you solemnly affirm that the testimony

94

1    that you are about give during the course of this proceeding

2    will the truth, the whole truth and nothing but the truth?

3        DR. MCCANTS: Yes.

4        HEARING OFFICER: Please begin Mr. Houston.

5        MR. HOUSTON: Good afternoon Dr. McCants.

6        DR. MCCANTS: Good Afternoon.

7        MR. HOUSTON: If you could tell us your -- your name and

8    your profession, your title?

9        DR. MCCANTS: I'm Kellie McCants. Kellie McCants, PhD. And

10   I consultant with Mental Health Resources and provide

11   psychological services, neuro psychological, psycho educational,

12   and clinical evaluations and consultations services for Mental

13   Health Resources Plus.

14       MR. HOUSTON: And are you a clinical psychologist?

15       DR. MCCANTS: I am license-eligible.

16       MR. HOUSTON: Okay. And how long have you been with Mental

17   Health Resources?

18       DR. MCCANTS: We were with the Chesapeake Center before, but

19   including the time with the Chesapeake Center, I've been Mental

20   Health Resources since July 2003.

21       MR. HOUSTON: Okay. Sometime this year, 2006, had you been

22   contacted by IDEA Public Charter School to test a K██████

23   M██████?

95

1    DR. MCCANTS: I was contacted by Mental Health Resources

2  Plus who had been contact.  I was contacted by Rose Coleman from

3  Mental Health Resources Plus, who was contacted by IDEA Public

4  Charter School regarding the evaluation of K████ M███████.

5    MR. HOUSTON: And have evaluated K█████ M██████.

6    DR. MCCANTS: I have not.

7    MR. HOUSTON: Do you recall when Mental Health Resources was

8  first contacted by IDEA Public Charter School.

9    DR. MCCANTS: I did not receive the first contact from IDEA

10  Public Charter School. Again, that was Ms. Coleman, Rose Coleman

11  from MRH Plus who received the first contact. However, Ms.

12  Coleman contacted me round the first of the year, late January,

13  early February regarding evaluating Katrice.  I contacted the

14  school to schedule an appointment, which is our typical mode of

15  operation. We usually – if the student is known to be in school.

16  We contact the school and schedule a time to do an evaluation.

17  On the day that I went to see K███████, I was informed by Ms.

18  Deal and Ms. Brown that we should put a hold on the evaluation

19  because there was something that Ms. McKinley to do first.

20    MR. HOUSTON: Do you recall what date that was?

21    DR. MCCANTS: I know that it was in February.

22    MR. HOUSTON: Did they tell you that they needed to convene

23  a multidisciplinary team meeting before the could –

1       MS. GAMBALE: Objection. He's leading the witness.

2       HEARING OFFICER: I'm going to overrule the objection.

3       MR. HOUSTON: Did they tell you that they needed a have a

4   multidisciplinary team meeting before you can continue with your

5   testing?

6       DR. MCCANTS: I was not made aware that a multidisciplinary

7   team meeting was necessary. I was told however, that there was

8   something that Ms. McKinley needed to do before the evaluation

9   could be completed.

10      MR. HOUSTON: Okay. Now at any time after that did IDEA

11  Public Charter School contact MHR and subsequently you to test

12  K██████?

13      DR. MCCANTS: After that in the spring, we were contacted

14  again to proceed with the evaluation of K██████. At that time, -

15  --.

16      MR. HOUSTON:  Dr. McCants can you remember what date that

17  was?

18      DR. MCCANTS: It was in late April because it was about

19  April 24th when I left message for Michelle Moody, who was

20  identified as K██████'s Advocate to let her know that I had

21  received the case I was going to proceed with it. I did not

22  received any contact from Ms. Moody regarding.

23      HEARING OFFICER:  She said April the 24th is when she first

97

1   heard something about this?

2       MR. HOUSTON: Did you say April 24th when you first?

3       DR. MCCANTS: April 24th is when I contacted Ms. Moody. ;It

4   was around that time when I was contacted again regarding

5   K███████'s evaluation.

6       MR. HOUSTON: You - and you tried to contact Michelle Moody

7   on the 24th of April.

8       DR. MCCANTS: Yes.

9       MR. HOUSTON: Okay.  And was that contact successful?

10      DR. MCCANTS: No.

11      MR. HOUSTON: Did you make any other subsequent attempts to

12  try to test K███████?

13      DR. MCCANTS: I did. Toward the end of the school year, late

14  June. I left a message for Ms. McKinley at work.  This was

15  around the 21st or so of - right before the school that she works

16  at closed.  I recall that because there was voicemail message

17  that did something the end of the school year nearing.  I left a

18  message for her. She returned my phone call. I left a message

19  with Jeff Chandler who is our Administrative Assistant at MHR

20  Plus with phone numbers for her to contact her at.  I called her

21  back at the very end of June and left July 11th, as a date that I

22  would be at IDEA that I could test K███████.  At that time, you

23  know, I hadn't heard anything else that—I did not receive any

1   messages from MHR Plus saying that McKinley had contacted me

2   back. And I - Mrs. Coleman from MHR Plus contacted me to

3   attempt to schedule the appointment again. Again I did not hear

4   any feedback from Ms. McKinley regarding the July 11tha

5   appointment. And I was at the school on July 11th taking care of

6   other business with the school and I did not see K▮▮▮▮ on that

7   day. So I contacted - so I left the message for Ms. McKinley on

8   the 20th of July. At that time Ms. McKinley called back, left a

9   message, returning my phone call. And I was informed that she

10  had left two messages for me, but I only received one. And on

11  the 24th of July, I called back and left two more dates for

12  K▮▮▮▮'s evaluation. Tuesday July 25th and Thursday July 27th.

13  And I did not hear any more feedback whether or not I was to

14  test K▮▮▮▮ I just know that on those dates she did not come

15  to the school.

16      MR. HOUSTON: I have some - I don't know if you have our

17  documents there?

18      DR. MCCANTS: I do.

19      MR. HOUSTON: Okay can you turn to document number 24, IDEA

20  Public Charter School's document number 24.

21      DR. MCCANTS: Give me just a second to find it. Yes.

22      MR. HOUSTON: Can you identify these on the first page of

23  that document. Can you tell us what that says.

1    DR. MCCANTS: The first page of the document, it says phone

2    logs per Rose Coleman MHR, contact person Dr. --.

3    MR. HOUSTON: All right. That's fine. Now on the second

4    page, just please keep your answers to the questions that I am

5    asking Dr. McCant.

6    DR. MCCANTS: Okay.

7    MR. HOUSTON: The second page, do where you says June 7th?

8    DR. MCCANTS: Yes.

9    MR. HOUSTON: Can you read what it says under the June 7th,

10   therefore the entry for June 7th.

11   DR. MCCANTS: Dr. McCants called McKinley back at work, left

12   her a message about appointment for clinical?

13   MR. HOUSTON: and then the next entry.

14   DR. MCCANTS: Dr. McCants additional detail on June 7th gave

15   Ms. McKinley June 11th date to perform clinical.

16   MR. HOUSTON: And then the – and then the next one after

17   that?

18   DR. MCCANTS: Dr. McCants called back to confirm June 11th

19   appointment, no response.

20   MR. HOUSTON: Okay.

21   DR. MCCANTS: And actually Mr. Houston that was July 11th. I

22   apologize.

23   MR. HOUSTON: Those are – instead of June they are supposed

1   to be July?

2        DR. MCCANTS: That should be July 11th.

3        MR. HOUSTON: And so, you've made attempts to test this - to

4   test K██████?

5        DR. MCCANTS: Yes I have.

6        MR. HOUSTON: And you've been unsuccessful?

7        DR. MCCANTS: Yes.

8        MR. HOUSTON: Are you still willing to do the testing?

9        DR. MCCANTS: If that's what IDEA wants, sure.

10       MR. HOUSTON: Okay. Thank you. No further questions.

11       HEARING OFFICER: Ms. Gambale?

12       MS. GAMBALE: Good afternoon Ms. McCants.

13       HEARING OFFICER: Dr. McCants?

14       MS. GAMBALE: Oh Dr. McCants, I'm sorry about that.

15       DR. MCCANTS: Good afternoon, Ms. Gambale.

16       MS. GAMBALE: Did you ever speak to anyone in person, either

17  from the law office, or the parent in person about scheduling a

18  date for the student?

19       DR. MCCANTS: I did not.

20       MS. GAMBALE: And so you don't know for certain whether or

21  not the parent actually received your proposed dates or not?

22       DR. MCCANTS: I have no idea.  I will say that I received

23  messages saying that Ms. McKinley had left messages for me and

1  she apparently responded to the calls that I had made, so my

2  assumption was that if she was responding to the calls, that she

3  received the dates as well?

4      MS. GAMBALE: Did you send anything out in writing with

5  regards to any proposed dates for a meeting?

6      DR. MCCANTS: No we did not.

7      HEARING OFFICER: Meeting or an evaluation?

8      MS. GAMBALE: Or evaluation I'm sorry.  And you were

9  scheduled to do the clinical evaluation, is that correct?

10     DR. MCCANTS: I was asked to do a clinical evaluation and

11 initially I was also asked to do a psycho educational.

12     MS. GAMBALE: You said initially did that change at some

13 point?

14     DR. MCCANTS: The contact that I made with my office after

15 school ended, there was - the office stressed that the clinical

16 was necessary. I don't know that the psycho educational was no

17 longer necessary. I was willing to do both evaluations.  And I

18 know that if IDEA's policy is that you know that when

19 evaluations are due for the firs time, they typically do both

20 the psycho ed and the clinical.

21     MS. GAMBALE: --Ah.

22     DR. MCCANTS:  My plan was to do both.

23     MS. GAMBALE: Now, if the testing  had already been

102

1  completed, could you do the testing again?

2      DR. MCCANTS: If it had already been completed, which

3  testing?

4      MS. GAMBALE: If the testing – the psycho – the

5  psychological testing, either the clinical or the psycho

6  educational?

7      DR. MCCANTS: With the psycho educational, if had been done

8  within the past year, it's not recommended that it be done

9  again.  Typically we like to even stretch out either further to

10  two to three years.  And would certainly would administer the

11  same instruments.  Say, K███████ had been evaluated six months, we

12  would not administer the same instruments if we were compelled

13  to re-administer.  For a clinical evaluation.  If there had been

14  some significant change in her social emotional status, or in

15  her environment or her behavior we may evaluate again but we

16  would probably also change up some of the instruments.

17      MS. GAMBALE: I have nothing further.

18      HEARING OFFICER: Redirect Mr. Houston.

19      MR. HOUSTON: Yes. Dr. McCants you can do additional testing

20  as long as you're not using the same instruments, is that

21  correct?

22      DR. MCCANTS: For psycho educational, yeah. It's possible.

23  You want to – you try to avoid a test re-test which tends to

1    over inflate the child's performance.  With a clinical

2    evaluation --.

3        MR. HOUSTON: Okay that's --.

4        HEARING OFFICER: Let her finish.

5        MR. HOUSTON: Yes sir. She's answered part of the question.

6        HEARING OFFICER: Let her answer the other part.

7        MR. HOUSTON: Okay, go ahead.

8        DR. MCCANTS:  With the clinical evaluation, because we are

9    assessing social emotional and behavioral status, the test re-

10   test is a little less of an issue, so we could re-administer

11   testing.

12       MR. HOUSTON: You know what independent educational

13   assessments are?

14       DR. MCCANTS: Independent Educational Assessments?

15       MS. GAMBALE: Objection.

16       DR. MCCANTS: I have not heard of an Independent Educational

17   Assessment, unless you are referring to just educational testing

18   which is done with either a Wesler, individual achievement test

19   or Woodcott Johnson.

20       MR. HOUSTON: No that's not what I am asking about. That's

21   fine.  No further questions.

22       HEARING OFFICER: Re-cross Ms. Gambale.

23       MS. GAMBALE: I have nothing further.

1        DR. MCCANTS: Dr. McCants.

2        HEARING OFFICER: This is Herbert St. Clair.

3        DR. MCCANTS: Yes sir.

4        HEARING OFFICER: Thank you very much.

5        DR. MCCANTS: You are very welcome. Do you need anything

6    else from me.

7        MR. HOUSTON: No.

8        DR. MCCANTS: Thank you very much, yall have a great

9    weekend.

10       HEARING OFFICER: Next witness Mr. Houston.

11       MR. HOUSTON: That's all sir.

12       HEARING OFFICER: All right this brings us to argument

13   counsel. Ms. Gambale, you shall have the first and the last

14   word.

15       MS. GAMBALE: Well it's pretty clear from the evidence that

16   you've heard today that the school failed to - that the failed

17   to conduct initial evaluations in a timely manner for the

18   student. They had evidence to suggest that the - even before

19   the parent had written request that the student was a student

20   that needed to be tested. If you look at the statements from the

21   teacher, particularly the one from Mr. Palla - Palka. He

22   specifically recommended that she be evaluated and that, either

23   he thought she thought - the student that needed an IEP. And is

1   in our Exhibit 19.  Januay 10th we sent out a written request for

2   the student to be evaluated.  They acknowledged that they

3   received it.  They were in agreement that the child would be

4   tested. They actually sent the referral form out.  What the

5   special coordinator testified to was that they didn't the right

6   consent form. We provided a consent form that we have in our

7   office, as a courtesy to the school, but they never the

8   contacted the parent after that to have her come in and sign

9   until the March meeting.  So if they needed her sign, and she

10  was available, and she was actually in the building on the first

11  and they never had her sign any forms.  And what the evaluator

12  stated was that she was - what Ms. McCants just stated that she

13  was instructed to put the testing on hold with no explanation.

14  The log that they've submitted and her testimony indicate that

15  they didn't actually attempt to start making contact and

16  scheduling evaluations until after the 120 days had expired.

17  And normally nobody spoke to the parent directly. So that they

18  had no confirmation that they the parent had actually received

19  any proposed dates for evaluations.  Through no fault of the

20  parent, the evaluation not get conducted.  The parent's been

21  available, she's shown up at meetings.    She's been available to

22  the school, she's consulted with teachers. There is nothing to

23  indicate that she was the reason that the evaluation shouldn't

1    get done.  I'm concerned that nobody tried to contact our office

2    to schedule through us.  That there was no written dates that

3    were proposed. I'm concerned that because normally there is a

4    letter of intent to evaluated that's issued with the dates that

5    the evaluation were supposed to take place.  The bottom line,

6    what's happened to this student is the way the process works,

7    once - once - the student's needs to be evaluated and identified

8    before the obligation and then they need to notify the public

9    agency if they can't.  They need to develop a program. Once they

10   have a program, if the charter school can't implement that

11   program or can't provide the student with the student with the

12   services that they need, at that point, it is the charter

13   school's obligation to notify the public agency so that they can

14   step in and DCPS is the SEP would then step in to provide the

15   services that she needed.  So because they never evaluated her,

16   and because they never identified her as a child with a

17   disability, the student's not been in a position to either to

18   get the services that she needs or to follow-up with other

19   agencies to get the services that she needs.  And as result, the

20   student had missed almost, has missed a full year of school

21   because all related to this issue.  What the parent - what the

22   parent has gone out of her own expense, she has gone and she has

23   at the end of the August, trying to get the evaluations before

1   the new school year started, she did go and pay for evaluations,

2   because it didn't look like the school was going to do anything

3   and they had already – she had already been waiting for so long.

4   But the records are clear.  You have the letter that we sent

5   requesting evaluations; you have the letter that the doctor sent

6   with regards to the hospitalization situation;  you have the –

7   the psychiatrist's discharge evaluation that diagnose her with

8   depression; you have the teachers' recommendations that she

9   needed testing; and they've acknowledged that the reason that

10  she hasn't been in school related the recommendation from the

11  psychiatrist that – that it would be possibly harmful for her;

12  and what we don't have is testing.  And that's why we're here.

13  We're here to ask that the testing that has been done be funded.

14  Any testing or that the social history be provided the parent,

15  and that a meeting be convened right away with DCPS invited so

16  that we can address the issue of eligibility for this student.

17  The parent would also request, because of the delays that have

18  occurred, that have not been through her fault at all, we are

19  asking that her right to request comp ed for that to be

20  reserved. We're recognizing the fact that she hasn't been

21  identified yet, so it's hard to go forward with rest until she

22  is identified. But if she is eligible and we strongly suspect

23  that she will be, based on the evaluation that we have so far,

1   then there services that should have been provided to her, that

2   she has been denied all this time.

3       HEARING OFFICER:  Mr. Houston.

4       MR. HOUSTON: Yes sir.  First Ms. Gambale says, before the

5   request was made, there were teachers saying that she needed

6   testing. If fact there were in January as our document number 8

7   shows. IDEA Public Charter School did what they were supposed to

8   do in trying to identify a child under Child and based upon the

9   recommendations of the teachers, they requested a meeting with

10   the mother to go over and get initial consent for evaluations.

11   And that letter was sent on the 10th of January. On the same

12   date, the mother had sent a letter to IDEA or her counsel had

13   sent a letter with the documents – with – requesting testing,

14   but that is the first step in testing. The mere fact that there

15   is a request doesn't make that an event that has to happen.

16   There has to be an informed consent where the team members come

17   together including the parent and discuss the rationale for the

18   testing, whether there are any accommodations made prior to the

19   initial request for testing, and if those weren't working, then

20   do we need to test. That is all part of the process under IDEA.

21   The parent has to give informed consent, which means she has to

22   take part in the meeting with the school personnel to see if

23   there any issues that requires testing.  A mere fact of sending

1   out a request or documents signed by the parent saying that we

2   want testing without knowing specifically what types of testing

3   is going to occur is not informed consent. And under the law,

4   the parent has been fully of all information relevant to the

5   activity for which consent is sought in his or her native

6   language or other mode of communication.  The parent understands

7   and agrees in writing to carrying out the activity for which his

8   or her consent is sought and the consent describes that activity

9   and lists the record that will be released to whom.

10      HEARING OFFICER: Give me the cite to that.

11      MR. HOUSTON: That is the definition of consent under CFR -

12   34 CFR Sect. 300.9. The fact that a parent counsel's sends out a

13   letter requesting testing is not informed consent.  That is done

14   at the MDT meeting that discusses the special education - the

15   evaluation plan, the SEP meeting.  We could have had the meeting

16   a lot sooner.  We had requested that the meeting be done for

17   whatever reason, there was a glitch.  Everyone in the office

18   showed up on February 2nd.  The parent and Ms. Moody showed up on

19   the first.  That was not the scheduled date. Then we offered

20   them  -- the parent, other dates for the MDT much sooner than

21   March, it was in February in fact.  But, we did not get the

22   meeting because the parent's couldn't consent until March 6th.

23   We had the meeting, we informed MHR almost immediately of the

1    need for testing and from March 6th we had a 120 days because

2    that is the date that parent gave informed consent.  Not January

3    10th because a that is not the date of informed consent. March

4    6th, we had 120 days.  Dr. McCants testified that she tried on

5    numerous occasions, she tried to get this scheduled.  The last

6    ones she mentioned were July 19th which the mother responded to.

7    Coincidentally that's the date that the Hearing Request came was

8    July 19th.  We were making a good faith effort to try to get this

9    child tested.  The mother was not – was not allowing Dr. McCants

10   to do the testing that we needed to do.  The fact that the

11   mother has not enrolled this child in any school, she has done

12   nothing to try to mitigate the damages here.  The fact that the

13   complaint does not request independent testing, it just says

14   fund testing and we are funding the testing from MHR. So based

15   upon all that, we request that the Hearing Officer, deny the

16   relief sought by the parent because we are still willing to

17   provide the services that we had said in March, but for the

18   mother not availing herself of the testing.

19        HEARING OFFICER: Last word Ms. Gambale.

20        MS. GAMBALE: With regard to the consent, first of January

21   10th, we sent the consent form along with the letter. The parent

22   was represented by counsel, so she, they could only infer that

23   they she had informed consent when she sent it.  It doesn't –

111

1   the definition he read doesn't require that information be

2   provided solely by and MDT. But even if you disregarded that

3   date, we still don't have testing within 120 days of the March

4   6th day. What Ms. McCant testified to that was that July was the

5   first dates that she tried to schedule any testing, that she

6   never spoke to anyone to in person to confirm a date or make

7   sure that the parent was going to be available. And from what

8   she said, she had called on the 24th proposing the 25th and 27th,

9   that was the next day, so the—not - not speaking to the parent,

10  in person, she never confirmed - she had no way to know that the

11  parent actually had the dates.  There was still after the 120-

12  day timeline.  As far as - be do think it should be the January

13  10th when they first received the written consent.  As far the

14  other, the parent could not have her child attend school if the

15  child was going to be in harm in that environment given the

16  history here.  It's clear that the parent here has done

17  everything that she could. But has been placed between a rock ad

18  hard place. She has been very frustrated by this whole process

19  because of the delays that have occurred. All she's asking for

20  is testing so her daughter can get the help that she needs, and

21  so that she can have her daughter in school. But she can have

22  her in school where she is not going to be at risk to hurt

23  herself based on her past history and based on - and based on

112

1    the recommendations of the psychiatrist.

2        HEARING OFFICER: Ladies, Mr. Houston --. Last word, burden

3    of proof. No.

4        MR. HOUSTON: I understand that but --.

5        HEARING OFFICER: No. No. No.  Ladies, let me assure you Mr.

6    Houston, I'm going to be thorough in my analysis.  Mr. Houston

7    thank you very much for your patience.  Give the Hearing Officer

8    ten days, thank you.