IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IDEA PUBLIC CHARTER SCHOOL        ) | | |
|     Plaintiff                                 ) | | |
|                                                     ) | | |
| v.                                                       ) | | |
|                                                     ) | | |
| CONSUELLA S. MCKINLEY,            ) | Civil Action No: 1:06-01916(EGS) | |
| as next friend of the minor child        ) | | |
| M.K.                                                 ) | | |
|     Defendants.                          ) | | |
|                                                     ) | | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, the Plaintiff, by and through counsels, Roxanne D. Neloms and Domiento C.R. Hill and James E. Brown & Associates, PLLC and pursuant to Local Rule 7.1 and Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court for entry of summary judgment against the Defendants, jointly and severally, for the reasons that are more specifically set forth in the attached Memorandum of Points and Authorities filed contemporaneously herewith and incorporated herein by reference as though set forth in its entirety.

    Respectfully submitted,

    /s/
    Roxanne D. Neloms [478157]
    Domiento C.R. Hill [ MD14793]
    Brown & Associates, PLLC
    1220 L. Street, NW, Suite 700
    Washington, DC 20005
    (202)742-2000 (Tele.)
    Counsels for Plaintiffs

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IDEA PUBLIC CHARTER SCHOOL )<br>   Plaintiff      )<br>             )<br>  v.          )<br>             )<br>CONSUELLA S. MCKINLEY,   )<br>as next friend of the minor child  )<br>M.K.            )<br>   Defendants.     )<br>             ) | | Civil Action No: 1:06-01916(EGS) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

  **COMES NOW**, the Plaintiffs, by and through their attorneys Roxanne D. Neloms, Domiento C.R. Hill, and James E. Brown & Associates, PLLC, and in their Memorandum of Points and Authorities Submitted in Support of Their Motion for Summary Judgment, represents unto this Honorable Court as follows

**I. FACTUAL BACKGROUND**

  K.M., a student attending IDEA Public Charter School (hereinafter "IDEA PCS"), attempted to commit suicide on IDEA PCS' campus. ***See Administrative Record at 73;76***. She was hospitalized at the Psychiatric Institute of Washington from October 18, 2005 to October 24, 2005. ***See AR at 76.*** K.M.'s attending physician opined that K.M. required home instruction until such time as her medical condition could improve. ***Id.*** Shortly after receipt of the letter from the attending physician, Charlotte Blount, IDEA PCS' principal, informed the parent that IDEA could not provide K.M. with home instruction. ***See AR at 78.*** Based on that response, the parent contacted former Superintendent Clifford Janey seeking assistance in the matter. ***See AR at 73.*** In addition, the parent attempted to enroll K.M. in her neighborhood school as non-

attending, only to be turned away. *Id*. Despite the parent's pleas, no assistance was provided, so on January 3, 2006, Michelle Moody, the educational advocate retained by the parent, via letter, requested intervention on K.M' behalf, and followed up with that request for a second time on January 10, 2006. ***See AR at 71; 42-43.***

In addition to the parent's and educational advocate's attempts to obtain assistance on behalf of K.M., on January 10, 2006, the parent, through counsel, sought to have the student comprehensively evaluated for special education eligibility from IDEA PCS and also sought to obtain copies of K.M.'s educational records. ***See AR at 61-67.*** Ms. Blount, on that same day, responded that IDEA had no obligation to provide K.M. with home instruction. ***See AR at 59.*** The letter went on the propose three dates for a MDT meeting. *Id.* Ms. Moody, in subsequent correspondence, offered different dates and after some time all interested parties agreed to convene the student's MDT Meeting on March 6, 2006, to discuss the educational dilemma facing K.M. ***See AR at 44-49; 85-88; 90.*** At said meeting, IDEA PCS requested that the parent sign yet another consent to evaluate form, whereby, the advocate noted that the parent had already provided IDEA PCS the necessary consent to evaluate the student on January 10, 2006 and requested that IDEA PCS honor this date as the day of her initial request and consent to evaluate. ***See AR at 92***.

When IDEA PCS failed to supply the comprehensive evaluations by May 10, 2006, the parent through counsel, on or about filed a July 19, 2006 administrative due process hearing request alleging that IDEA failed to evaluate pursuant to its child find obligations and further failed to evaluate within the allotted 120 day time line. ***See AR at 17-29.*** As relief, the parent sought independent evaluations at IDEA's expense. *Id.* In a September 29, 2006 Hearing Officer's Determination, the hearing officer determined that IDEA PCS' failure to

comprehensively evaluate K.M. within the 120 day time line amounted to a denial of FAPE. *See AR at 2-11.* He opined that because the parent clearly requested comprehensive evaluations on January 10, 2006, said evaluations should have been completed by May 10, 2006. *Id.*

Based on those findings, IDEA PCS filed a complaint against the parent in the U.S. District Court for the District of Columbia on November 9, 2006. In that complaint, counsel for IDEA PCS argued that the hearing officer erred in his decision and sought reversal of the September 2006 Hearing Officer's Determination.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)*; Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586.

As there are no genuine issues of material fact, this Court should grant the Defendant's motion for summary judgment, and deny the Plaintiff's Motion for Summary Judgment

### III.  ARGUMENT

In the September 2006 HOD, Hearing Officer St. Clair specifically found that IDEA PCS denied K.M. access to FAPE when it failed to evaluate her within the 120 day time line provided in the regulations. ***See AR at 2-11***.  In his findings of facts the hearing officer noted:

1. The student was psychiatrically hospitalized between October 17-24, 2006 and did not return to IDEAPCS upon discharge.  The attending physician recommended home instruction for the student.

2. The parent requested IDEAPCS to provide home instruction to the student, and IDEAPCS replied that they could not provide home instruction.  To secure home instruction, the Parent attempted to enroll the student at Anacostia SHS, DCPS as non-attending, but Anacostia SHS refused to enroll the student until the student was withdrawn from IDEAPCS.  The Parent refused to withdraw the student from IDEAPCS.

    3.    The Counsel for the Parent requested IDEAPCS to evaluate the student for special education services by letter dated January 10, 2006, Parent Document No.12. The letter was accompanied by a DCPS Consent for Evaluation Form-Initial or Reevaluation- signed and dated by the Parent, December 16, 2005.

    4.    On March 6, 2006 IDEAPCS convened a MDT/SEP meeting for the student during which it was determined the student should be evaluated for special education services. In this matter, a MDT/SEP meeting was unnecessary. The evaluation had not completed at the time of the hearing.

    5.    IDEAPCS and/or MHR did not attempt to evaluate the student for special education services until April 24, 2006 and, thereafter, not before June 21, 2006.

*See AR at 7-8.*

Based on those particular facts the hearing officer found that IDEA PCS should have completed evaluation and placement within 120 days of the date the parent referred her child for evaluations. In this matter, he found that IDEA PCS violated the provisions of the IDEIA when the parent referred K.M. for special education services by letter dated January 10, 2006 and that by May 10, 2006, IDEA PCS had failed to complete any of the requested evaluations. *See AR at 8.* Furthermore, the hearing officer noted that IDEA PCS' perceived defective consent did not negate the start of 120 day time line. *Id.* He further noted that "[a]n MDT meeting [was] not

required to proceed with an evaluation of a student if a parent has made a clear the decision to evaluate a student for special education services." *Id*.

### A. THE HEARING OFFICER DID NOT ERR IN DETERMINING THAT IDEA PCS DENIED K.M. ACCESS TO A FREE AND APPROPRIATE EDUCATION UPON IDEA PCS FAILURE TO TIMELY EVALUATE.

In its November 2006 Complaint, IDEA PCS alleges that the hearing officer erred by : 1) finding that a signed consent for evaluation started the time-line for testing; 2) when he disregarded the parent's obstruction of the evaluation process; and 3) when he disregarded the fact the student effectively discontinued attendance at IDEA PCS.  ***See November 2006 Complaint***.

In this matter, the applicable standard of review requires that "a party challenging [an] administrative determination must [shoulder] the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so."  *See Kerkam v. McKenzie*, 862 F.2d 884, (D.C. Cir. 1989) ("*Kerkam I*").  Thus, an administrative determination "without reasoned and specific findings deserves little deference." *See Kerkam v. Superintendent*, *D.C. Pub. Schs.*, 931 F. 2d 84, 87 (D.C. Cir. 1991) ("*Kerkam II*"). In interpreting "the preponderance standard of review", the Supreme Court noted in *Rowley*, that it is not a review that equates into an "unfettered de novo review".  *See Board of Educ. Hendrick Hudson Central School Dist. Westchester County v. Rowley*, 458 U.S. at 206, 102 S. Ct. 3034; Courts must give administrative proceedings "due weight,"(*see also Simmons v. District of Columbia*, 355 F.Supp 2d. 12 (D.D.C 2004)) and [f]actual findings from administrative proceedings are considered prima facie correct." *Id.* (Quoting *S.H. v. State Operated Sch. Dist. of the City of Newark*, 336 F. 3d 260, 270 (3d Cir. 2003)).

Courts may not substitute their own views for [that] of the hearing officer, (*id.* at *Rowley* 206; *see also Argueta v. Government of the District of Columbia,* 355 F. Supp. 2d. 408 (D.D.C 2005)*; Shaw v. Dist of Columbia*, 238 F. Supp. 2d 127, 135 (D.D.C. 2002)), and a court upsetting a hearing officer's decision "must a least explain its basis for doing so." *District of Columbia v. Ramirez* , 355 F.Supp. 2d. 63 (D.D.C 2005). Consequently, when neither party seeks to supplement the administrative record with additional evidence, a motion for summary judgment will operate as a motion for judgment based on the evidence of record. 20 U.S.C. § 1415(i)(2)(B); *Id*. at *Ramirez,* 355 F.Supp. 2d. 63 (D.D.C 2005).

IDEA PCS shoulders the burden of demonstrating to the Court that it should not afford due weight to the September 2006 HOD that specifically found that IDEA PCS denied K.M. access to a free and appropriate education. That decision should not be disturbed as it was based on a sound review of the record and testimony presented. In addition, the evidence of record demonstrates that K.M.'s attempt to commit suicide warranted evaluations on her behalf. Furthermore, the parent's specific written request for evaluations began the 120 day time-line because that written request operated as a "referral" as indicated by DC ST §38-2501. The hearing officer's finding that IDEA PCS violated IDEIA when it failed to complete evaluations within a 120 day time line is supported by a myriad of evidence. As a result, this Court should not reverse the September 2006 HOD as IDEA PCS' failure to complete the evaluations and determine K.M.'s eligibility in a timely manner resulted in substantial harm to her educational programming.

### B. A PARENTAL WRITTEN REQUEST BEGINS THE TIME-LINE FOR EVALUATION AND ELIGIBILITY DETERMINATION.

IDEA PCS alleges that the hearing officer disregarded the procedural safeguards when he found that a parent's signed consent form started the timeline for testing. In support of this contention, IDEA PCS relies on 34 C.F.R.§ 300.305. More specifically, counsel for IDEA PCS relied on the following portion of 34 C.F.R.§ 300.305:

> As part of an initial evaluation *(if appropriate)(omitted by the counsel)* and as a part of any reevaluation under this part, the IEP Team and other qualified professionals, as appropriate, must-
> (1) Review existing evaluation data on the child, including-
> (i)Evaluations and information provided by the parents of the child;
> (ii)Current classroom-based, local, or State assessments, and classroom-based observations; and
> (iii)Observations by teachers and related service provider; and
> (2) On the basis of the review, and input from the child's parent, identify what additional data, if any, are needed . . . ." See 34 C.F.R.§ 300.305

IDEA PCS asserts that a parent signing a consent form without participating in the aforementioned process somehow circumvents the educational process for the child. IDEA PCS further claims that in accordance with 34 C.F.R. 300.305, a meeting to review prior existing data must take place prior to a parent providing informed consent for evaluations. However, this assertion runs afoul of the existing law regarding referrals for evaluations and the "child find" obligations as defined by IDEIA.

Here, the parent submitted a letter on January 10, 2006, requesting comprehensive evaluations on behalf of her daughter. By all accounts the process should have concluded by May 10, 2006, inclusive of eligibility and placement determinations. However, as noted by the

hearing officer, the principal did not hold a meeting for K.M. until March 6, 2006 to discuss and determine whether K.M would be evaluated. *See AR at 8*.

34 CFR 300.305, lists several steps an IEP team must engage in ***as a part of*** the initial evaluation, ***if appropriate***. Consequently, one can reason that this provision is to be used in conjunction with those other provisions that begin the process of determining the educational needs of an unidentified child. Thus, in accordance with the law, the LEA has a duty to "ensure that a full and individual evaluation is conducted for each child being considered for special education and related services in order to determine if the child is a 'child with a disability'…; and the educational needs of the child." See D.C. MUN. REGS. tit. 5, § 3005.1. Additionally, "the IEP team shall conduct an initial evaluation of a child ***within a reasonable time of receiving a written referral and parental consent to proceed and within time lines*** consistent with Federal law and D.C. Code § 38-2501(a)." See 34 C.F.R. 300.301; D.C. Code § 38-2501(a); D.C. MUN. REGS. tit. 5, § 3005.2(emphasis added). Under the D.C. Code, the LEA "shall assess or evaluate a student, who may have a disability and who may require special education services, ***within 120 days from the date that the student was referred for an evaluation or assessment.***" See D.C. Code § 38-2501(a)(emphasis added). The hearing officer correctly determined that a meeting was not necessary to begin the evaluation process for K.M., the parent's signed consent form began the referral process in accordance with the law.

### C. IDEA PCS VIOLATED THE "CHILD FIND" PROVISIONS OF IDEIA.

The remaining arguments set forth by IDEA PCS are without merit. These arguments are attempting to masquerade the fact that IDEA PCS failed to comply with its "child find" obligations. More specifically, IDEA PCS claims that the hearing officer erred when he failed to find that the parent obstructed the evaluation process when she did not provide medical

10

documentation regarding K.M.'s hospitalization until March 6, 2006. They further argued that the parent refused to meet with the team until March 6, 2006, despite their numerous attempts to meet with her prior.

As early as October 30, 2005, the attending psychiatrist Laurence Greenwood, MD provided a letter stating that based on K.M.'s condition, she required Visiting Instructional Services (VIS) until such time as her medical condition improved. ***See AR at 76.*** Despite receipt of this information, Ms. Blout, IDEA PCS principal, informed the parent that the charter school was not responsible for providing VIS. ***See AR at 73-75***. At no time did the principal offer to begin the referral process as required by IDEIA, she only frustrated the process by not assisting the parent in a timely manner. In fact, she only began to attempt to schedule meetings after the parent obtained representation, a whole two months after K.M.'s suicide attempt.

Second, oddly enough, IDEA PCS claims that because K.M. effectively discontinued attendance at IDEA PCS, the time-lines for completing evaluations were voided. In reliance, counsel quoted, 34 CFR 300.301(d)(2), which states that time-lines are not applicable to the initial evaluations process if a child enrolls in a school of another public agency after the relevant time frame began. In other words, IDEA PCS believed its duty to evaluate K.M. somehow vitiated when K.M. enrolled as a non-attending student in a District of Columbia Public School. If there is an argument that is nonsensical, it is this one. First of all, the parent requested that K.M. receive home instruction based on the doctor's request. ***See AR at 76***. After being informed that IDEA PCS did not provide such services, the parent took the next logical step and contacted the District of Columbia Public School System, who informed her that her child had to be enrolled in a DCPS school to receive such services. ***See AR at 2-11, 78; see also TR at 15-17.*** **Consequently, because the parent only registered K.M. as a non-attending**

**student with DCPS and did not enroll the student in a DCPS school or program, DCPS refused to assist her. Moreover, and most importantly, the parent never withdrew K.M. from IDEA PCS.** *Id*.

While the hearing officer did not find that IDEA PCS violated the "child find" provisions of IDEIA, the facts presented clearly support such a finding. K.M.'s unsuccessful suicide attempt on the premises of IDEA PCS, the parent and the treating physician at PIW request for home schooling warranted IDEA PCS taking action on K.M.'s behalf. In *Scott v. District of Columbia*, 45 IDELR 160 (2006), the U.S. District Court for the District of Columbia commented on the following:

> The Circuit's holdings require DCPS [LEA] to identify and evaluate students in need of special education services and related services, whether or not parents have made any request, written or oral.

*Id; see also Reid v. Dist. of Columbia,* 401 F.3d 518, (D.C. Cir 2005). IDEA PCS failed to comply with its "child find" obligations and this Court should find that the parent did not cause undue delay and provided all of the requisite information necessary to begin the evaluation process for K.M.

Based on the foregoing, this Court should affirm the September 2006 Hearing Officer's Determination as it was based on a sound review of the record.

## V. CONCLUSION

The Defendant respectfully request that the Court enter an order granting the Defendant's Motion for Summary Judgment and denying the Plaintiff's Motion for Summary Judgment. In addition, the Defendants' request that they be found the prevailing party for purposes of attorney fees and further granted fees in connection with defending this suit.

        Respectfully submitted,

        /s/
Roxanne D. Neloms [478157]
Domiento C.R. Hill [MD14793]
Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsels for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IDEA PUBLIC CHARTER SCHOOL | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONSUELLA S. MCKINLEY, | ) | Civil Action No: 1:06-01916(EGS) |
| as next friend of the minor child | ) | |
| M.K. | ) | |
|     Defendants. | ) | |
| | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1. K.M., a student attending, IDEA Public Charter School attempted to commit suicide on IDEA PCS' campus. **See Administrative Record at 73;76.**

2. She was hospitalized at the Psychiatric Institute of Washington from October 18, 2005 to October 24, 2005. **See AR at 76.**

3. K.M.'s attending physician opined that K.M. required home instruction until such time as her medical condition could improve. ***Id.***

4. Shortly after receipt of the letter from the attending physician, Charlotte Blount, IDEA PCS' principal, informed the parent that IDEA could not provide K.M. with home instruction. **See AR at 78.**

5. Based on that response, the parent contacted former Superintendent Clifford Janey seeking assistance in the matter. **See AR at 73.**

6. In addition, the parent attempted to enroll K.M. in her neighborhood school as non-attending, only to be turned away. Despite the parent's pleas, no assistance was provided, so on January 3, 2006, Michelle Moody, the educational advocate, via letter,

requested intervention on K.M' behalf, and followed up on January 10, 2006. *See AR at 71; 42-43*.

7. In addition, January 10, 2006, the parent, through counsel, sought comprehensive evaluations and copies of K.M.'s educational records. *See AR at 61-67.*

8. Ms. Blount, on that same day, responded that IDEA had no obligation to provide K.M. with home instruction. *See AR at 59.*

9. The letter went on the propose three dates for a MDT meeting and Ms. Moody, in subsequent correspondences, offered different dates to convene and after some time all interested parties agreed to meet on March 6, 2006, to discuss the educational dilemma facing K.M. *See AR at 44-49; 85-88; 90*.

10. At said meeting, IDEA requested the parent signed, yet another consent to evaluate form, whereby, the advocate noted that the parent honored January 10, 2006 as the date of her initial request. *See AR at 92*.

11. When IDEA PCS failed to supply the comprehensive evaluations by May 10, 2006, the parent through counsel, filed a July 19, 2006 administrative due process hearing request alleging that IDEA failed to evaluate pursuant to its child find obligations and further failed to evaluate within the allotted 120 day time line. *See AR at 17-29*.

12. As relief, the parent sought, *inter alia*, independent evaluations at IDEA's expense. *Id.*

13. In a September 29, 2006 Hearing Officer's Determination, the hearing officer determined that IDEA PCS failure to comprehensively evaluate K.M. within the 120 day timeline amounted to a denial of FAPE. *See AR at 2-11.*

14. He opined that because the parent clearly requested comprehensive evaluations on January 10, 2006, said evaluations should have been completed by May 10, 2006. *Id.*

2

Respectfully submitted,

_____/s/_____
Roxanne D. Neloms [478157]
Domiento C.R. Hill [ MD14793]
Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
 (202)742-2000 (Tele.)
Counsels for Plaintiffs

3