UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTEGRATED DESIGN AND ELECTRONICS :
ACADEMY PUBLIC CHARTER SCHOOL     :
              Plaintiff,     :
                                              :
       v.                                                       :   Civil Action No. 06-1916
                                              :   (EGS)
**Consuella S. McKinley, as the next of**     :
**Friend of the minor child, K.M., et al.,**  :
                                              :
              **Defendant.**                                 :
                                              :

## MOTION OF PLAINTIFF INTERGRATED DESIGN AND ELECTRONICS ACADEMY PUBLIC CHARTER SCHOOL FOR SUMMARY JUDGMENT

**PURSUANT** to Fed. R. Civ. P. 56 (b) and Local Rule 7(h), and for the reasons set forth in the attached Memorandum, **Integrated Design and Electronics Academy Public Charter School ("IDEA-PCS")**, the Plaintiff herein, hereby move this Court for the entry of summary judgment and relief from the September 29, 2006 decision of the Hearing Officer finding that IDEA PCS had failed timely to conduct an Independent Educational Plan ("IEP") under 20 U.S.C.§§ 1400 et seq, and as reasons for such motion would state:

       1.       As set forth more fully in the accompanying Memorandum in Support, there is no genuine dispute as to any material fact as to any count in IDEA-PCS' Complaint.  There is no genuine issue as to the material fact that the Hearing Officer erred in finding that the signed consent for evaluation started the timeline for evaluation of the Student (K.M.).  All of the record evidence confirms that IDEA-PCS was following procedures set forth under the Individuals With Disabilities Education Improvement Act ("IDEIA") 20 U.S.C. §§ 1400 et seq and the implementing Regulations

found at 34 C.F.R. §300.305, that IDEA-PCS was required to follow as a Local Education Agency (LEA) as defined by the Act.

     2.     There is no genuine issue as to the material fact that the Hearing Officer erred when he disregarded the parent's intentional obstruction of the evaluation process. According to 34 C.F.R. §300.301(c)(1), the initial evaluation must be conducted within 60 days of receiving parental consent for the evaluation. However, that section further provides that "The timeframe described in paragraph (c)(1) of this section does not apply to a public agency if-- (1) The parent of a child repeatedly fails or refuses to produce the child for the evaluation." 34 C.F.R. §300.301(d)(1). All the record evidence confirms that IDEA PCS was repeatedly frustrated in its attempts to evaluate the student in this matter to determine if the student was in fact an appropriate candidate for placement under the IDEIA Regulations.

     IDEA PCS believes that there is more than ample evidence to grant IDEA PCS' request for summary judgment and reversal of the Hearing Officer decision. A Memorandum in Support and a Proposed Order are attached.

     Respectfully submitted,

     /s/ Squire Padgett
Squire Padgett, #206128
Lathal Ponder, #434951
The Law Office of Squire Padgett
1111 14th Street, NW
Suite 820
Washington, DC 20005
(202) 216 – 4980
(202) 216 –4986 (fax)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTEGRATED DESIGN AND ELECTRONICS :
ACADEMY PUBLIC CHARTER SCHOOL     :
         Plaintiff,                  :
                                     :
         v.                          :   Civil Action No. 06-1916
                                     :            (EGS)
Consuella S. McKinley, as the next of :
Friend of the minor child, K.M., et al., :
                                     :
         Defendant.                  :
                                     :

**MEMORANDUM OF PLAINTIFF INTERGRATED DESIGN AND
ELECTRONICS ACADEMY PUBLIC CHARTER SCHOOL IN SUPPORT OF
<u>ITS MOTION FOR SUMMARY JUDGMENT</u>**

**I.   INTRODUCTION**

The Complaint in this matter is based on an erroneous finding and decision by the Hearing Officer from a due process hearing contending that the Integrated Design and Electronics Academy Public Charter School ("IDEA-PCS") and District of Columbia Public Schools ("DCPS") had denied the subject student a "free appropriate public education" ("FAPE") in accordance with the provisions of the Individuals With Disabilities Education Improvement Act of 2004, 20 U.S.C. 1400 et seq. ("IDEIA").  After the September 29, 2006 hearing, the Hearing Officer concluded that:

> IDEA-SPCS's process in this matter was inappropriate and
> amounted to a Denial of FAPE because it was clear that the Parent
> had exercised her right to have the student evaluated for special
> education services on January 10, 2006 notwithstanding any
> possible MDT decision.

From the Final Administrative Decision IDEA-PCS has filed this appeal under 20 U.S.C. § 1415(i)(2)(A) seeking review of that decision and hereby move this Court for the entry of summary judgment and relief from that administrative decision.

1

II. **STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

  1. Plaintiff, Integrated Design and Electronics Academy Public Charter School (IDEA-PCS) is a District of Columbia Public Charter School which has elected to be its own local education agency (LEA) under IDEIA, for special education issues. *Complaint, para. 2.*

  2. K.M. is a sixteen year-old student who at the initiation of the administrative proceedings, by her parents, attended IDEA-PCS PCS and had initially enrolled as a regular student during the 2004-05 school year. *Complaint, para. 4.* [1]

  3. On October 17, 2005, K.M. attempted suicide in the rest room of IDEA-PCS-PCS and thereafter was taken to the hospital where she remained and received treatment until October 24, 2006. *Complaint, para. 5.*

  4. In K.M.'s discharge summary from the Psychiatric Institute of Washington (PIW) the attending psychiatrist recommended home instruction, and following the emotional stabilization of K.M. **"she could return to a different school."** *Administrative Record ("AR") filed herein August 1, 2007, p. 80-82.*

  5. IDEA-PCS PCS responded to the parent's request to provide home instruction on October 30, 2005, with a letter dated November 3, 2005, which informed the parent that home instruction was not available from IDEA-PCS, because IDEA-PCS is not structured to provide Visiting Instructional Services to any student who is absent because of a long term medical condition. *AR, p. 76, 78*

  6. Even though IDEA-PCS PCS could not offer home instruction, IDEA-PCS did support K.M. who was absent because of a long term medical condition, by requiring teachers to develop enough assignments for a two week period, forwarding assignments and text books to K.M., electronically communicate with the student, requiring K.M. to complete the assignments within a specified period of time and return the assignments to school so that more assignments can be prepared and sent home or have the assignments picked up. *AR, p. 78.*

  7. K.M.'s Mother attempted to enroll K.M. at Anacostia Senior High School, were unsuccessful because parent refused to withdrawal K.M. from IDEA-PCS -PCS even though it was all that was required for admission. *AR, p. 4.*

  8. On January 10, 2006 Petitioner, through counsel requested evaluations for special education and its related services and counsel enclosed a District of Columbia Public School (DCPS) Consent for Evaluation Form signed by the parent on December 16, 2005. *Complaint, para. 6.*

---

[1] K.M. is the student involved in this matter and her name is not revealed for reasons of privacy. "K.M.", "Mother", "Petitioner" and "Parent" are used interchangeably in this pleading as appropriate.

9. The requested Evaluation Reports from teachers at IDEA-PCS, who had been her instructors while she was enrolled almost uniformly indicated that K.M. "displayed a pattern of class-cutting, absenteeism and tardiness to class" and was underachieving. *AR. p. 94-100*
.

10. In the January 10 letter, counsel for K.M. requested notice of all proposed tests, observations, and evaluations. *Complaint, para. 7.*

11. On the same day, January 10, 2006, on its own initiative, IDEA-PCS requested a meeting with the parent to determine whether K.M. needed special education services. *Complaint, para. 8.*

12. Thereafter, IDEA-PCS made numerous and continuous attempts to hold a multi-discipline team (MDT) to discuss information regarding the student, review any documents pertaining to the student and determine if the student needed evaluations and if so, which evaluations. *AR, p. 176, 178,182, 184.*

13. Finally, on March 6, 2006, the parent and her representative took part in the MDT meeting where the team determined the need for testing and the evaluations required to determine eligibility for special education. *Complaint, para. 10.*

14. On July 19, 2006, defendants filed a Due Process Complaint claiming IDEA-PCS failed to provide a timely evaluation. *Complaint, para. 14.*

15. On September 22, 2006 DCPS convened an impartial due process hearing. *Complaint, para. 15.*

16. Testimony from IDEA-PCS personnel indicated IDEA-PCS had begun the process to determine whether the student needed special education services on January 6, 2006. *Complaint, para. 16.*

17. Testimony from IDEA-PCS and their evaluators revealed they made numerous attempts to test K.M.; however they were not provided medical records from the hospitalization by her parent until March 6, 2006 necessary for the IDEA-PCS to review. *Complaint, para. 18 and 28.*

18. The Hearing Complaint reveals that the parent had already obtained independent evaluations prior to filing of the due process complaint. *AR, p. 20, footnote 2.*

19. On September 29, 2006, DCPS issued a Hearing Officer's Decision (HOD) which found for K.M. and is cited above. *Complaint, para. 22;*

20. The HOD also found that IDEA-PCS PCS should have completed the evaluations by May 10, 2006 since the timeline for the 120 days started on January 10, 2006. *AR, p. 8.*

3

21.     The HOD then ordered IDEA-PCS PCS to fund independent clinical psychological, psycho-educational and speech/language evaluations of the student. *AR, p. 9.*

22.     It is from the HOD that IDEA-PCS now appeals.

**III.    ARGUMENT IN SUPPORT OF IDEA-PCS PCS' MOTION FOR SUMMARY   JUDGMENT**

IDEA-PCS believes that this Court, on the basis of the undisputed facts alone should reverse the decision of the HOD and be granted summary judgment in this matter. As established by the argument that follows, and the statement of material facts, there is no genuine dispute as to IDEA-PCS' compliance with its obligations under the Individuals with Disabilities Education Act ("IDEIA"), 20 U.S.C. §1400 et seq.  IDEA-PCS complied with its statutory obligations in its attempt to provide K.M. with a FAPE in spite of the clear attempts and efforts to frustrate these efforts. The Record is undisputed that IDEA-PCS repeatedly attempted to evaluate the student to determine if the statement was in fact disabled or was underachieving because of a patter of absenteeism and related conduct. Regardless, IDEA-PCS should not be penalized for following the procedures laid out in 34 C.F.R. §§ 300.301, 300.305.

    **A.     The Standard of Review Applicable in This Case**

        **1.     The Requirements for Summary Judgment**

The standard for summary judgment under Fed. R. Civ. P. 56 is well known, and will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law.   To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be

4

material, the factual assertion must be capable of affecting the substantive outcome of the litigation. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); see also <u>Laningham v. U.S. Navy</u>, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The non-moving party's opposition, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 324, 106 S.Ct. 2548 (1986).

### 2. The criteria for review of administrative decisions under the IDEIA

In cases such as this, the Individuals with Disabilities Education Act, 20 U.S.C. §1400 et seq. ("IDEIA"), dictates that "the court shall receive records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B*)*. The IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing. *20 U.S.C. §1415(i)(2)(A)*. Under D.C. precedent, "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that that a court upsetting the officer's decision must at least explain its basis for doing so." <u>Kerkam v. McKenzie,</u> 274 U.S.App.D.C. 139, 862 F.2d 884, 887 (D.C. Cir. 1989). ("Kerkam I")

5

While the Court is authorized to make an independent determination, "it must give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." Lyons v. Smith, supra, 829 F.Supp. at 418 (1993).

The United States Court of Appeals for the District of Columbia Circuit has concluded that given the district court's authority to "hear additional evidence at the request of a party" and "base its decision on the preponderance of the evidence," IDEIA "plainly suggests less deference than is conventional" in administrative proceedings. See Kerkham I, 862 F.2d at 887.  More recently, the Court of Appeals for the District of Columbia, clarified the standard of review.  While conceding that "judicial review under IDEIA is more rigorous than in typical agency cases", the court disagreed with the argument that the court's review of the district court and the district court's review of the hearing officer "should be deferential." Reid v. District of Columbia, 365 U,S.App.D.C. 234, 401 F.3d 516, 521 (2005).

      **B.**    **The Hearing Officer's Determination is not Supported by the Record and Should be Overturned.**

           **1.**    **The Hearing Officer erred in finding that the signed consent for evaluation started the timeline for testing.**

The HOD erred in finding that the signed consent for evaluation started the timeline for testing.  IDEIA lays out procedures prescribing requirements for LEA's prior to evaluating a student suspected of disabilities.  Under 34 C.F.R. §300.305 the LEA is required:

> As part of an initial evaluation. . .the IEP Team and other qualified professionals, as appropriate, must –
>     (1) Review existing evaluation data on the child, including –
>         (i)    Evaluations and information provided by the parents of the child;

>   (ii)   Current classroom-based, local, or State assessments, and classroom-based observations; and
>   (iii)  Observations by teachers and related services providers; and
> (2) On the basis of that review, and input from the child's parents, identify what additional date, if any are needed. 34 C.F.R. §300.305(a).

The process set up by the IDIEA and followed by IDEA-PCS hear, is necessary to ensure that student is given all the evaluations that may qualify them for special education services. Following a request from a parent without input from all those who educate and interact with the child could lead to the child not being given an appropriate evaluation that could qualify them for appropriate special education services when they otherwise would not. The Special Education Coordinator ("SEC") for IDEA-PCS, testified at the due process hearing that a student is not evaluated for special education services at just a request from a teacher or a parent, but, that if an MDT/SEP meeting the MDT ("Multiple Disciplinary Team") decided against evaluation and the parent still wanted evaluation, the student would be evaluated. *AR, p. 6.*

On January 6, 2006, the MDT determined that the student should be evaluated for special education services and informed the Principal. The Principal then authorized the MDT/SEP meeting to determine what type of evaluations the student should receive. All LEA's are required to go through this process and convene this meeting with all knowledgeable and interested parties to determine whether to evaluate the student and to determine which evaluations the student should receive. The parent requesting evaluations and signing, a consent form without this meeting not only short circuits the process but short changes the child. Giving the child the appropriate evaluation could be the difference between qualifying for special education services or not. That was of

critical importance here where the school had extended prior history with K.M. and the teacher evaluations had expressed concerns and provided information about K.M.'s prior performance. Thus it is clear that the Hearing Officer here clearly erred when he disregarded the procedural safeguards carried out and addressed by IDEA-PCS. Therefore, the Hearing Officer's determination that FAPE was denied because the Parent had exercised her right to have the student evaluated for special education services on January 10, 2006, notwithstanding any MDT determination is wrong.

### 2. The Hearing Officer erred when he Disregarded the Parent's Obstruction of the Evaluation Process.

The law recognizes and the facts in the Record here show that the Mother's delaying actions should have been taken into consideration by the Hearing Officer. In Walker v. District of Columbia, 157 F.Supp.2d 11 (2001), the Court concluded that the plaintiff failed to carry their burden of proof with respect to their claim that DCPS failed to provide plaintiff with the proper placement for a number of school years, because the student "was rarely available to be evaluated", and was "absent from classes for days, weeks, months and apparently years at a time." Walker, 157 F.Supp.2d 11, 33 (2001). The court concluded that "such evidence certainly does not indicate a failure on the school system's part to ensure timely evaluation and re-evaluation of [plaintiff], they suggest the opposite." Id. This holding applies to the case at hand because all efforts by IDEA-PCS to evaluate the Student were met with silence or indifference from her mother and apparently the Child Advocate.

The Code of Federal Regulations clearly lays out the process for the initial evaluation:

§ 300.301 Initial evaluations.

8

> (a) General. Each public agency must conduct a full and individual initial evaluation, in accordance with §§ 300.305 and 300.306, before the initial provision of special education and related services to a child with a disability under this part.
> (b) Request for initial evaluation. Consistent with the consent requirements in § 300.300, either a parent of a child or a public agency may initiate a request for an initial evaluation to determine if the child is a child with a disability.
> (c) Procedures for initial evaluation. The initial evaluation--
> (1)(i) Must be conducted within 60 days of receiving parental consent for the evaluation; or (ii) If the State establishes a timeframe within which the evaluation must be conducted, within that timeframe; and
> > (2) Must consist of procedures--
> > (i) To determine if the child is a child with a disability under § 300.8; and
> > (ii) To determine the educational needs of the child.
>
> (d) *Exception. The timeframe described in paragraph (c)(1) of this section does not apply to a public agency if—*
>
> *(1) The parent of a child repeatedly fails or refuses to produce the child for the evaluation.* (emphasis added)

The Record here is replete with examples of the K.M.'s Mother's lack of cooperation and failure to make her daughter available for the scheduled meetings with IDEA-PCS. IDEA-PCS began the process to see whether the petitioner needed special education services in January 2006. In that effort, the principal asked teachers to fill out forms regarding K.M. Then IDEA-PCS made numerous attempts to hold a multi-discipline team meeting to determine with the team whether student needed testing and what areas to test. (AR- passim)   And finally, the IDEA-PCS made numerous attempts to hold a multi-discipline team meeting to determine with the team whether the petitioner needed testing and what areas to test. See *AR, p. 176, 178,182, 184*. Although, the Student's clearly attempted to further delay the process, on March 6, 2006 IDEA-PCS finally convened the MDT meeting.

9

The MDT team agreed that K.M. needed testing and the Mother signed a consent form allowing IDEA-PCS to do a comprehensive psychological assessment, which included a psychological, education, clinical, and social history. After obtaining the social history, the Mother delayed the process even after numerous attempts to perfom the assessments of her child. The Mother never made K.M. available for testing. IDEA-PCS tried after the receipt of two out of three evaluations to convene a meeting. The Mother either cancelled meetings or did not respond to the invitations for the meetings.

The fourth paragraph of the HOD's Order of the September 29, 2006 states:

> For the said MDT/Eligibility/IEP Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Parent, the deadline herein will be extended one day. HOD, p. 6-7.

IDEA-PCS appealed the decision on or about November 9, 2006 and informed counsel of the appeal on December 1, 2006. This appeal effectively stays the implementation of the HOD. In November 2006, the plaintiff provided the clinical and psycho-educational report to IDEA-PCS.[2] Even though IDEA-PCS was within its rights to not convene a meeting before receipt of all evaluations, IDEA-PCS pressed ahead with its effort to evaluate the student and develop an IEP and a placement for K.M.

The Record before the HOD showed that K.M.'s Mother delayed the process since November 16, 2006. Beginning on that date, IDEA-PCS began inviting K.M, through counsel, to meetings to discuss the evaluations. On November 20, 2006 IDEA-PCS sent a prior notice confirming a December 7, 2006 meeting. The Student's Mother

---

[2] Critical to the court's review of this matter is the fact that the HOD specifically called for three evaluations and for IDEA-PCS PCS to convene the meeting 15 school days after the receipt of the last evaluation. To date the Petitioner has not forwarded the speech and language evaluations. Therefore, IDEA-PCS is still not under an obligation to convene the MDT meeting and therefore the administrative complaint attempting to establish a violation is premature.

cancelled the meeting. On December 6, 2006, IDEA-PCS sent a prior notice confirming a December 8, 2006 meeting to accommodate K.M. K.M.'s Mother cancelled the meeting. On December 14, 2006, IDEA-PCS sent a Letter of Invitation offering three dates to meet: 18, 19, and 20 of December 2006. K.M. and her Mother never responded.

On December 21, 2006, IDEA-PCS sent another Letter of Invitation offering three dates to meet: 10, 11, and 16 of January 2007. On January 9, 2007, K.M.'s Advocate informed IDEA-PCS that they were not available on the proposed dates. On January 10, 2007, IDEA-PCS sent another Letter of Invitation offering three dates to meet: 22 and 30 of January and February 1, 2007. The K.M chose February 1, 2007, and on January 10, 2007, IDEA-PCS sent a prior notice confirming the meeting of February 1, 2007. IDEA-PCS convened the meeting on February 1, 2007, however, the first meeting was a resolution meeting because while K.M was not responding to the meeting invitations, she filed a hearing complaint on January 8, 2007.

A Psychologist, who is a consultant with MHR, attempted to schedule an evaluation of the student beginning on April 24, 2006. The Psychologist left a voicemail to the educational advocate, which was never returned. The next attempt at scheduling occurred on June 21, 2006. The Mother returned this call, and the Psychologist returned the parent's call leaving a voice message for the Mother at the end of June, stating that she would be at IDEA-PCS on July 11, 2006 and she would be available to test the student. The Psychologists did not hear back from the Parent and left another voicemail on July 20, 2006. The Psychologists called back again on July 24, 2006, indicating that July 25, and 27 as possible dates to evaluate the student. The Psychologists did not hear back from the Mother or K.M.

11

Such evidence certainly does not indicate a failure on the part of IDEA-PCS to ensure timely evaluations of K.M. On a consistent basis, the attempts by IDEA-PCS to evaluate K.M. were met with silence or indifference. The only testimony in the record that controverts the facts presented above, are the uncorroborated, self-serving statements of the parent.

### C. The Hearing Officer erred when he Disregarded the Fact the Student had Effectively Discontinued Attendance at IDEA-PCS.

Under 34 C.F.R. §300.301(d)(2), "The timeframe. . .of this section does not apply to a public agency if a child enrolls in a school of another public agency after the relevant timeframe in (c)(1) of this section has begun, and prior to a determination by the child's previous public agency as to whether the child is a child with a disability under §300.8." The Mother has voluntarily kept K.M. from IDEA-PCS PCS, a LEA and placed K.M. in another LEA, therefore voiding the timelines.

## CONCLUSION

IDEA-PCS believes that the Record in this matter establishes that the Hearing Officer's Decision must be reversed, with a finding that IDEA-PCS did in fact make a timely effort to evaluate the Petitioner which was continually obstructed by her Mother; and that there was no denial of the Petitioner receiving a free, appropriate public education by IDEA-PCS.

13

                        **Respectfully submitted,**
Law Office of Squire Padgett


       `/s/ Squire Padgett`
_____
Squire Padgett # 206128
Lathal Ponder # 434951
1111 14th Street N.W.
Suite 820
Washington, D.C. 20005
(202) 216-4980
(202) 216-4986  fax

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

**I HEREBY** certify that a copy of the Plaintiff's (IDEA-PCS) Motion for Summary Judgment Memorandum in Support and Proposed Order were sent by First Class Mail, postage prepaid to the Plaintiff's Counsel at the following address:

**Roxanne d. Neloms, Esq.**
**James E. Brown & Associates**
**1220 L. Street, NW, Suite 700**
**Washington, DC 20005**

**October 5, 2007**                                      `     /s/Squire Padgett            `
                                                                  **Squire Padgett**

14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTEGRATED DESIGN AND ELECTRONICS ACADEMY PUBLIC CHARTER SCHOOL** **Plaintiff,** v. **Consuella S. McKinley, as the next of Friend of the minor child, K.M., et al.,** **Defendant.** | Civil Action No. 06-1916 (EGS) |

**O R D E R**

**UPON CONSIDERATION** of plaintiff's motion for summary judgment, all Responses thereto, the entire record and for good cause shown; it is this _____ day of November, 2007, **ORDERED** that plaintiff's motion is **GRANTED**; and it is

**FURTHER ORDERED** that the September 29, 2006, **Hearing Officer's Decision be reversed**, finding no denial of a free, appropriate education by IDEA PCS.

FURTHER ORDERED that the Plaintiff is awarded attorneys fees and costs.

Dated:  November ____, 2007

_____
UNITED STATES DISTRICT JUDGE