## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTEGRATED DESIGN AND ELECTRONICS ACADEMY PUBLIC CHARTER SCHOOL,<br><br>           Plaintiff,<br><br>      v.<br><br>CONSUELLA S. MCKINLEY, as next friend mother of minor child K.M., and K.M. individually,<br><br>           Defendants. | Civ No. 06-1916(EGS) |

### MEMORANDUM OPINION

Plaintiff Integrated Design and Electronics Academy Public Charter School ("IDEA PCS") seeks judicial review of a hearing officer determination ("HOD") finding in favor of the student and parent Defendants. The parties have filed cross motions for summary judgment and the Court has reviewed the administrative record. For the reasons articulated herein, the Court concludes that Plaintiff has not met its burden of "persuading the court that the hearing officer was wrong." *See Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989) ("*Kerkam I*"). Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I.    Legal Framework

A.    **The Individuals with Disabilities Education**

   **Improvement Act ("IDEIA")**

The IDEIA, 20 U.S.C. § 1400 et seq., sets forth requirements to ensure schools provide a free, appropriate, public education ("FAPE") to children with disabilities affecting their educational progress.  Under the "Child find" mandate of the IDEIA, an LEA must ensure:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

20 U.S.C. § 1412(a)(3)(A); *N.G. v. District of Columbia*, 556 F. Supp. 2d 11, 16 (D.D.C. 2008); *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 519, (D.C. Cir. 2005). District of Columbia Public Schools ("DCPS") and other LEAs have an affirmative duty to identify, locate and evaluate a potentially disabled child.  The failure to do so constitutes a denial of FAPE.  *See Hawkins ex rel. D.C. v. District of Columbia*, 593 F. Supp. 2d 108, 113-14 (D.D.C. 2008); *see also District of Columbia v. Abramson,* 493 F. Supp. 2d 80, 85 (D.D.C. 2007).

After the student is identified as potentially disabled, the LEA "must conduct a full and individual initial evaluation" within the District of Columbia's established time frame of 120 days.  34 C.F.R. § 300.301; D.C. Stat. § 38-2501 (§ 141 Pub. L. 106-113).  Before proceeding with the evaluation, the LEA is required to provide notice to and obtain consent from the parent of the child.  34 C.F.R. §§ 300.301, 300.304.

If the student is classified as eligible for special education then the child should be placed in "an appropriate program of special education services" within that 120 day period.  34 C.F.R. § 300.301; D.C. Stat. § 38-2501 (§ 141 Pub. L. 106-113).  The LEA is relieved of its duty to complete this process within the prescribed time frame where:

> (1) The parent of a child repeatedly fails or refuses to produce the child for evaluation; or
> (2) A child enrolls in a school of another public agency after the relevant time frame … has begun, and prior to a determination by the child's previous agency as to whether the child is a child with a disability.

34 C.F.R. § 300.301.  The second exception is only triggered when the "subsequent public agency is making sufficient progress to ensure a prompt completion of the evaluation, and the parent and subsequent public agency agree to a

3

specific time when the evaluation will be completed." 34 C.F.R § 300.301.

In conducting the evaluation, the LEA is required to use:

> a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child, including information provided by the parent, that may assist in determining -- (i) Whether the child is a child with a disability under § 300.8; and (ii) The content of the child's IEP, including information related to enabling the child to be involved in and progress in the general education curriculum.

34 C.F.R. § 300.304(b)(1).  The public agency must "[n]ot use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability and for determining an appropriate educational program for the child."  34 C.F.R. § 300.304(b)(2).

> As part of an initial evaluation (if appropriate) … the IEP and other qualified professionals, as appropriate, must (1) review existing evaluation data on the child, including -- "(i) Evaluations and information provided by the parents of the child; (ii) Current classroom-based, local, or State assessments, and classroom-based observations; and (iii) Observations by teachers and related services providers".

34 C.F.R. § 300.305(a)(1); 5 D.C. A.D.A. § 3005.4.  "On the basis of that review, and input from the child's parents," the public agency must,

> identify what additional data, if any, are needed to determine — (i)(A) Whether the child is a child

with a disability, as defined in § 300.8, and the
educational needs of the child; … (ii) The present
levels of academic achievement and related
developmental needs of the child; (iii)(A) Whether
the child needs special education and related
services; … (iv) Whether any additions or
modifications to the special education and related
services are needed to enable the child to meet
the measurable annual goals set out in the IEP of
the child and to participate, as appropriate, in
the general education curriculum.

34 C.F.R. § 300.305(a)(2).

If the IEP Team and other qualified professionals,
as appropriate, determine that no additional data
are needed to determine whether the child
continues to be a child with a disability, and to
determine the child's educational needs, the
public agency must notify the child's parents of -
- (i) That determination and the reasons for the
determination; and (ii) The right of the parents
to request an assessment to determine whether the
child continues to be a child with a disability,
and to determine the child's educational needs.

34 C.F.R. § 300.305(d)(1). The LEA "is not required to

conduct the assessment described in paragraph (d)(1)(ii) of

this section unless requested to do so by the child's

parents." 34 C.F.R. § 300.305(d)(2).

The LEA is required to "take steps to ensure that one

or both of the parents of a child with a disability are

present at each IEP Team meeting or are afforded the

opportunity to participate." 34 C.F.R. § 300.322; *see N.G.*,

556 F. Supp. 2d at 17; *Scorah v. District of Columbia*, 322

F. Supp. 2d 12, 14 (D.D.C. 2004) (citing 20 U.S.C. §§

1414(f), 1415(b)(1)). "Parents who object to their child's

'identification, evaluation or educational placement' are
entitled to have an 'impartial due process hearing,' 20
U.S.C. §§ 1415(b)(6), (f)(1), at which they have a 'right to
be accompanied and advised by counsel.'  20 U.S.C. §
1415(h)(1)."  *Id.*  The party seeking relief, either the LEA
or the parent, bears the burden of proof at the due process
hearing.  *N.G.*, 556 F. Supp. 2d at 17 n.3 (citing 53 D.C.
Reg. 5249).

**B.    Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate if the pleadings on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law.  Fed. R.
Civ. P. 56(c).  Material facts are those that "might affect
the outcome of the suit under the governing law."  *Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party
seeking summary judgment bears the initial burden of
demonstrating an absence of a genuine issue of material
fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);
*Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In
considering whether there is a triable issue of fact, the
court must draw all reasonable inferences in favor of the
non-moving party.  *Id.*

In reviewing cases under the IDEIA, courts will receive the records of the administrative proceedings, hear additional evidence at the request of a party, and make a decision based on the preponderance of the evidence. See 20 U.S.C. § 1415(i)(2)(C). The role of the reviewing court under the IDEIA is two-fold. *Scorah*, 322 F. Supp. 2d at 18 (citing *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). First, it must determine whether the LEA has complied with the procedural requirements of the IDEIA. Second, it must determine whether the individualized educational program developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits. *Id.*

Judicial review under IDEIA is more rigorous than in typical agency cases. *Reid*, 401 F.3d at 521. However, "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and the court upsetting the officer's decision must at least explain its basis for doing so." *Id.* (citing *Kerkam I*, 862 F.2d at 887). Although the Court must give "due weight" to the administrative proceedings, *id.*, a hearing officer's decision "without reasoned and specific findings deserves little deference." See *Kerkam v. Superintendent, D.C. Pub. Schs.*, 931 F.2d 84,

87 (D.C. Cir. 1991) (" *Kerkam II*") (internal quotation marks
omitted).

## II.  Factual Background

On October 17, 2005, K.M attempted suicide in an IDEA
PCS restroom and was taken to a hospital for treatment.  R.
73, 76.  K.M. did not return to school following this
hospitalization.  R. 42.  Upon release from the hospital on
October 24, 2005, K.M.'s treating physician recommended that
DCPS provide home services for K.M.  R. 76.  K.M.'s mother,
Consuella McKinley, contacted DCPS on October 26, 2005, but
because K.M. was enrolled in IDEA PCS, an independent LEA,
K.M. was ineligible for DCPS home instruction.  R. 4-5.  Ms.
McKinley also requested home instruction from IDEA PCS.  On
November 3, 2005, IDEA PCS's Principal Charlotte Blount-
Lewis informed Ms. McKinley via letter that IDEA PCS was
unable to provide home instruction.  R. 78.  Ms. McKinley
sent a letter to DCPS Superintendent Clifford Janey on
November 8, 2005 apprising him of the situation and
requesting assistance.  R. 73.  Ms. McKinley subsequently
obtained an educational advocate, Ms. Michelle Moody, who
contacted IDEA PCS and requested intervention on K.M.'s
behalf on January 3, 2006.  R. 42-43, 71.

On or about January 6, 2006, Ms. Blount-Lewis requested
K.M.'s teachers to provide comments on K.M.  R. 6.  The

Special Education Coordinator assembled these comments in a report for the Early Intervention Team ("EIT").  R. 6.  The EIT determined that K.M. should be evaluated for special education services through a Multi-Disciplinary Team/Student Evaluation Plan ("MDT/SEP") meeting.  R. 6.  On January 10, 2006, a letter was sent to Ms. McKinley by Ms. Blount-Lewis stating that IDEA PCS was not obligated to provide home instruction, requesting a meeting to determine whether K.M. needed special education services, and proposing three dates to meet.  R. 59.

In a letter also dated January 10, 2006, Ms. McKinley, through counsel, requested evaluations, asked for notice of all proposed tests, observations and evaluations of K.M. for special education, and provided IDEA PCS with a signed DCPS "Consent for Evaluation" form dated December 16, 2005.  R. 61-67.  On January 13, 2006, Ms. McKinley attempted to enroll K.M. in Anacostia Senior High School as a non-attending student.  R. 73.  K.M. was refused enrollment because Ms. McKinley would not first withdraw K.M. from IDEA PCS.  R. 73.  Also on this date, Ms. McKinley was sent a "Notice of Intent to Evaluate" from IDEA PCS.  R. 6-16.

IDEA PCS, Ms. McKinley, and Ms. Moody twice scheduled dates in February for the MDT/SEP meeting but both meetings were cancelled, the first due to miscommunication as to the

correct date and the second because Ms. Moody was
unexpectedly unavailable.  R. 44-45, 47-49, 172-85.  At the
meeting, which was finally held on March 6, 2006, the
MDT/SEP team determined that there was a need for testing
and evaluation of K.M. to determine her eligibility for
special education.  R. 85-88, 90-92.  IDEA PCS requested
that Ms. McKinley sign another consent form for evaluation.
She signed the new consent form, but with citation to the
January 10, 2006 consent, requesting that this be honored as
the date of the initial request and consent to evaluate.  R.
92.

The scheduler for Dr. Kellie McCants, the assigned
psychologist, attempted to schedule an evaluation of K.M. by
leaving a voicemail first with Ms. Moody on April 24, 2006,
and then with Ms. McKinley on June 21, 2006.  R. 217-19.
Throughout late June and July, Ms. McKinley and Dr. McCants
exchanged voicemail messages in an attempt to schedule the
evaluation.  R. 7.  On July 19, 2006, Ms. McKinley filed a
Due Process Complaint claiming that IDEA PCS's failure to
timely evaluate K.M. was a denial of FAPE.  R. 17-29.  Ms.
McKinley sought relief in the form of independent evaluation
by IDEA PCS.  R. 17-29.

The psychologist and Ms. McKinley continued to exchange
voice mail messages throughout July but the evaluation did

not occur by the time of the due process hearing, held on September 22, 2006.  In August, Ms. McKinley arranged and paid out of pocket for independent evaluations for K.M, the results of which were not completed by the due process hearing.  R. 5.  At the time of the September 22, 2006 due process hearing, IDEA PCS had not yet formulated an IEP for K.M.  K.M. had not been in school since the October 2005 hospitalization.  R. 42.

The HOD found that the IDEA PCS process started on January 6, 2006 and on January 10, 2006, Ms. McKinley "clearly requested" evaluation of K.M., thereby commencing the 120-day period in which K.M. was required to be evaluated.  R. 8.  The HOD concluded that IDEA PCS's failure to complete an evaluation within 120 days (by May 10, 2006) violated 34 C.F.R. § 300.301 and thus constituted a denial of FAPE.  The HOD ordered IDEA PCS to fund "independent clinical psychological, psycho-educational and speech/language evaluation of the student."  R. 9.  Pursuant to 20 U.S.C. §§ 1400 *et seq.*, Plaintiff IDEA PCS filed suit in this Court to challenge these determinations.

## III. Discussion

### A.    Commencement of the 120 Day Evaluation Period

Plaintiff IDEA PCS argues that 34 C.F.R. § 300.305 prevents an LEA from formally evaluating a student until

after the initial evaluation.  Plaintiff contends that the

IEP team must have an opportunity to review the existing

evaluation data to determine what further information is

required.  Compl. ¶ 26.  Plaintiff argues that the HOD

finding that the January 10, 2006 consent started the 120

day period was in error because it disregarded these

procedural "safeguards" which are intended to protect the

child.  Plaintiff contends this consent was premature

because it was provided before the school was able to make

an initial evaluation of K.M.'s needs in order to determine

whether K.M. required formal evaluation.  In addition to

being untimely, Plaintiff argues the January consent was

invalid because it was executed on a form from DCPS not IDEA

PCS.

Defendants argue that the 120 day period started at

least on January 10, 2006 because the consent form put the

school on notice and triggered the "Child find" mandate

under the IDEIA.  Defs.' Mem. at 8-12.  They note that Ms.

McKinley was not asked to sign a new consent form until the

March 6, 2006 meeting although her January 10, 2006 form

indicated her willingness to authorize testing.  Defs.' Mem.

at 8-10.  Defendants support the HOD finding that the

alleged defectiveness of this consent would not toll the

start of the 120 day period, as "[a]n MDT meeting is not

required to proceed with an evaluation of a student if a parent has made clear the decision to evaluate a student for special education services." R. 8.  They argue the initial evaluation provided for in 34 C.F.R. § 300.305 is not a mandatory prerequisite to the formal evaluation.  Defs.' Mem. at 4-5; *see* 34 C.F.R. § 300.305 (providing for an initial evaluation "if appropriate.").

The school was made aware of K.M.'s aberrant behavior by her October 17, 2005 suicide attempt, which took place on the campus, and an October 30, 2005 letter from K.M.'s treating physician recommending home instruction for her. R. 76.  The Child Find obligation extends to all children *suspected* of having a disability, not merely to those students who are ultimately determined to be disabled.  34 C.F.R. § 300.111(c)(1); *see also N.G.*, 556 F. Supp. 2d. at 25.  An LEA's duty to locate and complete the evaluation of a student starts "as soon as a student is identified as a *potential* candidate for special education services."  *Id.* *See, e.g., Hawkins,* 539 F. Supp. 2d 108; *Abramson,* 493 F .Supp. 2d at 85 (explaining that once a child is identified, the LEA "is then obligated to move forward with the requirement of [IDEIA] § 1414(a)(1) and determine whether the student is in fact a child with a disability").

IDEIA defines a "child with a disability" to include a child with "serious emotional disturbance," defined as a condition exhibiting one or more certain "characteristics over a long period of time and to a marked degree that adversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(4)(i); 20 U.S.C. § 1401(3)(A). One of these characteristics includes "inappropriate types of behavior or feelings under normal circumstances," 34 C.F.R. § 300.8(c)(4)(i)(C), which this Court has held is clearly demonstrated by a suicide attempt and psychiatric hospitalization. *N.G.*, 556 F. Supp. 2d at 27. K.M.'s behavior was in fact so irregular that, in early January 2006, Principal Blount-Lewis requested evaluations by K.M.'s teachers for the EIT which in turn found a need for a MDT/SEP meeting. Plaintiff, in its own memorandum, states that the MDT determined that K.M. should be evaluated on January 6, 2006, Pl.'s Mem. at 7, supporting Defendants' argument that the clock started even before January 10, 2006.

Accordingly, the Court finds that IDEA PCS was on notice, explicitly informed of K.M.'s potential diagnosis as a student with a disability, and had commenced the process of evaluating K.M. as of January 10, 2006.

**B.    Parental Obstruction of LEA Evaluation**

Plaintiff argues that regardless of the start date of
the 120 day period, under *Walker v. District of Columbia*,
157 F. Supp. 2d 11, 33 (D.D.C. 2001), the hearing officer
erred in not tolling the clock for the period of time that
K.M.'s mother made K.M. unavailable for evaluation or
monitoring by IDEA PCS.  Pl.'s Mem. at 8-12.  In *Walker*, the
child was consistently unavailable for evaluation despite
continuous efforts by the school to contact the parents:

> Phillip would be absent from classes for days,
> weeks, months and apparently even years at a
> time. If anything, the testimony of Phillip's teachers
> over the years demonstrates that DCPS went to
> extraordinary lengths to attempt to ensure that
> Phillip attended school regularly, that his mother
> be made aware of his academic and social
> deficiencies, and that he receive a proper
> education.  On a consistent basis, these attempts
> were met with silence or indifference from
> Phillip's mother.

*Walker*, 157 F. Supp. 2d at 33.  The court described the
obstructive behavior of the child's parent:

> A typical example of this is the delay that
> occurred before Phillip received his tri-annual
> re-evaluation from Dr. Barksdale in 1995.
> Defendants offered uncontroverted evidence that
> Ms. Herndon, Phillip's teacher at Backus during
> the 1993-1994 school year, made repeated attempts
> to schedule Phillip's tri-annual evaluation, with
> no success.  When she was finally able to
> communicate with Ms. Walker, she attempted to do
> everything she could to assist her by giving her
> documents that Ms. Walker would need to bring to
> the tri-annual evaluation in the Fall of 1994.
> Such evidence certainly does not indicate a
> failure on the school system's part to ensure

timely evaluations and re-evaluations of Phillip;
they suggest the opposite.

*Id.*

Plaintiff argues that Ms. McKinley's behavior similarly frustrated the school's attempts to schedule K.M.'s evaluation.  Plaintiff argues that Ms. McKinley did not provide IDEA PCS with medical documents from K.M.'s October hospitalization until March 6, 2006 and that she delayed meeting with IDEA PCS until that date despite multiple attempts by the school to schedule an earlier meeting. Pl.'s Mem. at 9-10.  Plaintiff argues that, after the MDT/SEP meeting, Ms. McKinley and Ms. Moody were not cooperative in efforts to schedule K.M.'s psychological evaluation.  Consistent with *Walker*, they argue that the 120 day period should be extended for every day that Ms. McKinley obstructed IDEA PCS's attempt to evaluate K.M. Compl. ¶ 28.

Defendants argue *Walker* is distinguishable, as the parent in that case continuously and effectively frustrated attempts by the LEA, whereas here, the parent and educational advocate were working with the school to schedule the assessment.  Defs.' Reply at 3-5.  Contrary to the school's assertion that Ms. McKinley withheld information regarding K.M.'s hospitalization, Defendants

point to the administrative record which demonstrates that IDEA PCS had a letter from K.M.'s doctor detailing her condition and her need for "Visiting Instructional Services" as early as October 30, 2005. Defs.' Mem. at 6 (citing R. 76).

The court agrees with the Defendants' analysis of *Walker*. Unlike that case, in which DCPS' attempts to contact the family were "met with silence or indifference," *Walker*, 157 F. Supp. 2d at 33, K.M.'s mother and educational advocate were in regular contact with the school in order to schedule the evaluation. There were miscommunications and rescheduled meetings, but the school still had the affirmative duty to evaluate K.M. under "Child find." Whereas in *Walker*, DCPS went to "extraordinary lengths" to ensure that the child received a FAPE, *id.*, here, the school did not first attempt to schedule evaluation of K.M. until April 24, 2006, over five months after her suicide attempt and 93 days after January 10, 2006, when Ms. McKinley consented to evaluation and the school notified her that they would convene the MDT/SEP meeting. After failing to speak directly with the educational advocate on April 24, 2006, the next attempt to schedule an evaluation was not made until June 21, 2006. The Hearing Officer found that

the evidence of parental obstruction was insufficient to
toll the 120 day period and the Court agrees.

### C.    Disenrollment from LEA

Plaintiff also argues that K.M. had effectively
discontinued attendance at IDEA PCS, relieving it, under 34
C.F.R. § 300.301(d)(2), of its duty to evaluate her within
the 120 day period.  Plaintiff argues that Ms. McKinley
voluntarily kept K.M. from IDEA PCS and placed her in
another LEA, thereby voiding their statutory obligation to
evaluate K.M.  Pl.'s Mem. at 12.  Defendants respond that
K.M. never disenrolled from IDEA PCS and therefore the 120
day period remained in effect.  Def.'s Mem. at 11-12.

The Court finds that IDEA PCS was never relieved of its
duties under IDEIA due to any alleged disenrollment.  Ms.
McKinley did attempt to enroll K.M. as a non-attending
student in DCPS but she was not successful for the very
reason that she refused to disenroll K.M. from IDEA PCS.
Furthermore, even if K.M. had been successfully disenrolled
from IDEA PCS, the school still would not be relieved of its
duty to evaluate K.M. because the exception Plaintiff seeks
is only triggered when the "subsequent public agency is
making sufficient progress to ensure a prompt completion of
the evaluation, and the parent and subsequent public agency
agree to a specific time when the evaluation will be

completed," which clearly did not occur.  *See* 34 C.F.R. §
300.301(e).

## III. Conclusion

Plaintiff has failed to persuade the Court that the
hearing officer's decision was incorrect.  Plaintiff's
failure to evaluate and set in place an IEP within 120 days
was not excused by any action of the parent or status of the
child and the HOD was correct to find a denial of FAPE.  For
the reasons stated above, Plaintiff's Motion for Summary
Judgment is **DENIED** and Defendants' Motion for Summary
Judgment is **GRANTED**.

Furthermore, as the prevailing party, Defendants are
entitled to reasonable attorneys' fees and costs as
requested in their motion.  *N.G.*, 556 F. Supp. 2d at 40;
*Alfono v. District of Columbia*, 422 F. Supp. 2d 1, 8 (D.D.C
2008); *Herbin v. District of Columbia,* 362 F. Supp. 2d 254,
265 (D.D.C. 2005) (citing 20 U.S.C. § 1415(i)(3)(B)).

An appropriate Order accompanies this Opinion.


**Signed:    Emmet G. Sullivan**
**           United States District Judge**
**           August 8, 2008**